UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF WISCONSIN

---

LAURENE GRAMLING LAMBACH and
CHRIS R. LAMBACH,

Plaintiffs,

vs. Case No. 21-CV-01032

BRIAN CONTE and MILWAUKEE COUNTY,

Defendants.

---

Deposition of BRIAN CONTE

April 29, 2022

9:00 a.m. to 12:14 p.m.

at

Terschan, Steinle, Hodan & Ganzer, LTD
309 North Water Street
Milwaukee, Wisconsin

Reported by Carla J. Van Roo, RPR, CRR
vanrooc@gmail.com / (414)731-5346

EXHIBIT
B



Deposition of BRIAN CONTE, a witness in the above-entitled action, pursuant to the Federal Rules of Civil Procedure, before Carla J. Van Roo, Registered Professional Reporter and Certified Realtime Reporter, vanrooc@gmail.com, (414)731-5346, in and for the State of Wisconsin, at the aforementioned location and date noted on previous page.

A P P E A R A N C E S:

TERSCHAN, STEINLE, HODAN & GANZER, LTD., by
MR. MICHAEL J. GANZER
309 North Water Street
Milwaukee, Wisconsin, 53202
julim@tshglaw.com
Appeared on behalf of the Plaintiff

CRIVELLO CARLSON, by
MR. BENJAMIN A. SPARKS and MR. ZACHARY J. FLOOD
710 North Plankinton Avenue
Milwaukee, Wisconsin, 53203
bsparks@crivellocarlson.com and
zflood@crivellocarlson.com
Appeared on behalf of the Defendant

I N D E X


| EXAMINATION | PAGE |
| --- | --- |
| BY MR. GANZER | 5 |




E X H I B I T S


| EXHIBIT NO. | PAGE IDENTIFIED |
| --- | --- |
| Exh. 12 - Mr. Conte's investigation report | 9 |
| Exh. 13 - Incorporation documents of Serving Older Adults of Southeast Wisconsin, Inc. | 14 |
| Exh. 14 - Affidavit of Records | 22 |
| Exh. 15 - Supplementary report | 57 |
| Exh. 16 - Probable Cause Statement and Judicial Determination | 64 |
| Exh. 17 - Arrest and Detention Report | 67 |
| Exh. 18 - Emails | 75 |
| Exh. 19 - Interfaith Older Adult Programs, Schedule of Findings and Questioned Costs | 76 |
| Exh. 20 - Affidavit of Brian Conte | 77 |
| Exh. 21 - Affidavit of Brian Conte | 80 |
| Exh. 22 - Printout on Laurene Lambach | 85 |
| Exh. 23 - Email from Mr. Mathy | 88 |
| Exh. 24 - Search warrants | 96 |
| Exh. 25 - Email chain | 98 |
| Exh. 26 - Email chain | 101 |
| Exh. 27 - Department of Labor paperwork | 104 |
| Exh. 28 - Memo RE: Department of Labor Analysis | 105 |
| Exh. 29 - Draft of affidavit | 109 |




E X H I B I T S
(continued)


| EXHIBIT NO. | PAGE IDENTIFIED |
| --- | --- |
| Exh. 30 - Receipts | 110 |
| Exh. 31 - Email chain | 111 |
| Exh. 32 - Hotline tip report | 113 |
| Exh. 33 - Email chain | 114 |
| Exh. 34 - Email chain | 115 |
| Exh. 35 - Email chain | 116 |


(Exhibits are electronically stored.)

**All exhibits are hyperlinked to this PDF transcript. To access exhibits, click on the box to the left of the exhibit numbers above. Download PDF transcript and open from desktop. Best if used with Adobe Acrobat Reader.**

T R A N S C R I P T O F P R O C E E D I N G S

BRIAN CONTE, called as a witness herein, having been first duly sworn on oath, was examined and testified as follows:

E X A M I N A T I O N

BY MR. GANZER:

Q Please tell me your name.
A **My name is Brian, B-r-i-a-n, Conte, C-o-n-t-e.**
Q Where do you reside?
A **In the city of Milwaukee.**
Q What's the address?

MR. SPARKS: I'll just object to that. We can give that to you off the record.

MR. GANZER: That's fine. Why don't you give it to me right now off the record.

(Off the record.)

BY MR. GANZER:

Q How are you currently employed?
A **As a deputy sheriff for the Milwaukee County Sheriff's Office.**
Q What's your educational background?
A **I have a two-year associate's degree.**
Q From?
A **MATC.**
Q What field of study?



A **Police science.**
Q When did you receive that degree?
A **Mid '90s. I don't remember exactly what year I graduated.**
Q Where did you go to high school?
A **Case High School in Racine.**
Q What year did you graduate from Case?
A **1989.**
Q So then did you go immediately to obtain your associate's degree after high school?
A **I attended UW-Parkside for approximately a year and then I switched over to MATC and switched my major to police science.**
Q And what's been your professional path since you graduated with that degree?
A **I worked a short time for the Wisconsin State Prison System and I've worked for the Milwaukee County Sheriff's Office for 25 years.**
Q Tell me about your progress through the sheriff's department.
A **I was hired, went through the academy, graduated the academy. My first assignment was to the Detention and Services Bureau, which is the Milwaukee County Jail. I worked at the Milwaukee County Jail for approximately five**



**years. I was transferred to our patrol division, and I worked at our patrol division for approximately 15 years.**
Q So what year are we in at this point when you're done with the patrol division?
A **In 2016 I was appointed as a detective in our investigative bureau and I was transferred to the criminal investigation division.**
Q And you, of course, had training along the way; correct?
A **Yes.**
Q I mean, through your work. And we've all talked with police officers over the years and understand that continuing training is important. What specific training did you have as it relates to white collar crime?
A **I had training in the academy. I had in-services every year. And then --**

**In I believe it was the spring of 2017 I attended a three-week investigator class at the Milwaukee Police Academy given by Milwaukee Police Detectives.**
Q And that would be the extent of it; is that right?
A **There's been other training. I'm not sure**



**exactly if it was before or after the date of this incident.**
Q Okay. When you refer to this incident, you mean the date of --
A **The investigation.**
Q Okay. And you have been assigned to what is now the public integrity unit for a period of time. How long have you worked with that unit?
A **I have not. I am not assigned there.**
Q Oh, you're not. Tell me what your assignment is currently.
A **I'm assigned to the criminal investigation division.**
Q I see. Now, how do you get hooked up, then, with what used to be the white collar crime unit of the DA's office? Tell me how that relationship works.
A **After this investigation was started, it was reviewed by the DA's office, and the prosecutor that reviewed it was assigned to the public integrity unit.**
Q And that's Mr. Mathy; correct?
A **Assistant District Attorney Joshua Mathy, yes.**
Q Was this the first time you've worked with him?
A **It is.**

Q I understand that you first -- strike that.
You've had your deposition taken before?
**A No.**
Q Okay. You've testified in court many times, though; correct?
**A Yes.**
Q You understand in a deposition that what we're going to do here is talk about what happened and that Carla is taking everything down, so we want you to make sure that you understand every question before you answer it. If there is -- for any reason you do not understand it, you please let me know; okay?
**A Yes.**
Q Agreed? Okay.
You first got into this case on April 15, 2018 is my understanding; is that right?
**A I would have to refer to my reports to see when I was exactly assigned it.**
(Deposition Exhibit No. 12 was marked for identification.)
BY MR. GANZER:
Q I'm going to show you what we've marked as



Exhibit 12. I believe that to be your initial investigation report, if you want to take a look, and tell me if that refreshes your recollection with respect to when you first received this complaint.
**A It does.**
Q And so when did you first receive the complaint?
**A I was assigned this case Tuesday, August 28, 2018.**
Q Okay. I mentioned April 15. That's when the complaint was made to Hart and then it was forwarded over to you by Mr. Hart on August 28; that's correct?
**A I don't know when Mr. Hart was assigned the case. I only know when I was assigned the case.**
Q And had you ever worked with Mr. Hart before?
**A No, I did not.**
Q What were you advised when Mr. Hart contacted you?
**A He did not contact me.**
Q Who did?
**A My lieutenant.**
Q Okay. Who's that lieutenant?
**A Lieutenant Trisha Carlson.**
Q And what did Lieutenant Carlson tell you?



**A She assigned the case to me and she said there was an allegation of fraud by Ms. Lambach and the complaint was received by Investigator Hart from the Milwaukee County audit division or department.**
Q Okay. So when you first got this case, what was your initial activity?
**A Spoke to Mr. Hart, gathered general background information, and then I proceeded to interview witnesses that were alleging the theft or fraud.**
Q And who are those witnesses that you're referring to?
**A There was about six original ones. Jodi Bauer. I believe there was Cathy Young. Vevette Hill. There was about six of them. I could look in my report and give you all the exact names.**
Q Go right ahead, it's sitting right in front of you.
**A Jodi Bauer, B-a-u-e-r; Catherine Wood; Sharon Stone; Amy Crawford; Vevette, V-e-v-e-t-t-e, Hill, and then she has a hyphenated name.**
Q Nwagbaraocha. Spell it, please.
**A Yes, I wouldn't even attempt to pronounce it. N-w-a-g-b-a-r-a-o-c-h-a.**
Q Did you ever ascertain --



**A I believe there is one more.**
Q I'm sorry, pardon me for interrupting.
**A No, no problem. Stacey Vojvodich, V-o-j-v-o-d-i-c-h. Let me double-check to make sure there wasn't one more.**
**On this report, those were the six witnesses that I spoke to.**
Q You understood that this was all occurring at a period of time when there was a merger of two social service agencies; correct?
**A Yes.**
Q And did you ever ascertain whether the women whose names you just mentioned were from the SET side of that merger or the Interfaith side of that merger?
**A During their interviews I asked them where they were assigned, and I can look in each one of their interviews and I can tell you where they said they were assigned.**
Q You don't have any recollection? You would have to look in your report?
**A There were some employees that were working under different grants. Some of them had different duties like financial duties and program duties. There was a lot of different**


Case 2:21-cv-01032-JPS Filed 08/15/22 Page 3 of 118 Document 29-2

**assignments for the witnesses.**
Q Okay. But what I'm asking you is whether the women that you just referred to, who you interviewed, had they prior to the time of the merger been working for Interfaith or SET?
**A I would have to refer to my report because some of them --**
Q Please go right ahead.
**A Ms. Bauer stated she was the working for Interfaith Older Adult Programs for one and one half years. She stated she was working with Interfaith during the merger with SET Industries.**
Q Without -- you don't have to read that, just kind of look at it, and then when you're done looking at it let me know.
**A Okay. Ms. Wood didn't state where she worked. Ms. Stone, she worked as a grant accountant for Interfaith. Ms. Crawford said she was hired after the merger was started. Ms. Hill said she worked for Interfaith. Ms. Vojvodich worked for Interfaith for 16 years.**
Q So except for the one that you've indicated was hired following the merger or during the merger, they all came from the Interfaith side; correct?



**A It appears to be, yes.**
Q And you never put that together until just now; is that true?
MR. SPARKS: Object to form. You can answer.
THE WITNESS: I didn't think it was relevant where they were before or after. They were just making a legitimate fraud complaint, so I investigated it.
(Deposition Exhibit No. 13 was marked for identification.)
BY MR. GANZER:
Q I'm showing you what's been marked as Exhibit 13. Did you see that?
**A No, I've never seen this before.**
Q Okay. That is an incorporation of Serving Older Adults of Southeast Wisconsin, Inc., and the registered agent there is Jodi Bauer, and it indicates that that was started, the registered effective date, is May 14 of 2018. And this would be right after you started your investigation. Actually, it's before you started your investigation because yours didn't start until August; correct?
**A Correct.**



Q Nobody that you talked to, the women that you just mentioned, told you that they had opened up a new corporation to do the same kind of work that they were doing at SET and Unison; correct?
**A No one told me at this time, no.**
Q Did you ever investigate any of these women to see what some of their motives may have been?
MR. SPARKS: Just object to form, vague.
You can answer.
THE WITNESS: No, I had six witnesses tell me the same thing. I didn't think there was a motive. It wasn't like there was only one witness that might have a motive. There was six legitimate witnesses that were saying that fraud occurred.
BY MR. GANZER:
Q And did you at any point know that those six women had been meeting before they had talked to you about starting this new company?
**A No.**
Q Now that you know that, do you think that's relevant to your investigation?
MR. SPARKS: Object to form, calls for speculation.



You can answer.
THE WITNESS: No.
BY MR. GANZER:
Q It doesn't matter what their motives are at all? Is that your testimony?
**A As long as they're telling the truth, it doesn't matter what their motive is.**
Q Okay. You went through the investigation, and I really didn't see in any of the documents that I received what kind of reporting requirements you had. Can you tell me how you were doing this internally? Did you have to go back and talk to a supervisor to continue or were you just told you can go and do whatever happens?
**A I guess I don't understand.**
Q Sure, let me rephrase it. It was poorly phrased, and I appreciate the fact that you respect that.
Who was your supervisor?
**A Lieutenant Trisha Carlson.**
Q How often did you meet and speak with her as it relates to these complaints?
**A On a regular basis. They had to approve my reports, they had to approve the plan to serve the warrants. They were involved.**

Page 17

Q Okay. Did any of them say that you should arrest Laurene Lambach back at the time that you executed the warrants?

**A I don't think they specifically said, but that was our global plan as the sheriff's office, to prevent her from destroying information.**

Q And you couldn't do that just by execution of the warrants?

**A No, we believed that she would have contact with people, she would order evidence to be hidden or destroyed, so we took her into custody because we had probable cause that a fraud occurred so we executed the search warrants and effected an arrest based on probable cause.**

Q There is a different standard for probable cause for an arrest versus probable cause for the issuance of a warrant. Can you explain to me what that difference is?

MR. SPARKS: Just object to the form of the question.

You can answer.

THE WITNESS: I know we consult with district attorneys in that matter and they give us legal advice.

Page 18

BY MR. GANZER:

Q Which district attorney did you consult with in order to arrest Ms. Lambach?

**A Specifically no one. I consulted with multiple district attorneys for all the legal process.**

Q Okay. So you can't direct me to one attorney who said you should arrest Ms. Lambach at the same time you're executing the warrants?

**A Correct.**

Q Did your supervisor tell you you should arrest her at the time that you executed the warrants?

**A She did not tell me, but she endorsed it. She agreed with the decision to do so.**

Q Okay. And tell me, when did you meet with her and discuss this?

**A The days and weeks prior to the execution of those search warrants because we had to come up with a plan to conduct such a large search at multiple locations.**

Q And it's your testimony that at the time that you executed the search warrants, you intended to arrest Ms. Lambach?

**A Yes.**

Q Because you believed that you had probable cause for an arrest at that time; is that correct?

Page 19

**A Yes, and the court commissioner agreed with that assessment.**

Q So did the court commissioner issue an arrest warrant?

**A No, she said probable cause and set bail because she agreed with my probable cause.**

Q Okay. Well, we'll talk about that in a little bit.

During the course of your investigation, it seemed to me, having gone through thousands of documents, that between approximately spring/summer of '19 and really, it looks like, the beginning of or the -- the beginning of 2021, there wasn't a lot of activity in your investigation at that time. Why was that?

**A A lot of the legal process was at the recommendation of ADA Josh Mathy.**

Q So you're saying it was Mr. Mathy's reasoning that you kind of let this simmer for a while and then picked it back up?

**A I wouldn't use those terms. We were effecting the other legal process. We were awaiting on other parts of other investigations that were being conducted by other law enforcement**

Page 20

**agencies for her criminal activity, to include the U.S. Department of Labor and the Inspector General's office for her violating the law and other federal grants where she was committing other crimes.**

Q So as you sit here today, you continue to allege that Laurene Lambach committed crimes; is that correct?

**A Absolutely.**

Q And there isn't an assistant DA who would charge this case; correct?

MR. SPARKS: Just object to form.

You can answer.

THE WITNESS: You can still commit a crime that the DA's office has prosecutor purview to decide whether or not they want to charge, but that does not mean a crime did not occur.

BY MR. GANZER:

Q How many DAs did you talk to about trying to issue a complaint against Ms. Lambach? I know Mr. Mathy, obviously. Anybody else?

**A He consulted with some of his coworkers, but I mainly dealt with Mr. Mathy.**

Q All right. So as you sit here today, what are

the crimes that you allege that Laurene Lambach committed?
A **The fraud for those computers where she accepted the money and they never received the computers.**
Q And why do you say that she committed fraud there?
A **Because she wrote paperwork accepting money through grants and did not report it properly and received those funds.**
Q When you say "did not report it properly," what do you mean?
A **She didn't follow the grant rules. She canceled the orders. I had multiple witnesses. If you look in the report and their interviews, that she said that those computers were received, and through the legal process we found out that the order was canceled.**
Q And who canceled that order?
A **We believe your client.**
Q Ms. Lambach?
A **Yes.**
Q When you say "we believe," tell me the evidence you have that shows that.
A **We have information from Dell that it was canceled. It doesn't say exactly who canceled**



**it. We know that the order was received on Ms. Lambach's computer.**
(Deposition Exhibit No. 14 was marked for identification.)
BY MR. GANZER:
Q Showing you what's been marked as Exhibit 14. Have you seen that before?
A **Yes.**
Q What is that?
A **I believe it is a certification or affidavit of records received from Dell Computer.**
Q And who executed that affidavit?
A **Megan Ellis. No, I'm sorry Chris Compton. I was looking at the wrong line.**
Q That's okay. And Mr. Compton apparently indicated that that was not the case; correct? That Ms. Lambach did not actually call and cancel the order; true?
A **Yes.**
Q So you just testified that you believed that she canceled the order and the affidavit that you had in your file indicated that that was not the case; correct?
A **Yes.**
Q And it says that the order was canceled



automatically prior to being processed because there was no record, such as an invoice, that exists; correct? Last line of paragraph 2.
A **Yes.**
Q So you've drawn the conclusion that this was canceled by Laurene Lambach, and this affidavit tells us that's not correct; right?
A **No, I stand corrected. I was mistaken and it says it was canceled.**
Q Okay. Why was it canceled? And if you have to look at the affidavit --
A **That was already answered, because it was automatically canceled.**
Q Right. It doesn't say that Laurene Lambach called and canceled. It just says "automatically canceled"; true?
A **Yes.**
Q I'd like you to go to Exhibit No. 12. And if you would go to 3 of 26.
A **(Witness complies.)**
Q And then about midway through the paragraph I'm referring to, it starts, "Hart informed me"; okay? Do you see that paragraph?
A **Yes.**
Q Okay. There were two of them that start with



"Hart informed me," so let's go to the first of the two. And that the complaint stated that "January 22 Lambach submitted a fraudulent reimbursement report."
The first thing I want to ask is you refer to the complaint, and that's just the complaint made by the witnesses; correct?
A **It's Mr. Hart received a fraud complaint to his office.**
Q Right.
A **From witnesses.**
Q Yep, that's what I wanted to square. All right.
Then the next part of that, the next, it says, "Lambach submitted a fraudulent reimbursement report for December 2017"; okay? Do you have a copy of that fraudulent reimbursement report?
A **It might be in the records from Mr. Hart.**
Q Okay. And what does that say? What does that fraud reimbursement report say?
A **I'm not a forensic investigator like Mr. Hart, so I do not know.**
Q Okay. So despite the fact that it appears here in your report, you don't know what that means?
A **I'm writing in my report here that that's what**

**he informed me of as a forensic investigator for the County. That that's what he stated to me.**
Q And did you then ask him for the fraudulent reimbursement report?
**A He provided documents on a CD or a DVD that was placed into the case file to be reviewed by the DA.**
Q And what does that fraudulent reimbursement report say?
**A I do not know, I'm not a forensic investigator.**
Q So you couldn't comment on that because you're not a forensic investigator, even though you may have read the report?
**A Like I said, I'm not a forensic investigator, I provided it to the DA's office, and I'm writing what he told me as a County investigator.**
Q So that fraudulent reimbursement report had no role in your arrest of Ms. Lambach; correct?
**A I think overall globally for probable cause, what statements that Mr. Hart made to me and what the six other witnesses made to me had something to do with building probable cause, yes.**
Q Okay. But you can't put your finger on what that says?



**A On that particular document, no.**
Q It says in the next line that Lambach falsified Interfaith's costs and spending. Could you tell me how Lambach falsified Interfaith's costs and spending?
**A Yes, he stated and the six witnesses stated that she would move things around in different columns for the grant reporting to receive the full amount of money, which is in violation of the grant, so therefore it would be fraud.**
Q And do you have a document that shows that?
**A There are documents in that disk provided by Mr. Hart.**
Q So I should be able to look at that and determine what Laurene Lambach changed?
MR. SPARKS: Object to form.
BY MR. GANZER:
Q Well, that's what this says, "Falsified Interfaith's costs and spending."
MR. SPARKS: Same objection. You can answer.
THE WITNESS: I'm not sure if you would understand it, but maybe a forensic investigator would. I don't. It was explained to me.



BY MR. GANZER:
Q Then the next paragraph there you are talking about Hart informed you that Lambach placed an order and then later let the order be canceled or not filled and then submitted the order amount for reimbursement. Those are your words; correct?
**A Those are the words from Mr. Hart because he informed me of that, so I wrote down what he told me.**
Q Did you ever do any investigation to determine whether that's accurate?
**A I spoke to six witnesses who told me similar information. We executed a subpoena for the Dell records, which you provided here. That shows that it was canceled. She placed the order and she led it to be canceled, so I would believe that's safe to be true.**
Q So by her inaction it was canceled. She didn't cancel it; is that correct? That's your testimony here today?
**A Based on what's in front of me, yes.**
Q Okay. But it was not your thought process at the time; true?
**A No, it was, because I wrote it down.**



Q Okay. No, I'm talking about when you arrested her. I'm sorry, I wasn't clear there.
**A No, it was our belief that she accepted the money after the order was canceled, however the order was canceled and she still accepted that money in violation of the grant so therefore committing fraud.**
Q Well, you say "she accepted the money." The company accepted the money, she did not personally accept the money; correct?
**A Well, as the CEO --**
Q That's not my question. My question is she did not personally receive that, the money went to the company?
MR. FLOOD: That's a statement. I'm going to object to form.
BY MR. GANZER:
Q Is that a correct statement?
**A I don't know, can you rephrase it?**
MR. GANZER: Would you re-read that, please?
(Requested portion of record read by the reporter.)
THE WITNESS: We're not sure, we never were able to ascertain if she accepted personal

funds from the company or not. That's why we continued on with subpoenas, to try and find that out.

BY MR. GANZER:

Q Right. And you've subpoenaed every one of her bank accounts, you've subpoenaed every one of her credit card accounts, you've looked into all of her personal finances and found nothing; correct?

**A That's still ongoing, actually.**

Q Oh, it is. Okay. And why are you still ongoing?

**A It's not me ongoing. I believe the audit department is looking at the fraud to the grants because they're in charge of the grants.**

Q And who's is doing that?

**A I believe the audit division.**

Q What individuals?

**A I don't know, I don't work for the audit division.**

Q When you say you believe that, have you had any dealings with them?

**A Not since this case was no processed.**

Q When you say "no processed," can you explain what that means?



**A Since the district attorney's office said they declined to prosecute.**

Q So what you've described as a continuing investigation does not relate to criminal activity, it relates to how the County is going to deal with the finances here. Is that a fair statement?

**A I believe so.**

Q Okay. And is it also fair to say that the statute of limitations has likely run on Laurene Lambach ever being charged with anything related to her time at Unison, Interfaith, or SET?

MR. SPARKS: Objection to form, calls for a legal conclusion. You can answer if you can.

THE WITNESS: I don't believe that's the case. I think there is more than a couple years statute of limitation on felonies, so I believe it's still within the time that she could be criminally charged.

BY MR. GANZER:

Q And the DA has no processed it; correct? Decided not to prosecute.

**A At this time, yes.**

Q On page 4 of 26, I would like you to go down to



about the fifth paragraph of your report there, the words on the far left, "The informant indicated."

Do you see that?

**A Yes.**

Q It says, "The informant indicated that Laurene Lambach falsified the matching funds required under the grants."

First of all, is the informant -- who was the informant you're referring to there?

**A I believe that was coming from Mr. Hart and he was stating that the confidential whistleblower that contacted the audit division was stating that.**

Q Who is that whistleblower?

**A I don't know that specific one, but he provided me with six names and I interviewed six witnesses, so essentially there is six informants, whistleblowers, informants.**

Q So then it says the informant indicated that Laurene Lambach falsified the matching funds required on the grant. Did you check to see whether Laurene Lambach falsified the matching funds required on the grants?

**A We involved that inspector general from the**



**federal government and also Hart and we were looking into that, yes.**

Q You were looking --

You're talking about the ERISA issues; is that correct?

**A I'm not familiar with that term.**

Q "ERISA" is part of your investigation as it relates to the funds supposedly to be put into the retirement accounts.

**A I didn't mention that. That's a total another criminal act that she was alleged to have committed. That was investigated by the Department of Labor and they actually determined that she did violate those criminal laws and --**

Q Now, wait a minute. They decided she violated civil laws, not criminal; correct?

**A They told me both.**

Q The ERISA requires that in order for there to be a criminal prosecution, that she had embezzled funds. That is a requirement under the law.

Do you any evidence, as you sit here today, that this woman embezzled funds?

**A I can only tell you what the Department of Labor told me. They said that she violated the civil --**

Q I asked your opinion. Can you please re-read the question.

(Requested portion of record read by the reporter.)

THE WITNESS: No, because --

MR. SPARKS: Object to form, calls for a legal conclusion and asked and answered. You can answer.

THE WITNESS: No, because that was handled by the Department of Labor and it was in their purview and not mine.

BY MR. GANZER:

Q You understand, though, from your investigation that ERISA can do an investigation and level civil penalties as opposed to criminal; correct?

**A I don't know what ERISA is. You never explained what ERISA spells out or what the acronym is.**

Q That's a federal law, the Employee Retirement Income Security Act.

**A Okay.**

Q ERISA; okay?

And you did investigations pursuant to those statutes, and you don't know anything about them?

MR. SPARKS: Object to form, compound, lacks foundation.



BY MR. GANZER:

Q Go ahead.

MR. SPARKS: You can answer

THE WITNESS: I investigated State of Wisconsin statutes for fraud and theft of County grant funds. The Department of Labor conducted that investigation, that she violated those rules that you're talking about.

BY MR. GANZER:

Q So you had nothing to do with it?

**A I did not investigate the Department of Labor.**

Q I'd like you to go to 5 of 26 on Exhibit 12. And I'm just trying to verify something here. The second full paragraph says, "Hart provided me with a CD containing documents and records."

Was the product of that CD included in the documents that you have turned over to our side in this case?

**A I believe so. I provided everything that I had.**

Q Go to 6 of 26, please. It would be the fourth full paragraph. This comes from your interview of Jodi Bauer. You've written in there that the fraud only could have been committed by Lambach because she is the only one with access to the account. And I assume that's the Dell account you're talking about; right?



**A Yes.**

Q And then in the next sentence it talks about "Bauer stated that Lambach canceled the order." She did not activity call and cancel the order; correct?

**A Let's see.**

Q It would be the fourth paragraph.

**A Are you stating this sentence here, "Bauer stated that Lambach canceled the order?" Is that --**

Q Yeah.

**A What's the question again, please?**

Q The question is whether you believe that to be true.

MR. SPARKS: Object to form, vague as to time.

You can answer.

THE WITNESS: I believe that she believed that and I believe she stated that and I wrote what she stated.

BY MR. GANZER:

Q So you interviewed her in October of 2018, but you didn't follow up with Dell until I think it was 2021; is that right?



**A I don't believe that's true.**

Q What's this affidavit say here. 14th day of January, 2019. I'm sorry, my mistake, I was thinking another affidavit.

So you found out in 2019 that she did not cancel the order; correct?

MR. SPARKS: Object to form, lacks foundation.

Go ahead and answer.

THE WITNESS: I received the documentation from Dell in January of 2019 that states that the order was automatically canceled.

BY MR. GANZER:

Q So when Bauer made that statement to you in October of '18, you did nothing to follow up until 2019; true?

MR. SPARKS: Object to the form.

THE WITNESS: I guess I don't understand the question.

BY MR. GANZER:

Q You didn't check to see that Lambach had canceled the order until after you had arrested her; true?

MR. SPARKS: Same objection.
THE WITNESS: It takes a while for the legal process, for subpoenas, for them checking records. We arrested her based on probable cause with a continuing investigation.
BY MR. GANZER:
Q So the answer is yes?
A **The answer is we arrested her before we received that. I believe it's yes. I don't think it changes the fact that she had control and it was canceled. We had probable cause.**
Q You also in, it looks like, the last full paragraph on that page, still referring to the interview of Bauer, that she stated that Wood was the CFO for Interfaith, Bauer stated she met with Catherine Wood and a grant accountant.
Do you know who that grant accountant was?
A **She didn't specify.**
Q So you didn't think it was important to speak with that grant accountant when Bauer alleged that she learned that Lambach told the grant accountant that the computers were received and were ordered within the deadline? I mean, that's what the allegation is here. And you



didn't follow up on that?
MR. SPARKS: Object to the form.
You can answer.
THE WITNESS: I believe I did follow up. I spoke to the six witnesses, including several grant accountants.
BY MR. GANZER:
Q I want to know who that grant accountant was.
A **At this time I don't remember or she didn't specify.**
Q And I haven't seen anything from any of the grant accountants to indicate that Laurene Lambach told them that the computers were received.
MR. SPARKS: Just object to form, calls for speculation.
THE WITNESS: That was a statement.
BY MR. GANZER:
Q Well, then let me ask a question.
Did you talk with any grant accountant that said that Lambach said the computers were received?
A **I believe farther in the interviews, in one of the other ones they said she kept saying they received them and no one knew where they were,**



**so they said check with the IT where they were supposedly shipped. So it was kind of like a roundabout story. And if you read through the other interviews, it covers part of that.**
Q I read them, and I want to know who that grant accountant is.
MR. SPARKS: Asked and answered. You can answer.
BY MR. GANZER:
Q You don't know; correct?
A **At this moment, no. She did not specify.**
Q Did you ever check with members of the board prior to the time that you had arrested Laurene Lambach as to what their position was as it relates to these issues? That is -- yeah, let me clarify. That's not a good question.
Did you ever interview any members of the board prior to the time that you arrested Laurene Lambach?
MR. SPARKS: Just object. To the board of what?
MR. GANZER: The board of Unison, SET. You know, Interfaith.
MR. SPARKS: Go ahead. If you understand the question, you can answer.



THE WITNESS: No.
BY MR. GANZER:
Q Why not?
A **Because we did not want the criminal investigation to be leaked so the information could be destroyed.**
Q Okay. Did you ever, during the course of your investigation, look at this in terms of perhaps Laurene Lambach is innocent and I should find out if maybe, you know, the six women that are making these allegations are being up front with me?
A **We always approach every investigation as the person could be innocent and we're seekers of the truth and finders of fact, so that was part of our consideration, but there was no indication that any of these witnesses were unreliable.**
Q Would they have been unreliable if you knew they had started a company in order to try to compete with Unison?
MR. SPARKS: Object to form, calls for speculation, lacks foundation.
You can answer.
THE WITNESS: No.


Case 2:21-cv-01032-JPS Filed 08/15/22 Page 10 of 118 Document 29-2

BY MR. GANZER:
Q Do you believe that they could have been shading their claims in order to try to advance their own economic interests as it relates to taking the business from Unison?
MR. SPARKS: Object to form, still lacks foundation.
You can answer.
THE WITNESS: No, because these are nonprofits, so I don't know what their financial gain would be for a nonprofit organization. And in the business world, there is always competing businesses and their motives don't matter as long as they're telling the truth. And from everything, based on Matt Hart's investigation, my investigation, the Department of Labor's investigation, everything that they have said has mostly been true.
BY MR. GANZER:
Q What actions did you undertake to ascertain whether these six women were telling you the truth?
**A Executed subpoenas and executed search warrants. Interviewed additional witnesses. There is other reports that have additional witnesses.**



Q As an example, these women suggested that Laurene Lambach canceled the orders in question in the affidavit, and what you have there in Exhibit 14 indicates that's not the case; correct?
MR. SPARKS: Object to form. You can answer.
THE WITNESS: Could you read it back, please? He said it really fast.
(Requested portion of record read by the reporter.)
MR. SPARKS: Same objection.
THE WITNESS: Yes.
BY MR. GANZER:
Q You also knew during this time frame that Catherine Wood had been discharged by Laurene Lambach; correct?
**A I believe she said she had left the company. I would have to refer to my report to know exactly what she said, but I knew she had left the company.**
Q Well, let me lay it out for you. She left the company. She was going to be demoted and decided instead of being demoted she would leave the company with some kind of a payout. Not a



big one, of course.
Did you understand that to be the case?
**A I would have to refer to see exactly what she told me. I know she left the company.**
Q Did you consider that that might shade her testimony or statements such that she would pile on, let's say, to Laurene Lambach?
MR. SPARKS: Object to form. Lacks foundation.
You can answer.
THE WITNESS: Yes, we considered that, but then after talking to additional witnesses that were giving the same story, her statements appeared to be truthful.
BY MR. GANZER:
Q Who's "we"? You said "we considered that."
**A I considered.**
Q Okay. I would like you to go to page 8 of 26 on this exhibit. The second full paragraph there, "I asked Bauer her opinion why Lambach is committing these crimes."
Now, I think this took place on October 9 of 2018. Did you believe at that point in time that Laurene Lambach had committed



crimes of fraud?
**A Based on what Mr. Hart told me and so far based on what Ms. Bauer told me, there was two alleged crimes for two different grants, so that's why I used the word, plural, of "crimes."**
Q But you've concluded, though, that the real question is that at that point you concluded she had committed crimes; right?
MR. SPARKS: Object to form; mischaracterizes testimony.
THE WITNESS: It was a question that I asked her why she thinks she had committed any crime or crimes.
BY MR. GANZER:
Q And what crimes did Ms. Bauer say she committed?
**A She was alleging that she committed fraud for the computer grant issue by accepting the money.**
Q And who is it that determines whether crimes have been committed, the witness or the investigator?
**A I was just asking her opinion, but a witness can determine a crime if they witness a crime. If you see a battery, they know it's a battery. If they see a fraud, they see a fraud.**
Q Ms. Bauer said something to you. It's the last

full paragraph, last sentence there. And it talks about that Lambach had used a personal credit card or funds to pay Interfaith's bills.
Did you consider that at all in determining how you were going to move forward with respect to Ms. Lambach?
A **What do you mean?**
Q Well, her husband, in particular, lent SET Ministries significant sums of money to keep the organization afloat. Did you consider that perhaps she wouldn't steal from a company that she is lending money to in order to keep it afloat?
MR. SPARKS: Object to the form of the question.
THE WITNESS: Some people thought -- witnesses, including Ms. Bauer, thought that she would spend some of her own money and she would reimburse herself back with more money, so therefore it was washing the money, so that she was using that as a conduit to get money out of the business to commit fraud.
BY MR. GANZER:
Q And that is not what happened here; correct?
A **We don't know that.**



Q As you sit here today, you still maintain that Laurene Lambach took money from SET or Unison or Interfaith?
MR. SPARKS: Object to form; mischaracterizes what he just testified to.
THE WITNESS: That's not what I said.
BY MR. GANZER:
Q Tell me what you said.
A **I said there was allegations and there was an ongoing investigation to see if that occurred, and at this point that has not been proven or disproven.**
Q Okay. Again, you have looked at all of her personal financial records. You've looked at the businesses financial records. You have no evidence whatsoever that she took any money from these companies; correct?
MR. SPARKS: Object to form. Lacks foundation.
You can answer.
THE WITNESS: Correct.
BY MR. GANZER:
Q I would like you to go to page 10 of 26. The last line, and we're still on -- is it Exhibit 12? And this is a curious question and



answer here. You say you asked Ms. Wood, because you're interviewing her at this point, if she had an opinion on Lambach's motives for the fraud. "She stated she believes Lambach is inept."
You wrote that; correct?
A **Yes.**
Q And by being inept, that would mean that she is negligent as opposed to intentional. In other words, she is not qualified to do the work. That was Wood's opinion is what she told you when you were talking to her about fraud; true?
MR. SPARKS: Object to the form of the question.
You can answer.
BY MR. GANZER:
Q Is that true?
A **That's what Ms. Wood told me. She thought she was inept.**
Q Did you do anything to determine whether Laurene Lambach's actions were because of negligence or because of fraud, intent?
A **Yes, that was the whole thing of our investigation and that's why we continued to serve legal process, to prove if she -- why she**



**was committing the fraud, because she did commit the fraud. She reported it falsely to the County and the federal government and we wanted to know why because sometimes motive does matter.**
Q So you're telling me that -- strike that.
MR. GANZER: Could you re-read that answer, please?
(Requested portion of record read by the reporter.)
BY MR. GANZER:
Q Sir, I would respectfully request that you turn over any documents you have that verify that statement.
MR. SPARKS: You can direct that to us.
MR. GANZER: I just did.
MR. SPARKS: You were looking at my client, but go ahead.
MR. GANZER: You will provide those documents?
MR. SPARKS: We've provided any documents requested in discovery.
MR. GANZER: I want to know the documents that he just referred to. I mean, I

have got 25,000 documents. What's he referring to?

MR. SPARKS: You can ask him a specific question, that's fine.

BY MR. GANZER:

Q I did. Tell me what documents you have got that comport with that.

MR. SPARKS: Object to form; overly broad and vague.

You can answer.

THE WITNESS: They were all provided on those documents from Matt Hart that shows that they received the funds from the County -- or computers, and they never received the computers, and that's in violation of the grant.

BY MR. GANZER:

Q Did you understand the money was repaid?

A **So if I steal from you, as long as I repay it it's not a crime?**

Q Well, there is a question about whether there is a "steal" element of it, but did you understand that the money was repaid?

A **I have heard that. I have no proof of that, but I did hear that.**

Q I would like you to go to 11 of 26 on



Exhibit 12. Can you go to the last full paragraph there, "Stone stated." So this is your interview of Sharon Stone. And Ms. Stone apparently told you there is approximately 30,000 left in the grant and that Lambach changed the paperwork to spend the money.

Did you ever ascertain what paperwork she changed to spend the money?

A **I believe Matt Hart did.**

Q You don't know?

A **At this moment, no, not during this interview.**

Q But subsequent to the interview did you do anything to follow up on that?

A **Yeah, that was all part of the paperwork that was submitted to the County and Matt Hart, who was a forensic investigator, was looking at it.**

Q So Mr. Hart should have that?

A **He should have some of that paperwork, yes.**

Q And then the next paragraph talks, "Stone explains in the end of '17 Wood informed that they weren't going to be able to spend the rest of the grant money and that an extension would be needed. Stone stated that grant finance was notified and an extension was requested."

Did you ever look into that?



A **I believe Matt Hart did.**

Q What did he find?

A **I'm not sure at this moment. I would have to refer to him.**

Q Next sentence, "Stone stated that Lambach later changed the paperwork with false information."

Again, what paperwork did she change?

A **I would have to refer to Matt Hart. I'm just writing what she had told me. These were allegations from her. This is what she stated to me, so that's what I documented.**

Q You did nothing to follow up on that request or that allegation; correct?

MR. SPARKS: Object to form.

Go ahead and answer.

THE WITNESS: No, Matt Hart was getting all those documents from -- because all those documents were provided to the County, so he had access to all those documents and I believe they were provided on that CD.

BY MR. GANZER:

Q But this went into your thought process when you arrested her -- right? -- that she changed documents?

A **Yes, I have multiple witnesses stating that and**



**I have Mr. Hart stating that, who is a forensic investigator, so as a trained professional I'm allowed to use his information towards my probable cause.**

Q Okay. Then 13 of 26, you're interviewing Ms. Crawford. In about the middle it said, it is the fifth full paragraph, "Crawford stated that Lambach was falsifying numbers."

Did you do anything to follow up to see if Lambach was falsifying numbers?

A **Yes, I gave that information to Mr. Hart and I also provided that information to the inspector general's office, a law enforcement officer for the federal government, to assist with looking into that.**

Q Okay. And then it talks about they received the expected 1,000 to $2,000. What is that? I have no idea what that relates to.

A **I think she -- Ms. Crawford is referring to a specific grant, and that's a specific statement from her, so I wrote down what she said.**

Q Did you follow up on that to determine whether that was accurate?

A **I provided that information to Mr. Hart and that inspector general law enforcement officer.**

Q You seem to be laying everything off on Mr. Hart. Did he have any decision-making authority whether to arrest this woman?

MR. SPARKS: Object to the preamble to that question.

THE WITNESS: Decision-making, no.

BY MR. GANZER:

Q So that's all on you and/or your supervisor; correct?

A **Yes.**

Q Then 14 of 26, second full paragraph from the bottom, and it talks about Ms. Crawford and Andrew Musgrave. And Mr. Musgrave apparently was on the board and it was reported to the board.

My understanding is that some of these women had previously contacted board members, I think Jeff Chang is another one, and there's another one, a Neuman, I think, that had information that these women were trying to pass along to them. So they had in mind some of these things, but you decided you couldn't talk to them because of the secrecy of your investigation; correct?

MR. SPARKS: Object to the form.



You can answer.

THE WITNESS: We did not speak to them due to an abundance of caution that information would be leaked to her because she was friends with some of them, and we received that from multiple of the six witnesses who said be careful about information because she's stored information in different places and took information home. It was a very, very serious concern about information and evidence being destroyed.

BY MR. GANZER:

Q I want you to go to 15 of 26. Second full paragraph. It's relatively short. And Ms. Crawford provided you with the names of Sarah Brady and Ruhamah Bauman, R-u-h-a-m-a-h, B-a-u-m-a-n. Did you ever follow-up with those two people?

A **Just let me -- which paragraph was it, sir?**

Q 15 of 26.

A **Yep.**

Q And it would be the second full paragraph. Very short paragraph. Next one.

A **Okay. I know we did reach out to CNCS and I was -- I know I was given information that they**



**wouldn't provide information. Confidentiality rules.**

Q Who did you deal with at CNCS?

A **I don't remember who I called. I want to say farther on in more reports there's documentation that we contacted them, but I would have to refer to reports.**

Q The next paragraph talks about something a little bit different than what we've been talking about, I think. "Crawford stated that Lambach billed expenses that were not allowed by the grant rules. Lambach did not match 30 percent of matching funds required," et cetera.

Did you follow up on any of those allegations?

A **By talking to Matt Hart and also that inspector general investigator, he explained how some of that works. I was unfamiliar with that. Based on all the six witnesses, she would move money and things in different categories to falsify, to get the full matching amount of funds.**

Q And who is it? You said Mr. Hart and then some other individual?

A **Yes. I don't have his name in front of me, but**



**he's documented in one of the reports and he looked at the one grant that was in their jurisdiction, the federal grant.**

Q This was somebody from the federal government?

A **Yes.**

Q And you don't recall who it is?

A **Not at this particular moment. It's in my documentation somewhere.**

Q Was this somebody from the FBI?

A **No, the Inspector General's office for the grants.**

Q So I should be able to go through those documents and find out who that individual is; correct?

A **Uh-huh.**

MR. SPARKS: Is that a "yes"?

THE WITNESS: I'm sorry, yes.

BY MR. GANZER:

Q If you go down a little bit further here, "Crawford stated that fraud might include double billing on the grants."

Do you see that?

A **Yes.**

Q Did you follow up on that?

A **The same way that we did with the other ones. I**

**notified that other investigator and Matt Hart.**
Q Go to 16 of 26. Second full paragraph. You indicate, "Hart also provided me with the name of the CPA firm that was conducting the audit of Interfaith. The firm is Wagner CPAs and the contact person is Jenny Tarkowski."
Did you talk to Jenny Tarkowski?
A **I did, and it's documented she basically said she would have to refer to her senior partner and they would not release any information, and I don't believe we ever fully received their audit.**
(Deposition Exhibit No. 15 was marked for identification.)
BY MR. GANZER:
Q I've handed you what's been marked as Exhibit 15, and it is your supplementary report; is that correct?
A **Yes.**
Q And this was done, I don't know, after the arrest; is that correct?
A **Yes.**
Q Now, the first page of that, page 1 of 16, in the middle, it says that on November 13, 2018 you spoke with Donjeene, D-o-n-j-e-e-n-e, Smith



of the Department of Labor. And this was pursuant to your investigation; correct?
A **Yes.**
Q And she indicates to you -- I believe that's a woman. I'm not sure, I guess.
A **I believe it was a woman.**
Q Okay. Said that her agency was conducting a civil investigation, not criminal apparently; is that correct?
A **Yes.**
Q Then on the last line of that first page she advised you that she attempted to talk to the board of directors and got the feeling they didn't care and believed Lambach's stories and explanations; right?
A **Yes.**
Q So what this tells me is that the board of directors believed something that Laurene had advised them, but you didn't follow up to determine whether that was legitimate; is that a fair statement? In other words --
Let me rephrase that so we're clear.
You previously indicated you didn't want to contact the board because you didn't want to give up any of your secrecy with respect



to implementing your matters here. So if you didn't speak with them but they knew about it, why didn't you at this point go and speak with them?
A **They knew about the allegations about the Department of Labor and not depositing employee deposits. I was not investigating that so I still didn't want any evidence to be destroyed or the fraud on the grants.**
Q But at that time, didn't you already have that evidence? Because you did the search October 9. And this is, what, in November, isn't it?
A **We did the search warrant on November 20, I believe.**
Q Okay.
A **Page 3.**
Q I had the date wrong for some reason. I had them in October. My mistake. So it's a bit different.
So this was before the search and arrest. That the Labor Department is telling you they'd already had contact with the board.
A **About the civil investigation for the employee deposits from the Department of Labor. I was investigating State statutes for fraud, so I did**



**not want them to know about it until after the search warrant so nothing would be destroyed. I spoke to that investigator five days before the search warrant was served.**
Q What I would like you to do is describe for me your activities at --
When you were executing the search warrant, tell me how that went, in a narrative form.
A **Okay. I guess specifically what are you looking for?**
Q Tell me what happened that day.
A **We went over to the main offices on 6th and Virginia, and we waited until their meeting was over, and when the meeting was over we approached her and told her we would execute a search warrant.**
Q "Her" being Laurene Lambach; correct?
A **Laurene Lambach, yes. We asked her about if there was any items that were with her. She said a lunch bag, a computer, some other small items, and then we went up to, I believe, the fourth floor where their main offices were, and we presented the search warrant, and the team of deputy sheriffs and detectives proceeded to**

search.
We also informed her about the search warrant for her residence, and we asked her if we could have her key to her residence so we did not have to do any damage. She provided the key. I provided that to a fellow detective who drove the key out to the search team at her residence, and then we proceeded to search. During that search she was arrested and transported from there to our offices downtown in the safety building.
Q And you were the one that arrested her; correct?
A Essentially, yes. But we as the sheriff's office arrested her as a team, but you could say I did.
Q Tell me, just as --
We're at 6th and Virginia. Tell me if you had any conversations with Ms. Lambach about the reasons that you were executing these search warrants.
A I guess I don't understand the question.
Q Well, did you tell her why you were there?
A We told her it was a fraud investigation and then we provided a copy of the search warrant face for her to read.



Q What was her response?
A I don't recall.
Q Do you recall anything that you two talked about that day at 6th and Virginia?
A We basically just spoke about what items that were with her: The computer, the purse, her lunch bag, and the keys to her house. And that was pretty much it, and then she went off with other detectives, and then I went over by the search team and then she got transported, and I didn't really speak to her or try to speak to her until we were at her office.
Q What the reason you told her that you were arresting her?
A I'm pretty sure I said fraud.
Q You say you're pretty sure. You're not entirely sure or --
A I don't recall what exact words I used.
Q Then you got her downtown to the sheriff's department; correct?
A Some of my fellow coworkers escorted her to the sheriff's office, yes.
Q Did you talk to her down at the sheriff's office?
A I spoke to her. I attempted to interview her.



Q And what happened?
A She stated she wanted to speak to one of the Unison attorneys.
Q Okay. Who was that?
A I would have to refer to my report. She did give me a name.
Q Robert Duffy? Does that sound familiar?
A The name sounds familiar, yes.
Q Did you allow her to talk to Mr. Duffy?
A We did not because we didn't ask her any more questions.
Q Simply because she sought counsel, is that it?
A She was exercising her rights and we honored her rights.
Q Did you let her call Mr. Duffy?
A I don't believe we did.
Q Why not?
A Because we weren't going to interview her at that time.
Q Why didn't you just release her and ask her to come back at a later date?
A Because she was under arrest for a felony and we followed proper procedure to have her booked and her fingerprints and her photo taken because we got information from witnesses that she recently



purchased a home in Florida and she could flee to Florida, so we wanted to properly book her and obtain all the proper information.
Q Well, so the reason you did that was because she had a place in Florida?
A And she allegedly committed a felony. We had probable cause that she committed a felony.
(Deposition Exhibit No. 16 was marked for identification.)
BY MR. GANZER:
Q Okay. I'm showing you what's been marked as Exhibit 16. It indicates that this is your probable cause determination; correct?
A It's not my determination, it was my probable cause statement.
Q I'm sorry, "and Judicial Determination." I skipped over that.
You alleged at that point that there were two counts of theft by fraud; correct?
A Yes.
Q Can you explain the difference between the two that you alleged?
A Yes, based on a reimbursement/advance requests for FCSNP from Interfaith that they wanted $44,852 on a contract that she signed. Also had


Case 2:21-cv-01032-JPS Filed 08/15/22 Page 16 of 118 Document 29-2

**information from an informant that she ordered $17,000, roughly, approximately, in computers and other equipment. The order was signed by Lambach on December 31 and indicated that five computers were ordered on this grant and four -- excuse me, two other ones on another grant, and they were never received but she received the money.**
Q You say she received the money --
A **As the CEO of Interfaith.**
Q You say in about the middle of this here, and I'll kind of direct you. See where it says, "In March of 2018," and then next sentence starts "Laurene," misspelled, "Lauren and Interfaith still."
Do you see that language?
A **Okay.**
Q So Laurene Lambach and Interfaith still received the grant funds for the computers even though they were never purchased or delivered. It's not true that Laurene Lambach received the grant funds; correct? It was the company.
A **As the CEO, the chief executive officer, she received them.**
Q And when the probable cause hearing took place



in front of the commissioner, I believe, is it fair to say that you didn't explain that Laurene Lambach did not receive the funds?
A **There's not an in-person hearing. It is an administrative review by the court commissioner without me being present.**
Q Which court commissioner reviewed this?
A **This document doesn't have it. I know it's documented somewhere in the sheriff's office and the court records which court commissioner set bail and found probable cause. It is a standard procedure in intake court.**
Q Did you walk the papers up to intake court?
A **No, the jail does it.**
Q So you just hand them to the jail, the jail gives it to the commissioner and it's taken care of that way?
A **Yes, sir.**
Q So there's no testimony given. You didn't advise anybody as to the facts. The probable cause statement here is the only thing the commissioner had when setting bail; correct?
A **Yes.**
Q And it's fair to say that the commissioner could be led to believe that Laurene Lambach actually



received grant funds personally based on the sentence we were talking about; correct?
MR. SPARKS: Object to form; calls for speculation.
You can answer.
THE WITNESS: I don't know what the court commissioner believed. I can't answer for the court commissioner.
BY MR. GANZER:
Q But even though this alleges that Laurene Lambach received the grant funds, she did not, it was the company; true?
A **As the CEO and the company, yes.**
(Deposition Exhibit No. 17 was marked for identification.)
BY MR. GANZER:
Q What's Exhibit 17?
A **This is the Arrest and Detention Report that goes along with the Probable Cause Statement and Judicial Determination Form.**
Q And that's a document you completed; correct?
A **Yes.**
Q And what's the purpose for that?
A **It is to document the arrest and detention and to have the proper paperwork so an arrestee can**



**be admitted into the Milwaukee County Jail and booked.**
Q I would like to go back to your supplementary report there. Is it 15? And go to page 5 of 16. Do you see that?
A **I'm on page 5, yes.**
Q You talked to Bob DeVita at some point during the execution of the search warrants; is that right?
A **He was in the office, yes.**
Q And what did Mr. DeVita tell you about Cathy Wood and/or Laurene Lambach?
A **I guess be more specific. I don't understand the question.**
Q I'm asking what Mr. DeVita and you talked about.
A **We informed him that we were in his offices and we were serving a search warrant. He stated he had knowledge of a complaint between him -- her and former CFO Cathy Woods and that he thought it was in regards to an inappropriate purchase of one computer on a contract. That's what he said.**
Q Okay. And he also informed you at that point that Catherine Wood had filed a lawsuit against the Interfaith/Unison/SET group; is that


Case 2:21-cv-01032-JPS Filed 08/15/22 Page 17 of 118 Document 29-2

correct?
A He stated that Cathy Wood sued them or threatened to sue them and a settlement was reached is what he said.
Q Was that the first you had learned about that?
A About the lawsuit?
Q Yeah.
A I believe so. I knew she had left the company based on her interview, but I didn't know she had sued them.
Q Did that in any way change the way you were looking at Ms. Wood as a reputable informant?
A Well, like I had stated earlier on a previous question, I think that is a factor, but I had five other people saying similar things that bolstered her credibility.
Q Is it fair to say that during the execution of the search warrants you learned nothing new as it related to the culpability of Laurene Lambach?
MR. SPARKS: I'll object to form. If you understand the question.
THE WITNESS: No, I do, but it's going to be a compound question. And the answer is no, because at the advice of Josh Mathy we did



not search the documents that were seized during the search warrant.
BY MR. GANZER:
Q Ultimately you sought approval from the companies to be able to go through those documents; correct?
A I did not. Matt Hart might have, but I did not.
Q The question is this. Since you didn't go through the documents that day, that prior to the time you walked into that office, that was all the evidence you had that Laurene Lambach had done anything unlawful; correct?
A We had the subpoena from Dell. We had the search warrant that proves that she was accessing that through her internet to make the nexus to her home, and we had statements from six informants, witnesses, coworkers, whatever term you want to use, that were stating that crimes occurred.
I also spoke to the Department of Labor investigator who said that they were investigating violations of the Department of Labor rules, and multiple red flags came up in their investigation as well, so all of that led to the arrest and detention of Ms. Lambach.



Q Okay. You made a statement there about the nexus of her working at home or doing things at her home computer. Tell me why that was important to you.
A Because the informants or the witnesses stated that she does work from home and she keeps records at home, so we had to have information that that was true. And then based on the search warrant that she accessed work stuff through her internet at home, that therefore gave us additional probable cause to draft the search warrant for her personal residence.
Q Did you believe at some point that she had committed computer crimes?
A Not specifically computer crimes. Just fraud of the grants.
Q And did you believe that it was unusual that she would do work at home?
A No, I didn't think it was unusual. Our main goal was just to gather the facts and evidence, and therefore we believed that there was evidence at her residence, and that was the sole and only purpose to draft and execute that search warrant.
Q Was there any evidence that was obtained from



that residence related to your investigation?
A We did obtain items, but at the advice of ADA Josh Mathy, we did not search inside those documents or computer.
Q Why is that?
A I was following legal advice of the prosecutor.
Q I would like you to go to 10 of 16.
A (Witness complies.)
Q It says, "On Monday, November 26, I was contacted by Assistant District Attorney Joshua Mathy. I met with ADA Mathy in person and briefed him on this investigation and arrest."
Where did you meet Mr. Mathy?
A In his office.
Q And how long was that meeting?
A Not sure. Wasn't very long.
Q What did you two talk about?
A We talked about the arrest of Ms. Lambach and said he would be providing legal advice for any future legal process for this case.
Q If I'm not mistaken, about two days later, then, you presented your case findings to him for charges; is that about right?
A I had another meeting with him and presented information that was gathered for him to review,

yes.

Q Did Mr. Mathy ever tell you in either the first or the second of those meetings in November of 2018 that he had insufficient evidence to charge her?

**A No.**

Q What did he tell you?

**A He wanted us to continue to investigate.**

Q Is that because he did not have sufficient evidence at that time to charge her?

MR. SPARKS: Object to form, asked and answered. You can answer. And calls for speculation.

THE WITNESS: No.

BY MR. GANZER:

Q That was never discussed?

**A He discussed the case and we discussed how to continue the investigation that would lead to prosecution.**

Q Okay. So is it fair to say that as of November 28, 2018, the assistant DA did not have enough to charge?

MR. SPARKS: Object to form; calls for speculation.

You can answer.



THE WITNESS: I can't answer for him. That would be a question he would have to answer.

BY MR. GANZER:

Q At any time did Mr. Mathy tell you that there would not be a prosecution?

**A No.**

Q If you look at page 12 of 16 in this exhibit.

**A (Witness complies.)**

Q It talks about that November 28 meeting. And it says, in the second paragraph there, that "ADA Mathy reviewed the charges of theft by fraud against Laurene Lambach. ADA Joshua Mathy pended the charges for additional investigation."

What does it mean to pend the charges?

**A It is a legal term that the district attorney's office uses that the prosecution is still open and they want further investigation, and when they get that further investigation they will either charge or not charge, but they have not made a "no charging" decision at that time.**

Q And I say that only because the term "pended" is unique to the Milwaukee County DA's office and they have been using that term for 40 years.



**A I only use it because that's what they tell me.**

Q Right, I agree, I agree.

**A Do you know the history of it?**

Q I don't. I know when I first started practicing law, they used that term then and I was always like, that's grammatically incorrect.

(Deposition Exhibit No. 18 was marked for identification.)

BY MR. GANZER:

Q I'm showing you what's been marked as Exhibit No. 18. It's a series of what I think are emails that have been doctored. Do you see those?

**A I see the documents referring to me. I guess I have a question of what do you mean "doctored"?**

Q Well, there is no heading. I said that I think they're emails, and I don't know why they appear in this form. And if they're not emails, that's fine, I would love to know it, but I want to know who authored these.

**A I know what these are. It's correspondence between Jodi Bauer and myself. I don't know if they were emails or some other format, but I do recognize these.**

Q How did they end up in this form?



**A It might be the way I saved them into the case file.**

Q Were you trying to save her as a confidential informant or something that you removed a part of these documents?

**A I don't recall. I know they're from Jodi Bauer, though.**

(Deposition Exhibit No. 19 was marked for identification.)

BY MR. GANZER:

Q Okay. I'm showing you what's been marked as Exhibit 19. What is that?

**A It's a document and it has the header "Interfaith Older Adult Programs, Schedule of Findings and Questioned Costs."**

Q Who authored it?

**A I believe it's authored, based on the name on the bottom, Jennifer Tarkowski, T-a-r-k-o-w-s-k-i, and then her title is CPA.**

Q She was doing an audit on the company; isn't that true?

**A Yes.**

Q And when did you get this?

**A I don't know if I personally got this. I believe Matt Hart must have gotten this, and I**

**don't believe I have ever looked at this document.**
Q Okay. So this document here had nothing to do with your decision-making or reactions in this case; fair to say?
A **Correct.**
(Deposition Exhibit No. 20 was marked for identification.)
BY MR. GANZER:
Q I'm showing you what's been marked as Exhibit No. 20.
Do you see that?
A **Yes.**
Q That's your affidavit; correct?
A **Yes.**
Q I would like you to go to paragraph 2, the last couple of sentences there. It starts with "Investigators from the U.S. Department of Labor, Employee Benefits Security Administration."
Do you see that?
A **You said paragraph 2?**
Q Yes.
A **Okay. Starting, "Employee Benefits Security Administration and Department of Labor." Is**



**that where --**
Q "Investigators from."
A **Okay. I'm where you're at.**
Q All right, good.
So in this document you indicate, this is your sworn statement, "Investigators from the U.S. Department of Labor, Employee Benefits Security Administration, state that failure to timely forward these retirement contributions gives rise to civil liability under the Employee Retirement Income Security Act."
That's a correct statement?
A **Yes.**
Q And potentially criminal liability if there exists proof that a person has embezzled the money; correct?
A **Yes.**
Q And there is no proof here that Laurene Lambach embezzled any money, so it does not have any potential criminal liability; correct?
MR. SPARKS: Object to form, calls for speculation.
THE WITNESS: Under the Department of Labor's investigation, I don't know what they determined, if she embezzled or not.



BY MR. GANZER:
Q So here in this statement, this is your sworn statement and you testify or you state that you do not know if this is accurate; correct?
A **That's not what I said.**
Q That's my next question. You don't know that this is accurate because you don't know anything about ERISA; correct?
A **There is multiple questions on the table. What --**
Q Okay. Look, here in your affidavit you're talking about ERISA, the Employee Retirement Income Security Act. You've cited it here; correct?
A **I have cited that "at the advice of ADA Josh Mathy." He helped review this affidavit.**
Q Okay. But this is your sworn statement; true?
A **It is.**
Q Okay. And you indicate in your sworn statement there's potential criminal liability if there exists proof that a person has embezzled the money; correct?
A **Potentially, yes.**
Q And you have no evidence whatsoever that Laurene Lambach embezzled any money; correct?



A **Yes.**
Q So your affidavit is based on something that you really do not understand; true?
MR. SPARKS: Object to form, lacks foundation. You can answer.
THE WITNESS: Statements from the Department of Labor investigator and Josh Mathy, I don't understand all of it, but it was explained to me, and at the advice of the ADA we added that line to the affidavit.
BY MR. GANZER:
Q Okay. I would like you to go to the next page, subsection C. It starts talking about Cindy Kaminski.
A **Which page?**
Q It's the second page, subsection C. Cindy Kaminski. Do you see that?
A **Yours looks different.**
(Discussion held off the record.)
(Deposition Exhibit No. 21 was marked for identification.)
BY MR. GANZER:
Q So let's go back. I have now marked the correct affidavit Exhibit 21. And we're at Cindy Kaminski, second page, subsection C. And do you

see near the end there, the last two sentences, or last sentence maybe, last two sentences, "Kaminski did not believe that went for Lambach's personal use" and "Kaminski said that Lambach kept SET going during funding problems. And although the 403B retirement obligations were months behind, Lambach took care of it. Kaminski was unaware that Lambach's husband loaned money to SET."

Did you follow up on this at all?

A **Which part?**

Q Well, Kaminski doesn't believe that Lambach used any money for her personal use; right?

A **Correct.**

Q And that would play into the previous page, subsection 2, about ERISA; correct?

A **Okay.**

Q So she is telling you there shouldn't be any potential criminal liability if there exists -- unless there is proof that the person had embezzled the money. Here you're citing somebody that said she didn't embezzle the money; correct?

MR. SPARKS: Object to form and lacks foundation.



You can answer.

THE WITNESS: Yeah, there doesn't mean that there was potential liability that it potentially did or allegedly did occur.

BY MR. GANZER:

Q Why didn't you follow up to find out?

A **The Department of Labor investigator was following up on that. And he actually opened a criminal investigation because they have two different divisions within their office and they had a civil one open and they had a criminal one open.**

Q If you go to the next page, subsection F, and you talked to somebody named David Green. And Mr. Green, down at the bottom, the last two sentences, "Green thought that Lambach's heart was in the right place and did not willingly do anything wrong but had no oversight. Green also thought that those complaining about Lambach had an ax to grind."

Did you follow up on any of that?

A **Not specifically, no.**

Q Then, again, if you go to the following page, subsection 5B, again, you're referring to the employment -- Employee Retirement Income



Security Act; correct? ERISA?

A **Yes.**

Q And I can only assume, because of your prior testimony, you didn't draft this section?

A **I added this at the advice of the district attorney.**

Q Okay. If you go to the next page, subsection E, you're again talking about the fact there is a civil investigation that's going on.

Do you see that?

A **Yes.**

Q What are you referring to in that civil investigation?

A **That was the Department of Labor.**

Q Okay. If you go to the next page, down at the bottom there, 7, subsection E, talks about SET borrowed money from Chris Lambach. Did you do any investigation to determine what was going on with Chris Lambach's loans to SET Ministry?

A **I did not. I believe Matthew Hart looked into that.**

Q I would like you to then go to the next page, subsection 9. The first sentence there. "Outside the payroll advances, reimbursements, and loan repayment channels, no one has alleged



first-hand knowledge that Lambach converted SET resources or retirement accounts to her own use."

That's a correct statement?

A **Yes.**

Q And this affidavit was signed January 25 of 2021; correct?

A **I don't have the last page so I don't know.**

Q That's not there?

A **No, it's just -- this is the last page you gave me.**

Q What's the last page in the lower right hand, No. 204?

A **The one that ends on paragraph 10 is the last one that I have.**

Q 202. So you don't have 3, 4, and 5?

A **This is what you gave me. It's all paperclipped.**

Q Yeah, I see. Let's put this aside and before we leave I will clarify this. I'm going to have to print this out again.

We were originally talking about Exhibit 20, which I'm now going to move on, and this is your affidavit of March 2, 2021; right?

A **Yes.**

Q And, again, in the same language that we talked about before, is that this affidavit also includes your statement, paragraph 2, kind of near the bottom, that there is no potential criminal liability unless there is proof that the person has immobilized the money according to ERISA; is that correct?
A **Yes.**
Q As of that date you had no information whatsoever and as you sit here today you have no information whatsoever that Laurene Lambach had embezzled any money?
A **For the Department of Labor investigation, correct.**
Q Do you have any information that she did it for any other investigation?
A **No.**
(Deposition Exhibit No. 22 was marked for identification.)
BY MR. GANZER:
Q Exhibit 22, what's that?
A **It is a Milwaukee County Sheriff's Office name record detail.**
Q Did you prepare this?
A **I printed it off, but it's prepared by our**



**record management system.**
Q It shows here under "booking" that she was charging with a charge of theft, false representation, 5 to $10,000.
Do you see that?
A **Yes.**
Q What does that mean?
A **That must have been the code that the jail put in based off of the two statutes that I put on the arrest and detention report.**
Q So the allegation here is that there is theft -- false representations made between 5 and $10,000 in value; correct?
A **That's what this is saying, yes.**
Q And you would agree that the purported fraud was between 5 and $10,000?
A **There was allegations over $10,000, depending on which grant you were looking at. I don't know why they put that. I put "theft by fraud," which translates into theft by false representation.**
Q What about the 5 to $10,000?
A **I don't know why they selected that.**
Q You didn't do that?
A **You can see the document that I filled out.**



**It's Exhibit 17.**
Q So is Exhibit 17 the document that would be used to do this Exhibit 22?
A **Yes.**
Q And did you have the value in there, in Exhibit 17?
A **And I also used Exhibit 16 to fill that out. I don't have it next to the charge, but it's in the narrative portion, so I can't help that the jail made a clerical error on that.**
Q I'm not going to mark this, I just want your comment, and I don't know the reason for this. Down here, on page 1, if you get Exhibit 12 out.
A **Yeah, it was blank, and I don't know why that was the case. I think it was the way it was copied.**
Q Okay. Yeah, because it's different.
A **It was just blank.**
Q Yeah.
A **And I don't know why, and then this one was redacted and that one wasn't. I don't know why.**
MR. GANZER: Off the record for a second.
(Discussion held off the record.)



(Deposition Exhibit No. 23 was marked for identification.)
BY MR. GANZER:
Q I'm going to show you what's been marked as Exhibit 23
Do you see that?
A **Okay.**
Q This is an email to you from Josh Mathy; is that right?
A **Yes.**
Q It's dated November 26 of 2018?
A **Yes.**
Q Tell me why -- what kind of contact you had with Mr. Mathy to generate this particular email.
A **I guess I don't understand the question.**
Q This is right before your meetings of November 26 and 28 with Mr. Mathy, and apparently he sent you this email that he wants you to get him to do some things here; right?
A **Okay.**
Q All right. And then the first thing that I note is the last sentence of the first paragraph, "We will need to take a look at your reports and evidence before offering any guidance on how to proceed."


Case 2:21-cv-01032-JPS Filed 08/15/22 Page 22 of 118 Document 29-2

Is it fair to assume that prior to the date of this email that he had not seen your reports and evidence?
A **Correct.**
Q There's also -- in the next paragraph he talks about the need to present evidence about the suspect's intentions, whether good, bad, or neutral. "Any evidence of money unlawfully converted to her own benefit, any documents or emails with false or fraudulent statements, and any mitigating or exculpatory evidence."
The first thing I want to talk about is did you have evidence of Laurene Lambach's intentions that were either good, bad, or neutral?
A **I don't know what her intentions were. I tried to interview her and she exercised her rights.**
Q So you made no evaluation of her intent at all; is that correct?
A **I did not know what her intent was.**
Q Did you provide Mr. Mathy with any documents or emails with false or fraudulent statements and any mitigating or exculpatory evidence?
A **I provided all the information that was provided to me by Matthew Hart and in my reports with all**



**the statements that allege that she committed fraud.**
Q You would agree that one of your duties is to also obtain evidence that's exculpatory; correct?
A **Yes.**
Q I mean, that happens in every criminal case, that the DA has to turn over to the criminal defense lawyer exculpatory evidence.
A **Yes.**
Q By Supreme Court of the United States case law; true?
A **Yes.**
Q Okay.
MR. SPARKS: Object to form.
BY MR. GANZER:
Q So part of your investigation has to include looking for exculpatory evidence; true?
A **Yes.**
Q Tell me what you did to look for exculpatory evidence.
A **We spoke to multiple witnesses, we did subpoenas for documents, we executed a search warrant, and then we stopped at the advice of the DA's office.**



Q What exculpatory evidence did you find?
A **I guess be more specific.**
Q I'm asking you to tell me anything you found that was exculpatory to Laurene Lambach's case that she did not do this.
A **I provided everything to you. I provided all of the evidence.**
Q I'm asking you what you did.
A **And that's what I did, I provided everything to you, I interviewed witnesses, we executed subpoenas from Dell, AT&T, and multiple bank accounts.**
Q Did you follow up with any witnesses who said that Laurene Lambach essentially did nothing wrong?
A **No, we were looking for evidence and that's why we executed that legal process.**
Q But people's testimony is evidence, isn't it?
A **It is.**
Q So you can take a statement from a witness who might say Laurene Lambach's heart was in the right place, I don't think she took any money. You didn't do anything to follow up with that witness or any other witnesses?
A **It was documented in those affidavits, and that**



**was provided to you.**
Q Right, but what did you do after that? Here you have got --
Let me explain where I'm coming from here. You have information in your hands that says she didn't do this; okay? What did you do to follow up to see if that was true?
MR. SPARKS: Object to the form of the question. You can answer.
THE WITNESS: A year's worth of subpoenas to continue to look for avenues that she embezzled or pocketed that money. It was a continuing investigation, so a lot of things.
BY MR. GANZER:
Q So even when you're looking for exculpatory evidence, you're still -- as you just said, you're just looking for evidence that she embezzled money; right?
MR. SPARKS: Object to form, mischaracterizes his testimony. You can answer.
THE WITNESS: No, we were looking for everything: Misuse of funds, improperly reporting funds, putting them in the wrong categories, where the funds were going, et cetera, et cetera.

BY MR. GANZER:
Q And are any of those exculpatory in nature?
A **Yes, and they were provided to you.**
Q Tell me what was exculpatory in the things that you just listed.
A **Well, the statements.**
Q What statements?
A **The statements that were listed in the affidavit from those other people that were obtained from Mr. Hart. Part of the investigation for Mr. Lee from the Department of Labor. A lot of evidence.**
Q Exculpatory evidence?
A **I was just talking in general, but exculpatory, those statements.**
Q Anything else?
A **Those bank records.**
Q That showed that she didn't take any money.
A **To this point, correct.**
Q Are there some other records out there that you need to look at to determine whether she took money?
A **Matthew Hart is looking at some of those grant things that are purview to the County. We have stopped serving legal process at the advice of**



**the district attorney's office.**
Q And who is the district attorney that told you not to do that?
A **The final one, I forget who it was, it's documented in that last report. Because Mathy got transferred from that unit, so it was the one who took it over. I don't know his name without reviewing my report.**
Q Okay. The second-last paragraph in the exhibit, it says, "Finally, my understanding is that ADA Potter approved the premises warrants at your request while you were working in Judge Cimpl's court last week, but otherwise had no ongoing involvement in this case. Did you or Matt work with or seek advice from or otherwise notify any prosecutors before executing warrants and arresting the suspect? If so, I may involve that prosecutor in on our discussions."
First, the warrant procedure in this case was different than normal; correct?
A **Not necessarily.**
Q Well, Assistant DA Potter has already testified that usually a warrant would start down in the intake area where it would be reviewed by the DAs down there.



A **That's one of the processes, yes. There is multiple ways you can conduct that same business.**
Q And in this case you were appearing in front of Cimpl's court -- in Cimpl's court and Potter was the DA that was there handling cases that day and he assisted you; correct?
A **Yes.**
Q Is that the only involvement Potter had in this case?
A **Yes.**
Q Did you talk with Potter about what was involved in this case?
A **Briefly, yes.**
Q Tell me what you said to him.
A **We had the allegations from the audit department. What Mr. Hart had to say. Some of the statements from the witnesses that were in the affidavit; and he reviewed it, he endorsed it, and approved it.**
Q Okay. And did you give any testimony to Judge Cimpl?
A **No.**
Q Did you talk to Judge Cimpl at all?
A **Just briefly when we asked him to review it.**



Q And what did Judge Cimpl say?
A **He said he would review it. He reviewed it. When he was done he signed it and he said it was approved and he handed it back.**
Q Then the next part of the question, "did you or Matt work with or seek advice or otherwise notify any prosecutors before executing warrants and arresting the suspect."
A **Well, just working with Tom Potter to get the warrants and he knew we were going to execute the warrants.**
Q One of the things that is in Mr. Mathy's email here is that "did you talk to any DAs in advance of arresting the suspect," and I take it you did not?
A **No.**
Q And I have already marked these in Potter's deposition, but I'm freshly marking them here. I have another copy here somewhere, I think. Maybe not.
(Deposition Exhibit No. 24 was marked for identification.)
BY MR. GANZER:
Q Okay. Those are the search warrants we're talking about here; correct?

A **I believe so.**
Q Take a look. This includes, I think, your affidavit. And it's got my notes in it, unfortunately.
A **It appears to be the case, yes.**
Q Let's remark this.
If you look at the third page, it's your affidavit. And, again, No. 4 talks about you swore here that Lambach submitted a fraudulent December 2017 reimbursement report; correct?
A **Yes.**
Q And do you know which report you're referring to here?
A **Yeah, I believe it was the one getting the funds for the computers.**
Q Okay. And then No. 7, it says that you contacted Dell and learned the order was canceled and the computers were never delivered; right?
A **Yes.**
Q And you learned that -- by this, you don't, interestingly, indicate that Laurene Lambach had canceled the orders. So did you know at that time that she had not done that, that the orders



had just essentially lapsed?
A **I'm not sure. I don't recall.**
Q And you kind of use a generic affidavit for each one of these search warrants. They are pretty much the same in each case; right?
A **I wouldn't use the word "generic." I would say that the portions are similar because it's alleging the same crime.**
Q Okay.
(Deposition Exhibit No. 25 was marked for identification.)
BY MR. GANZER:
Q Exhibit 25 talks about a meeting that you had. It's an email from Josh Mathy to you and Hart and some others. Was there a meeting that preceded the issuance of this email?
A **I'm note sure. We had multiple meetings and/or brief conversations on the phone discussing this case.**
Q So there wasn't some final review meeting or anything like that?
A **No, there wasn't a final review until the one who took over for Josh Mathy, his replacement.**
Q Okay. So this does not refresh your recollection at all about any of the -- the



meeting that preceded this email?
A **In what regards?**
Q Well, it would appear from this you had some kind of a meeting with Josh Mathy about moving forward on the case and it sounds like he doesn't want to do that.
A **He was giving us legal advice and his legal opinion. He did not no process it, he pended it, and he allowed the case to continue investigating.**
Q Okay. So let's go line by line here. "In reviewing where everything stands as of now, we have concluded that this matter is unlikely to result in the viable criminal prosecution for the reasons and issues that we have previously discussed and outlined."
I read that correctly?
A **Yes.**
Q So Mathy is saying we're not going to charge this case; right?
A **No, he used the word "unlikely," he did not close the door to future prosecution, and he advised us to continue to serve legal process to gain additional evidence.**
Q He says that it's an advisory position but it's



a firm one with a careful consideration of the issues and evidence gathered thus far. That is not a final statement on his part, according to you; is that right?
A **True, because working with him on a regular basis throughout this case, he continued to endorse legal process, subpoenas, and search warrants for the next year.**
Q But then in the next paragraph --
Now, wait, "for the next year," this is October 7 of 2021 you see.
A **Oh, I'm sorry.**
Q Knowing that now, do you want to revise anything you just testified to?
A **Yeah, I will retract that "for the next year," but he did continue to authorize a continued investigation until he was transferred.**
Q So the next paragraph there he's talking about documents, materials gathered, and he refers you to the corporation counsel as to what to do with those; correct?
A **Yes.**
Q Then the last line, "Your time and efforts and analysis and expertise have been greatly appreciated. The public deserves a thorough

investigation in light of the whistleblower allegations. I know you tried to get to the truth here, but not every extensive investigation can culminate in a prosecution, particularly if it is to be fairly conducted"; correct?
A **Yes.**
Q And you're saying this isn't the "we're not going to charge this case" memo. He gave you an opportunity to continue on or what?
A **There was a final decision by his replacement.**
Q Who?
A **I would have to refer to my reports, but the one who took over after he was transferred in the DA's office.**
Q Okay.
(Deposition Exhibit No. 26 was marked for identification.)
BY MR. GANZER:
Q Exhibit 26 is also an email chain, and I want to go down to the bottom there. It's from Matt Hart to you and Mathy. It's talking about some transactions that she made in 2018 in Fort Myers and something about in May of '16 a purchase for Tonette Walker, and I don't understand exactly



where that's coming from, but what's this about? Do you understand this?
A **I guess be more specific.**
Q Well, first let's talk about the transactions. Quick Pack & Ship in Fort Myers. Why is that flagged here?
A **I believe it was because we were exploring the possibility that she actually embezzled and misused company funds for her personal benefit, which was one of the things that Josh Mathy wanted us to explore for prosecution. So there was an allegation that she would use funds down in Florida, so that's why we executed the search warrant for those business records.**
Q And those would be her personnel records; correct?
A **I believe so. I'm not exactly sure.**
Q And that wasn't being -- that wasn't money that was embezzled; correct?
A **I don't know what the final determination was because it was no processed by the ADA. And now I remember his name because he's in the email string. Mr. Westphal.**
Q Okay. Then the next sentence talks about this Tonette Walker stuff. What's that about?



A **Because she's the governor's wife and she personally reached out and stuck her nose into this case and that was one of the reasons that Josh Mathy contacted me originally on, that there were people that were politically connected to this case and they were reaching out and that's one of the reasons why Josh Mathy got assigned to this case when that doesn't normally happen this early on in the investigation.**
Q Who did Tonette Walker reach out to?
A **I don't know. I was told secondhand that her office or people reached out to the County.**
Q And to who in the County?
A **I'm not sure. I believe it was the Department of Aging, but I'm not sure.**
Q Okay. I didn't see any documents associated with that.
A **Because I didn't think it was relevant to the case. I didn't think that hearsay or rumors were appropriate to put in a criminal investigation.**
(Deposition Exhibit No. 27 was marked for identification.)



BY MR. GANZER:
Q Exhibit 27. Do you see that? When did you receive that?
A **I am not sure.**
Q Have you seen it before?
A **I don't recall if I saw this.**
Q I would like you to go to the third page of the exhibit.
A **(Witness complies.)**
Q Last paragraph. The Department of Labor says to Laurene Lambach, "If you take proper corrective action based on the settlement agreement with the Department, it will not bring a lawsuit with regard to these issues and close its investigation without further action."
Correct?
A **That's what it says, yes.**
Q And did you have this in mind when you arrested Laurene Lambach?
A **I did not arrest her for this federal violation, I arrested her per state statutes for violation of theft by fraud.**
Q The first thing I want to do is we had previously had Exhibit 21, and I didn't have the last few pages attached, and I'm just going to

ask you to identify that. It's Exhibit 21 that we started talking about. It bears your signature and it's your affidavit; correct?
A **Give me one second.**
Q Sure.
A **I want to make sure.**
**Yes, dated January 25, 2021.**
Q Okay, thank you.
(Deposition Exhibit No. 28 was marked for identification.)
BY MR. GANZER:
Q Showing you what's been marked as Exhibit 28. Do you recognize that document?
A **I don't recognize this, but I can read the title on the top.**
Q Yeah, it indicates that it was submitted to you and it was from Matt Hart; right? And also submitted to Josh Mathy.
A **Yes.**
Q You know, and up at the top it's got the date, April 2X. That doesn't refresh your recollection at all or --
A **I don't remember this document, but there was a lot of documents.**
Q Okay. I'm kind of cleaning things up here.



We'll be done in a few.
I'm going to show you what was marked at Cathy Wood's deposition as Exhibit No. 4. Do you recall that?
A **Yeah, I believe it's an email from Cathy Wood to me.**
Q And why is he sending you that email?
A **I believe she was out of town and I asked her for information and she provided it via email.**
Q What kind of information did she provide to you in that email?
A **She states, "Attached is a list of showing -- a list showing dates that I and other Interfaith staff met with the board of directors."**
Q Okay. And what about the attachments? What else do you have there?
A **"Also attached is a list of board members' names and addresses that the Department of Labor asked me to compile this list for them."**
Q Okay. Anything else? I would like you to look at the whole document, please.
A **Okay.**
Q You're just kind of looking at the first page.
A **I guess I was just trying to answer the questions appropriately.**



Q Yeah, yeah, no, no, I just want to make sure that you've read the whole document before you answered. That's all.
A **Okay.**
Q Now, you asked her to provide you that information?
A **I don't know if I asked her or if she stated she had information for me, but either way she provided me with information.**
Q And, you know, she is encouraging you to talk to the board of directors there or what?
A **I don't know if she is encouraging me. She just provided information on a prior list that she compiled.**
Q Did she or any of the other six women ask you to investigate the board of directors?
A **I don't recall.**
Q Did you ever undertake to do anything to investigate the board of directors?
A **Yes, so I spoke with Josh Mathy about it and I know he was interested in seeing if they didn't do their fiduciary duties as the board of directors, and I know he spoke to one former board director. I don't know what else was done after that.**



Q I think that was Mr. Neuman; correct?
A **I'm not sure, but that does sound familiar.**
Q I think that's a recorded interview. Were there any other interviews recorded besides that one?
A **No.**
Q No? How come that one was recorded and the other ones weren't?
A **Because it wasn't really my interview and I wanted to make sure it was documented because it was mostly Josh Mathy asking the questions instead of me.**
Q Okay. Anything else with respect to Cathy Wood's email to you with respect to the board of directors?
A **In what regards?**
Q Well, anything that she says in there that would encourage you to go forward to try to find out about them or what?
A **She is just saying they were aware of Ms. Lambach's illegal and unethical behavior.**
Q Have you ever done anything to follow up to determine whether the board was aware of her quote/unquote illegal and unethical behavior?
A **Other than what I just previously stated about interviewing Mr. -- or having that meeting with**

**Mr. Neuman and Josh Mathy looking into it a little bit, no.**
(Deposition Exhibit No. 29 was marked for identification.)
BY MR. GANZER:
Q Exhibit 29, what's that?
A **It looks like it's a draft or an unfinished affidavit.**
Q Was that kind of a template you were using for your affidavits in this case?
A **I believe it was somewhat that based on information I received from the prosecutor, at his legal advice.**
Q So Mathy told you to do this?
A **I don't know if he told me to do it. We agreed upon doing it.**
Q Tell me what that agreement was.
A **We would help and we would draft search warrants for additional information to try and find more evidence.**
Q Okay, that's it as far as your work with Mathy as it relates to this template here, Exhibit 29?
A **No, we had regular interactions and he gave regular advice on this case as a prosecutor.**



(Deposition Exhibit No. 30 was marked for identification.)
BY MR. GANZER:
Q Exhibit No. 30, do you recognize that?
A **It appears to be some kind of invoice from Technology Resources Advisors and Laurene Lambach. I'm not sure exactly what it is.**
Q Okay. Well, if you look up in the upper left-hand corner, it says "Thank you for your order."
A **Oh, there you go.**
Q So it's from Dell. Do you see that?
A **Yes, I do, I see that now.**
Q It talks about payment method there; do you see that? Dell Business Credit. Did you look into the payment method at all, the Dell Business Credit?
A **I guess I'm not seeing where you're pointing out.**
Q Right here.
A **Okay, thank you.**
**Other than executing the subpoena with Dell to see how they made the order, no.**
Q Do you know whose handwriting appears on this document?



A **I do not.**
Q The second page there has -- I think it looks like some of the stuff that was ordered; is that right?
A **Yeah, it looks like the computer monitor and carrying cases for computers.**
(Deposition Exhibit No. 31 was marked for identification.)
BY MR. GANZER:
Q I'm showing you what's been marked as Exhibit 31. Do you recognize that?
A **It appears to be an email from ADA Josh Mathy to me.**
Q And what's it concerning?
A **He was just given general explanations of how he looks at embezzlement cases or complex fraud cases and just giving general explanations and advice.**
Q Was this sent to you before or after Laurene was arrested?
A **This was afterwards, and how to continue on with the investigation.**
Q It says you're supposed to first learn the detailed operations of the organization; right?
A **It says "frequently requires."**



Q Okay. So you didn't do that?
A **Some of that we did not because of the allegations that she should destroy stuff so that limited our ability to do that.**
Q Wasn't this after the execution of the search warrant?
A **You did ask me if I did that before, and the answer was no, and then this is an email after the execution of the search warrant but he's just giving generalities on how he investigates embezzlement cases.**
Q So he says you have to look for a need to understand deviation from procedures -- right? -- and the way things actually happen. Did you do that?
A **I believe we did based on myself and Matt Hart and Josh Mathy. That was part of our investigation, to try to do that.**
Q It says you have to also then, third, follow the money from its source to its destination. You have attempted to do that; correct?
A **Yes, with all the legal process and subpoenas and search warrants.**
Q So what happened to the money?
A **Those legal documents were provided to Matt Hart**

Page 113

in a forensic analysis and you would have to ask him.
Q Was this sent in any way as a result of Laurene Lambach's arrest?
A What do you mean?
Q Was he trying to explain to you how to do this investigation because he wasn't happy with the fact that you arrested her when you executed the search warrant?
MR. SPARKS: Object to form, calls for speculation.
THE WITNESS: I don't know what his opinion is. He didn't tell me.
(Deposition Exhibit No. 32 was marked for identification.)
BY MR. GANZER:
Q Exhibit 32, do you recognize that?
A It appears to be a hotline tip report received by the Milwaukee County Audit Services Division.
Q Did you receive that at the outset of your investigation?
A I don't recall. I probably did. It was probably on that CD from Matt Hart, but I don't recall.
Q It talks about a confidential source. Do you

Page 114

know who that refers to?
A No.
Q It says, "The RA audio-recorded the interview with the CS's knowledge and permission."
Did you ever listen to a copy of that audio recording?
A No, because I wanted to try and do independent interviews of anybody that was considered a witness or an informant myself.
Q I've never received a copy of that. It wasn't with your stuff. I specifically would demand a copy of that recorded interview.
A I don't know if we have it, though. You'd probably have to ask Matt from the audit services division.
(Deposition Exhibit No. 33 was marked for identification.)
BY MR. GANZER:
Q Showing you what's been marked as Exhibit 33. Have you ever seen that before?
A I don't recall this document, but it looks like a private attorney talking to Josh Mathy.
Q Yeah, Chuck Blumenfield. My question is whether Josh ever submitted that to you.
A I don't recognize this document.

Page 115

Q So the fact that you did not get it means that you couldn't follow up on any of the requests made here by Attorney Chuck Blumenfield; correct?
A I don't recall if I had this document so I don't know how to answer that.
Q Well, I mean, you didn't get some kind of a memo from Mathy saying: Hey, could you follow up on some of these things that were reflected by Josh -- by Chuck Blumenfield or --
A Not that I recall.
Q Okay. I'm going to show you what was marked as Exhibit 5 at the Wood deposition. Had you ever seen that document before?
A I don't recognize. I don't recall if I have seen it before.
(Deposition Exhibit No. 34 was marked for identification.)
BY MR. GANZER:
Q Exhibit 34. Have you seen that before?
A Yes.
Q And what is that?
A It looks like an email between one of my coworkers, Detective Dickson Woo, D-i-c-k-s-o-n, W-o-o, to an FBI personnel, and I don't know

Page 116

what his title is, but his name is Kerry, K-e-r-r-y, last name Kolecheck, K-o-l-e-c-h-e-c-k, and it may be a female. And I apologize, I don't know their gender.
Q And what is Dickson Woo's involvement in this case?
A He's just a coworker that has expertise with computers and stuff like that, so he was arranging an arrangement with the FBI to possibly do a forensic download.
Q Was that the only involvement he had in this case?
A I believe he might have been present on the day of the search and assisted with that, but other than that, I don't recall him being involved too much.
(Deposition Exhibit No. 35 was marked for identification.)
BY MR. GANZER:
Q Exhibit No. 35, it looks like it's an email to you from Josh Mathy dated January 10 of '19.
Do you see that?
A Yes.
Q And if you look at the third paragraph there, it says, the third sentence, "If false matching

numbers or canceled computer orders would have made no difference to aging approving the Interfaith check requests, then you cannot prove several elements of theft by fraud."

Do you see that?

A **Okay.**

Q Did you check to make sure that the matching numbers or canceled computer orders made a difference in whether you had the elements?

A **I believe Josh and Matt Hart were looking at that. There was an allegation that, you know, if things were modified or whatever, but the issue that he was bringing up is the grant process isn't always very robust and things would get approved regardless if there was fraud or not, so he was looking at that from a prosecutor's standpoint of can he prove it, not necessarily that a theft did or did not occur.**

Q So what he's telling you is he's not sure whether a theft occurred, but certainly he couldn't prove it at that point; correct?

A **Not that he could or couldn't, he wanted it looked into, and I believe Matt Hart did.**

Q Then if you look at the last paragraph there, Mr. Mathy says, "I also need to know what is



supposed to happen when a County contractor does not end up using grant money. That is, please describe the proper procedure for a grantee to tell the County that it did not spend all the money as requested and provide any associated forms and tell me if there is no such procedure."

Did you look into that?

A **Matt Hart did because that's part of his duties as the audit division.**

Q Did you find out what was supposed to happen with the grant money?

A **I don't remember exactly what he had said. I don't recall.**

Q Okay. Let me go through my notes here real quick. We're just about done.

You believe that you had probable cause for arrest at the time that you executed the search warrants. Why didn't you, at the same time that you obtained the search warrants, get an arrest warrant?

A **It wasn't necessary.**

Q Because you could just arrest her without doing anything further?

A **No, I believe we had formulated the proper**



**probable cause to make an arrest.**

Q But you could have done it by way of an arrest warrant if it had been charged at that point; correct?

A **But it was an ongoing investigation, so...**

Q Well, you believed you had probable cause to arrest her on the date that the warrants were executed; correct?

A **Correct.**

Q And you didn't have the input of any DA at that point in time; correct?

A **I had input from Tom Potter on probable cause for the search warrant.**

Q I'm talking about just the arrest.

A **Yes.**

Q Who did you talk to about arresting Laurene Lambach?

MR. SPARKS: Object to form, asked and answered. You can answer.

THE WITNESS: My supervisors.

BY MR. GANZER:

Q Okay. Anybody from the DA's office?

A **No.**

Q You could have presented the case for charges at that point in time and had her charged and



arrested since you said you had probable cause; right?

A **That's not normally how it happens. If you are going to continue on with further investigation, you wouldn't necessarily present it because they want everything complete. We had probable cause to arrest her and also there was a fear that she was going to destroy information and evidence, so therefore the search warrant was served and she was arrested with probable cause.**

Q Let's say she couldn't make bail. How long could she sit in jail before you would have to release her without the issuance of charges?

MR. SPARKS: Object to form, calls for speculation, incomplete hypothetical. Go ahead.

THE WITNESS: There is a legal process in the judicial system where it would be reviewed by a court commissioner, which did happen in this case, and bail was set, and then she was able to bail out. If she wasn't, it would be reviewed again at intake court and/or at a preliminary hearing or at the prosecutor's office to release an order.

BY MR. GANZER:

Q So there is three things that could have

happened. Order at the DA's office; right?
A **After the fact, yes.**
Q Or it could have been charged and there could have been court proceedings and a preliminary hearing; right? Or nothing; right?
A **And nothing would not have been the best option due to the fact that the fear she was going to tamper with and/or destroy evidence.**
Q And you have already executed the search warrants; right? Correct?
A **Not at the time we arrested her. We did it simultaneously.**
Q Right. But you didn't have any additional information other than what you had at the time that you issued -- had the search warrants issued, but you said to me that you had probable cause to arrest her that day?
A **Yes.**
Q Did you have probable cause to have her charged that day?
A **That would be something the DA would have to answer. I can't answer for them.**
Q But if you had probable cause to arrest her that day, why didn't you apply to a DA to see if they would charge the case so you could do it



pursuant to an arrest warrant?
MR. SPARKS: Objection to form, asked and answered. You can answer.
THE WITNESS: Same answer, that an investigation was ongoing and there was fear she was going to tamper with evidence.
BY MR. GANZER:
Q But you said you had enough evidence at that point; right?
A **Enough probable cause for an arrest.**
Q Okay. How is the probable cause for arrest different from the probable cause for issuance of a complaint? In other words, typically in the first appearance before a court commissioner, or even a judge, they will look at the complaint and say there is sufficient probable cause within the body of the complaint. You didn't do that in this case. Why?
MR. SPARKS: Object to form, multiple, calls for a legal conclusion, calls for speculation.
You can answer, if you understand.
THE WITNESS: I can't answer for the DA. That would be the DA's purview.



BY MR. GANZER:
Q My question is, why didn't you go to the DA?
MR. SPARKS: Object to form, asked and answered for the third time now.
MR. GANZER: No, I don't think it has been.
BY MR. GANZER:
Q Why didn't you go to the DA?
A **Because there was a fear she was going to destroy evidence.**
Q And you couldn't trust the DA?
A **No, that's not what I said. They don't normally issue charges on an incomplete investigation, and that's what the search warrant was for, and we had probable cause to arrest her, so we used the probable cause and we arrested her so she could not tamper with evidence.**
Q If the investigation is incomplete, you could have come up with more exculpatory evidence; correct?
MR. GANZER: Object to form, calls for speculation, incomplete hypothetical.
You can answer.
THE WITNESS: I don't know how to answer that.



BY MR. GANZER:
Q Let's talk it out; okay? You've already talked about the fact that you have got a duty to secure exculpatory evidence; correct?
A **Yes.**
MR. SPARKS: Object to form; calls for a legal conclusion.
You can answer.
THE WITNESS: Yes.
BY MR. GANZER:
Q Every cop knows that; right? If there is exculpatory evidence, you have to get it, save it, and turn it over; true?
A **I said yes.**
Q Okay. I think he interrupted. I wanted to make sure that we got that right.
A **No problem.**
Q So you didn't go to the DA because it was an ongoing investigation and you could have found exculpatory evidence because it was ongoing that would have essentially relieved this woman of liability; true?
MR. SPARKS: Object to form, calls for speculation, incomplete hypothetical. You can answer. Multiple.


Case 2:21-cv-01032-JPS Filed 08/15/22 Page 31 of 118 Document 29-2

THE WITNESS: I don't know how to
answer what-if's. I only deal with reality as
that we have probable cause that a felony was
allegedly committed and we arrested her.
BY MR. GANZER:
Q But you were going to continue to investigate?
**A That's what the search warrant was for, to secure additional information.**
Q And what if the search warrant had turned up information that was completely innocent. You would have arrested this woman with exculpatory evidence that you hadn't even seen yet that would relieve her of liability; true?
MR. SPARKS: Object to form, calls for speculation, incomplete hypothetical, multiple. You can answer.
THE WITNESS: I don't know how to answer that, what-ifs.
BY MR. GANZER:
Q All right. So you're not going to answer that question?
**A I thought I did.**
Q Okay. Let's go back and let's break it apart. You would agree that if you continue investigating you can find information that



relieves somebody of criminal liability called exculpatory evidence; true?
**A That's the case with any investigation, but it was unlikely based on the information I received from six credible witnesses and an experienced forensic investigator who presented it to us. And based on the subpoena to Dell and how the grant was explained to me, she violated the rules of the grant, so therefore committed fraud.**
Q So you could have found exculpatory evidence in your continued investigation; correct?
**A Potentially.**
MR. SPARKS: Calls for speculation.
THE WITNESS: Potentially.
BY MR. GANZER:
Q So the answer there is yes, you could find it; right?
**A Potentially.**
MR. SPARKS: Objection.
BY MR. GANZER:
Q And at the time that you executed the search warrants and arrested this woman, you hadn't even looked through the documents of the companies to determine whether or not there was



a reasonable explanation for what happened; correct?
MR. SPARKS: You can answer.
THE WITNESS: Based on six employees that knew the ins and outs of that organization, six credible witnesses who stated that she committed fraud and then based on an experienced forensic investigator who said that he believed, based on his County investigation, that she committed fraud, that I believe that a felony occurred based on probable cause and it was -- she was arrested for that.
BY MR. GANZER:
Q Did Matt Hart know about the establishment of the competing business by these six women?
MR. SPARKS: Object to form; calls for speculation.
THE WITNESS: You would have to.
BY MR. GANZER:
Q Let's frame it another way to eliminate the objection. Did you ever talk to Matt Hart about the fact that these women were plotting to open a competing business?
**A No.**
Q Didn't know about it. You didn't know about it;



right? You didn't know about it until today.
**A I don't know about "today," but I didn't know about it at the time of the arrest.**
Q You did?
**A I said I did not.**
Q I think what you said earlier in your deposition was that you didn't know that until you saw it on I think it's in Exhibit 2.
**A I never saw that document --**
Q Or 13, rather.
**A I never saw that document before until today.**
Q And you didn't really know that these women had set up this corporation and were going to move in a direction where they started their own; right?
**A No.**
Q And Matt Hart never told you that he had understood that either; correct?
**A He did not say that to me.**
Q He didn't say anything about it to you; correct?
**A Yes.**
Q That is correct?
**A He never said anything to me about that matter, just to clarify.**
Q Yeah, who's on first.

A **Right. I hope that helped.**
Q It did.
And you didn't know that there had been a lawsuit that was either contemplated or actually filed by Cathy Wood at the time that you did these investigations; right?
A **Oh, not until Mr. DeVita mentioned it.**
Q The day that you were executing the warrant?
A **Yes.**
Q How often did you meet with Mr. Hart during the course of your investigation?
A **Not very often. When we did meet it was usually with Josh Mathy.**
Q When you were speaking with Cathy Wood, did you ever talk to her about the fact that she could have, rather than turn this in to Mr. Hart, could have simply written a check back to the County and it wouldn't be an issue?
A **I'm not sure if I asked that specifically. I would have to look at the interview, but I don't remember that specific question, no.**
Q Knowing that these women set up this competing corporation, would that have been information you would have followed up on if you would have known that during the course of your



investigation?
MR. SPARKS: Just object to form; calls for speculation. You can answer.
THE WITNESS: I guess I don't know what to follow up on, I guess other than the general knowledge that they were forming, but I don't know what you would follow up on.
BY MR. GANZER:
Q What about their motive?
A **Well, we spoke about that earlier. I don't think their motive matters as long as they're telling the truth.**
Q And you couldn't tell if there was a motive problem that would affect their ability to tell the truth; correct?
A **I had six witnesses telling the same or similar story and then I had information from Matt Hart, and then the information from the subpoena that basically verified what they were telling me appeared to be true.**
**Then I also received additional witnesses the day of the execution of the search warrant, and there is three or four more witnesses in the report that stated some of the same or similar information, so it's more than**



**six.**
Q Who are those witnesses?
A **They were in one of your exhibits.**
Q They're right there.
A **It was in my supplemental report. It was in the supplemental report. When you're ready, it's on page 6 of 16.**
Q What does it say?
A **On Exhibit 15, to be clear.**
Q What does it tell you?
A **Interview of Ms. Widge Liccione.**
Q Widge Liccione.
A **W-i-d-g-e is her first name. Last name is L-i-c-c-i-o-n-e.**
**The second one was Becca, B-e-c-c-a, Wanta, w-a-n-t-a.**
**And then a third person was a witness that was already interviewed, Stacie Vojvodich, V-o-j-v-o-d-i-c-h.**
BY MR. GANZER:
Q And what did Ms. Liccione and Ms. Wanta say to you as it relates to the guilt or innocence of Laurene Lambach?
A **She basically said --**
Q Who is "she"?



A **Ms. Liccione stated that Cathy Wood was not guilty of everything and Laurene Lambach used her as a scapegoat and stated that Cathy Wood had integrity and Lambach got rid of Cathy because of it. She also stated that Laurene was in noncompliance with the audit, and that is a red flag, and that Laurene Lambach is a horrible human being and that this red flag was -- that Lambach, all the money, that she is in control of.**
Q Okay. And what about Ms. Wanta?
A **Ms. Wanta -- Ms. Wanta just basically said she agreed with Ms. L-i-c-c-i-o-n-e.**
Q Liccione?
A **Liccione and Ms. Vojvovich's statements.**
Q Nothing more?
A **Nothing more.**
Q Okay. So it would appear these women didn't really like Laurene Lambach, but they really didn't have any evidence to offer you as to whether or not she committed theft by fraud; true?
MR. SPARKS: Object to form. You can answer.
THE WITNESS: It goes towards



Case 2:21-cv-01032-JPS Filed 08/15/22 Page 33 of 118 Document 29-2

credibility of the original six witnesses. So this witness fostered the original six witnesses' credibility, and you are asking if I believe those witnesses and that a felony allegedly occurred. I tend to believe six credible witnesses, especially when additional witnesses foster their credibility.

BY MR. GANZER:

Q What about witnesses that have a financial stake in the outcome?

**A I think that goes back towards when you asked about motive, and then motive doesn't matter as long as they're telling the truth.**

Q Okay.

MR. GANZER: That's all I have.

E X A M I N A T I O N

BY MR. SPARKS:

Q I have just got one housekeeping thing.

Detective, earlier you testified about an audio recording that contained an interview with Josh Mathy and one of the board members, and I believe the name used for that board member is Neuman.

**A That's what he stated. I was unsure.**

MR. GANZER: Was that the wrong name?



BY MR. SPARKS:

Q Does "Schumacher" ring a bell?

MR. GANZER: Oh, yes, yes.

THE WITNESS: Yes.

BY MR. SPARKS:

Q Just to clarify the record on that, correct to say that that was Schumacher that was being interviewed?

**A Yes.**

MR. GANZER: That is correct and I made a mistake.

MR. SPARKS: I have nothing further.

(Whereupon, the proceedings concluded at 12:14 p.m.)



STATE OF WISCONSIN )
) SS:
MILWAUKEE COUNTY )

I, Carla J. Van Roo, Registered Professional Reporter and Notary Public in and for the State of Wisconsin, do hereby certify that I have carefully compared the foregoing pages with my stenographic notes, and that the same is a true and correct transcript.

I further certify that I am not a relative or employee or attorney or counsel of any of the parties, or a relative or employee of such attorney or counsel, or financially interested directly or indirectly in said action.

Dated at Milwaukee, Wisconsin, on this ________ day of ____________________, 2022.

________________________________
Carla J. Van Roo
Registered Professional Reporter
Certified Realtime Reporter
Notary Public
vanrooc@gmail.com /414-731-5346

My commission expires April 26, 2024.


Case 2:21-cv-01032-JPS Filed 08/15/22 Page 34 of 118 Document 29-2

**BY MR. GANZER: [88]** 5/6 5/17 9/24 14/12 15/17 16/3 17/25 20/19 22/5 26/17 27/1 28/17 29/4 30/21 33/12 34/2 34/10 35/23 36/15 36/22 37/6 38/7 38/18 39/9 40/2 41/1 41/19 42/14 43/16 44/14 45/23 46/7 46/22 47/16 48/11 49/5 49/16 51/21 53/7 54/12 56/18 57/15 64/10 67/9 67/16 70/3 73/15 74/4 75/9 76/10 77/9 79/1 80/11 80/22 82/5 85/20 88/3 90/16 92/14 93/1 96/23 98/12 101/19 103/25 105/11 109/5 110/3 111/9 113/16 114/18 115/19 116/19 119/21 120/24 122/7 122/25 123/7 124/1 124/10 125/5 125/19 126/16 126/21 127/13 127/19 130/8 131/20 133/8
**BY MR. SPARKS: [3]** 133/17 134/1 134/5
**MR. FLOOD: [1]** 28/15
**MR. GANZER: [14]** 5/14 28/20 39/22 48/7 48/17 48/20 48/24 87/22 123/5 123/21 133/15 133/25 134/3 134/10
**MR. SPARKS: [66]** 5/12 14/4 15/8 15/24 17/19 20/12 26/16 26/20 30/13 33/6 33/25 34/4 35/17 36/8 36/19 37/1 38/2 38/15 39/7 39/20 39/24 40/22 41/6 42/6 42/12 43/9 44/9 45/14 46/4 46/18 47/13 48/15 48/18 48/22 49/3 49/8 51/14 53/4 53/25 56/16 67/3 69/21 73/11 73/23 78/21 80/4 81/24 90/15 92/8 92/19 113/10 119/18 120/14 122/2 122/19 123/3 124/6 124/23 125/14 126/14 126/20 127/3 127/16 130/2 132/23 134/12
**THE WITNESS: [56]** 14/6 15/11 16/2 17/22 20/14 26/22 28/24 30/16 33/5 33/9 34/5 35/20 36/11 36/20 37/2 38/4 38/17 40/1 40/25 41/9 42/8 42/13 43/12 44/11 45/16 46/6 46/21 49/11 51/16 53/6 54/2 56/17 67/6 69/23 73/14 74/1 78/23 80/6 82/2 92/10 92/21 113/12 119/20 120/16 122/4 122/23 123/24 124/9 125/1 125/17 126/15 127/4 127/18 130/4 132/25 134/4

**$**

**$10,000 [5]** 86/4 86/12 86/16 86/17 86/22
**$17,000 [1]** 65/2
**$2,000 [1]** 52/17
**$44,852 [1]** 64/25

**'**

**'16 [1]** 101/24
**'17 [1]** 50/20
**'18 [1]** 36/17
**'19 [2]** 19/12 116/21
**'90s [1]** 6/3

**-**

**-- strike [1]** 48/6

**/**

**/414-731-5346 [1]** 135/21

**0**

**01032 [1]** 1/7

**1**

**1,000 [1]** 52/17
**10 [4]** 46/23 72/7 84/14 116/21
**101 [1]** 3/20
**104 [1]** 3/21
**105 [1]** 3/22
**109 [1]** 3/23
**11 [1]** 49/25
**110 [1]** 4/4
**111 [1]** 4/5
**113 [1]** 4/6
**114 [1]** 4/7
**115 [1]** 4/8
**116 [1]** 4/9
**12 [8]** 9/22 10/1 23/18 34/13 46/25 50/1 74/8 87/13
**12:14 [2]** 1/16 134/14
**13 [5]** 14/10 14/14 52/5 57/24 128/10
**14 [6]** 3/6 14/20 22/3 22/6 42/4 53/11
**14th [1]** 36/3
**15 [10]** 3/8 7/3 9/18 10/10 54/13 54/20 57/13 57/17 68/4 131/9
**16 [10]** 13/22 57/2 57/23 64/8 64/12 68/5 72/7 74/8 87/7 131/7
**17 [5]** 67/14 67/17 87/1 87/2 87/6
**18 [2]** 75/7 75/11
**19 [2]** 76/8 76/12
**1989 [1]** 6/8

**2**

**20 [4]** 59/13 77/7 77/11 84/23
**2016 [1]** 7/6
**2017 [3]** 7/19 24/15 97/10
**2018 [11]** 9/18 10/9 14/20 35/24 43/24 57/24 65/13 73/4 73/21 88/11 101/23
**2019 [4]** 36/4 36/6 36/12 36/18
**202 [1]** 84/16
**2021 [6]** 19/14 36/1 84/7 84/24 100/11 105/7
**2022 [2]** 1/14 135/17
**2024 [1]** 135/23
**204 [1]** 84/13
**21 [5]** 3/15 80/20 80/24 104/24 105/1
**21-CV-01032 [1]** 1/7
**22 [6]** 3/7 3/16 24/3 85/18 85/21 87/3
**23 [3]** 3/17 88/1 88/5
**24 [2]** 3/18 96/21
**25 [6]** 3/19 6/18 84/6 98/10 98/13 105/7
**25,000 [1]** 49/1
**26 [19]** 3/20 23/19 30/25 34/13 34/21 43/19 46/23 49/25 52/5 53/11 54/13 54/20 57/2 72/9 88/11 88/17 101/17 101/20 135/23
**27 [3]** 3/21 103/23 104/2
**28 [8]** 3/22 10/8 10/12 73/21 74/10 88/17 105/9 105/12
**29 [5]** 1/14 3/23 109/3 109/6 109/22
**2X [1]** 105/21

**3**

**30 [3]** 4/4 110/1 110/4
**30 percent [1]** 55/13
**30,000 [1]** 50/5
**309 [2]** 1/19 2/12
**31 [4]** 4/5 65/4 111/7 111/11
**32 [3]** 4/6 113/14 113/17
**33 [3]** 4/7 114/16 114/19
**34 [3]** 4/8 115/17 115/20
**35 [3]** 4/9 116/17 116/20

**4**

**40 [1]** 74/25
**403B [1]** 81/6
**414 [2]** 1/22 2/6

**5**

**53202 [1]** 2/12
**53203 [1]** 2/16
**5346 [3]** 1/22 2/6 135/21
**57 [1]** 3/8
**5B [1]** 82/24

**6**

**64 [1]** 3/9
**67 [1]** 3/10
**6th [3]** 60/13 61/17 62/4

**7**

**710 [1]** 2/15
**731-5346 [2]** 1/22 2/6
**75 [1]** 3/11
**76 [1]** 3/13
**77 [1]** 3/14

**8**

**80 [1]** 3/15
**85 [1]** 3/16
**88 [1]** 3/17

**9**

**96 [1]** 3/18
**98 [1]** 3/19
**9:00 [1]** 1/16

**A**

**a.m [1]** 1/16
**ability [2]** 112/4 130/14
**able [6]** 26/14 28/25 50/21 56/12 70/5 120/20
**about [101]** 6/19 9/9 11/13 11/15 15/20 19/7 20/20 23/21 27/3 28/1 31/1 32/4 33/24 34/9 35/2 35/4 45/2 47/12 49/20 52/6 52/16 53/12 54/7 54/10 55/8 55/10 59/2 59/5 59/5 59/23 60/1 60/19 61/2 61/18 62/3 62/5 65/11 67/2 68/11 68/15 69/5 69/6 71/1 72/17 72/18 72/21 72/23 74/10 79/8 79/12 80/13 81/16 82/19 83/8 83/16 84/22 85/2 86/22 89/6 89/6 89/12 95/12 96/25 97/8 98/13 98/25 99/4 100/18 101/22 101/24 102/1 102/4 102/24 102/25 105/2 106/15 107/20 108/18 108/24 110/14 113/25 118/16 119/14 119/16 124/3 127/14 127/21 127/25 127/25 128/1 128/2 128/3 128/20 128/23 129/15 130/9 130/10 132/11 133/9 133/12 133/19
**above [2]** 2/2 4/12
**above-entitled [1]** 2/2
**Absolutely [1]** 20/9
**abundance [1]** 54/3
**academy [4]** 6/21 6/22 7/17 7/21
**accept [1]** 28/10
**accepted [6]** 21/3 28/3 28/5 28/8 28/9 28/25
**accepting [2]** 21/7 44/17
**access [3]** 4/12 34/25 51/19
**accessed [1]** 71/9
**accessing [1]** 70/15
**according [2]** 85/6 100/3
**account [2]** 35/1 35/1
**accountant [8]** 13/18 37/16 37/17 37/21 37/23 38/8 38/20 39/6
**accountants [2]** 38/6 38/12
**accounts [5]** 29/6 29/7 32/9 84/2 91/12
**accurate [4]** 27/12 52/23 79/4 79/7
**Acrobat [1]** 4/13
**acronym [1]** 33/17
**act [5]** 32/11 33/19 78/11 79/13 83/1
**action [4]** 2/2 104/12 104/15 135/15
**actions [2]** 41/20 47/21
**activities [1]** 60/6
**activity [5]** 11/7 19/15 20/1 30/5 35/6
**actually [9]** 14/22 22/17 29/10 32/13 66/25 82/8 102/8 112/14 129/5
**ADA [10]** 19/18 72/2 72/11 74/11 74/13 79/15 80/9 94/10 102/21 111/12
**added [2]** 80/10 83/5
**additional [11]** 41/24 41/25 43/13 71/11 74/14 99/24 109/19 121/13 125/8 130/21 133/6
**address [1]** 5/11

## A

**addresses [1]** 106/18
**Administration [3]** 77/20 77/25 78/8
**administrative [1]** 66/5
**admitted [1]** 68/1
**Adobe [1]** 4/13
**Adult [3]** 3/12 13/10 76/14
**Adults [2]** 3/5 14/17
**advance [3]** 41/3 64/23 96/13
**advances [1]** 83/24
**advice [16]** 17/24 69/25 72/2 72/6 72/19 79/15 80/9 83/5 90/24 93/25 94/15 96/6 99/7 109/13 109/24 111/18
**advise [1]** 66/20
**advised [4]** 10/18 58/12 58/19 99/23
**Advisors [1]** 110/6
**advisory [1]** 99/25
**affect [1]** 130/14
**affidavit [28]** 3/7 3/14 3/15 3/23 22/10 22/12 22/21 23/6 23/11 36/3 36/5 42/3 77/14 79/11 79/16 80/2 80/10 80/24 84/6 84/24 85/2 93/8 95/19 97/3 97/8 98/3 105/3 109/8
**affidavits [2]** 91/25 109/10
**afloat [2]** 45/10 45/13
**aforementioned [1]** 2/7
**afterwards [1]** 111/21
**again [10]** 35/14 46/13 51/7 82/23 82/24 83/8 84/21 85/1 97/8 120/21
**against [3]** 20/21 68/24 74/13
**agencies [2]** 12/10 20/1
**agency [1]** 58/7
**agent [1]** 14/18
**aging [2]** 103/16 117/2
**agree [5]** 75/2 75/2 86/15 90/3 125/24
**agreed [6]** 9/16 18/13 19/1 19/6 109/15 132/13
**agreement [2]** 104/12 109/17
**ahead [8]** 11/17 13/8 34/3 36/10 39/24 48/19 51/15 120/15
**all [42]** 4/11 7/12 11/16 12/8 13/25 16/4 18/5 20/25 24/12 29/7 31/9 45/4 46/13 49/11 50/14 51/17 51/17 51/19 53/8 55/20 64/3 70/11 70/24 78/4 80/8 81/10 84/17 88/21 89/18 89/24 89/25 91/6 95/24 98/25 105/22 107/3 110/16 112/22 118/4 125/20 132/9 133/15
**allegation [6]** 11/2 37/25 51/13 86/11 102/12 117/11
**allegations [9]** 40/11 46/9 51/10 55/16 59/5 86/17 95/16 101/2 112/3
**allege [3]** 20/6 21/1 90/1
**alleged [6]** 32/11 37/21 44/3 64/18 64/22 83/25
**allegedly [4]** 64/6 82/4 125/4 133/5
**alleges [1]** 67/10
**alleging [3]** 11/10 44/16 98/8
**allow [1]** 63/9
**allowed [3]** 52/3 55/11 99/9
**along [3]** 7/9 53/21 67/19
**already [8]** 23/12 59/10 59/22 94/22 96/17 121/9 124/2 131/18
**also [24]** 30/9 32/1 37/12 42/15 52/12 55/17 57/3 61/2 64/25 68/23 70/20 82/18 85/2 87/7 89/5 90/4 101/20 105/17 106/17 112/19 117/25 120/7 130/21 132/5
**although [1]** 81/6
**always [4]** 40/13 41/12 75/5 117/14
**am [3]** 8/9 104/4 135/10
**amount [3]** 26/9 27/6 55/22
**Amy [1]** 11/20
**analysis [3]** 3/22 100/24 113/1
**Andrew [1]** 53/13
**another [8]** 32/10 36/5 53/18 53/19 65/6 72/24 96/19 127/20
**answer [61]** 9/12 14/5 15/10 16/1 17/21 20/13 26/21 30/14 33/8 34/4 35/19 36/10 37/7 37/8 38/3 39/8 39/25 40/24 41/8 42/7 43/11 46/20 47/1 47/15 48/8 49/10 51/15 54/1 67/5 67/7 69/24 73/12 73/25 74/1 74/3 80/5 82/1 92/9 92/20 106/24 112/8 115/6 119/19 121/22 121/22 122/3 122/4 122/22 122/23 123/23 123/25 124/8 124/25 125/2 125/16 125/18 125/20 126/17 127/3 130/3 132/24
**answered [8]** 23/12 33/7 39/7 73/12 107/3 119/19 122/3 123/4
**anybody [4]** 20/22 66/20 114/8 119/22
**anything [23]** 30/11 33/23 38/11 47/20 50/13 52/9 62/3 70/12 79/7 82/18 91/3 91/23 93/16 98/21 100/13 106/20 107/18 108/12 108/16 108/21 118/24 128/20 128/23
**apart [1]** 125/23
**apologize [1]** 116/4
**apparently [5]** 22/15 50/4 53/13 58/8 88/18
**appear [3]** 75/17 99/3 132/18
**appearance [1]** 122/14
**appeared [4]** 2/13 2/17 43/15 130/20
**appearing [1]** 95/4
**appears [7]** 14/1 24/23 97/5 110/5 110/24 111/12 113/18
**apply [1]** 121/24
**appointed [1]** 7/6
**appreciate [1]** 16/17
**appreciated [1]** 100/25
**approach [1]** 40/13
**approached [1]** 60/16
**appropriate [1]** 103/21
**appropriately [1]** 106/25
**approval [1]** 70/4
**approve [2]** 16/23 16/24
**approved [4]** 94/11 95/20 96/4 117/15
**approving [1]** 117/2
**approximately [6]** 6/11 6/25 7/3 19/12 50/4 65/2
**April [5]** 1/14 9/18 10/10 105/21 135/23
**April 15 [2]** 9/18 10/10
**April 2X [1]** 105/21
**are [29]** 4/10 4/11 5/18 7/4 11/11 16/4 20/25 26/12 27/2 27/6 27/8 29/11 35/10 40/10 40/11 41/9 60/10 75/11 75/21 83/12 93/2 93/20 93/24 96/24 98/4 98/7 120/3 131/2 133/3
**area [1]** 94/24
**around [1]** 26/7
**arrangement [1]** 116/9
**arranging [1]** 116/9
**arrest [38]** 3/10 17/2 17/14 17/16 18/3 18/7 18/10 18/22 18/25 19/3 25/18 53/3 57/21 59/21 63/22 67/18 67/24 70/25 72/12 72/18 86/10 104/20 113/4 118/18 118/21 118/23 119/1 119/2 119/7 119/14 120/7 121/17 121/23 122/1 122/10 122/11 123/15 128/3
**arrested [22]** 28/1 36/24 37/4 37/8 39/13 39/18 51/23 61/9 61/12 61/14 104/18 104/21 111/20 113/8 120/1 120/10 121/11 123/16 125/4 125/11 126/23 127/12
**arrestee [1]** 67/25
**arresting [5]** 62/14 94/17 96/8 96/14 119/16
**as [81]** 5/2 5/4 5/19 7/6 7/16 9/25 13/18 14/13 16/6 16/6 16/21 17/5 20/6 20/25 22/6 23/2 25/1 25/16 28/11 30/3 32/7 32/21 33/15 35/17 39/14 39/14 40/13 41/4 41/13 41/14 42/1 45/21 46/1 47/9 49/18 49/18 52/2 57/16 61/13 61/14 61/16 64/11 65/10 65/23 66/20 67/13 69/12 69/18 70/24 73/20 75/10 76/3 76/11 77/10 85/9 85/10 88/4 92/16 99/12 100/20 105/12 106/3 107/22 109/21 109/21 109/22 109/24 111/10 113/3 114/19 115/12 118/5 118/10 125/2 130/11 130/11 131/22 132/3 132/20 133/12 133/13
**ascertain [5]** 11/25 12/12 28/25 41/20 50/7
**aside [1]** 84/19
**ask [11]** 24/5 25/3 38/19 49/3 63/10 63/20 105/1 107/15 112/7 113/1 114/14
**asked [20]** 12/16 33/1 33/7 39/7 43/21 44/12 47/1 60/19 61/3 73/11 95/25 106/8 106/18 107/5 107/7 119/18 122/2 123/3 129/19 133/11
**asking [7]** 13/2 44/21 68/15 91/3 91/8 108/10 133/3
**assessment [1]** 19/2
**assigned [12]** 8/6 8/9 8/12 8/20 9/21 10/8 10/14 10/15 11/1 12/17 12/19 103/8
**assignment [2]** 6/22 8/10
**assignments [1]** 13/1
**assist [1]** 52/14
**assistant [5]** 8/23 20/10 72/10 73/21 94/22
**assisted [2]** 95/7 116/14
**associate's [2]** 5/22 6/10
**associated [2]** 103/17 118/5
**assume [3]** 35/1 83/3 89/1
**attached [3]** 104/25 106/12 106/17
**attachments [1]** 106/15
**attempt [1]** 11/23
**attempted [3]** 58/12 62/25 112/21
**attended [2]** 6/11 7/20
**attorney [10]** 8/23 18/2 18/6 72/10 83/6 94/2 114/22 115/3 135/11 135/13
**attorney's [3]** 30/1 74/17 94/1
**attorneys [3]** 17/23 18/5 63/3
**audio [3]** 114/3 114/6 133/20
**audio-recorded [1]** 114/3
**audit [13]** 11/4 29/13 29/17 29/19 31/13 57/4 57/12 76/20 95/16 113/19 114/14 118/10 132/6
**August [3]** 10/8 10/12 14/24
**August 28 [2]** 10/8 10/12
**authored [3]** 75/20 76/16 76/17
**authority [1]** 53/3
**authorize [1]** 100/16
**automatically [4]** 23/1 23/13 23/16 36/13
**Avenue [1]** 2/15
**avenues [1]** 92/11

## A

**awaiting [1]** 19/23
**aware [2]** 108/19 108/22
**ax [1]** 82/20

## B

**B-a-u-e-r [1]** 11/19
**B-e-c-c-a [1]** 131/15
**back [12]** 16/12 17/2 19/21 42/8 45/19 63/21 68/3 80/23 96/4 125/23 129/17 133/11
**background [2]** 5/21 11/8
**bad [2]** 89/7 89/14
**bag [2]** 60/21 62/7
**bail [6]** 19/5 66/11 66/22 120/11 120/19 120/20
**bank [3]** 29/6 91/11 93/17
**based [23]** 17/14 27/22 37/4 41/15 44/2 44/2 55/19 64/23 67/1 69/9 71/8 76/17 80/2 86/9 104/12 109/11 112/16 126/4 126/7 127/4 127/7 127/9 127/11
**basically [5]** 57/8 62/5 130/19 131/24 132/12
**basis [2]** 16/23 100/6
**battery [2]** 44/23 44/23
**Bauer [18]** 11/13 11/19 13/9 14/18 34/23 35/5 35/10 36/16 37/14 37/15 37/21 43/21 44/3 44/15 44/25 45/17 75/22 76/6
**Bauman [1]** 54/16
**bears [1]** 105/2
**because [64]** 13/6 14/23 17/11 18/17 18/24 19/5 21/7 23/1 23/12 25/11 27/8 27/25 29/15 33/5 33/9 34/25 40/4 41/9 47/2 47/21 47/22 48/1 48/4 51/17 53/23 54/4 54/7 58/24 59/11 63/10 63/12 63/18 63/22 63/24 64/4 69/25 71/5 73/9 74/23 75/1 79/7 82/9 83/3 87/17 94/5 98/7 100/5 102/7 102/21 102/22 103/1 103/19 108/8 108/9 112/2 113/7 114/7 118/9 118/23 120/5 123/9 124/18 124/20 132/5
**Becca [1]** 131/15
**been [38]** 5/3 6/14 7/25 8/6 13/5 14/13 15/7 15/19 22/6 34/24 40/19 41/2 41/18 42/16 44/19 46/11 55/9 57/16 64/11 74/25 75/10 75/12 76/11 77/10 86/8 88/4 100/24 105/12 111/10 114/19 116/13 119/3 121/3 121/4 121/6 123/6 129/4 129/23
**before [30]** 2/3 8/1 9/3 9/12 10/16 14/7 14/15 14/22 15/19 22/7 37/8 59/20 60/3 84/19 85/2 88/16 88/24 94/16 96/7 104/5 107/2 111/19 112/7 114/20 115/14 115/16 115/20 120/12 122/14 128/11
**beginning [2]** 19/13 19/14
**behalf [2]** 2/13 2/17
**behavior [2]** 108/20 108/23
**behind [1]** 81/7
**being [13]** 19/25 23/1 30/11 40/11 42/24 47/8 54/10 60/18 66/6 102/18 116/15 132/8 134/7
**belief [1]** 28/3
**believe [64]** 7/19 10/1 11/14 12/1 21/19 21/22 22/10 27/18 29/13 29/17 29/21 30/8 30/16 30/19 31/11 34/20 35/15 35/20 35/21 36/2 37/9 38/4 38/23 41/2 42/18 43/24 50/9 51/1 51/20 57/11 58/4 58/6 59/14 60/22 63/16 66/1 66/25 69/8 71/13 71/17 76/17 76/25 77/1 81/3 81/12 83/20 97/1 97/15 102/7 102/17 103/15 106/5 106/8 109/11 112/16 116/13 117/10 117/23 118/17 118/25 127/10 133/4 133/5 133/22
**believed [10]** 17/9 18/24 22/20 35/21 58/14 58/18 67/7 71/21 119/6 127/8
**believes [1]** 47/4
**bell [1]** 134/2
**benefit [2]** 89/9 102/9
**Benefits [3]** 77/19 77/24 78/7
**BENJAMIN [1]** 2/15
**besides [1]** 108/4
**best [2]** 4/13 121/6
**between [7]** 19/11 64/21 68/18 75/22 86/12 86/16 115/23
**big [1]** 43/1
**billed [1]** 55/11
**billing [1]** 56/21
**bills [1]** 45/3
**bit [5]** 19/8 55/9 56/19 59/18 109/2
**blank [2]** 87/14 87/18
**Blumenfield [3]** 114/23 115/3 115/10
**board [22]** 39/12 39/18 39/21 39/22 53/14 53/15 53/17 58/13 58/17 58/24 59/22 106/14 106/17 107/11 107/16 107/19 107/22 107/24 108/13 108/22 133/21 133/22
**Bob [1]** 68/7
**body [1]** 122/17
**bolstered [1]** 69/16
**book [1]** 64/2
**booked [2]** 63/23 68/2
**booking [1]** 86/2
**borrowed [1]** 83/17
**both [1]** 32/17
**bottom [6]** 53/12 76/18 82/15 83/16 85/4 101/21
**box [1]** 4/12
**Brady [1]** 54/16
**break [1]** 125/23
**BRIAN [7]** 1/8 1/12 2/1 3/14 3/15 5/2 5/8
**brief [1]** 98/18
**briefed [1]** 72/12
**briefly [2]** 95/14 95/25
**bring [1]** 104/13
**bringing [1]** 117/13
**broad [1]** 49/9
**bsparks [1]** 2/16
**building [2]** 25/22 61/11
**bureau [2]** 6/23 7/7
**business [9]** 41/5 41/12 45/22 95/3 102/14 110/15 110/16 127/15 127/23
**businesses [2]** 41/13 46/15
**but [78]** 13/2 17/4 18/12 20/17 20/23 25/24 26/23 27/23 31/16 35/24 40/16 42/20 43/13 44/6 44/21 48/19 49/21 49/23 50/12 51/22 53/22 55/6 55/25 58/19 59/2 59/10 61/13 61/14 65/7 67/10 69/9 69/14 69/23 70/7 72/2 74/21 75/19 75/23 79/17 80/8 82/18 85/25 87/8 91/18 92/2 93/14 94/13 96/18 99/25 100/9 100/16 101/3 101/13 102/1 103/16 105/14 105/23 107/8 108/2 112/9 113/23 114/21 116/1 116/14 117/12 117/20 119/2 119/5 121/13 121/16 121/23 122/8 125/6 126/3 128/2 129/20 130/6 132/19

## C

**C-o-n-t-e [1]** 5/8
**call [3]** 22/17 35/6 63/15
**called [4]** 5/2 23/15 55/4 126/1
**calls [20]** 15/24 30/13 33/6 38/16 40/22 67/3 73/12 73/23 78/21 113/10 120/14 122/20 122/20 123/21 124/6 124/23 125/14 126/14 127/16 130/3
**came [2]** 13/25 70/23
**can [65]** 5/13 12/17 12/18 14/4 15/10 16/1 16/11 16/14 17/17 17/21 20/13 20/14 26/20 28/19 29/24 30/14 30/15 32/23 33/1 33/8 33/14 34/4 35/19 38/3 39/8 39/25 40/24 41/8 42/6 43/11 44/21 46/20 47/15 48/15 49/3 49/10 50/1 54/1 64/21 67/5 67/25 73/12 73/25 80/5 82/1 83/3 86/25 91/20 92/9 92/20 95/2 101/4 105/14 117/17 119/19 122/3 122/22 123/23 124/8 124/24 125/16 125/25 127/3 130/3 132/23
**can't [7]** 18/6 25/24 67/7 74/1 87/9 121/22 122/23
**cancel [4]** 22/18 27/20 35/6 36/7
**canceled [29]** 21/12 21/17 21/18 21/25 21/25 22/21 22/25 23/6 23/9 23/10 23/13 23/15 23/16 27/4 27/16 27/17 27/19 28/4 28/5 35/5 35/11 36/14 36/24 37/11 42/2 97/19 97/24 117/1 117/8
**cannot [1]** 117/3
**card [2]** 29/7 45/3
**care [3]** 58/14 66/16 81/7
**careful [2]** 54/7 100/1
**carefully [1]** 135/7
**Carla [5]** 1/22 2/3 9/10 135/4 135/19
**CARLSON [4]** 2/14 10/24 10/25 16/20
**carrying [1]** 111/6
**case [53]** 1/7 6/6 6/7 9/17 10/8 10/15 10/15 11/1 11/6 20/11 22/16 22/23 25/6 29/23 30/17 34/19 42/4 43/3 72/20 72/22 73/17 76/1 77/5 87/15 90/7 90/11 91/4 94/14 94/20 95/4 95/10 95/13 97/5 98/5 98/19 99/5 99/9 99/20 100/6 101/9 103/3 103/6 103/8 103/20 109/10 109/24 116/6 116/12 119/24 120/19 121/25 122/18 126/3
**cases [5]** 95/6 111/6 111/16 111/17 112/11
**categories [2]** 55/21 92/24
**Catherine [4]** 11/19 37/16 42/16 68/24
**Cathy [12]** 11/14 68/11 68/19 69/2 106/3 106/5 108/12 129/5 129/14 132/1 132/3 132/4
**cause [39]** 3/9 17/12 17/14 17/15 17/16 18/24 19/5 19/6 25/19 25/22 37/5 37/11 52/4 64/7 64/13 64/15 65/25 66/11 66/21 67/19 71/11 118/18 119/1 119/6 119/12 120/1 120/6 120/10 121/17 121/19 121/23 122/10 122/11 122/12 122/17 123/15 123/16 125/3 127/11
**caution [1]** 54/3
**CD [5]** 25/5 34/16 34/17 51/20 113/23
**CEO [4]** 28/11 65/10 65/23 67/13
**certainly [1]** 117/20
**certification [1]** 22/10
**Certified [2]** 2/5 135/20
**certify [2]** 135/6 135/10
**cetera [3]** 55/14 92/25 92/25
**CFO [2]** 37/15 68/19
**chain [7]** 3/19 3/20 4/5 4/7 4/8 4/9 101/20
**Chang [1]** 53/18
**change [2]** 51/7 69/11
**changed [5]** 26/15 50/6 50/8 51/6 51/23


Case 2:21-cv-01032-JPS Filed 08/15/22 Page 37 of 118 Document 29-2

## C

**changes [1]** 37/10
**channels [1]** 83/25
**charge [13]** 20/10 20/17 29/15 73/4 73/10 73/22 74/21 74/21 86/3 87/8 99/19 101/9 121/25
**charged [6]** 30/11 30/20 119/3 119/25 121/3 121/19
**charges [7]** 72/23 74/12 74/14 74/16 119/24 120/13 123/13
**charging [2]** 74/22 86/3
**check [8]** 12/4 31/22 36/23 39/1 39/12 117/3 117/7 129/17
**checking [1]** 37/3
**chief [1]** 65/23
**CHRIS [4]** 1/5 22/13 83/17 83/19
**Chuck [3]** 114/23 115/3 115/10
**Cimpl [3]** 95/22 95/24 96/1
**Cimpl's [3]** 94/12 95/5 95/5
**Cindy [3]** 80/13 80/16 80/24
**cited [2]** 79/13 79/15
**citing [1]** 81/21
**city [1]** 5/10
**civil [10]** 2/3 32/16 32/25 33/15 58/8 59/23 78/10 82/11 83/9 83/12
**claims [1]** 41/3
**clarify [4]** 39/16 84/20 128/24 134/6
**class [1]** 7/20
**cleaning [1]** 105/25
**clear [3]** 28/2 58/22 131/9
**clerical [1]** 87/10
**click [1]** 4/12
**client [2]** 21/19 48/19
**close [2]** 99/22 104/14
**CNCS [2]** 54/24 55/3
**code [1]** 86/8
**collar [2]** 7/16 8/15
**columns [1]** 26/8
**come [4]** 18/17 63/21 108/6 123/19
**comes [1]** 34/22
**coming [3]** 31/11 92/4 102/1
**comment [2]** 25/11 87/12
**commission [1]** 135/23
**commissioner [13]** 19/1 19/3 66/1 66/5 66/7 66/10 66/16 66/22 66/24 67/7 67/8 120/18 122/15
**commit [3]** 20/14 45/22 48/1
**committed [20]** 20/7 21/2 21/5 32/12 34/24 43/25 44/8 44/12 44/15 44/16 44/19 64/6 64/7 71/14 90/1 125/4 126/9 127/7 127/10 132/21
**committing [4]** 20/4 28/7 43/22 48/1
**companies [3]** 46/17 70/5 126/25
**company [17]** 15/20 28/9 28/14 29/1 40/20 42/18 42/21 42/23 42/25 43/5 45/11 65/22 67/12 67/13 69/8 76/20 102/9
**compared [1]** 135/7
**compete [1]** 40/20
**competing [4]** 41/12 127/15 127/23 129/22
**compile [1]** 106/19
**compiled [1]** 107/14
**complaining [1]** 82/19
**complaint [14]** 10/5 10/7 10/11 11/3 14/8 20/21 24/2 24/6 24/7 24/8 68/18 122/13 122/16 122/17
**complaints [1]** 16/22
**complete [1]** 120/6
**completed [1]** 67/21
**completely [1]** 125/10
**complex [1]** 111/16
**complies [4]** 23/20 72/8 74/9 104/9
**comport [1]** 49/7
**compound [2]** 33/25 69/24
**Compton [2]** 22/13 22/15
**computer [13]** 22/2 22/11 44/17 60/21 62/6 68/21 71/3 71/14 71/15 72/4 111/5 117/1 117/8
**computers [15]** 21/3 21/4 21/15 37/23 38/13 38/21 49/14 49/15 65/2 65/5 65/19 97/16 97/19 111/6 116/8
**concern [1]** 54/10
**concerning [1]** 111/14
**concluded [4]** 44/6 44/7 99/13 134/13
**conclusion [5]** 23/5 30/14 33/7 122/20 124/7
**conduct [2]** 18/18 95/2
**conducted [3]** 19/25 34/7 101/5
**conducting [2]** 57/4 58/7
**conduit [1]** 45/21
**confidential [3]** 31/12 76/3 113/25
**Confidentiality [1]** 55/1
**connected [1]** 103/6
**consider [3]** 43/6 45/4 45/10
**consideration [2]** 40/16 100/1
**considered [4]** 43/12 43/17 43/18 114/8
**consult [2]** 17/22 18/2
**consulted [2]** 18/4 20/23
**contact [6]** 10/20 17/9 57/6 58/24 59/22 88/13
**contacted [7]** 10/18 31/13 53/17 55/6 72/10 97/18 103/4
**contained [1]** 133/20
**containing [1]** 34/16
**CONTE [7]** 1/8 1/12 2/1 3/14 3/15 5/2 5/8
**Conte's [1]** 3/4
**contemplated [1]** 129/4
**continue [13]** 16/13 20/6 73/8 73/18 92/11 99/9 99/23 100/16 101/10 111/21 120/4 125/6 125/24
**continued [6]** 4/1 29/2 47/24 100/6 100/16 126/12
**continuing [4]** 7/14 30/3 37/5 92/13
**contract [2]** 64/25 68/21
**contractor [1]** 118/1
**contributions [1]** 78/9
**control [2]** 37/10 132/9
**conversations [2]** 61/18 98/18
**converted [2]** 84/1 89/9
**cop [1]** 124/11
**copied [1]** 87/16
**copy [6]** 24/16 61/24 96/19 114/5 114/10 114/12
**corner [1]** 110/9
**corporation [4]** 15/3 100/20 128/13 129/23
**correct [111]** 7/10 8/22 9/6 10/13 12/10 13/25 14/24 14/25 15/4 18/9 18/25 20/8 20/11 22/16 22/23 23/3 23/7 24/7 25/18 27/7 27/20 28/10 28/18 29/9 30/22 32/5 32/16 33/15 35/7 36/7 39/10 42/5 42/17 45/24 46/17 46/21 47/6 51/13 53/9 53/24 56/14 57/18 57/21 58/2 58/9 60/18 61/12 62/20 64/13 64/19 65/22 66/22 67/2 67/21 69/1 70/6 70/12 77/6 77/14 78/12 78/16 78/20 79/4 79/8 79/14 79/22 79/25 80/23 81/14 81/16 81/23 83/1 84/4 84/7 85/7 85/14 86/13 89/4 89/19 90/5 93/19 94/20 95/7 96/25 97/11 100/21 101/6 102/16 102/19 104/16 105/3 108/1 112/21 115/4 117/21 119/4 119/8 119/9 119/11 121/10 123/20 124/4 126/12 127/2 128/18 128/20 128/22 130/15 134/6 134/10 135/9
**corrected [1]** 23/8
**corrective [1]** 104/11
**correctly [1]** 99/17
**correspondence [1]** 75/21
**costs [5]** 3/13 26/3 26/4 26/19 76/15
**could [30]** 11/15 26/3 30/20 34/24 40/6 40/14 41/2 42/8 48/7 61/4 61/14 64/1 66/24 115/8 117/22 118/23 119/2 119/24 120/12 120/25 121/3 121/3 121/25 123/17 123/18 124/19 126/11 126/17 129/15 129/17
**couldn't [9]** 17/7 25/11 53/22 115/2 117/21 117/22 120/11 123/11 130/13
**counsel [4]** 63/12 100/20 135/11 135/13
**counts [1]** 64/19
**COUNTY [26]** 1/8 5/19 6/18 6/24 6/25 11/4 25/2 25/16 30/5 34/6 48/3 49/13 50/15 51/18 68/1 74/24 85/22 93/24 103/13 103/14 113/19 118/1 118/4 127/9 129/18 135/2
**couple [2]** 30/17 77/17
**course [6]** 7/9 19/9 40/7 43/1 129/11 129/25
**court [20]** 1/2 9/5 19/1 19/3 66/5 66/7 66/10 66/10 66/12 66/13 67/7 67/8 90/11 94/13 95/5 95/5 120/18 120/21 121/4 122/14
**covers [1]** 39/4
**coworker [1]** 116/7
**coworkers [4]** 20/23 62/21 70/17 115/24
**CPA [2]** 57/4 76/19
**CPAs [1]** 57/5
**Crawford [9]** 11/20 13/19 52/6 52/7 52/19 53/12 54/15 55/10 56/20
**credibility [4]** 69/16 133/1 133/3 133/7
**credible [3]** 126/5 127/6 133/6
**credit [4]** 29/7 45/3 110/15 110/17
**crime [9]** 7/16 8/15 20/15 20/17 44/13 44/22 44/22 49/19 98/8
**crimes [14]** 20/5 20/7 21/1 43/22 44/1 44/4 44/5 44/8 44/13 44/15 44/18 70/19 71/14 71/15
**criminal [23]** 7/8 8/12 20/1 30/4 32/11 32/14 32/16 32/19 33/15 40/4 58/8 78/14 78/20 79/20 81/19 82/9 82/11 85/5 90/7 90/8 99/14 103/21 126/1
**criminally [1]** 30/20
**CRIVELLO [1]** 2/14
**crivellocarlson.com [2]** 2/16 2/17
**CRR [1]** 1/22
**CS's [1]** 114/4
**culminate [1]** 101/4
**culpability [1]** 69/19
**curious [1]** 46/25
**currently [2]** 5/18 8/11
**custody [1]** 17/11
**CV [1]** 1/7

## D

**D-i-c-k-s-o-n [1]** 115/24
**D-o-n-j-e-e-n-e [1]** 57/25
**DA [15]** 20/10 25/7 30/22 73/21 90/8 94/22 95/6 119/10 121/21 121/24 122/24 123/2 123/8 123/11 124/18
**DA's [10]** 8/16 8/19 20/15 25/15 74/24 90/24 101/15 119/22 121/1 122/24
**damage [1]** 61/5

## D

**DAs [3]** 20/20 94/25 96/13
**date [10]** 2/8 8/1 8/4 14/20 59/17 63/21 85/9 89/2 105/20 119/7
**dated [4]** 88/11 105/7 116/21 135/16
**dates [1]** 106/13
**David [1]** 82/14
**day [12]** 36/3 60/12 62/4 70/9 95/6 116/13 121/17 121/20 121/24 129/8 130/22 135/17
**days [3]** 18/16 60/3 72/21
**deadline [1]** 37/24
**deal [3]** 30/6 55/3 125/2
**dealings [1]** 29/22
**dealt [1]** 20/24
**December [3]** 24/15 65/4 97/10
**December 2017 [1]** 97/10
**December 31 [1]** 65/4
**decide [1]** 20/16
**decided [4]** 30/23 32/15 42/24 53/22
**decision [6]** 18/13 53/2 53/6 74/22 77/4 101/11
**decision-making [3]** 53/2 53/6 77/4
**declined [1]** 30/2
**Defendant [1]** 2/17
**Defendants [1]** 1/9
**defense [1]** 90/9
**degree [4]** 5/22 6/2 6/10 6/15
**delivered [2]** 65/20 97/19
**Dell [14]** 21/24 22/11 27/15 35/1 35/25 36/12 70/13 91/11 97/18 110/12 110/15 110/16 110/23 126/7
**demand [1]** 114/11
**demoted [2]** 42/23 42/24
**department [33]** 3/21 3/22 6/20 11/5 20/2 29/14 32/13 32/23 33/10 34/7 34/12 41/16 58/1 59/6 59/21 59/24 62/20 70/20 70/22 77/18 77/25 78/7 78/23 80/7 82/7 83/14 85/13 93/11 95/17 103/15 104/10 104/13 106/18
**depending [1]** 86/17
**depositing [1]** 59/6
**deposition [32]** 1/12 1/24 9/2 9/8 9/22 14/10 22/3 57/13 64/8 67/14 75/7 76/8 77/7 80/20 85/18 88/1 96/18 96/21 98/10 101/17 103/23 105/9 106/3 109/3 110/1 111/7 113/14 114/16 115/13 115/17 116/17 128/6
**deposits [2]** 59/7 59/24
**deputy [2]** 5/19 60/25
**describe [2]** 60/5 118/3
**described [1]** 30/3
**deserves [1]** 100/25
**desktop [1]** 4/13
**despite [1]** 24/23
**destination [1]** 112/20
**destroy [4]** 112/3 120/8 121/8 123/10
**destroyed [5]** 17/11 40/6 54/11 59/8 60/2
**destroying [1]** 17/6
**detail [1]** 85/23
**detailed [1]** 111/24
**detective [4]** 7/6 61/6 115/24 133/19
**detectives [3]** 7/22 60/25 62/9
**detention [6]** 3/10 6/23 67/18 67/24 70/25 86/10
**determination [6]** 3/9 64/13 64/14 64/16 67/20 102/20
**determine [10]** 26/15 27/11 44/22 47/20 52/22 58/20 83/18 93/21 108/22 126/25
**determined [2]** 32/13 78/25
**determines [1]** 44/18
**determining [1]** 45/5
**deviation [1]** 112/13
**DeVita [4]** 68/7 68/11 68/15 129/7
**Dickson [2]** 115/24 116/5
**did [192]**
**didn't [63]** 13/17 14/6 14/23 15/12 16/9 21/12 27/19 32/10 35/25 36/23 37/19 37/20 38/1 38/9 58/14 58/19 58/23 58/24 59/2 59/3 59/8 59/10 62/11 63/10 63/20 66/2 66/19 69/9 70/8 71/19 81/22 82/6 83/4 86/24 91/23 92/6 93/18 103/17 103/19 103/20 104/24 107/21 112/1 113/13 115/7 118/19 119/10 121/13 121/24 122/18 123/2 123/8 124/18 127/25 127/25 128/1 128/2 128/7 128/12 128/20 129/3 132/18 132/20
**difference [4]** 17/18 64/21 117/2 117/9
**different [15]** 12/23 12/24 12/25 17/15 26/7 44/4 54/8 55/9 55/21 59/19 80/18 82/10 87/17 94/20 122/12
**direct [3]** 18/6 48/15 65/12
**direction [1]** 128/14
**directly [1]** 135/14
**director [1]** 107/24
**directors [8]** 58/13 58/18 106/14 107/11 107/16 107/19 107/23 108/14
**discharged [1]** 42/16
**discovery [1]** 48/23
**discuss [1]** 18/15
**discussed [4]** 73/16 73/17 73/17 99/16
**discussing [1]** 98/18
**Discussion [2]** 80/19 87/24
**discussions [1]** 94/18
**disk [1]** 26/12
**disproven [1]** 46/12
**district [12]** 1/2 1/3 8/23 17/23 18/2 18/5 30/1 72/10 74/17 83/5 94/1 94/2
**division [12]** 7/2 7/2 7/5 7/8 8/13 11/4 29/17 29/20 31/13 113/19 114/15 118/10
**divisions [1]** 82/10
**do [100]** 5/9 8/14 9/9 9/13 15/3 15/22 16/14 17/7 18/13 21/5 21/11 23/23 24/16 24/22 25/10 25/22 26/11 27/11 31/4 32/21 33/14 34/11 37/17 41/2 45/7 47/10 47/20 50/12 52/9 56/22 60/5 61/5 62/3 65/16 68/5 69/23 71/18 75/3 75/12 75/15 75/23 77/3 77/12 77/21 79/4 80/3 80/17 80/25 82/17 83/10 83/17 85/15 86/5 86/24 87/3 88/6 88/19 91/5 91/23 92/2 92/6 92/6 94/3 97/13 99/6 100/13 100/20 102/2 104/2 104/23 105/13 106/3 106/16 107/18 107/22 109/14 109/15 110/4 110/12 110/13 110/14 110/24 111/1 111/11 112/1 112/4 112/15 112/18 112/21 113/5 113/6 113/17 113/25 114/7 116/10 116/22 117/5 121/25 122/18 135/6
**doctored [2]** 75/12 75/15
**document [22]** 26/1 26/11 66/8 67/21 67/24 76/13 77/2 77/3 78/5 86/25 87/2 105/13 105/23 106/21 107/2 110/25 114/21 114/25 115/5 115/14 128/9 128/11
**documentation [3]** 36/12 55/5 56/8
**documented [7]** 51/11 56/1 57/8 66/9 91/25 94/5 108/9
**documents [33]** 3/5 16/9 19/11 25/5 26/12 34/16 34/18 48/13 48/21 48/23 48/25 49/1 49/6 49/12 51/17 51/18 51/19 51/24 56/13 70/1 70/6 70/9 72/4 75/14 76/5 89/9 89/21 90/23 100/19 103/17 105/24 112/25 126/24
**does [19]** 10/6 20/17 24/19 24/19 25/8 30/4 48/4 63/7 66/14 71/6 74/16 78/19 86/7 98/24 108/2 118/1 131/8 131/10 134/2
**doesn't [11]** 16/4 16/6 21/25 23/14 66/8 81/12 82/2 99/6 103/8 105/21 133/12
**doing [7]** 15/4 16/11 29/16 71/2 76/20 109/16 118/23
**don't [98]** 5/14 6/3 10/14 12/20 13/14 16/15 17/4 24/24 26/24 28/19 29/19 29/19 30/16 31/16 33/16 33/23 36/2 36/20 37/9 38/9 39/10 41/10 41/13 45/25 50/10 55/4 55/25 56/6 57/11 57/20 61/21 62/2 62/18 63/16 67/6 68/13 75/4 75/17 75/22 76/6 76/24 77/1 78/24 79/6 79/7 80/8 84/8 84/8 84/16 86/18 86/23 87/8 87/12 87/14 87/20 87/21 88/15 89/16 91/22 94/7 97/22 98/2 101/25 102/20 103/12 104/6 105/14 105/23 107/7 107/12 107/17 107/24 109/15 113/12 113/22 113/23 114/13 114/21 114/25 115/5 115/5 115/15 115/15 115/25 116/4 116/15 118/13 118/14 123/5 123/12 123/24 125/1 125/17 128/2 129/20 130/4 130/7 130/10
**done [11]** 7/5 13/15 57/20 70/12 96/3 97/25 106/1 107/24 108/21 118/16 119/2
**Donjeene [1]** 57/25
**door [1]** 99/22
**double [2]** 12/4 56/20
**double-check [1]** 12/4
**down [14]** 9/10 27/9 27/25 30/25 52/21 56/19 62/23 82/15 83/15 87/13 94/23 94/25 101/21 102/12
**download [2]** 4/12 116/10
**downtown [2]** 61/10 62/19
**draft [6]** 3/23 71/11 71/23 83/4 109/7 109/18
**drawn [1]** 23/5
**drove [1]** 61/7
**due [2]** 54/3 121/7
**Duffy [3]** 63/7 63/9 63/15
**duly [1]** 5/3
**during [14]** 12/16 13/12 13/24 19/9 40/7 42/15 50/11 61/9 68/7 69/17 70/1 81/5 129/10 129/25
**duties [6]** 12/24 12/24 12/25 90/3 107/22 118/9
**duty [1]** 124/3
**DVD [1]** 25/5

## E

**each [3]** 12/17 98/3 98/5
**earlier [4]** 69/13 128/6 130/10 133/19
**early [1]** 103/9
**EASTERN [1]** 1/3
**economic [1]** 41/4
**educational [1]** 5/21
**effected [1]** 17/13
**effecting [1]** 19/22
**effective [1]** 14/20
**efforts [1]** 100/23
**either [6]** 73/2 74/21 89/14 107/8 128/18 129/4
**electronically [1]** 4/10

## E

**element [1]** 49/21
**elements [2]** 117/4 117/9
**eliminate [1]** 127/20
**Ellis [1]** 22/13
**else [6]** 20/22 93/16 106/16 106/20 107/24 108/12
**email [26]** 3/17 3/19 3/20 4/5 4/7 4/8 4/9 88/8 88/14 88/18 89/2 96/12 98/14 98/16 99/1 101/20 102/22 106/5 106/7 106/9 106/11 108/13 111/12 112/8 115/23 116/20
**emails [7]** 3/11 75/12 75/17 75/18 75/23 89/10 89/22
**embezzle [1]** 81/22
**embezzled [13]** 32/19 32/22 78/15 78/19 78/25 79/21 79/25 81/21 85/12 92/12 92/18 102/8 102/19
**embezzlement [2]** 111/16 112/11
**employed [1]** 5/18
**employee [11]** 33/18 59/6 59/23 77/19 77/24 78/7 78/10 79/12 82/25 135/11 135/12
**employees [2]** 12/22 127/4
**employment [1]** 82/25
**encourage [1]** 108/17
**encouraging [2]** 107/10 107/12
**end [4]** 50/20 75/25 81/1 118/2
**endorse [1]** 100/7
**endorsed [2]** 18/12 95/19
**ends [1]** 84/14
**enforcement [3]** 19/25 52/13 52/25
**enough [3]** 73/22 122/8 122/10
**entirely [1]** 62/16
**entitled [1]** 2/2
**equipment [1]** 65/3
**ERISA [12]** 32/4 32/7 32/18 33/14 33/16 33/17 33/21 79/8 79/12 81/16 83/1 85/7
**error [1]** 87/10
**escorted [1]** 62/21
**especially [1]** 133/6
**essentially [5]** 31/18 61/13 91/14 98/1 124/21
**establishment [1]** 127/14
**et [3]** 55/13 92/24 92/25
**evaluation [1]** 89/18
**even [8]** 11/23 25/12 65/19 67/10 92/15 122/15 125/12 126/24
**ever [23]** 10/16 11/25 12/12 15/6 27/11 30/11 39/12 39/17 40/7 50/7 50/25 54/17 57/11 73/2 77/1 107/18 108/21 114/5 114/20 114/24 115/13 127/21 129/15
**every [8]** 7/18 9/11 29/5 29/6 40/13 90/7 101/3 124/11
**everything [11]** 9/10 34/20 41/15 41/17 53/1 91/6 91/9 92/22 99/12 120/6 132/2
**evidence [50]** 17/10 21/22 32/21 46/16 54/10 59/8 59/11 70/11 71/20 71/22 71/25 73/4 73/10 79/24 88/24 89/3 89/6 89/8 89/11 89/13 89/23 90/4 90/9 90/18 90/21 91/1 91/7 91/16 91/18 92/16 92/17 93/12 93/13 99/24 100/2 109/20 120/8 121/8 122/6 122/8 123/10 123/17 123/19 124/4 124/12 124/20 125/12 126/2 126/11 132/20
**exact [2]** 11/16 62/18
**exactly [10]** 6/3 8/1 9/21 21/25 42/19 43/4 101/25 102/17 110/7 118/13
**EXAMINATION [1]** 2/21
**examined [1]** 5/4
**example [1]** 42/1
**except [1]** 13/23
**exculpatory [20]** 89/11 89/23 90/4 90/9 90/18 90/20 91/1 91/4 92/15 93/2 93/4 93/13 93/14 123/19 124/4 124/12 124/20 125/11 126/2 126/11
**excuse [1]** 65/6
**execute [3]** 60/16 71/23 96/10
**executed [17]** 17/3 17/13 18/11 18/21 22/12 27/14 41/23 41/23 90/23 91/10 91/17 102/13 113/8 118/18 119/8 121/9 126/22
**executing [7]** 18/8 60/7 61/19 94/16 96/7 110/22 129/8
**execution [7]** 17/7 18/16 68/8 69/17 112/5 112/9 130/22
**executive [1]** 65/23
**exercised [1]** 89/17
**exercising [1]** 63/13
**Exh [16]** 3/8 3/15 3/16 3/17 3/18 3/19 3/20 3/21 3/22 3/23 4/4 4/5 4/6 4/7 4/8 4/9
**exhibit [73]** 3/3 4/3 4/12 9/22 10/1 14/10 14/14 22/3 22/6 23/18 34/13 42/4 43/20 46/25 50/1 57/13 57/17 64/8 64/12 67/14 67/17 74/8 75/7 75/10 76/8 76/12 77/7 77/10 80/20 80/24 84/23 85/18 85/21 87/1 87/2 87/3 87/6 87/7 87/13 88/1 88/5 94/9 96/21 98/10 98/13 101/17 101/20 103/23 104/2 104/8 104/24 105/1 105/9 105/12 106/3 109/3 109/6 109/22 110/1 110/4 111/7 111/11 113/14 113/17 114/16 114/19 115/13 115/17 115/20 116/17 116/20 128/8 131/9
**Exhibit 12 [5]** 10/1 34/13 46/25 50/1 87/13
**Exhibit 13 [1]** 14/14
**Exhibit 14 [2]** 22/6 42/4
**Exhibit 15 [2]** 57/17 131/9
**Exhibit 16 [2]** 64/12 87/7
**Exhibit 17 [4]** 67/17 87/1 87/2 87/6
**Exhibit 19 [1]** 76/12
**Exhibit 2 [1]** 128/8
**Exhibit 20 [1]** 84/23
**Exhibit 21 [3]** 80/24 104/24 105/1
**Exhibit 22 [1]** 85/21
**Exhibit 23 [1]** 88/5
**Exhibit 25 [1]** 98/13
**Exhibit 26 [1]** 101/20
**Exhibit 27 [1]** 104/2
**Exhibit 28 [1]** 105/12
**Exhibit 29 [2]** 109/6 109/22
**Exhibit 31 [1]** 111/11
**Exhibit 32 [1]** 113/17
**Exhibit 33 [1]** 114/19
**Exhibit 34 [1]** 115/20
**Exhibit 5 [1]** 115/13
**exhibits [4]** 4/10 4/11 4/12 131/3
**exists [4]** 23/3 78/15 79/21 81/19
**expected [1]** 52/17
**expenses [1]** 55/11
**experienced [2]** 126/5 127/7
**expertise [2]** 100/24 116/7
**expires [1]** 135/23
**explain [6]** 17/17 29/24 64/21 66/2 92/4 113/6
**explained [5]** 26/24 33/16 55/18 80/9 126/8
**explains [1]** 50/20
**explanation [1]** 127/1
**explanations [3]** 58/15 111/15 111/17
**explore [1]** 102/11
**exploring [1]** 102/7
**extension [2]** 50/22 50/24
**extensive [1]** 101/3
**extent [1]** 7/23

## F

**face [1]** 61/25
**fact [12]** 16/17 24/23 37/10 40/15 83/8 113/8 115/1 121/2 121/7 124/3 127/22 129/15
**factor [1]** 69/14
**facts [2]** 66/20 71/20
**failure [1]** 78/8
**fair [9]** 30/6 30/9 58/21 66/2 66/24 69/17 73/20 77/5 89/1
**fairly [1]** 101/5
**false [7]** 51/6 86/3 86/12 86/20 89/10 89/22 116/25
**falsely [1]** 48/2
**falsified [6]** 26/2 26/4 26/18 31/7 31/21 31/23
**falsify [1]** 55/21
**falsifying [2]** 52/8 52/10
**familiar [4]** 32/6 63/7 63/8 108/2
**far [4]** 31/2 44/2 100/2 109/21
**farther [2]** 38/23 55/5
**fast [1]** 42/9
**FBI [3]** 56/9 115/25 116/9
**FCSNP [1]** 64/24
**fear [4]** 120/7 121/7 122/5 123/9
**federal [9]** 2/3 20/4 32/1 33/18 48/3 52/14 56/3 56/4 104/20
**feeling [1]** 58/13
**fellow [2]** 61/6 62/21
**felonies [1]** 30/18
**felony [6]** 63/22 64/6 64/7 125/3 127/10 133/4
**female [1]** 116/3
**few [2]** 104/25 106/1
**fiduciary [1]** 107/22
**field [1]** 5/25
**fifth [2]** 31/1 52/7
**file [3]** 22/22 25/6 76/2
**filed [2]** 68/24 129/5
**fill [1]** 87/7
**filled [2]** 27/5 86/25
**final [6]** 94/4 98/20 98/22 100/3 101/11 102/20
**Finally [1]** 94/10
**finance [1]** 50/23
**finances [2]** 29/8 30/6
**financial [5]** 12/24 41/10 46/14 46/15 133/9
**financially [1]** 135/13
**find [11]** 29/2 40/9 51/2 56/13 82/6 91/1 108/17 109/19 118/11 125/25 126/17
**finders [1]** 40/15
**findings [3]** 3/13 72/22 76/15
**fine [3]** 5/14 49/4 75/19
**finger [1]** 25/24
**fingerprints [1]** 63/24
**firm [3]** 57/4 57/5 100/1
**first [29]** 5/3 6/22 8/24 9/1 9/17 10/4 10/7 11/6 24/1 24/5 31/9 57/23 58/11 69/5 73/2 75/4 83/23 84/1 88/21 88/22 89/12 94/19 102/4 104/23 106/23 111/23 122/14 128/25 131/13
**first-hand [1]** 84/1
**five [4]** 6/25 60/3 65/4 69/15
**flag [2]** 132/7 132/8
**flagged [1]** 102/6
**flags [1]** 70/23
**flee [1]** 64/1
**FLOOD [1]** 2/15
**floor [1]** 60/23
**Florida [4]** 64/1 64/2 64/5 102/13
**follow [25]** 21/12 35/25 36/17 38/1 38/4 50/13 51/12 52/9 52/22 54/17 55/15 56/24 58/19 81/10 82/6 82/21 91/13 91/23 92/7 108/21 112/19 115/2 115/8

**F**

**follow... [2]** 130/5 130/7
**follow-up [1]** 54/17
**followed [2]** 63/23 129/24
**following [4]** 13/24 72/6 82/8 82/23
**follows [1]** 5/4
**foregoing [1]** 135/7
**forensic [12]** 24/21 25/1 25/10 25/12 25/14 26/23 50/16 52/1 113/1 116/10 126/6 127/8
**forget [1]** 94/4
**form [54]** 14/4 15/8 15/24 17/19 20/12 26/16 28/16 30/13 33/6 33/25 35/17 36/8 36/19 38/2 38/15 40/22 41/6 42/6 43/9 44/9 45/14 46/4 46/18 47/13 49/8 51/14 53/25 60/9 67/3 67/20 69/21 73/11 73/23 75/18 75/25 78/21 80/4 81/24 90/15 92/8 92/19 113/10 119/18 120/14 122/2 122/19 123/3 123/21 124/6 124/23 125/14 127/16 130/2 132/23
**format [1]** 75/23
**former [2]** 68/19 107/23
**forming [1]** 130/6
**forms [1]** 118/6
**formulated [1]** 118/25
**Fort [2]** 101/23 102/5
**forward [4]** 45/5 78/9 99/5 108/17
**forwarded [1]** 10/12
**foster [1]** 133/7
**fostered [1]** 133/2
**found [7]** 21/16 29/8 36/6 66/11 91/3 124/19 126/11
**foundation [8]** 34/1 36/9 40/23 41/7 43/10 46/19 80/5 81/25
**four [2]** 65/5 130/23
**fourth [3]** 34/21 35/9 60/23
**frame [2]** 42/15 127/20
**fraud [43]** 11/2 11/10 14/8 15/15 17/12 21/3 21/5 24/8 24/20 26/10 28/7 29/14 34/6 34/24 44/1 44/16 44/24 44/24 45/22 47/4 47/12 47/22 48/1 48/2 56/20 59/9 59/25 61/23 62/15 64/19 71/15 74/12 86/15 86/19 90/2 104/22 111/16 117/4 117/15 126/10 127/7 127/10 132/21
**fraudulent [9]** 24/3 24/14 24/16 25/3 25/8 25/17 89/10 89/22 97/10
**frequently [1]** 111/25
**freshly [1]** 96/18
**friends [1]** 54/4
**front [6]** 11/17 27/22 40/11 55/25 66/1 95/4
**full [13]** 26/9 34/15 34/22 37/12 43/20 45/1 50/1 52/7 53/11 54/13 54/22 55/22 57/2
**fully [1]** 57/11
**funding [1]** 81/5
**funds [24]** 21/9 29/1 31/7 31/21 31/24 32/8 32/20 32/22 34/7 45/3 49/13 55/13 55/22 65/19 65/22 66/3 67/1 67/11 92/22 92/23 92/24 97/15 102/9 102/12
**further [8]** 56/19 74/19 74/20 104/15 118/24 120/4 134/12 135/10
**future [2]** 72/20 99/22

**G**

**gain [2]** 41/11 99/24
**Ganzer [4]** 1/18 2/11 2/11 2/22
**gather [1]** 71/20
**gathered [4]** 11/8 72/25 100/2 100/19
**gave [6]** 52/11 71/11 84/10 84/17 101/9 109/23
**gender [1]** 116/4
**general [8]** 11/8 31/25 52/25 55/18 93/14 111/15 111/17 130/6
**general's [3]** 20/3 52/13 56/10
**generalities [1]** 112/10
**generate [1]** 88/14
**generic [2]** 98/3 98/6
**get [14]** 8/14 45/21 55/22 74/20 76/23 87/13 88/19 96/9 101/2 115/1 115/7 117/15 118/21 124/12
**getting [2]** 51/17 97/15
**give [8]** 5/13 5/15 11/16 17/23 58/25 63/6 95/21 105/4
**given [4]** 7/21 54/25 66/19 111/15
**gives [2]** 66/16 78/10
**giving [4]** 43/14 99/7 111/17 112/10
**global [1]** 17/5
**globally [1]** 25/19
**gmail.com [3]** 1/22 2/5 135/21
**go [50]** 6/5 6/9 11/17 13/8 16/12 16/14 23/18 23/19 24/1 30/25 34/3 34/13 34/21 36/10 39/24 43/19 46/23 48/19 49/25 50/1 51/15 54/13 56/12 56/19 57/2 59/3 68/3 68/4 70/5 70/8 72/7 77/16 80/12 80/23 82/13 82/23 83/7 83/15 83/22 99/11 101/21 104/7 108/17 110/11 118/15 120/15 123/2 123/8 124/18 125/23
**goal [1]** 71/20
**goes [3]** 67/19 132/25 133/11
**going [31]** 9/9 9/25 28/16 30/5 42/23 45/5 50/21 63/18 69/23 81/5 83/9 83/18 84/20 84/23 87/11 88/4 92/24 96/10 99/19 101/9 104/25 106/2 115/12 120/4 120/8 121/7 122/6 123/9 125/6 125/20 128/13
**gone [1]** 19/10
**good [4]** 39/16 78/4 89/7 89/14
**got [18]** 9/17 11/6 49/1 49/6 58/13 62/10 62/19 63/25 76/24 92/3 94/6 97/3 103/8 105/20 124/3 124/16 132/4 133/18
**gotten [1]** 76/25
**government [4]** 32/1 48/3 52/14 56/4
**governor's [1]** 103/1
**graduate [1]** 6/7
**graduated [3]** 6/4 6/15 6/21
**GRAMLING [1]** 1/4
**grammatically [1]** 75/6
**grant [38]** 13/18 21/12 26/8 26/10 28/6 31/22 34/7 37/16 37/17 37/21 37/22 38/6 38/8 38/12 38/20 39/5 44/17 49/15 50/5 50/22 50/23 52/20 55/12 56/2 56/3 65/5 65/6 65/19 65/21 67/1 67/11 86/18 93/23 117/13 118/2 118/12 126/8 126/9
**grantee [1]** 118/3
**grants [12]** 12/23 20/4 21/8 29/14 29/15 31/8 31/24 44/4 56/11 56/21 59/9 71/16
**greatly [1]** 100/24
**Green [4]** 82/14 82/15 82/16 82/18
**grind [1]** 82/20
**group [1]** 68/25
**guess [14]** 16/15 36/20 58/5 60/10 61/21 68/13 75/14 88/15 91/2 102/3 106/24 110/18 130/4 130/5
**guidance [1]** 88/24
**guilt [1]** 131/22
**guilty [1]** 132/2

**H**

**had [119]** 7/9 7/17 7/17 9/2 10/16 12/23 13/4 15/2 15/11 15/19 15/19 16/11 16/23 16/24 17/12 18/17 18/24 21/13 22/22 25/17 25/21 29/21 32/19 34/11 34/20 36/23 36/24 37/10 37/11 39/13 40/20 42/16 42/18 42/20 43/25 44/8 44/12 45/2 47/3 51/9 51/19 53/17 53/19 53/21 58/18 59/17 59/17 59/22 61/18 64/5 64/6 64/25 66/22 68/18 68/24 69/5 69/8 69/10 69/13 69/14 70/11 70/12 70/13 70/13 70/16 71/7 71/13 72/24 73/4 77/3 81/20 82/11 82/11 82/18 82/19 85/9 85/11 88/13 89/2 94/13 95/9 95/16 95/17 97/23 97/25 98/1 98/13 98/17 99/3 104/23 104/24 107/8 109/23 115/5 115/13 116/11 117/9 118/13 118/17 118/25 119/3 119/6 119/12 119/25 120/1 120/6 121/14 121/15 121/16 121/23 122/8 123/15 125/9 128/12 128/17 129/3 130/16 130/17 132/4
**hadn't [2]** 125/12 126/23
**half [1]** 13/11
**hand [4]** 66/15 84/1 84/12 110/9
**handed [2]** 57/16 96/4
**handled [1]** 33/10
**handling [1]** 95/6
**hands [1]** 92/5
**handwriting [1]** 110/24
**happen [5]** 103/9 112/14 118/1 118/11 120/19
**happened [7]** 9/9 45/24 60/12 63/1 112/24 121/1 127/1
**happens [3]** 16/14 90/7 120/3
**happy [1]** 113/7
**Hart [57]** 10/11 10/12 10/14 10/16 10/18 11/3 11/8 23/22 24/1 24/8 24/18 24/21 25/20 26/13 27/3 27/8 31/11 32/1 34/15 44/2 49/12 50/9 50/15 50/17 51/1 51/8 51/16 52/1 52/11 52/24 53/2 55/17 55/23 57/1 57/3 70/7 76/25 83/20 89/25 93/10 93/23 95/17 98/14 101/22 105/17 112/16 112/25 113/23 117/10 117/23 118/9 127/14 127/21 128/17 129/10 129/16 130/17
**Hart's [1]** 41/15
**has [17]** 11/21 20/15 30/10 30/22 41/18 46/11 76/13 78/15 79/21 83/25 85/6 90/8 90/17 94/22 111/2 116/7 123/5
**have [143]**
**haven't [1]** 38/11
**having [3]** 5/3 19/10 108/25
**he [97]** 10/20 20/23 25/1 25/2 25/5 25/16 26/6 27/8 27/9 31/11 31/16 42/9 46/5 48/25 49/1 50/18 51/2 51/19 53/2 55/18 56/1 68/10 68/17 68/17 68/19 68/21 68/23 69/2 69/4 72/19 73/4 73/7 73/8 73/9 73/17 74/2 79/16 82/8 88/18 88/18 89/2 89/5 95/7 95/19 95/19 96/2 96/2 96/2 96/3 96/3 96/3 96/4 96/10 99/5 99/7 99/8 99/8 99/9 99/21 99/21 99/22 99/25 100/6 100/16 100/17 100/19 101/9 101/14 106/7 107/21 107/23 109/15 109/23 111/15 111/15 112/10 112/12 113/6 113/7 113/13 116/8 116/11 116/13 117/13 117/16

## H

**he... [12]** 117/17 117/20 117/22 117/22 118/13 124/15 127/8 128/17 128/19 128/20 128/23 133/24
**he's [7]** 56/1 100/18 102/22 112/9 116/7 117/19 117/19
**header [1]** 76/13
**heading [1]** 75/16
**hear [1]** 49/24
**heard [1]** 49/23
**hearing [4]** 65/25 66/4 120/22 121/5
**hearsay [1]** 103/20
**heart [2]** 82/16 91/21
**held [2]** 80/19 87/24
**help [2]** 87/9 109/18
**helped [2]** 79/16 129/1
**her [124]** 16/21 17/6 17/11 18/11 18/14 20/1 20/3 27/19 28/2 29/5 29/7 29/8 30/12 35/24 36/25 37/4 37/8 43/6 43/14 43/21 44/12 44/21 45/8 45/18 46/13 47/2 47/12 51/10 51/23 52/21 54/4 57/9 58/7 60/16 60/16 60/18 60/19 60/20 61/2 61/3 61/3 61/4 61/4 61/7 61/12 61/14 61/22 61/23 61/25 62/1 62/6 62/6 62/7 62/11 62/12 62/12 62/13 62/14 62/19 62/21 62/23 62/25 62/25 63/9 63/10 63/13 63/13 63/15 63/18 63/20 63/20 63/23 63/24 63/24 64/2 68/18 69/9 69/16 70/15 70/16 71/2 71/3 71/10 71/12 71/22 73/5 73/10 76/3 76/19 81/13 84/2 89/9 89/16 89/17 89/17 89/18 89/20 102/9 102/15 103/2 103/12 104/20 104/21 106/8 107/5 107/7 108/22 113/8 118/23 119/7 119/25 120/7 120/13 121/11 121/17 121/19 121/23 123/15 123/16 125/4 125/13 129/15 131/13 132/3
**here [47]** 9/9 20/6 20/25 24/23 24/25 27/15 27/21 30/6 32/21 34/14 35/10 36/3 37/25 45/24 46/1 47/1 56/19 59/1 65/11 66/21 77/3 78/18 79/2 79/11 79/13 81/21 85/10 86/2 86/11 87/13 88/19 92/2 92/5 96/13 96/18 96/19 96/25 97/9 97/14 99/11 101/3 102/6 105/25 109/22 110/20 115/3 118/15
**hereby [1]** 135/6
**herein [1]** 5/3
**herself [1]** 45/19
**Hey [1]** 115/8
**hidden [1]** 17/10
**high [3]** 6/5 6/6 6/10
**Hill [3]** 11/14 11/21 13/20
**him [17]** 8/24 25/3 49/3 51/4 68/16 68/18 72/12 72/22 72/24 72/25 74/1 88/19 95/15 95/25 100/5 113/2 116/15
**hired [3]** 6/21 13/19 13/24
**his [19]** 20/23 24/8 52/3 55/25 68/16 72/14 92/20 94/7 98/23 99/7 100/3 101/11 102/22 109/13 113/12 116/1 116/1 118/9 127/9
**history [1]** 75/3
**Hodan [2]** 1/18 2/11
**home [9]** 54/9 64/1 70/16 71/2 71/3 71/6 71/7 71/10 71/18
**honored [1]** 63/13
**hooked [1]** 8/14
**hope [1]** 129/1
**horrible [1]** 132/7
**hotline [2]** 4/6 113/18
**house [1]** 62/7
**housekeeping [1]** 133/18
**how [31]** 5/18 8/8 8/14 8/16 16/11 16/21 20/20 26/4 30/5 45/5 55/18 60/8 72/15 73/17 75/25 88/24 108/6 110/23 111/15 111/21 112/10 113/6 115/6 120/3 120/11 122/11 123/24 125/1 125/17 126/7 129/10
**however [1]** 28/4
**huh [1]** 56/15
**human [1]** 132/8
**husband [2]** 45/8 81/8
**hyperlinked [1]** 4/11
**hyphenated [1]** 11/21
**hypothetical [4]** 120/15 123/22 124/24 125/15

## I

**I'd [2]** 23/18 34/13
**I'll [3]** 5/12 65/12 69/21
**I'm [59]** 7/25 8/12 9/25 12/2 13/2 14/13 22/13 23/21 24/21 24/25 25/10 25/14 25/15 26/22 28/1 28/2 28/15 32/6 34/14 36/4 51/3 51/8 52/2 56/17 58/5 62/15 64/11 64/16 68/6 68/15 72/21 75/10 76/11 77/10 78/3 84/20 84/23 87/11 88/4 91/3 91/8 92/4 96/18 98/2 98/17 100/12 102/17 103/15 103/16 104/25 105/25 106/2 108/2 110/7 110/18 111/10 115/12 119/14 129/19
**I've [4]** 6/17 14/15 57/16 114/10
**idea [1]** 52/18
**identification [24]** 9/23 14/11 22/4 57/14 64/9 67/15 75/8 76/9 77/8 80/21 85/19 88/2 96/22 98/11 101/18 103/24 105/10 109/4 110/2 111/8 113/15 114/17 115/18 116/18
**IDENTIFIED [2]** 3/3 4/3
**identify [1]** 105/1
**if [80]** 4/13 8/1 9/12 10/2 10/3 21/13 23/10 23/18 26/22 28/25 30/14 39/3 39/24 40/10 40/19 44/22 44/22 44/23 46/10 47/3 47/25 49/18 52/10 56/19 59/1 60/19 61/3 61/17 69/21 72/21 74/8 75/18 75/22 76/24 78/14 78/25 79/4 79/20 81/19 82/13 82/23 83/7 83/15 87/13 92/7 94/17 97/7 101/5 104/6 104/11 107/7 107/7 107/12 107/21 109/15 110/8 112/7 114/13 115/5 115/15 116/24 116/25 117/12 117/15 117/24 118/6 119/3 120/3 120/20 121/23 121/24 122/22 123/18 124/11 125/9 125/24 129/19 129/24 130/13 133/3
**if's [1]** 125/2
**ifs [1]** 125/18
**illegal [2]** 108/20 108/23
**immediately [1]** 6/9
**immobilized [1]** 85/6
**implementing [1]** 59/1
**important [3]** 7/15 37/20 71/4
**improperly [1]** 92/22
**in [195]**
**in-person [1]** 66/4
**in-services [1]** 7/18
**inaction [1]** 27/19
**inappropriate [1]** 68/20
**Inc [2]** 3/6 14/17
**incident [2]** 8/2 8/3
**include [3]** 20/1 56/20 90/17
**included [1]** 34/17
**includes [2]** 85/3 97/2
**including [2]** 38/5 45/17
**Income [4]** 33/19 78/11 79/13 82/25
**incomplete [6]** 120/15 123/13 123/18 123/22 124/24 125/15
**incorporation [2]** 3/5 14/16
**incorrect [1]** 75/6
**independent [1]** 114/7
**indicate [5]** 38/12 57/3 78/5 79/19 97/23
**indicated [8]** 13/23 22/16 22/22 31/3 31/6 31/20 58/23 65/4
**indicates [5]** 14/19 42/4 58/4 64/12 105/16
**indication [1]** 40/17
**indirectly [1]** 135/14
**individual [2]** 55/24 56/13
**individuals [1]** 29/18
**Industries [1]** 13/13
**inept [3]** 47/5 47/8 47/19
**informant [9]** 31/2 31/6 31/9 31/10 31/20 65/1 69/12 76/4 114/9
**informants [4]** 31/19 31/19 70/17 71/5
**information [47]** 11/9 17/6 21/24 27/14 40/5 51/6 52/3 52/11 52/12 52/24 53/20 54/3 54/7 54/8 54/9 54/10 54/25 55/1 57/10 63/25 64/3 65/1 71/7 72/25 85/9 85/11 85/15 89/24 92/5 106/9 106/10 107/6 107/8 107/9 107/13 109/12 109/19 120/8 121/14 125/8 125/10 125/25 126/4 129/23 130/17 130/18 130/25
**informed [9]** 23/22 24/1 25/1 27/3 27/9 50/20 61/2 68/16 68/23
**initial [2]** 10/1 11/7
**innocence [1]** 131/22
**innocent [3]** 40/9 40/14 125/10
**input [2]** 119/10 119/12
**ins [1]** 127/5
**inside [1]** 72/3
**inspector [6]** 20/2 31/25 52/12 52/25 55/17 56/10
**instead [2]** 42/24 108/11
**insufficient [1]** 73/4
**intake [4]** 66/12 66/13 94/24 120/21
**integrity [3]** 8/7 8/21 132/4
**intended [1]** 18/21
**intent [3]** 47/22 89/18 89/20
**intentional [1]** 47/9
**intentions [3]** 89/7 89/14 89/16
**interactions [1]** 109/23
**interested [2]** 107/21 135/14
**interestingly [1]** 97/23
**interests [1]** 41/4
**Interfaith [22]** 3/12 12/14 13/5 13/10 13/12 13/19 13/21 13/22 13/25 30/12 37/15 39/23 46/3 57/5 64/24 65/10 65/14 65/18 68/25 76/14 106/13 117/3
**Interfaith's [4]** 26/3 26/4 26/19 45/3
**Interfaith/Unison/SET [1]** 68/25
**internally [1]** 16/12
**internet [2]** 70/15 71/10
**interrupted [1]** 124/15
**interrupting [1]** 12/2
**interview [18]** 11/9 34/22 37/14 39/17 50/3 50/11 50/12 62/25 63/18 69/9 89/17 108/3 108/8 114/3 114/12 129/20 131/11 133/20
**interviewed [7]** 13/4 31/17 35/24 41/24 91/10 131/18 134/8
**interviewing [3]** 47/2 52/5 108/25
**interviews [7]** 12/16 12/18 21/14 38/23 39/4 108/4 114/8
**into [20]** 9/17 17/11 25/6 29/7 32/2 32/8 50/25 51/22 52/15 68/1 70/10 76/1 81/15 83/20 86/20 103/2 109/1

Case 2:21-cv-01032-JPS Filed 08/15/22 Page 42 of 118 Document 29-2

**I**

**into... [3]** 110/15 117/23 118/8
**investigate [6]** 15/6 34/12 73/8 107/16 107/19 125/6
**investigated [3]** 14/9 32/12 34/5
**investigates [1]** 112/10
**investigating [5]** 59/7 59/25 70/22 99/10 125/25
**investigation [70]** 3/4 7/8 8/5 8/12 8/18 10/2 14/22 14/23 15/23 16/8 19/10 19/15 27/11 30/4 32/7 33/13 33/14 34/8 37/5 40/5 40/8 40/13 41/15 41/16 41/17 46/10 47/24 53/24 58/2 58/8 59/23 61/23 70/24 72/1 72/12 73/18 74/15 74/19 74/20 78/24 82/9 83/9 83/13 83/18 85/13 85/16 90/17 92/13 93/10 100/17 101/1 101/4 103/10 103/22 104/15 111/22 112/18 113/7 113/21 119/5 120/4 122/5 123/13 123/18 124/19 126/3 126/12 127/9 129/11 130/1
**investigations [3]** 19/24 33/22 129/6
**investigative [1]** 7/7
**investigator [20]** 7/20 11/3 24/21 25/1 25/10 25/12 25/14 25/16 26/24 44/20 50/16 52/2 55/18 57/1 60/3 70/21 80/7 82/7 126/6 127/8
**Investigators [3]** 77/18 78/2 78/6
**invoice [2]** 23/2 110/5
**involve [1]** 94/17
**involved [4]** 16/25 31/25 95/12 116/15
**involvement [4]** 94/14 95/9 116/5 116/11
**isn't [6]** 20/10 59/12 76/20 91/18 101/8 117/14
**issuance [4]** 17/17 98/16 120/13 122/12
**issue [6]** 19/3 20/21 44/17 117/13 123/13 129/18
**issued [2]** 121/15 121/16
**issues [5]** 32/4 39/15 99/15 100/2 104/14
**it's [51]** 11/17 14/22 18/20 24/8 29/13 30/19 37/9 44/23 44/25 49/19 54/14 56/7 57/8 59/18 64/14 65/20 66/8 66/16 66/24 69/23 75/11 75/21 76/13 76/17 80/16 84/10 84/17 85/25 87/1 87/8 87/17 88/11 94/4 97/3 97/7 98/7 98/14 99/25 99/25 101/21 101/22 105/1 105/3 105/20 106/5 109/7 110/12 116/20 128/8 130/25 131/6
**items [4]** 60/20 60/22 62/5 72/2
**its [3]** 104/14 112/20 112/20

**J**

**jail [9]** 6/24 6/25 66/14 66/15 66/15 68/1 86/8 87/10 120/12
**January [6]** 24/3 36/4 36/12 84/6 105/7 116/21
**January 10 [1]** 116/21
**January 22 [1]** 24/3
**January 25 [2]** 84/6 105/7
**Jeff [1]** 53/18
**Jennifer [1]** 76/18
**Jenny [2]** 57/6 57/7
**Jodi [6]** 11/13 11/19 14/18 34/23 75/22 76/6
**Josh [25]** 19/18 69/25 72/3 79/15 80/7 88/8 98/14 98/23 99/4 102/10 103/4 103/7 105/18 107/20 108/10 109/1 111/12 112/17 114/22 114/24 115/10 116/21 117/10 129/13 133/21
**Joshua [3]** 8/23 72/10 74/13
**judge [5]** 94/12 95/21 95/24 96/1 122/15
**judicial [4]** 3/9 64/16 67/20 120/17
**julim [1]** 2/13
**jurisdiction [1]** 56/3
**just [60]** 5/12 12/13 13/3 13/14 14/2 14/8 15/2 15/8 16/13 17/7 17/19 20/12 22/20 23/15 24/6 34/14 38/15 39/20 44/21 46/5 48/17 48/25 51/8 54/19 61/16 62/5 63/20 66/15 71/15 71/20 84/10 87/11 87/18 92/16 92/17 93/5 93/14 95/25 96/9 98/1 100/14 104/25 106/23 106/24 107/1 107/12 108/19 108/24 111/15 111/17 112/10 116/7 118/16 118/23 119/14 128/24 130/2 132/12 133/18 134/6

**K**

**K-e-r-r-y [1]** 116/2
**K-o-l-e-c-h-e-c-k [1]** 116/3
**Kaminski [7]** 80/14 80/17 80/25 81/3 81/4 81/8 81/12
**keep [2]** 45/9 45/12
**keeps [1]** 71/6
**kept [2]** 38/24 81/5
**Kerry [1]** 116/1
**key [3]** 61/4 61/6 61/7
**keys [1]** 62/7
**kind [17]** 13/15 15/3 16/10 19/20 39/2 42/25 65/12 85/3 88/13 98/3 99/4 105/25 106/10 106/23 109/9 110/5 115/7
**knew [9]** 38/25 40/19 42/15 42/20 59/2 59/5 69/8 96/10 127/5
**know [97]** 9/14 10/14 10/15 13/16 15/18 15/22 17/22 20/21 22/1 24/22 24/24 25/10 28/19 29/19 31/16 33/16 33/23 37/17 38/8 39/5 39/10 39/23 40/10 41/10 42/19 43/5 44/23 45/25 48/4 48/24 50/10 54/24 54/25 57/20 60/1 66/8 67/6 69/9 75/3 75/4 75/17 75/19 75/20 75/21 75/22 76/6 76/24 78/24 79/4 79/6 79/7 84/8 86/18 86/23 87/12 87/14 87/20 87/21 89/16 89/20 94/7 97/13 97/24 101/2 102/20 103/12 105/20 107/7 107/10 107/12 107/21 107/23 107/24 109/15 110/24 113/12 114/1 114/13 115/6 115/25 116/4 117/11 117/25 123/24 125/1 125/17 127/14 127/25 127/25 128/1 128/2 128/2 128/7 128/12 129/3 130/4 130/7
**Knowing [2]** 100/13 129/22
**knowledge [4]** 68/18 84/1 114/4 130/6
**known [1]** 129/25
**knows [1]** 124/11
**Kolecheck [1]** 116/2

**L**

**L-i-c-c-i-o-n-e [2]** 131/14 132/13
**Labor [24]** 3/21 3/22 20/2 32/13 32/23 33/10 34/7 34/12 58/1 59/6 59/21 59/24 70/21 70/23 77/19 77/25 78/7 80/7 82/7 83/14 85/13 93/11 104/10 106/18
**Labor's [2]** 41/16 78/24
**lacks [8]** 34/1 36/8 40/23 41/7 43/9 46/18 80/4 81/24
**LAMBACH [88]** 1/4 1/5 3/16 11/2 17/2 18/3 18/7 18/22 20/7 20/21 21/1 21/20 22/17 23/6 23/14 24/3 24/14 25/18 26/2 26/4 26/15 27/3 30/11 31/7 31/21 31/23 34/24 35/5 35/11 36/23 37/22 38/13 38/21 39/14 39/19 40/9 42/2 42/17 43/8 43/21 43/25 45/2 45/6 46/2 47/4 50/5 51/5 52/8 52/10 55/11 55/12 60/18 60/19 61/18 65/4 65/18 65/21 66/3 66/25 67/11 68/12 69/20 70/11 70/25 72/18 74/13 78/18 79/25 81/5 81/7 81/12 82/19 83/17 84/1 85/11 91/14 97/9 97/23 104/11 104/19 110/7 119/17 131/23 132/2 132/4 132/7 132/9 132/19
**Lambach's [13]** 22/2 47/3 47/21 58/14 81/4 81/8 82/16 83/19 89/13 91/4 91/21 108/20 113/4
**language [2]** 65/16 85/1
**lapsed [1]** 98/1
**large [1]** 18/18
**last [26]** 23/3 37/12 44/25 45/1 46/24 50/1 58/11 77/16 81/1 81/2 81/2 82/15 84/8 84/10 84/12 84/14 88/22 94/5 94/9 94/13 100/23 104/10 104/25 116/2 117/24 131/13
**later [4]** 27/4 51/5 63/21 72/21
**Lauren [1]** 65/14
**LAURENE [54]** 1/4 3/16 17/2 20/7 21/1 23/6 23/14 26/15 30/10 31/6 31/21 31/23 38/12 39/13 39/19 40/9 42/2 42/16 43/8 43/25 46/2 47/20 58/18 60/18 60/19 65/14 65/18 65/21 66/2 66/25 67/10 68/12 69/19 70/11 74/13 78/18 79/24 85/11 89/13 91/4 91/14 91/21 97/23 104/11 104/19 110/6 111/19 113/3 119/16 131/23 132/2 132/5 132/7 132/19
**law [8]** 19/25 20/3 32/20 33/18 52/13 52/25 75/5 90/11
**laws [2]** 32/14 32/16
**lawsuit [4]** 68/24 69/6 104/13 129/4
**lawyer [1]** 90/9
**lay [1]** 42/22
**laying [1]** 53/1
**lead [1]** 73/18
**leaked [2]** 40/5 54/4
**learn [1]** 111/23
**learned [5]** 37/22 69/5 69/18 97/18 97/22
**leave [2]** 42/24 84/20
**led [3]** 27/17 66/25 70/24
**Lee [1]** 93/10
**left [9]** 4/12 31/2 42/18 42/20 42/22 43/5 50/5 69/8 110/9
**left-hand [1]** 110/9
**legal [25]** 17/24 18/5 19/17 19/23 21/16 30/14 33/7 37/3 47/25 72/6 72/19 72/20 74/17 91/17 93/25 99/7 99/7 99/23 100/7 109/13 112/22 112/25 120/16 122/20 124/7
**legitimate [3]** 14/8 15/15 58/20
**lending [1]** 45/12
**lent [1]** 45/8
**let [14]** 9/14 12/4 13/16 16/16 19/20 27/4 38/19 39/15 42/22 54/19 58/22 63/15 92/4 118/15
**let's [13]** 24/1 35/8 43/8 80/23 84/19 97/6 99/11 102/4 120/11 124/2 125/23 125/23 127/20
**level [1]** 33/14

L
**liability [10]** 78/10 78/14 78/20 79/20 81/19 82/3 85/5 124/22 125/13 126/1
**Liccione [6]** 131/11 131/12 131/21 132/1 132/14 132/15
**lieutenant [5]** 10/22 10/23 10/24 10/25 16/20
**light [1]** 101/1
**like [33]** 12/24 15/13 19/13 23/18 24/21 25/14 30/25 34/13 37/12 39/2 43/19 46/23 49/25 60/5 68/3 69/13 72/7 75/6 77/16 80/12 83/22 98/21 99/5 104/7 106/20 109/7 111/3 111/5 114/21 115/23 116/8 116/20 132/19
**likely [1]** 30/10
**limitation [1]** 30/18
**limitations [1]** 30/10
**limited [1]** 112/4
**line [9]** 22/14 23/3 26/2 46/24 58/11 80/10 99/11 99/11 100/23
**list [5]** 106/12 106/13 106/17 106/19 107/13
**listed [2]** 93/5 93/8
**listen [1]** 114/5
**little [4]** 19/7 55/9 56/19 109/2
**loan [1]** 83/25
**loaned [1]** 81/9
**loans [1]** 83/19
**location [1]** 2/7
**locations [1]** 18/19
**long [9]** 8/8 16/6 41/14 49/18 72/15 72/16 120/11 130/11 133/13
**look [27]** 10/3 11/15 12/17 12/21 13/15 21/14 23/11 26/14 40/8 50/25 74/8 79/11 88/23 90/20 92/11 93/21 97/2 97/7 106/20 110/8 110/15 112/12 116/24 117/24 118/8 122/15 129/20
**looked [8]** 29/7 46/13 46/14 56/2 77/1 83/20 117/23 126/24
**looking [21]** 13/16 22/14 29/14 32/2 32/3 48/18 50/16 52/14 60/10 69/12 86/18 90/18 91/16 92/15 92/17 92/21 93/23 106/23 109/1 117/10 117/16
**looks [10]** 19/13 37/12 80/18 109/7 111/2 111/5 111/16 114/21 115/23 116/20
**lot [6]** 12/25 19/14 19/17 92/13 93/11 105/24
**love [1]** 75/19
**lower [1]** 84/12
**LTD [2]** 1/18 2/11
**lunch [2]** 60/21 62/7
M
**made [16]** 10/11 24/7 25/20 25/21 36/16 71/1 74/22 86/12 87/10 89/18 101/23 110/23 115/3 117/2 117/8 134/11
**main [3]** 60/13 60/23 71/19
**mainly [1]** 20/24
**maintain [1]** 46/1
**major [1]** 6/13
**make [10]** 9/11 12/4 70/15 105/6 107/1 108/9 117/7 119/1 120/11 124/15
**making [5]** 14/8 40/11 53/2 53/6 77/4
**management [1]** 86/1
**many [2]** 9/5 20/20
**March [2]** 65/13 84/24
**March 2 [1]** 84/24
**mark [1]** 87/11
**marked [40]** 9/22 9/25 14/10 14/13 22/3 22/6 57/13 57/16 64/8 64/11 67/14 75/7 75/10 76/8 76/11 77/7 77/10 80/20 80/23 85/18 88/1 88/4 96/17 96/21 98/10 101/17 103/23 105/9 105/12 106/2 109/3 110/1 111/7 111/10 113/14 114/16 114/19 115/12 115/17 116/17
**marking [1]** 96/18
**MATC [2]** 5/24 6/12
**match [1]** 55/12
**matching [7]** 31/7 31/21 31/23 55/13 55/22 116/25 117/7
**materials [1]** 100/19
**Mathy [44]** 3/17 8/22 8/23 19/18 20/22 20/24 69/25 72/3 72/11 72/11 72/13 73/2 74/5 74/12 74/13 79/16 80/7 88/8 88/14 88/17 89/21 94/5 98/14 98/23 99/4 99/19 101/22 102/10 103/4 103/7 105/18 107/20 108/10 109/1 109/14 109/21 111/12 112/17 114/22 115/8 116/21 117/25 129/13 133/21
**Mathy's [2]** 19/19 96/12
**Matt [26]** 41/15 49/12 50/9 50/15 51/1 51/8 51/16 55/17 57/1 70/7 76/25 94/14 96/6 101/21 105/17 112/16 112/25 113/23 114/14 117/10 117/23 118/9 127/14 127/21 128/17 130/17
**matter [8]** 16/4 16/7 17/23 41/13 48/5 99/13 128/23 133/12
**matters [2]** 59/1 130/11
**Matthew [3]** 83/20 89/25 93/23
**may [6]** 14/20 15/7 25/12 94/17 101/24 116/3
**May 14 [1]** 14/20
**maybe [4]** 26/23 40/10 81/2 96/20
**me [99]** 5/7 5/15 6/19 8/10 8/16 9/14 10/3 10/20 11/1 12/2 12/4 13/16 15/5 15/12 16/11 16/16 17/17 18/6 18/12 18/14 19/10 21/22 23/22 24/1 25/1 25/2 25/16 25/20 25/21 26/4 26/25 27/9 27/10 27/13 27/22 29/13 31/17 32/17 32/24 34/16 38/19 39/16 40/12 42/22 43/5 44/2 44/3 46/8 47/18 48/6 49/6 51/9 51/11 54/19 55/25 57/3 58/17 58/22 60/5 60/8 60/12 61/16 61/17 63/6 65/6 66/6 71/3 75/1 75/14 80/9 84/11 84/17 88/13 89/25 90/20 91/3 92/4 93/4 95/15 103/4 105/4 106/6 106/19 107/8 107/9 107/12 108/11 109/15 109/17 111/13 112/7 113/13 118/6 118/15 121/16 126/8 128/19 128/23 130/19
**mean [15]** 7/12 8/3 20/17 21/11 37/24 45/7 47/8 48/25 74/16 75/15 82/2 86/7 90/7 113/5 115/7
**means [3]** 24/24 29/25 115/1
**meet [5]** 16/21 18/14 72/13 129/10 129/12
**meeting [12]** 15/19 60/14 60/15 72/15 72/24 74/10 98/13 98/15 98/20 99/1 99/4 108/25
**meetings [3]** 73/3 88/16 98/17
**Megan [1]** 22/13
**member [1]** 133/23
**members [4]** 39/12 39/17 53/17 133/21
**members' [1]** 106/17
**memo [3]** 3/22 101/9 115/7
**mention [1]** 32/10
**mentioned [4]** 10/10 12/13 15/2 129/7
**merger [8]** 12/9 12/14 12/15 13/5 13/12 13/20 13/24 13/24
**met [3]** 37/15 72/11 106/14
**method [2]** 110/14 110/16
**MICHAEL [1]** 2/11
**Mid [1]** 6/3
**middle [3]** 52/6 57/24 65/11
**midway [1]** 23/21
**might [8]** 15/14 24/18 43/6 56/20 70/7 76/1 91/21 116/13
**MILWAUKEE [18]** 1/8 1/19 2/12 2/16 5/10 5/19 6/17 6/24 6/25 7/21 7/21 11/4 68/1 74/24 85/22 113/19 135/2 135/16
**mind [2]** 53/21 104/18
**mine [1]** 33/11
**Ministries [1]** 45/9
**Ministry [1]** 83/19
**minute [1]** 32/15
**mischaracterizes [3]** 44/10 46/5 92/20
**misspelled [1]** 65/14
**mistake [3]** 36/4 59/18 134/11
**mistaken [2]** 23/8 72/21
**Misuse [1]** 92/22
**misused [1]** 102/9
**mitigating [2]** 89/11 89/23
**modified [1]** 117/12
**moment [4]** 39/11 50/11 51/3 56/7
**Monday [1]** 72/9
**money [50]** 21/4 21/7 26/9 28/4 28/6 28/8 28/9 28/10 28/13 44/17 45/9 45/12 45/18 45/19 45/20 45/21 46/2 46/16 49/17 49/22 50/6 50/8 50/22 55/20 65/8 65/9 78/16 78/19 79/22 79/25 81/9 81/13 81/21 81/23 83/17 85/6 85/12 89/8 91/22 92/12 92/18 93/18 93/22 102/18 112/20 112/24 118/2 118/5 118/12 132/9
**monitor [1]** 111/5
**months [1]** 81/7
**more [15]** 12/1 12/5 30/17 45/19 55/5 63/10 68/13 91/2 102/3 109/19 123/19 130/23 130/25 132/16 132/17
**mostly [2]** 41/18 108/10
**motive [9]** 15/13 15/14 16/7 48/4 130/9 130/11 130/13 133/12 133/12
**motives [4]** 15/7 16/4 41/13 47/3
**move [5]** 26/7 45/5 55/20 84/23 128/13
**moving [1]** 99/4
**MR [9]** 2/11 2/15 2/15 2/22 3/4 3/17 22/15 93/10 108/25
**Mr. [45]** 8/22 10/12 10/14 10/16 10/18 11/8 19/19 20/22 20/24 24/8 24/18 24/21 25/20 26/13 27/8 31/11 44/2 50/17 52/1 52/11 52/24 53/2 53/13 55/23 63/9 63/15 68/11 68/15 72/13 73/2 74/5 82/15 88/14 88/17 89/21 93/10 95/17 96/12 102/23 108/1 109/1 117/25 129/7 129/10 129/16
**Mr. DeVita [3]** 68/11 68/15 129/7
**Mr. Duffy [2]** 63/9 63/15
**Mr. Green [1]** 82/15
**Mr. Hart [23]** 10/12 10/14 10/16 10/18 11/8 24/8 24/18 24/21 25/20 26/13 27/8 31/11 44/2 50/17 52/1 52/11 52/24 53/2 55/23 93/10 95/17 129/10 129/16
**Mr. Mathy [10]** 8/22 20/22 20/24 72/13 73/2 74/5 88/14 88/17 89/21 117/25
**Mr. Mathy's [2]** 19/19 96/12

**M**

**Mr. Musgrave [1]** 53/13
**Mr. Neuman [2]** 108/1 109/1
**Mr. Westphal [1]** 102/23
**Ms [12]** 13/17 45/17 47/1 47/18 69/12 131/11 131/21 131/21 132/1 132/11 132/13 132/15
**Ms. [29]** 11/2 13/9 13/18 13/19 13/20 13/21 18/3 18/7 18/22 20/21 21/20 22/2 22/17 25/18 44/3 44/15 44/25 45/6 50/3 52/6 52/19 53/12 54/15 61/18 70/25 72/18 108/20 132/12 132/12
**Ms. Bauer [4]** 13/9 44/3 44/15 44/25
**Ms. Crawford [5]** 13/19 52/6 52/19 53/12 54/15
**Ms. Hill [1]** 13/20
**Ms. Lambach [12]** 11/2 18/3 18/7 18/22 20/21 21/20 22/17 25/18 45/6 61/18 70/25 72/18
**Ms. Lambach's [2]** 22/2 108/20
**Ms. Stone [2]** 13/18 50/3
**Ms. Vojvodich [1]** 13/21
**Ms. Wanta [2]** 132/12 132/12
**much [3]** 62/8 98/5 116/16
**multiple [14]** 18/4 18/19 21/13 51/25 54/6 70/23 79/9 90/22 91/11 95/2 98/17 122/19 124/25 125/15
**Musgrave [2]** 53/13 53/13
**must [2]** 76/25 86/8
**my [40]** 5/8 6/12 6/22 9/18 9/20 10/22 11/15 13/6 16/23 19/6 24/25 28/12 28/12 36/4 41/16 42/19 48/18 52/3 53/16 56/7 59/18 62/21 63/5 64/14 64/14 79/6 89/25 94/8 94/10 97/3 101/13 108/8 114/23 115/23 118/15 119/20 123/2 131/5 135/8 135/23
**Myers [2]** 101/23 102/5
**myself [3]** 75/22 112/16 114/9

**N**

**N-w-a-g-b-a-r-a-o-c-h-a [1]** 11/24
**name [17]** 5/7 5/8 11/21 55/25 57/3 63/6 63/8 76/17 85/22 94/7 102/22 116/1 116/2 131/13 131/13 133/22 133/25
**named [1]** 82/14
**names [5]** 11/16 12/13 31/17 54/15 106/17
**narrative [2]** 60/8 87/9
**nature [1]** 93/2
**near [2]** 81/1 85/4
**necessarily [3]** 94/21 117/18 120/5
**necessary [1]** 118/22
**need [5]** 88/23 89/6 93/21 112/12 117/25
**needed [1]** 50/23
**negligence [1]** 47/21
**negligent [1]** 47/9
**Neuman [4]** 53/19 108/1 109/1 133/23
**neutral [2]** 89/8 89/15
**never [15]** 14/2 14/15 21/4 28/24 33/16 49/14 65/7 65/20 73/16 97/19 114/10 128/9 128/11 128/17 128/23
**new [3]** 15/3 15/20 69/18
**next [25]** 24/13 24/13 26/2 27/2 35/4 50/19 51/5 54/23 55/8 65/13 79/6 80/12 82/13 83/7 83/15 83/22 87/8 89/5 96/5 100/8 100/9 100/10 100/15 100/18 102/24
**nexus [2]** 70/16 71/2
**no [117]** 1/7 3/3 4/3 9/4 9/22 10/17 12/3 12/3 14/10 14/15 15/5 15/5 15/11 15/21 16/2 17/9 18/4 19/5 22/3 22/13 23/2 23/8 25/17 26/1 27/25 28/1 28/3 29/23 29/24 30/22 33/5 33/9 38/25 39/11 40/1 40/16 40/25 41/9 46/15 49/23 50/11 51/16 52/18 53/6 56/10 57/13 64/8 66/14 66/19 67/14 69/23 69/25 71/19 73/6 73/14 74/7 74/22 75/7 75/16 76/8 77/7 78/18 79/24 80/20 82/18 82/22 83/25 84/10 85/4 85/9 85/10 85/17 85/18 88/1 89/18 91/16 92/21 94/13 95/23 96/16 96/21 97/8 98/10 98/22 99/8 99/21 101/17 102/21 103/23 105/9 107/1 107/1 108/5 108/6 109/2 109/3 109/23 110/1 110/23 111/7 112/8 113/14 114/2 114/7 114/16 115/17 116/17 117/2 118/6 118/25 119/23 123/5 123/12 124/17 127/24 128/16 129/21
**No. [8]** 23/18 75/11 77/11 84/13 97/17 106/3 110/4 116/20
**No. 12 [1]** 23/18
**No. 18 [1]** 75/11
**No. 20 [1]** 77/11
**No. 204 [1]** 84/13
**No. 30 [1]** 110/4
**No. 35 [1]** 116/20
**No. 4 [1]** 106/3
**No. 7 [1]** 97/17
**Nobody [1]** 15/1
**noncompliance [1]** 132/6
**nonprofit [1]** 41/11
**nonprofits [1]** 41/10
**normal [1]** 94/20
**normally [3]** 103/9 120/3 123/12
**nose [1]** 103/2
**not [148]**
**Notary [2]** 135/5 135/21
**note [2]** 88/21 98/17
**noted [1]** 2/8
**notes [3]** 97/3 118/15 135/8
**nothing [13]** 29/8 34/11 36/17 51/12 60/2 69/18 77/3 91/14 121/5 121/6 132/16 132/17 134/12
**notified [2]** 50/24 57/1
**notify [2]** 94/15 96/7
**November [9]** 57/24 59/12 59/13 72/9 73/3 73/21 74/10 88/11 88/17
**November 13 [1]** 57/24
**November 20 [1]** 59/13
**November 26 [3]** 72/9 88/11 88/17
**November 28 [2]** 73/21 74/10
**now [17]** 5/15 8/6 8/14 14/2 15/22 32/15 43/23 57/23 80/23 84/23 99/12 100/10 100/13 102/21 107/5 110/13 123/4
**numbers [5]** 4/12 52/8 52/10 117/1 117/8
**Nwagbaraocha [1]** 11/22

**O**

**oath [1]** 5/3
**object [51]** 5/12 14/4 15/8 15/24 17/19 20/12 26/16 28/16 33/6 33/25 35/17 36/8 36/19 38/2 38/15 39/20 40/22 41/6 42/6 43/9 44/9 45/14 46/4 46/18 47/13 49/8 51/14 53/4 53/25 67/3 69/21 73/11 73/23 78/21 80/4 81/24 90/15 92/8 92/19 113/10 119/18 120/14 122/19 123/3 123/21 124/6 124/23 125/14 127/16 130/2 132/23
**objection [7]** 26/20 30/13 37/1 42/12 122/2 126/20 127/21
**obligations [1]** 81/6
**obtain [4]** 6/9 64/3 72/2 90/4
**obtained [3]** 71/25 93/9 118/20
**obviously [1]** 20/22
**occur [3]** 20/18 82/4 117/18
**occurred [7]** 15/16 17/12 46/10 70/19 117/20 127/11 133/5
**occurring [1]** 12/8
**October [6]** 35/24 36/17 43/24 59/11 59/18 100/11
**off [10]** 5/13 5/15 5/16 53/1 62/8 80/19 85/25 86/9 87/22 87/24
**offer [1]** 132/20
**offering [1]** 88/24
**office [31]** 5/20 6/18 8/16 8/19 17/5 20/3 20/15 24/9 25/15 30/1 52/13 56/10 61/14 62/12 62/22 62/24 66/9 68/10 70/10 72/14 74/18 74/24 82/10 85/22 90/25 94/1 101/15 103/13 119/22 120/23 121/1
**officer [3]** 52/13 52/25 65/23
**officers [1]** 7/13
**offices [4]** 60/13 60/23 61/10 68/16
**often [3]** 16/21 129/10 129/12
**Oh [6]** 8/10 29/11 100/12 110/11 129/7 134/3
**okay [93]** 8/3 8/6 9/5 9/14 9/16 10/10 10/23 11/6 13/2 13/17 14/16 16/8 17/1 18/6 18/14 19/7 22/15 23/10 23/23 23/25 24/15 24/19 24/23 25/24 27/23 28/1 29/11 30/9 33/20 33/21 40/7 43/19 46/13 52/5 52/16 54/24 58/7 59/15 60/10 63/4 64/11 65/17 68/23 71/1 73/20 76/11 77/3 77/24 78/3 79/11 79/17 79/19 80/12 81/17 83/7 83/15 87/17 88/7 88/20 90/14 92/6 94/9 95/21 96/24 97/17 98/9 98/24 99/11 101/16 102/24 103/17 105/8 105/25 106/15 106/20 106/22 107/4 108/12 109/21 110/8 110/21 112/1 115/12 117/6 118/15 119/22 122/11 124/2 124/15 125/23 132/11 132/18 133/14
**Older [5]** 3/5 3/12 13/10 14/16 76/14
**on [126]** 2/8 2/13 2/17 3/16 4/12 5/3 9/17 10/12 12/6 16/23 17/14 19/23 22/1 25/5 25/11 25/24 26/1 27/22 29/2 30/10 30/18 30/25 31/2 31/22 31/24 34/13 37/4 37/13 38/1 41/15 43/8 43/19 43/23 44/2 44/3 46/24 47/3 49/12 49/25 50/13 51/12 51/20 52/22 53/1 53/8 53/14 55/5 55/15 55/20 56/21 56/24 57/24 58/11 59/9 59/13 60/13 64/23 64/25 65/4 65/5 65/6 67/1 68/6 68/21 69/9 69/13 71/8 72/9 72/12 76/17 76/17 76/20 79/9 80/2 81/10 82/8 82/21 83/9 83/18 84/14 84/23 86/9 86/17 87/10 87/13 88/24 94/18 98/18 99/5 100/3 100/5 101/10 103/4 103/9 104/12 105/15 107/13 109/11 109/24 110/24 111/21 112/10 112/16 113/23 115/2 115/8 116/13 119/7 119/12 120/4 123/13 126/4 126/7 127/4 127/7 127/9 127/11 128/8 128/25

## O

**on... [7]** 129/24 130/5 130/7 131/6 131/9 134/6 135/16
**one [54]** 12/1 12/5 12/17 13/10 13/10 13/23 15/5 15/13 18/4 18/6 29/5 29/6 31/16 34/25 38/23 38/25 43/1 53/18 53/19 54/23 56/1 56/2 61/12 63/2 68/21 82/11 82/11 83/25 84/14 84/15 87/20 87/21 90/3 94/4 94/7 95/1 96/12 97/15 98/4 98/22 100/1 101/13 102/10 103/3 103/7 105/4 107/23 108/4 108/6 115/23 131/3 131/15 133/18 133/21
**ones [5]** 11/13 38/24 56/25 65/6 108/7
**ongoing [9]** 29/10 29/12 29/13 46/10 94/13 119/5 122/5 124/19 124/20
**only [13]** 10/15 15/13 32/23 34/24 34/25 66/21 71/23 74/23 75/1 83/3 95/9 116/11 125/2
**open [5]** 4/13 74/18 82/11 82/12 127/22
**opened [2]** 15/2 82/8
**operations [1]** 111/24
**opinion [7]** 33/1 43/21 44/21 47/3 47/11 99/8 113/13
**opportunity [1]** 101/10
**opposed [2]** 33/15 47/9
**option [1]** 121/6
**or [108]** 8/1 11/4 11/10 12/14 13/5 13/24 14/7 16/13 17/10 19/13 20/16 22/10 25/5 27/5 29/1 30/12 33/17 38/9 43/7 44/13 44/19 45/3 46/2 46/2 46/11 47/21 49/14 51/12 53/8 59/9 62/11 62/17 65/20 68/12 69/2 71/2 71/5 72/4 73/3 74/21 75/23 76/4 77/4 78/25 79/3 81/2 82/4 84/2 89/7 89/9 89/10 89/11 89/14 89/21 89/22 89/23 91/24 92/12 94/14 94/15 94/15 96/5 96/6 96/6 98/17 98/20 101/10 103/13 103/20 105/22 107/7 107/11 107/15 108/18 108/25 109/7 111/16 111/19 114/9 115/10 117/1 117/8 117/12 117/16 117/18 117/22 120/21 120/22 121/3 121/5 121/8 122/15 126/25 128/10 129/4 130/16 130/23 130/25 131/22 132/21 135/11 135/11 135/11 135/12 135/12 135/13 135/13 135/14
**order [30]** 17/10 18/3 21/17 21/18 22/1 22/18 22/21 22/25 27/4 27/4 27/5 27/17 28/4 28/5 32/18 35/5 35/6 35/11 36/7 36/13 36/24 40/20 41/3 45/12 65/3 97/18 110/10 110/23 120/23 121/1
**ordered [4]** 37/24 65/1 65/5 111/3
**orders [6]** 21/13 42/2 97/24 97/25 117/1 117/8
**organization [4]** 41/11 45/10 111/24 127/5
**original [3]** 11/13 133/1 133/2
**originally [2]** 84/22 103/4
**other [36]** 7/25 19/23 19/24 19/24 19/25 20/4 20/5 25/21 38/24 39/4 41/25 47/9 55/24 56/25 57/1 58/21 60/21 62/9 65/3 65/6 69/15 75/23 85/16 91/24 93/9 93/20 106/13 107/15 108/4 108/7 108/24 110/22 116/14 121/14 122/13 130/5
**others [1]** 98/15
**otherwise [3]** 94/13 94/15 96/6
**our [14]** 7/1 7/2 7/6 17/5 28/3 34/18 40/16 47/23 61/10 71/19 85/25 94/18 112/4 112/17
**out [26]** 21/16 29/3 33/17 36/6 40/10 42/22 45/21 54/24 56/13 61/7 82/6 84/21 86/25 87/7 87/13 93/20 103/2 103/7 103/11 103/13 106/8 108/17 110/19 118/11 120/20 124/2
**outcome [1]** 133/10
**outlined [1]** 99/16
**outs [1]** 127/5
**outset [1]** 113/20
**Outside [1]** 83/24
**over [16]** 6/12 7/13 10/12 34/18 48/13 60/13 60/15 60/15 62/9 64/17 86/17 90/8 94/7 98/23 101/14 124/13
**overall [1]** 25/19
**overly [1]** 49/8
**oversight [1]** 82/18
**own [5]** 41/4 45/18 84/2 89/9 128/14

## P

**p.m [2]** 1/16 134/14
**Pack [1]** 102/5
**page [34]** 2/8 2/21 3/3 4/3 30/25 37/13 43/19 46/23 57/23 57/23 58/11 59/16 68/4 68/6 74/8 80/12 80/15 80/16 80/25 81/15 82/13 82/23 83/7 83/15 83/22 84/8 84/10 84/12 87/13 97/7 104/7 106/23 111/2 131/7
**page 1 [2]** 57/23 87/13
**page 10 [1]** 46/23
**page 12 [1]** 74/8
**Page 3 [1]** 59/16
**page 4 [1]** 30/25
**page 6 [1]** 131/7
**page 8 [1]** 43/19
**pages [2]** 104/25 135/8
**paperclipped [1]** 84/18
**papers [1]** 66/13
**paperwork [9]** 3/21 21/7 50/6 50/7 50/14 50/18 51/6 51/7 67/25
**paragraph [34]** 23/3 23/21 23/23 27/2 31/1 34/15 34/22 35/9 37/13 43/20 45/1 50/2 50/19 52/7 53/11 54/14 54/19 54/22 54/23 55/8 57/2 74/11 77/16 77/22 84/14 85/3 88/22 89/5 94/9 100/9 100/18 104/10 116/24 117/24
**paragraph 10 [1]** 84/14
**paragraph 2 [4]** 23/3 77/16 77/22 85/3
**pardon [1]** 12/2
**Parkside [1]** 6/11
**part [13]** 24/13 32/7 39/4 40/15 50/14 76/4 81/11 90/17 93/10 96/5 100/3 112/17 118/9
**particular [4]** 26/1 45/8 56/7 88/14
**particularly [1]** 101/5
**parties [1]** 135/12
**partner [1]** 57/9
**parts [1]** 19/24
**pass [1]** 53/20
**path [1]** 6/14
**patrol [3]** 7/1 7/2 7/5
**pay [1]** 45/3
**payment [2]** 110/14 110/16
**payout [1]** 42/25
**payroll [1]** 83/24
**PDF [2]** 4/11 4/12
**penalties [1]** 33/15
**pend [1]** 74/16
**pended [3]** 74/14 74/23 99/8
**people [7]** 17/10 45/16 54/18 69/15 93/9 103/5 103/13
**people's [1]** 91/18
**per [1]** 104/21
**percent [1]** 55/13
**perhaps [2]** 40/8 45/11
**period [2]** 8/7 12/9
**permission [1]** 114/4
**person [9]** 40/14 57/6 66/4 72/11 78/15 79/21 81/20 85/6 131/17
**personal [8]** 28/25 29/8 45/2 46/14 71/12 81/4 81/13 102/9
**personally [5]** 28/10 28/13 67/1 76/24 103/2
**personnel [2]** 102/15 115/25
**phone [1]** 98/18
**photo [1]** 63/24
**phrased [1]** 16/17
**picked [1]** 19/21
**pile [1]** 43/7
**placed [3]** 25/6 27/3 27/16
**places [1]** 54/8
**Plaintiff [1]** 2/13
**Plaintiffs [1]** 1/6
**plan [3]** 16/24 17/5 18/18
**Plankinton [1]** 2/15
**play [1]** 81/15
**please [12]** 5/7 9/14 11/22 13/8 28/21 33/1 34/21 35/14 42/9 48/8 106/21 118/2
**plotting [1]** 127/22
**plural [1]** 44/5
**pocketed [1]** 92/12
**point [17]** 7/4 15/18 43/25 44/7 46/11 47/2 59/3 64/18 68/7 68/23 71/13 93/19 117/21 119/3 119/11 119/25 122/9
**pointing [1]** 110/18
**police [5]** 6/1 6/13 7/13 7/21 7/22
**politically [1]** 103/5
**poorly [1]** 16/16
**portion [5]** 28/22 33/3 42/10 48/9 87/9
**portions [1]** 98/7
**position [2]** 39/14 99/25
**possibility [1]** 102/8
**possibly [1]** 116/10
**potential [5]** 78/20 79/20 81/19 82/3 85/4
**potentially [6]** 78/14 79/23 82/4 126/13 126/15 126/19
**Potter [7]** 94/11 94/22 95/5 95/9 95/12 96/9 119/12
**Potter's [1]** 96/17
**practicing [1]** 75/4
**preamble [1]** 53/4
**preceded [2]** 98/16 99/1
**preliminary [2]** 120/22 121/4
**premises [1]** 94/11
**prepare [1]** 85/24
**prepared [1]** 85/25
**present [4]** 66/6 89/6 116/13 120/5
**presented [5]** 60/24 72/22 72/24 119/24 126/6
**pretty [4]** 62/8 62/15 62/16 98/4
**prevent [1]** 17/6
**previous [3]** 2/8 69/13 81/15
**previously [5]** 53/17 58/23 99/15 104/24 108/24
**print [1]** 84/21
**printed [1]** 85/25
**Printout [1]** 3/16
**Prison [1]** 6/17
**private [1]** 114/22
**probable [39]** 3/9 17/12 17/14 17/15 17/16 18/24 19/5 19/6 25/19 25/22 37/4 37/11 52/4 64/7 64/13 64/14 65/25 66/11 66/20 67/19 71/11 118/17 119/1 119/6 119/12 120/1 120/6 120/10 121/16 121/19 121/23 122/10 122/11 122/12 122/17 123/15 123/16 125/3 127/11
**probably [3]** 113/22 113/23 114/14
**problem [3]** 12/3 124/17 130/14
**problems [1]** 81/5
**procedure [6]** 2/3 63/23 66/12 94/19 118/3 118/7

P
**procedures [1]** 112/13
**proceed [1]** 88/25
**proceeded [3]** 11/9 60/25 61/8
**proceedings [2]** 121/4 134/13
**process [17]** 18/5 19/17 19/23 21/16 27/23 37/3 47/25 51/22 72/20 91/17 93/25 99/8 99/23 100/7 112/22 117/14 120/16
**processed [5]** 23/1 29/23 29/24 30/22 102/21
**processes [1]** 95/1
**product [1]** 34/17
**professional [5]** 2/4 6/14 52/2 135/5 135/20
**program [1]** 12/25
**Programs [3]** 3/12 13/10 76/14
**progress [1]** 6/19
**pronounce [1]** 11/23
**proof [6]** 49/23 78/15 78/18 79/21 81/20 85/5
**proper [6]** 63/23 64/3 67/25 104/11 118/3 118/25
**properly [3]** 21/8 21/10 64/2
**prosecute [2]** 30/2 30/23
**prosecution [8]** 32/19 73/19 74/6 74/18 99/14 99/22 101/4 102/11
**prosecutor [6]** 8/19 20/15 72/6 94/18 109/12 109/24
**prosecutor's [2]** 117/17 120/22
**prosecutors [2]** 94/16 96/7
**prove [4]** 47/25 117/3 117/17 117/21
**proven [1]** 46/11
**proves [1]** 70/14
**provide [6]** 48/20 55/1 89/21 106/10 107/5 118/5
**provided [29]** 25/5 25/15 26/12 27/15 31/16 34/15 34/20 48/22 49/11 51/18 51/20 52/12 52/24 54/15 57/3 61/5 61/6 61/24 89/24 89/24 91/6 91/6 91/9 92/1 93/3 106/9 107/9 107/13 112/25
**providing [1]** 72/19
**public [5]** 8/7 8/20 100/25 135/5 135/21
**purchase [2]** 68/20 101/24
**purchased [2]** 64/1 65/20
**purported [1]** 86/15
**purpose [2]** 67/23 71/23
**purse [1]** 62/6
**pursuant [4]** 2/2 33/22 58/2 122/1
**purview [4]** 20/16 33/11 93/24 122/24
**put [9]** 14/2 25/24 32/8 84/19 86/8 86/9 86/19 86/19 103/21
**putting [1]** 92/23

Q
**qualified [1]** 47/10
**question [36]** 9/12 17/20 28/12 28/12 33/2 35/14 35/15 36/21 38/19 39/16 39/25 42/2 44/7 44/11 45/15 46/25 47/14 49/4 49/20 53/5 61/21 68/14 69/14 69/22 69/24 70/8 74/2 75/15 79/6 88/15 92/9 96/5 114/23 123/2 125/21 129/21
**Questioned [2]** 3/13 76/15
**questions [4]** 63/11 79/9 106/25 108/10
**quick [2]** 102/5 118/16
**quote [1]** 108/23
**quote/unquote [1]** 108/23

R
**RA [1]** 114/3
**Racine [1]** 6/6
**rather [2]** 128/10 129/16
**re [4]** 3/22 28/20 33/1 48/7
**re-read [3]** 28/20 33/1 48/7
**reach [2]** 54/24 103/11
**reached [3]** 69/4 103/2 103/13
**reaching [1]** 103/6
**reactions [1]** 77/4
**read [16]** 13/14 25/13 28/20 28/22 33/1 33/3 39/3 39/5 42/8 42/10 48/7 48/9 61/25 99/17 105/14 107/2
**Reader [1]** 4/13
**ready [1]** 131/6
**real [2]** 44/6 118/15
**reality [1]** 125/2
**really [9]** 16/9 19/12 42/9 62/11 80/3 108/8 128/12 132/19 132/19
**Realtime [2]** 2/5 135/20
**reason [5]** 9/13 59/17 62/13 64/4 87/12
**reasonable [1]** 127/1
**reasoning [1]** 19/19
**reasons [4]** 61/19 99/15 103/3 103/7
**recall [17]** 56/6 62/2 62/3 62/18 76/6 98/2 104/6 106/4 107/17 113/22 113/24 114/21 115/5 115/11 115/15 116/15 118/14
**Receipts [1]** 4/4
**receive [7]** 6/2 10/7 26/8 28/13 66/3 104/3 113/20
**received [33]** 10/5 11/3 16/10 21/4 21/9 21/15 22/1 22/11 24/8 36/11 37/8 37/23 38/14 38/22 38/25 49/13 49/14 52/16 54/5 57/11 65/7 65/7 65/9 65/18 65/21 65/24 67/1 67/11 109/12 113/18 114/10 126/4 130/21
**recently [1]** 63/25
**recognize [8]** 75/24 105/13 105/14 110/4 111/11 113/17 114/25 115/15
**recollection [4]** 10/4 12/20 98/25 105/22
**recommendation [1]** 19/18
**record [14]** 5/13 5/15 5/16 23/2 28/22 33/3 42/10 48/9 80/19 85/23 86/1 87/22 87/24 134/6
**recorded [5]** 108/3 108/4 108/6 114/3 114/12
**recording [2]** 114/6 133/20
**records [14]** 3/7 22/11 24/18 27/15 34/16 37/4 46/14 46/15 66/10 71/7 93/17 93/20 102/14 102/15
**red [3]** 70/23 132/7 132/8
**redacted [1]** 87/21
**refer [12]** 8/3 9/20 13/6 24/6 42/19 43/4 51/4 51/8 55/7 57/9 63/5 101/13
**referred [2]** 13/3 48/25
**referring [10]** 11/12 23/22 31/10 37/13 49/1 52/19 75/14 82/24 83/12 97/13
**refers [2]** 100/19 114/1
**reflected [1]** 115/9
**refresh [2]** 98/24 105/21
**refreshes [1]** 10/3
**regard [1]** 104/14
**regardless [1]** 117/15
**regards [3]** 68/20 99/2 108/15
**registered [5]** 2/4 14/18 14/19 135/4 135/20
**regular [4]** 16/23 100/5 109/23 109/24
**reimburse [1]** 45/19
**reimbursement [10]** 24/4 24/15 24/17 24/20 25/4 25/8 25/17 27/6 64/23 97/10
**reimbursement/advance [1]** 64/23
**reimbursements [1]** 83/24
**relate [1]** 30/4
**related [3]** 30/11 69/19 72/1
**relates [9]** 7/16 16/22 30/5 32/8 39/15 41/4 52/18 109/22 131/22
**relationship [1]** 8/17
**relative [2]** 135/11 135/12
**relatively [1]** 54/14
**release [4]** 57/10 63/20 120/13 120/23
**relevant [3]** 14/7 15/23 103/19
**relieve [1]** 125/13
**relieved [1]** 124/21
**relieves [1]** 126/1
**remark [1]** 97/6
**remember [7]** 6/3 38/9 55/4 102/22 105/23 118/13 129/21
**removed [1]** 76/4
**repaid [2]** 49/17 49/22
**repay [1]** 49/18
**repayment [1]** 83/25
**rephrase [3]** 16/16 28/19 58/22
**replacement [2]** 98/23 101/11
**report [37]** 3/4 3/8 3/10 4/6 10/2 11/16 12/6 12/21 13/6 21/8 21/10 21/14 24/4 24/15 24/17 24/20 24/24 24/25 25/4 25/9 25/13 25/17 31/1 42/19 57/17 63/5 67/18 68/4 86/10 94/5 94/8 97/10 97/13 113/18 130/24 131/5 131/6
**reported [3]** 1/22 48/2 53/14
**reporter [9]** 2/4 2/5 28/23 33/4 42/11 48/10 135/5 135/20 135/20
**reporting [3]** 16/10 26/8 92/23
**reports [10]** 9/20 16/24 41/25 55/5 55/7 56/1 88/23 89/3 89/25 101/13
**representation [2]** 86/4 86/21
**representations [1]** 86/12
**reputable [1]** 69/12
**request [3]** 48/12 51/12 94/12
**requested [7]** 28/22 33/3 42/10 48/9 48/23 50/24 118/5
**requests [3]** 64/23 115/2 117/3
**required [4]** 31/7 31/22 31/24 55/13
**requirement [1]** 32/20
**requirements [1]** 16/10
**requires [2]** 32/18 111/25
**reside [1]** 5/9
**residence [6]** 61/3 61/4 61/8 71/12 71/22 72/1
**resources [2]** 84/2 110/6
**respect [6]** 10/4 16/18 45/6 58/25 108/12 108/13
**respectfully [1]** 48/12
**response [1]** 62/1
**rest [1]** 50/21
**result [2]** 99/14 113/3
**retirement [8]** 32/9 33/18 78/9 78/11 79/12 81/6 82/25 84/2
**retract [1]** 100/15
**review [7]** 66/5 72/25 79/16 95/25 96/2 98/20 98/22
**reviewed [10]** 8/19 8/20 25/6 66/7 74/12 94/24 95/19 96/2 120/18 120/21
**reviewing [2]** 94/8 99/12
**revise [1]** 100/13
**rid [1]** 132/4
**right [58]** 5/15 7/24 9/19 11/17 11/17 13/8 14/21 20/25 23/7 23/14 24/10 24/12 29/5 35/2 36/1 44/8 51/23 58/15

**R**

**right... [40]** 68/9 72/23 75/2 78/4 81/13 82/17 84/12 84/24 88/9 88/16 88/19 88/21 91/22 92/2 92/18 97/20 98/5 99/20 100/4 105/17 110/20 111/4 111/24 112/14 120/2 121/1 121/5 121/5 121/10 121/13 122/9 124/11 124/16 125/20 126/18 128/1 128/15 129/1 129/6 131/4
**rights [3]** 63/13 63/14 89/17
**ring [1]** 134/2
**rise [1]** 78/10
**Robert [1]** 63/7
**robust [1]** 117/14
**role [1]** 25/18
**Roo [4]** 1/22 2/4 135/4 135/19
**roughly [1]** 65/2
**roundabout [1]** 39/3
**RPR [1]** 1/22
**Ruhamah [1]** 54/16
**rules [7]** 2/3 21/12 34/9 55/2 55/12 70/23 126/9
**rumors [1]** 103/20
**run [1]** 30/10

**S**

**safe [1]** 27/18
**safety [1]** 61/11
**said [59]** 11/1 12/19 13/19 13/20 17/4 18/7 19/5 21/15 25/14 30/1 32/24 38/21 38/21 38/24 39/1 41/17 42/9 42/18 42/20 43/17 44/25 46/6 46/8 46/9 52/6 52/21 54/6 55/23 57/8 58/7 60/21 62/15 68/22 69/4 70/21 72/19 75/16 77/22 79/5 81/4 81/22 91/13 92/16 95/15 96/2 96/3 118/13 120/1 121/16 122/8 123/12 124/14 127/8 128/5 128/6 128/23 131/24 132/12 135/14
**same [17]** 15/3 15/12 18/8 26/20 37/1 42/12 43/14 56/25 85/1 95/2 98/5 98/8 118/20 122/4 130/16 130/25 135/9
**Sarah [1]** 54/16
**save [2]** 76/3 124/12
**saved [1]** 76/1
**saw [4]** 104/6 128/7 128/9 128/11
**say [39]** 17/1 21/5 21/10 21/22 21/25 23/14 24/19 24/20 25/9 28/8 29/21 29/24 30/9 36/3 43/8 44/15 47/1 55/4 61/14 62/16 65/9 65/11 66/2 66/24 69/17 73/20 74/23 77/5 91/21 95/17 96/1 98/6 120/11 122/16 128/19 128/20 131/8 131/21 134/7
**saying [9]** 15/15 19/19 38/24 69/15 86/14 99/19 101/8 108/19 115/8
**says [29]** 22/25 23/9 23/15 24/14 25/25 26/2 26/18 31/6 31/20 34/15 57/24 65/12 72/9 74/11 92/6 94/10 97/17 99/25 104/10 104/17 108/16 110/9 111/23 111/25 112/12 112/19 114/3 116/25 117/25
**scapegoat [1]** 132/3
**Schedule [2]** 3/13 76/14
**school [3]** 6/5 6/6 6/10
**Schumacher [2]** 134/2 134/7
**science [2]** 6/1 6/13
**search [54]** 3/18 17/13 18/17 18/18 18/21 41/23 59/11 59/13 59/20 60/2 60/4 60/7 60/17 60/24 61/1 61/2 61/7 61/8 61/9 61/19 61/24 62/10 68/8 68/17 69/18 70/1 70/2 70/14 71/9 71/12 71/24 72/3 90/23 96/24 98/4 100/7 102/13 109/18 112/5 112/9 112/23 113/9 116/14 118/19 118/20 119/13 120/9 121/9 121/15 123/14 125/7 125/9 126/22 130/22
**second [15]** 34/15 43/20 53/11 54/13 54/22 57/2 73/3 74/11 80/16 80/25 87/23 94/9 105/4 111/2 131/15
**second-last [1]** 94/9
**secondhand [1]** 103/12
**secrecy [2]** 53/23 58/25
**section [1]** 83/4
**secure [2]** 124/4 125/8
**Security [7]** 33/19 77/19 77/24 78/8 78/11 79/13 83/1
**see [42]** 8/14 9/20 14/14 15/7 16/9 23/23 31/4 31/22 35/8 36/23 43/4 44/23 44/24 44/24 46/10 52/10 56/22 65/12 65/16 68/5 75/12 75/14 77/12 77/21 80/17 81/1 83/10 84/19 86/5 86/25 88/6 92/7 100/11 103/17 104/2 110/12 110/13 110/14 110/23 116/22 117/5 121/24
**seeing [2]** 107/21 110/18
**seek [2]** 94/15 96/6
**seekers [1]** 40/14
**seem [1]** 53/1
**seemed [1]** 19/10
**seen [10]** 14/15 22/7 38/11 89/2 104/5 114/20 115/14 115/16 115/20 125/12
**seized [1]** 70/1
**selected [1]** 86/23
**sending [1]** 106/7
**senior [1]** 57/9
**sent [3]** 88/18 111/19 113/3
**sentence [11]** 35/4 35/10 45/1 51/5 65/13 67/2 81/2 83/23 88/22 102/24 116/25
**sentences [4]** 77/17 81/1 81/2 82/16
**series [1]** 75/11
**serious [1]** 54/9
**serve [3]** 16/24 47/25 99/23
**served [2]** 60/4 120/9
**service [1]** 12/10
**services [4]** 6/23 7/18 113/19 114/15
**serving [4]** 3/5 14/16 68/17 93/25
**set [19]** 12/13 13/5 13/12 15/4 19/5 30/12 39/22 45/8 46/2 66/10 68/25 81/5 81/9 83/16 83/19 84/1 120/19 128/13 129/22
**setting [1]** 66/22
**settlement [2]** 69/3 104/12
**several [2]** 38/6 117/4
**shade [1]** 43/6
**shading [1]** 41/2
**Sharon [2]** 11/19 50/3
**she [190]**
**she's [2]** 54/7 103/1
**sheriff [1]** 5/19
**sheriff's [10]** 5/20 6/18 6/20 17/5 61/13 62/19 62/22 62/23 66/9 85/22
**sheriffs [1]** 60/25
**Ship [1]** 102/5
**shipped [1]** 39/2
**short [3]** 6/16 54/14 54/23
**should [9]** 17/1 18/7 18/10 26/14 40/9 50/17 50/18 56/12 112/3
**shouldn't [1]** 81/18
**show [4]** 9/25 88/4 106/2 115/12
**showed [1]** 93/18
**showing [11]** 14/13 22/6 64/11 75/10 76/11 77/10 105/12 106/12 106/13 111/10 114/19
**shows [5]** 21/23 26/11 27/16 49/12 86/2
**side [4]** 12/14 12/14 13/25 34/19
**signature [1]** 105/3
**signed [4]** 64/25 65/3 84/6 96/3
**significant [1]** 45/9
**similar [5]** 27/13 69/15 98/7 130/16 130/25
**simmer [1]** 19/20
**simply [2]** 63/12 129/17
**simultaneously [1]** 121/12
**since [5]** 6/14 29/23 30/1 70/8 120/1
**sir [3]** 48/12 54/19 66/18
**sit [6]** 20/6 20/25 32/21 46/1 85/10 120/12
**sitting [1]** 11/17
**six [28]** 11/13 11/15 12/6 15/11 15/14 15/18 25/21 26/6 27/13 31/17 31/17 31/18 38/5 40/10 41/21 54/6 55/20 70/17 107/15 126/5 127/4 127/6 127/15 130/16 131/1 133/1 133/2 133/5
**skipped [1]** 64/17
**small [1]** 60/21
**Smith [1]** 57/25
**so [134]** 6/9 7/4 9/10 10/7 11/6 13/23 14/9 17/11 17/12 18/6 18/13 19/3 19/19 20/6 20/25 22/20 23/5 24/1 24/22 24/23 25/11 25/17 26/10 26/14 27/9 27/17 27/19 28/6 30/3 30/8 30/18 31/18 31/20 34/11 34/20 35/24 36/6 36/16 37/7 37/20 39/1 39/2 40/5 40/15 41/10 44/2 44/4 45/19 45/20 48/6 49/18 50/2 50/17 51/11 51/18 52/2 52/21 53/8 53/21 56/12 58/17 58/22 59/1 59/7 59/18 59/20 59/25 60/2 61/4 64/2 64/4 65/18 66/15 66/19 67/25 69/8 70/24 71/7 73/20 77/3 78/5 78/19 79/2 80/2 80/23 81/18 84/8 84/16 86/11 87/2 87/9 89/18 90/17 91/20 92/13 92/15 94/6 94/17 97/1 97/24 98/20 98/24 99/11 99/19 100/18 102/11 102/13 102/17 107/20 109/14 110/12 112/1 112/3 112/12 112/24 115/1 115/5 116/8 117/16 117/19 119/5 120/9 120/25 121/25 123/15 123/16 124/18 125/20 126/9 126/11 126/17 130/25 132/18 133/1
**social [1]** 12/10
**sole [1]** 71/22
**some [34]** 12/22 12/23 13/6 15/7 20/23 42/25 45/16 45/18 50/18 53/16 53/21 54/5 55/18 55/23 59/17 60/21 62/21 68/7 71/13 75/23 88/19 93/20 93/23 95/17 98/15 98/20 99/3 101/22 110/5 111/3 112/2 115/7 115/9 130/24
**somebody [5]** 56/4 56/9 81/22 82/14 126/1
**something [9]** 25/22 34/14 44/25 55/8 58/18 76/4 80/2 101/24 121/21
**sometimes [1]** 48/4
**somewhat [1]** 109/11
**somewhere [3]** 56/8 66/9 96/19
**sorry [7]** 12/2 22/13 28/2 36/4 56/17 64/16 100/12
**sought [2]** 63/12 70/4
**sound [2]** 63/7 108/2
**sounds [2]** 63/8 99/5
**source [2]** 112/20 113/25
**Southeast [2]** 3/5 14/17
**SPARKS [1]** 2/15
**speak [8]** 16/21 37/20 54/2 59/2 59/3 62/11 62/11 63/2
**speaking [1]** 129/14
**specific [9]** 7/15 31/16 49/4 52/20 52/20 68/13

## S

**specific... [3]** 91/2 102/3 129/21
**specifically [7]** 17/4 18/4 60/10 71/15 82/22 114/11 129/19
**specify [3]** 37/19 38/10 39/11
**speculation [16]** 15/25 38/16 40/23 67/4 73/13 73/24 78/22 113/11 120/15 122/21 123/22 124/24 125/15 126/14 127/17 130/3
**Spell [1]** 11/22
**spells [1]** 33/17
**spend [5]** 45/18 50/6 50/8 50/21 118/4
**spending [3]** 26/3 26/5 26/19
**spoke [13]** 11/8 12/7 27/13 38/5 57/25 60/3 62/5 62/25 70/20 90/22 107/20 107/23 130/10
**spring [2]** 7/19 19/12
**spring/summer [1]** 19/12
**square [1]** 24/12
**SS [1]** 135/1
**Stacey [1]** 12/3
**Stacie [1]** 131/18
**staff [1]** 106/14
**stake [1]** 133/9
**stand [1]** 23/8
**standard [2]** 17/15 66/11
**standpoint [1]** 117/17
**stands [1]** 99/12
**start [3]** 14/24 23/25 94/23
**started [9]** 8/18 13/20 14/19 14/21 14/23 40/20 75/4 105/2 128/14
**starting [2]** 15/20 77/24
**starts [4]** 23/22 65/13 77/17 80/13
**state [10]** 2/6 6/16 13/17 34/5 59/25 78/8 79/3 104/21 135/1 135/6
**stated [33]** 13/9 13/11 24/2 25/2 26/6 26/6 35/5 35/11 35/21 35/22 37/14 37/15 47/4 50/2 50/23 51/5 51/10 52/7 55/10 56/20 63/2 68/17 69/2 69/13 71/5 107/7 108/24 127/6 130/24 132/1 132/3 132/5 133/24
**statement [23]** 3/9 28/15 28/18 30/7 36/16 38/17 48/14 52/20 58/21 64/15 66/21 67/19 71/1 78/6 78/12 79/2 79/3 79/17 79/19 84/4 85/3 91/20 100/3
**statements [14]** 25/20 43/7 43/14 70/16 80/6 89/10 89/22 90/1 93/6 93/7 93/8 93/15 95/18 132/15
**states [4]** 1/2 36/13 90/11 106/12
**stating [6]** 31/12 31/13 35/10 51/25 52/1 70/18
**statute [2]** 30/10 30/18
**statutes [5]** 33/23 34/6 59/25 86/9 104/21
**steal [3]** 45/11 49/18 49/21
**Steinle [2]** 1/18 2/11
**stenographic [1]** 135/8
**still [14]** 20/14 28/5 29/10 29/11 30/19 37/13 41/6 46/1 46/24 59/8 65/15 65/18 74/18 92/16
**Stone [8]** 11/20 13/18 50/2 50/3 50/3 50/19 50/23 51/5
**stopped [2]** 90/24 93/25
**stored [2]** 4/10 54/7
**stories [1]** 58/14
**story [3]** 39/3 43/14 130/17
**Street [2]** 1/19 2/12
**strike [2]** 9/1 48/6
**string [1]** 102/23
**stuck [1]** 103/2
**study [1]** 5/25
**stuff [6]** 71/9 102/25 111/3 112/3 114/11 116/8
**submitted [8]** 24/3 24/14 27/5 50/15 97/9 105/16 105/18 114/24
**subpoena [5]** 27/14 70/13 110/22 126/7 130/18
**subpoenaed [2]** 29/5 29/6
**subpoenas [8]** 29/2 37/3 41/23 90/22 91/11 92/11 100/7 112/22
**subsection [9]** 80/13 80/16 80/25 81/16 82/13 82/24 83/7 83/16 83/23
**subsequent [1]** 50/12
**such [5]** 18/18 23/2 43/7 118/6 135/13
**sue [1]** 69/3
**sued [2]** 69/2 69/10
**sufficient [2]** 73/9 122/16
**suggested [1]** 42/1
**summer [1]** 19/12
**sums [1]** 45/9
**supervisor [4]** 16/13 16/19 18/10 53/8
**supervisors [1]** 119/20
**supplemental [2]** 131/5 131/6
**supplementary [3]** 3/8 57/17 68/3
**supposed [3]** 111/23 118/1 118/11
**supposedly [2]** 32/8 39/2
**Supreme [1]** 90/11
**sure [28]** 7/25 9/11 12/5 16/16 26/22 28/24 51/3 58/5 62/15 62/16 62/17 72/16 98/2 98/17 102/17 103/15 103/16 104/4 105/5 105/6 107/1 108/2 108/9 110/7 117/7 117/19 124/16 129/19
**suspect [3]** 94/17 96/8 96/14
**suspect's [1]** 89/7
**switched [2]** 6/12 6/12
**swore [1]** 97/9
**sworn [5]** 5/3 78/6 79/2 79/17 79/19
**system [3]** 6/17 86/1 120/17

## T

**T-a-r-k-o-w-s-k-i [1]** 76/19
**table [1]** 79/9
**take [7]** 10/2 88/23 91/20 93/18 96/14 97/2 104/11
**takes [1]** 37/2
**taking [2]** 9/10 41/4
**talk [21]** 9/9 16/12 19/7 20/20 38/20 53/22 57/7 58/12 62/23 63/9 72/17 89/12 95/12 95/24 96/13 102/4 107/10 119/16 124/2 127/21 129/15
**talked [10]** 7/12 15/1 15/19 62/3 68/7 68/15 72/18 82/14 85/1 124/2
**talking [21]** 27/2 28/1 32/4 34/9 35/2 43/13 47/12 55/10 55/17 67/2 79/12 80/13 83/8 84/22 93/14 96/25 100/18 101/22 105/2 114/22 119/14
**talks [14]** 35/4 45/2 50/19 52/16 53/12 55/8 74/10 83/16 89/5 97/8 98/13 102/24 110/14 113/25
**tamper [3]** 121/8 122/6 123/17
**Tarkowski [3]** 57/6 57/7 76/18
**team [4]** 60/24 61/7 61/14 62/10
**Technology [1]** 110/6
**tell [40]** 5/7 6/19 8/10 8/16 10/3 10/25 12/18 15/12 16/11 18/10 18/12 18/14 21/22 26/3 32/23 46/8 49/6 60/8 60/12 61/16 61/17 61/22 68/11 71/3 73/2 73/7 74/5 75/1 88/13 90/20 91/3 93/4 95/15 109/17 113/13 118/4 118/6 130/13 130/14 131/10
**telling [11]** 16/6 41/14 41/21 48/6 59/21 81/18 117/19 130/12 130/16 130/19 133/13
**tells [2]** 23/7 58/17
**template [2]** 109/9 109/22
**tend [1]** 133/5
**term [6]** 32/6 70/18 74/17 74/23 74/25 75/5
**terms [2]** 19/22 40/8
**Terschan [2]** 1/18 2/11
**testified [7]** 5/4 9/5 22/20 46/5 94/22 100/14 133/19
**testify [1]** 79/3
**testimony [10]** 16/5 18/20 27/21 43/7 44/10 66/19 83/4 91/18 92/20 95/21
**than [10]** 30/17 55/9 94/20 108/24 110/22 116/15 121/14 129/16 130/5 130/25
**thank [3]** 105/8 110/9 110/21
**that [761]**
**that's [69]** 5/14 8/22 10/10 10/13 15/22 22/15 23/7 24/6 24/12 24/25 25/2 26/18 27/12 27/18 27/20 28/12 28/15 29/1 29/10 30/16 32/10 33/18 35/1 36/2 37/25 39/16 42/4 44/4 46/6 47/18 47/24 49/4 49/15 51/11 52/20 53/8 58/4 67/21 68/21 75/1 75/6 75/18 77/14 78/12 79/5 79/6 83/9 84/4 84/9 86/14 90/4 91/9 91/16 95/1 102/1 102/13 103/7 104/17 107/3 108/3 109/21 118/9 120/3 123/12 123/14 125/7 126/3 133/15 133/24
**theft [13]** 11/10 34/6 64/19 74/12 86/3 86/11 86/19 86/20 104/22 117/4 117/18 117/20 132/21
**their [25]** 12/16 12/18 15/7 16/4 16/7 21/14 33/11 39/14 41/3 41/3 41/10 41/13 56/2 57/11 60/14 60/23 70/24 82/10 107/22 116/4 128/14 130/9 130/11 130/14 133/7
**them [33]** 11/15 12/16 12/23 13/7 17/1 23/25 29/22 33/24 37/3 38/13 38/25 39/5 53/21 53/23 54/2 54/5 55/6 58/19 59/2 59/4 59/18 60/1 65/24 66/15 69/2 69/3 69/10 76/1 92/23 96/18 106/19 108/18 121/22
**then [58]** 6/9 6/12 7/18 8/14 10/11 11/9 11/21 13/15 19/21 23/21 24/13 25/3 27/2 27/4 27/5 31/20 35/4 38/19 43/13 50/19 52/5 52/16 53/11 55/23 58/11 60/22 61/8 61/24 62/8 62/9 62/10 62/19 65/13 71/8 72/21 75/5 76/19 82/23 83/22 87/20 88/21 90/24 96/5 97/17 100/9 100/23 102/24 112/8 112/19 117/3 117/24 120/19 127/7 130/17 130/18 130/21 131/17 133/12
**there [114]** 8/9 9/12 11/1 11/13 11/14 11/15 12/1 12/5 12/9 12/22 12/25 14/18 15/12 15/13 15/14 17/15 19/14 20/10 21/6 23/2 23/25 26/12 27/2 28/2 30/17 31/1 31/10 31/18 32/18 34/23 40/16 41/12 41/24 42/3 43/20 44/3 45/1 46/9 46/9 49/20 49/20 50/2 50/4 60/20 61/10 61/22 64/18 68/4 71/1 71/21 71/25 74/5 74/11 75/16 77/17 78/14 78/18 79/9

**T**

**there... [56]** 79/20 81/1 81/18 81/19 81/20 82/2 82/3 83/8 83/16 83/23 84/9 85/4 85/5 86/11 86/17 87/5 93/20 93/20 94/25 95/1 95/6 98/15 98/20 98/22 100/18 101/11 101/21 102/11 103/5 105/23 106/16 107/11 108/3 108/16 110/11 110/14 111/2 116/24 117/11 117/15 117/24 118/6 120/7 120/16 120/25 121/3 122/5 122/16 123/9 124/11 126/17 126/25 129/3 130/13 130/23 131/4
**there's [7]** 7/25 53/18 55/5 66/4 66/19 79/20 89/5
**therefore [7]** 26/10 28/6 45/20 71/10 71/21 120/9 126/9
**these [30]** 15/6 16/22 39/15 40/11 40/17 41/9 41/21 42/1 43/22 46/17 51/9 53/16 53/20 53/22 61/19 75/20 75/21 75/24 76/5 78/9 96/17 98/4 104/14 115/9 127/15 127/22 128/12 129/6 129/22 132/18
**they [82]** 12/16 12/18 12/19 13/4 13/25 14/7 14/7 15/2 15/4 15/19 16/23 16/24 16/25 17/4 17/23 20/16 21/4 30/1 32/13 32/15 32/17 32/24 38/24 38/24 38/25 39/1 39/1 40/19 40/19 41/2 41/17 44/22 44/23 44/24 44/24 49/11 49/13 49/14 50/21 51/20 52/16 53/21 54/25 57/10 58/13 59/2 59/5 64/24 65/7 65/20 70/21 74/19 74/20 74/20 74/21 74/25 75/1 75/5 75/17 75/23 75/25 78/24 82/9 82/10 82/11 86/19 86/23 93/3 98/4 103/6 107/21 108/19 110/23 120/5 121/24 122/15 123/12 128/14 130/6 130/19 131/3 132/19
**they'd [1]** 59/22
**they're [9]** 16/6 29/15 41/14 75/17 75/18 76/6 130/11 131/4 133/13
**thing [8]** 15/12 24/5 47/23 66/21 88/21 89/12 104/23 133/18
**things [17]** 26/7 53/22 55/21 69/15 71/2 88/19 92/13 93/4 93/24 96/12 102/10 105/25 112/14 115/9 117/12 117/14 120/25
**think [33]** 14/6 15/12 15/22 17/4 25/19 30/17 35/25 37/9 37/20 43/23 52/19 53/18 53/19 55/10 69/14 71/19 75/11 75/16 87/15 91/22 96/19 97/2 103/19 103/20 108/1 108/3 111/2 123/5 124/15 128/6 128/8 130/11 133/11
**thinking [1]** 36/5
**thinks [1]** 44/12
**third [7]** 97/7 104/7 112/19 116/24 116/25 123/4 131/17
**this [166]**
**thorough [1]** 100/25
**those [39]** 11/11 12/6 15/18 18/17 19/22 21/3 21/9 21/15 27/6 27/8 32/14 33/23 34/8 48/20 49/12 51/17 51/18 51/19 54/17 55/15 56/12 70/5 72/3 73/3 75/13 82/19 91/25 93/2 93/9 93/15 93/17 93/23 96/24 100/21 102/14 102/15 112/25 131/2 133/4
**though [8]** 9/6 25/12 33/13 44/6 65/19 67/10 76/7 114/13
**thought [9]** 27/23 45/16 45/17 47/18 51/22 68/19 82/16 82/19 125/22
**thousands [1]** 19/11
**threatened [1]** 69/3
**three [3]** 7/20 120/25 130/23
**three-week [1]** 7/20
**through [16]** 6/19 6/21 7/12 16/8 19/11 21/8 21/16 23/21 39/3 56/12 70/5 70/9 70/15 71/10 118/15 126/24
**throughout [1]** 100/6
**thus [1]** 100/2
**timely [1]** 78/9
**times [1]** 9/5
**tip [2]** 4/6 113/18
**title [3]** 76/19 105/14 116/1
**today [9]** 20/6 20/25 27/21 32/22 46/1 85/10 128/1 128/2 128/11
**together [1]** 14/2
**told [25]** 15/2 15/5 16/13 25/16 27/10 27/13 32/17 32/24 37/22 38/13 43/5 44/2 44/3 47/11 47/18 50/4 51/9 60/16 61/23 62/13 94/2 103/12 109/14 109/15 128/17
**Tom [2]** 96/9 119/12
**Tonette [3]** 101/25 102/25 103/11
**too [1]** 116/15
**took [12]** 17/11 43/23 46/2 46/16 54/8 65/25 81/7 91/22 93/21 94/7 98/23 101/14
**top [2]** 105/15 105/20
**total [1]** 32/10
**towards [3]** 52/3 132/25 133/11
**town [1]** 106/8
**trained [1]** 52/2
**training [5]** 7/9 7/14 7/15 7/17 7/25
**transactions [2]** 101/23 102/4
**transcript [3]** 4/11 4/12 135/9
**transferred [5]** 7/1 7/7 94/6 100/17 101/14
**translates [1]** 86/20
**transported [2]** 61/10 62/10
**tried [2]** 89/16 101/2
**Trisha [2]** 10/24 16/20
**true [29]** 14/3 22/18 23/16 27/18 27/24 35/16 36/2 36/18 36/25 41/18 47/12 47/17 65/21 67/12 71/8 76/21 79/17 80/3 90/12 90/18 92/7 100/5 124/13 124/22 125/13 126/2 130/20 132/22 135/9
**trust [1]** 123/11
**truth [8]** 16/6 40/15 41/14 41/22 101/3 130/12 130/15 133/13
**truthful [1]** 43/15
**try [8]** 29/2 40/20 41/3 62/11 108/17 109/19 112/18 114/7
**trying [6]** 20/20 34/14 53/20 76/3 106/24 113/6
**tshglaw.com [1]** 2/13
**Tuesday [1]** 10/8
**turn [4]** 48/12 90/8 124/13 129/16
**turned [2]** 34/18 125/9
**two [18]** 5/22 12/9 23/25 24/2 44/3 44/4 54/18 62/3 64/19 64/21 65/6 72/17 72/21 81/1 81/2 82/9 82/15 86/9
**two-year [1]** 5/22
**typically [1]** 122/13

**U**

**U.S [3]** 20/2 77/18 78/7
**Uh [1]** 56/15
**Uh-huh [1]** 56/15
**Ultimately [1]** 70/4
**unaware [1]** 81/8
**under [7]** 12/23 31/8 32/20 63/22 78/10 78/23 86/2
**understand [23]** 7/14 9/1 9/8 9/11 9/13 16/15 26/23 33/13 36/21 39/25 43/2 49/17 49/21 61/21 68/13 69/22 80/3 80/8 88/15 101/25 102/2 112/13 122/22
**understanding [3]** 9/18 53/16 94/10
**understood [2]** 12/8 128/18
**undertake [2]** 41/20 107/18
**unethical [2]** 108/20 108/23
**unfamiliar [1]** 55/19
**unfinished [1]** 109/7
**unfortunately [1]** 97/4
**unique [1]** 74/24
**Unison [8]** 15/4 30/12 39/22 40/21 41/5 46/2 63/3 68/25
**unit [5]** 8/7 8/8 8/15 8/21 94/6
**UNITED [2]** 1/2 90/11
**unlawful [1]** 70/12
**unlawfully [1]** 89/8
**unless [2]** 81/20 85/5
**unlikely [3]** 99/13 99/21 126/4
**unquote [1]** 108/23
**unreliable [2]** 40/18 40/19
**unsure [1]** 133/24
**unusual [2]** 71/17 71/19
**up [44]** 8/14 15/2 18/17 19/21 35/25 36/17 38/1 38/5 40/11 50/13 51/12 52/9 52/22 54/17 55/15 56/24 58/19 58/25 60/22 66/13 70/23 75/25 81/10 82/6 82/8 82/21 91/13 91/23 92/7 105/20 105/25 108/21 110/8 115/2 115/8 117/13 118/2 123/19 125/9 128/13 129/22 129/24 130/5 130/7
**upon [1]** 109/16
**upper [1]** 110/8
**us [9]** 17/24 23/7 48/16 71/11 73/8 99/7 99/23 102/11 126/6
**use [10]** 19/22 52/3 70/18 75/1 81/4 81/13 84/3 98/3 98/6 102/12
**used [13]** 4/13 8/15 44/5 45/2 62/18 75/5 81/12 87/2 87/7 99/21 123/15 132/2 133/22
**uses [1]** 74/18
**using [4]** 45/21 74/25 109/9 118/2
**usually [2]** 94/23 129/12
**UW [1]** 6/11
**UW-Parkside [1]** 6/11

**V**

**V-e-v-e-t-t-e [1]** 11/20
**V-o-j-v-o-d-i-c-h [2]** 12/4 131/19
**vague [3]** 15/9 35/17 49/9
**value [2]** 86/13 87/5
**Van [4]** 1/22 2/4 135/4 135/19
**vanrooc [3]** 1/22 2/5 135/21
**verified [1]** 130/19
**verify [2]** 34/14 48/13
**versus [1]** 17/16
**very [6]** 54/9 54/9 54/22 72/16 117/14 129/12
**Vevette [2]** 11/14 11/20
**via [1]** 106/9
**viable [1]** 99/14
**violate [1]** 32/14
**violated [4]** 32/15 32/24 34/8 126/8
**violating [1]** 20/3
**violation [5]** 26/9 28/6 49/15 104/20 104/21
**violations [1]** 70/22
**Virginia [3]** 60/14 61/17 62/4
**Vojvodich [3]** 12/3 13/21 131/18
**Vojvovich's [1]** 132/15

**W**

**w-a-n-t-a [1]** 131/16
**W-i-d-g-e [1]** 131/13
**W-o-o [1]** 115/25
**Wagner [1]** 57/5
**wait [2]** 32/15 100/10
**waited [1]** 60/14

**W**
**walk [1]** 66/13
**walked [1]** 70/10
**Walker [3]** 101/25 102/25 103/11
**want [26]** 9/10 10/2 20/16 24/5 38/8 39/5 40/4 48/24 54/13 55/4 58/24 58/25 59/8 60/1 70/18 74/19 75/19 87/11 89/12 99/6 100/13 101/20 104/23 105/6 107/1 120/6
**Wanta [5]** 131/16 131/21 132/11 132/12 132/12
**wanted [11]** 24/12 48/3 63/2 64/2 64/24 73/8 102/11 108/9 114/7 117/22 124/15
**wants [1]** 88/18
**warrant [33]** 17/17 19/4 59/13 60/2 60/4 60/8 60/17 60/24 61/3 61/24 68/17 70/2 70/14 71/9 71/12 71/24 90/23 94/19 94/23 102/14 112/6 112/9 113/9 118/21 119/3 119/13 120/9 122/1 123/14 125/7 125/9 129/8 130/23
**warrants [29]** 3/18 16/25 17/3 17/8 17/13 18/8 18/11 18/17 18/21 41/23 61/20 68/8 69/18 94/11 94/16 96/7 96/10 96/11 96/24 98/4 100/8 109/18 112/23 118/19 118/20 119/7 121/10 121/15 126/23
**was [324]**
**washing [1]** 45/20
**wasn't [16]** 12/5 15/13 19/14 28/2 72/16 87/21 98/20 98/22 102/18 102/18 108/8 112/5 113/7 114/10 118/22 120/20
**Water [2]** 1/19 2/12
**ways [1]** 95/2
**we [123]** 5/13 7/4 9/10 17/9 17/11 17/12 17/13 17/22 18/17 19/22 19/23 21/16 21/19 21/22 21/24 22/1 27/14 28/24 29/1 31/25 32/1 37/4 37/8 37/8 37/11 40/4 40/13 43/12 43/17 43/17 45/25 47/24 48/3 54/2 54/5 54/24 55/6 56/25 57/11 59/13 60/13 60/14 60/15 60/16 60/19 60/22 60/24 61/2 61/3 61/4 61/4 61/8 61/13 61/23 61/24 62/5 62/12 63/10 63/10 63/13 63/16 63/18 63/22 63/24 64/2 64/6 67/2 68/16 68/16 68/17 69/25 70/13 70/13 70/16 71/7 71/21 72/2 72/3 72/18 73/17 80/9 84/19 84/22 85/1 88/22 90/22 90/22 90/23 90/24 91/10 91/16 91/17 92/21 93/24 95/16 95/25 96/10 98/17 99/12 99/15 102/7 102/13 104/23 105/2 109/15 109/18 109/18 109/23 112/2 112/16 114/13 118/25 120/6 121/11 121/11 123/15 123/15 123/16 124/16 125/3 125/4 129/12 130/10
**we'll [2]** 19/7 106/1
**we're [11]** 9/8 28/24 40/14 46/24 58/22 61/17 80/24 96/24 99/19 101/8 118/16
**we've [4]** 7/12 9/25 48/22 55/9
**week [2]** 7/20 94/13
**weeks [1]** 18/16
**well [24]** 19/7 26/18 28/8 28/11 38/19 42/22 45/8 49/20 61/22 64/4 69/13 70/24 75/16 81/12 93/6 94/22 96/9 99/3 102/4 108/16 110/8 115/7 119/6 130/10
**went [10]** 6/21 16/8 28/13 51/22 60/8 60/13 60/22 62/8 62/9 81/3
**were [101]** 10/18 11/10 12/6 12/13 12/17 12/19 12/22 12/22 14/7 14/8 15/4 15/15 16/11 16/13 16/25 19/22 19/23 19/24 21/15 23/25 28/25 32/1 32/3 37/23 37/24 38/13 38/21 38/25 39/1 40/17 41/21 43/14 45/5 47/12 47/21 48/18 49/11 51/9 51/18 51/20 53/20 55/11 60/7 60/20 60/23 61/12 61/19 61/22 62/6 62/12 62/13 64/19 65/5 65/7 65/20 67/2 68/16 68/17 69/11 70/1 70/18 70/21 75/23 76/3 81/7 84/22 86/18 89/14 89/16 91/16 92/21 92/24 93/3 93/8 93/9 94/12 95/4 95/18 96/10 97/19 102/7 103/5 103/5 103/6 103/21 108/3 108/19 109/9 112/25 115/9 117/10 117/12 119/7 125/6 127/22 128/13 129/8 129/14 130/6 130/19 131/3
**weren't [3]** 50/21 63/18 108/7
**Westphal [1]** 102/23
**what [167]**
**what's [26]** 5/11 5/21 6/14 14/13 22/6 27/22 35/14 36/3 49/1 57/16 64/11 67/17 67/23 75/10 76/11 77/10 84/12 85/21 88/4 102/1 102/25 105/12 109/6 111/10 111/14 114/19
**what-if's [1]** 125/2
**what-ifs [1]** 125/18
**whatever [3]** 16/14 70/17 117/12
**whatsoever [4]** 46/16 79/24 85/10 85/11
**when [43]** 6/2 7/4 8/3 9/20 10/4 10/7 10/10 10/14 10/15 10/18 11/6 12/9 13/15 18/14 21/10 21/22 28/1 29/21 29/24 36/16 37/21 47/12 51/22 60/7 60/15 65/25 66/22 74/19 75/4 76/23 92/15 95/25 96/3 103/8 104/2 104/18 113/8 118/1 129/12 129/14 131/6 133/6 133/11
**where [23]** 5/9 6/5 12/16 12/18 13/17 14/7 20/4 21/3 38/25 39/1 60/23 65/12 72/13 78/1 78/3 92/4 92/24 94/24 99/12 102/1 110/18 120/17 128/14
**Whereupon [1]** 134/13
**whether [21]** 12/12 13/2 20/16 27/12 31/23 35/15 41/21 44/18 47/20 49/20 52/22 53/3 58/20 89/7 93/21 108/22 114/23 117/9 117/20 126/25 132/21
**which [15]** 6/23 18/2 26/9 27/15 54/19 66/7 66/10 80/15 81/11 84/23 86/18 86/20 97/13 102/10 120/18
**while [3]** 19/20 37/2 94/12
**whistleblower [3]** 31/12 31/15 101/1
**whistleblowers [1]** 31/19
**white [2]** 7/16 8/15
**who [46]** 10/21 11/11 13/3 16/19 18/7 20/10 21/18 21/25 22/12 27/13 31/9 31/15 37/17 38/8 39/5 44/18 50/15 52/1 54/6 55/3 55/4 55/23 56/6 56/13 61/6 63/4 70/21 75/20 76/16 91/13 91/20 94/2 94/4 94/7 98/23 101/12 101/14 103/11 103/14 114/1 119/16 126/6 127/6 127/8 131/2 131/25
**who's [4]** 10/23 29/16 43/17 128/25
**whole [3]** 47/23 106/21 107/2
**whose [2]** 12/13 110/24
**why [37]** 5/14 19/16 21/5 23/10 29/1 29/11 40/3 43/21 44/4 44/12 47/24 47/25 48/4 59/3 61/22 63/17 63/20 71/3 72/5 75/17 82/6 86/19 86/23 87/14 87/20 87/21 88/13 91/16 102/5 102/13 103/7 106/7 118/19 121/24 122/18 123/2 123/8
**Widge [2]** 131/11 131/12
**wife [1]** 103/1
**willingly [1]** 82/17
**WISCONSIN [12]** 1/3 1/19 2/7 2/12 2/16 3/5 6/16 14/17 34/6 135/1 135/6 135/16
**within [4]** 30/19 37/24 82/10 122/17
**without [6]** 13/14 66/6 94/8 104/15 118/23 120/13
**witness [15]** 2/1 5/2 15/14 23/20 44/19 44/21 44/22 72/8 74/9 91/20 91/24 104/9 114/9 131/17 133/2
**witnesses [41]** 11/10 11/11 12/7 13/1 15/11 15/15 21/13 24/7 24/11 25/21 26/6 27/13 31/18 38/5 40/17 41/24 41/25 43/13 45/17 51/25 54/6 55/20 63/25 70/17 71/5 90/22 91/10 91/13 91/24 95/18 126/5 127/6 130/16 130/22 130/24 131/2 133/1 133/4 133/6 133/7 133/9
**witnesses' [1]** 133/3
**woman [7]** 32/22 53/3 58/5 58/6 124/21 125/11 126/23
**women [16]** 12/12 13/3 15/1 15/6 15/19 40/10 41/21 42/1 53/17 53/20 107/15 127/15 127/22 128/12 129/22 132/18
**Woo [1]** 115/24
**Woo's [1]** 116/5
**Wood [18]** 11/19 13/17 37/14 37/16 42/16 47/1 47/18 50/20 68/12 68/24 69/2 69/12 106/5 115/13 129/5 129/14 132/1 132/3
**Wood's [3]** 47/11 106/3 108/13
**Woods [1]** 68/19
**word [3]** 44/5 98/6 99/21
**words [7]** 27/6 27/8 31/2 47/10 58/21 62/18 122/13
**work [10]** 7/12 15/3 29/19 47/10 71/6 71/9 71/18 94/14 96/6 109/21
**worked [11]** 6/16 6/17 6/24 7/2 8/8 8/24 10/16 13/17 13/18 13/21 13/21
**working [8]** 12/22 13/5 13/9 13/11 71/2 94/12 96/9 100/5
**works [2]** 8/17 55/19
**world [1]** 41/12
**worth [1]** 92/10
**would [97]** 7/23 9/20 12/20 13/6 14/21 17/9 17/10 20/10 23/19 26/7 26/10 26/23 26/24 27/17 28/20 30/25 34/21 35/9 40/19 41/11 42/19 42/24 43/4 43/7 43/19 45/18 45/18 46/23 47/8 48/12 49/25 50/22 51/3 51/8 54/4 54/22 55/6 55/20 57/9 57/10 60/2 60/5 60/16 63/5 68/3 71/18 72/7 72/19 73/18 74/2 74/2 74/6 75/19 77/16 80/12 81/15 83/22 86/15 87/2 90/3 94/23 94/24 96/2 98/6 99/3 101/13 102/12 102/15 104/7 106/20 108/16 109/18 109/18 113/1 114/11

W

**would... [22]** 117/1 117/15 120/12 120/17 120/21 121/6 121/21 121/21 121/25 122/24 124/21 125/11 125/13 125/24 127/18 129/20 129/23 129/24 129/24 130/7 130/14 132/18
**wouldn't [7]** 11/23 19/22 45/11 55/1 98/6 120/5 129/18
**writing [3]** 24/25 25/15 51/9
**written [2]** 34/23 129/17
**wrong [6]** 22/14 59/17 82/18 91/15 92/23 133/25
**wrote [6]** 21/7 27/9 27/25 35/22 47/6 52/21

Y

**yeah [18]** 35/13 39/15 50/14 69/7 82/2 84/19 87/14 87/17 87/19 97/15 100/15 105/16 106/5 107/1 107/1 111/5 114/23 128/25
**year [9]** 5/22 6/3 6/7 6/11 7/4 7/18 100/8 100/10 100/15
**year's [1]** 92/10
**years [8]** 6/18 7/1 7/3 7/13 13/11 13/22 30/18 74/25
**Yep [2]** 24/12 54/21
**yes [110]** 7/11 8/23 9/7 9/15 11/23 12/11 14/1 18/23 19/1 21/21 22/8 22/19 22/24 23/4 23/17 23/24 25/23 26/6 27/22 30/24 31/5 32/2 35/3 37/7 37/9 42/13 43/12 47/7 47/23 50/18 51/25 52/11 53/10 55/25 56/5 56/16 56/17 56/23 57/19 57/22 58/3 58/10 58/16 60/19 61/13 62/22 63/8 64/20 64/23 66/18 66/23 67/13 67/22 68/6 68/10 73/1 76/22 77/13 77/15 77/23 78/13 78/17 79/23 80/1 83/2 83/11 84/5 84/25 85/8 86/6 86/14 87/4 88/10 88/12 90/6 90/10 90/13 90/19 93/3 95/1 95/8 95/11 95/14 97/5 97/12 97/21 99/18 100/22 101/7 104/17 105/7 105/19 107/20 110/13 112/22 115/21 116/23 119/15 121/2 121/18 124/5 124/9 124/14 126/17 128/21 129/9 134/3 134/3 134/4 134/9
**yet [1]** 125/12
**you [623]**
**You'd [1]** 114/13
**you're [31]** 7/4 8/10 11/11 13/15 18/8 19/19 25/11 31/10 32/4 34/9 35/2 47/2 48/6 52/5 62/16 62/16 78/3 79/11 81/21 82/24 83/8 92/15 92/16 92/17 97/13 101/8 106/23 110/18 111/23 125/20 131/6
**you've [15]** 8/24 9/2 9/5 13/23 23/5 29/5 29/6 29/7 30/3 34/23 44/6 46/14 79/13 107/2 124/2
**Young [1]** 11/14
**your [84]** 5/7 5/21 6/9 6/14 6/19 7/12 8/10 9/2 10/1 10/3 11/7 12/21 14/21 14/23 15/23 16/5 16/19 18/10 18/20 19/9 19/15 21/19 22/22 24/24 25/18 25/24 27/6 27/20 27/23 31/1 32/7 33/1 33/13 34/22 40/7 50/3 51/22 53/8 53/23 57/17 58/2 58/25 59/1 60/6 64/12 68/3 72/1 72/22 77/4 77/14 78/6 79/2 79/11 79/17 79/19 80/2 83/3 84/24 85/3 87/11 88/16 88/23 89/2 90/3 90/17 92/5 94/11 97/2 97/8 98/24 100/23 105/2 105/3 105/21 109/10 109/21 110/9 113/20 114/11 126/12 128/6 129/11 129/25 131/3
**yours [2]** 14/23 80/18

Z

**ZACHARY [1]** 2/15
**zflood [1]** 2/17

EXHIBIT 12
WIT: Conte
DATE: 4-29-22
Carla Van Roo, CRR

# Milwaukee County Sheriff's Office — Incident Report

| | | | |
|---|---|---|---|
| Incident: Fraud | | | |
| Incident Report Number: 18-127890 | Between: Date - Time 7/1/17 00:00 | And/At: Date-Time 7/1/18 00:00 | |
| Incident Location: 821 W State St, Milwaukee, WI, 53233 | | | |
| 2699 | | | :-4: |
| | : | | |

| | | | |
|---|---|---|---|
| V | Name (Last, First, Middle): Milw County, | DOB: | Race/Sex |
| Address: (Address, City, State, Zip) 901 N 9th St, Milwaukee, WI, 53233 | | | Home Phone Number |
| Employer | | | Work Phone Number |
| Employer Address | | | Cell Phone Number |
| | Name (Last, First, Middle) | DOB: | Race/Sex |
| Address: (Address, City, State, Zip) | | | Home Phone Number |
| Employer | | | Work Phone Number |
| Employer Address | | | Cell Phone Number |

SUMMARY

City of Milwaukee, County of Milwaukee.

Laurene G. Lambach, (F/W,[redacted]).

Theft by Fraud 943.20(1)(d).

| | | | | |
|---|---|---|---|---|
| | Vehicle Information: (Year, Make, Model, Style, Color) | | | |
| License Number: | State: | Expiration Year: | Vin: | Insurance Company: |
| Other Vehicle Information: | | | | NCIC# |
| Reporting Officer(s): Conte, Det Brian L. | | | [redacted] | Report Date: 10/09/2018 |
| Time Received: 13:29 | Time Cleared: 13:29 | Unit(s) Assigned: 134 | Pages: | 1 Of 26 |
| Reviewed by: | | [redacted] | Copy To | |

Date: 10/09/2018

CF

2699

Incident Report Number: 18-127890

CONFIDENTIAL

Def. Prod. 000001

**NARRATIVE**

On Tuesday, August 28, 2018, I, Detective Brian Conte # D-35, was assigned to Milwaukee County Sheriff's Office, Police Services Bureau, Criminal Investigations Division, as Squad # 134, in an un-marked Sheriff's squad, vehicle # 114-238, and in plain clothes when the following occurred in the City of Milwaukee, County of Milwaukee:

I was assigned by Lieutenant Tricia Carlson, Squad # 103, to investigate a report of Theft by Fraud of Milwaukee County, State of Wisconsin and United States (US) Grant Funds that occurred approximately between July 2017 and July 2018 by Laurene Lambach, the Chief Executive Officer (CEO) for S.E.T. Ministry, Interfaith Adult Older Adult Programs and Unison MKE in the City of Milwaukee and County of Milwaukee.

I was informed that several "whistle blower" witnesses complained to the Milwaukee County, Office of Comptroller, Audit Services Division. I was informed that Milwaukee County Audit Forensic Manager Matthew Hart opened a Milwaukee County Fraud Investigation.

**Victim:** County of Milwaukee, 901 N. 9th Street, Milwaukee, W 53233. To include the Milwaukee County Department of Aging and Milwaukee County Comptroller's Office.

**Victim:** State of Wisconsin, 2 E. Main Street, Madison, WI 53707.

**Victim:** Corporation for National and Community Service (CNCS) - Wisconsin State Program, 517 E. Wisconsin Avenue, Milwaukee, WI 53202.

**Offender:** Laurene Lambach, (F/W, [redacted]), 16901 W. Homestead Dr., New Berlin, WI 53151. Alias Names: Laurene L. Gramling & Laurene G. Laehn.

On Tuesday, August 28, 2018, I met with Audit Forensic Manager Matthew Hart from the Milwaukee County Office of Comptroller, Audit Services Division. Hart informed me that the Audit Services Division (ASD) received an anonymous complaint that Laurene Lambach was defrauding the government and falsifying her reimbursement reports for several government grants to include a Milwaukee County Grant.

Hart provided me with a summary of his ASD investigation of the claims of fraud. Hart outlined that the three business parties were the following Non-Profit organizations: S.E.T. Ministry, Interfaith Older Adult Programs and Unison MKE.

Interfaith Older Adult Programs (Interfaith), is located at 600 W. Virginia Street, Suite 400, Milwaukee, WI 53204 and was previously in Suite 300.

Payroll Number :

S.E.T. Ministry was located at 2977 N. 50th Street, Milwaukee, WI 53210. Additional office at 1818 W. Juneau Avenue, WI 53233.

Unison, MKE is located at 600 W. Virginia Street, Suite 400, Milwaukee, WI 53204.

Interfaith is a non-profit corporation that contracts the several government entities to include the County of Milwaukee Department of Aging. It provides various services to senior citizens in Milwaukee County. The current Interfaith CEO is Laurene Lambach. Interfaith contracts with S.E.T. Ministry.

Interfaith is merging with S.E.T. Ministry to form a new non-profit called unison MKE. Lambach is the current CEO of S.E.T. Ministry and became the CEO of Unison MKE. The merger was supposed to be complete by July 1, 2018.Interfaith hired Lambach to become the Executive Director in 2017 on a contract basis. Witnesses report that Lambach has near complete control of S.E.T. Ministry's.

Per Wisconsin Court records (CCAP), Waukesha County Case # 2018TW000337 for Lambach is a Tax Warrant case with the Wisconsin Department of Revenue (WI DOR). Per CCAP records Lambach owed $ 17,318.07 to the WI DOR.

Through a database search by me later revealed that Lambach recently purchased a home in Fort Myers, Florida for approximately $700,000.

Hart informed me that ASD received a complaint about Laurene Lambach on April 15, 2018. The complaint stated that on January 22, 2018 Lambach submitted a fraudulent reimbursement report for December 2017 for Interfaith's Family Caregiver Support Network Program (FCSNP). The grant was being underspent and Lambach falsified Interfaith's costs and spending to receive the full grant amount.Hart informed that the Milwaukee County grant contract number is 251-417-52. Hart also informed me that the grant funding comes from Title III E of the Older Americans Act (federal).

Hart informed me that the witnesses reported that Lambach placed an order online for computers, printed out the order confirmation and then later let the order be cancelled or not filled. Lambach then submitted the order amount for reimbursement.Hart provided background information on county contract # 251-417-52. The contract was between Interfaith and Milwaukee County Department of Aging and provided funds for the Family Caregiver Support and Alzheimer's disease Direct Services for the year 2017. The federal government provides 55.7% of the program funding.

Hart informed me that under section 9 there is supposed to be a 25% match for funding provided through the National Family Caregiver Support Program (NFCSP). He informed me that the Wisconsin Department of Health Services receives the program funds from the federal government and the state disperses the funds to local

agencies for programs.

Hart stated through Milwaukee County Department of Aging records the county received a December 2017 Reimbursement/Advance Request for FCSNP from Interfaith for $ 44,852. The report was signed by Laurene Lambach. The final Grant Expenditure Report (GER) for FCSNP was signed by Laurene Lambach on January 22, 2018. The GER included $ 4,958 in equipment costs.

Hart informed me that Milwaukee County Audit Services Division (ASD) received records from the informant/witness that included a Dell computer order confirmation for a December 31, 2017 order for approximately $ 17,000 worth of laptops, computer monitors, docking stations, laptop bags. The order was made by Laurene Lambach.

Hart informed me that a note assigned five (5) computers to FCSN, totaling **$ 11,281.39** and two (2) to "DVEd" for $ **4,512.55**. "DVEd" refers to State of Wisconsin Domestic Violence education grant. The estimated order delivery date was January 5, 2018.

The computers were ordered from Dell, Inc. computer purchase ID # 2006789027047. The payment method was a Dell Business credit account ending in 0747. The order was supposed to be shipped to Technology Resource Advisors, 320 E. Buffalo Street, Milwaukee, WI 53202. The order was billed to Laurene Lambach at S.E.T. Ministry at 2977 N. 50th Street, Milwaukee, WI.

Hart stated that the informant learned that the Dell computers were never delivered and the order was cancelled. The informant also provided a copy of a January 1, 2018 e-mail from Lambach to Jodi Bauer, an Interfaith employee, that Lambach describes three additional accruals for FCSN totaling $ 36,495.79 and $ 11,495.79 for equipment. The equipment figures match the Dell computer order and other purchases from Amazon for five surge protectors and keyboard / mouse combinations.

The informant indicated that Lauren Lambach falsified the matching funds required on the grants. One of the informants is Sharon Stone. Hart stated he also had contact with Interfaith employee Jodi Bauer. I was informed that all of the informants are scared of Laurene Lambach and stated she monitors employee emails.

Hart informed me that an ASD review of the DocuSign website utilized by Milwaukee County for contracts that were electronically signed by Lambach show her using an IP address of [redacted]. An open search showed the IP address used by AT&T. The signed in feature shows that coordinates locations aligned with Lambach's personal residence in New Berlin, WI.

Hart also informed me during his investigation he was made aware of an additional criminal act being investigated by the U.S. Department of Labor for

Lambach's non-payment of employee contributions to 401 K retirement accounts.

Hart informed me that informants reported that Interfaith received $ 145,000 in federal grant funds from the Corporation for National and Community Service (CNCS). It was reported that Lambach falsified approximately $ 10,000 in matching fund amounts for the CNCS grants. This was also reported to CNCS for their Compliance Monitoring Visit report.

Hart provided me with a CD containing documents and records from his investigation.The CD also contained copies of Milwaukee County contract and records. The CD was inventoried and placed into evidence.

Hart also provided the additional information on the amounts of fraud in regards to the county managed grant. $17,000 amount figure mentioned on page 2, Section IV of the Hart's memo. Also see exhibit folder "2018-05-22 Interfaith Provided Records" on the CD:

Dell order Purchase ID 2006789027047 consisted of seven (7) each: Latitude laptops, 24 inch monitors, briefcases, and Thunderbolt docks. The order subtotal was $15,793.94. In a handwritten note signed by Lambach and dated on December 31, 2017, Lambach assigned two (2) of each to the state of Wisconsin domestic violence grant, totaling $4,512.55. The remaining five (5) were assigned to the FCSN grant, totaling $11,281.39. The order confirmation included a tax of $884.46, making the grand total $16,678.40.

See the following website for additional tax info. https://www.revenue.wi.gov/Pages/FAQS/pcs-n-profit.aspx.

The Department of Revenue can issue certificates of exemptions, which exempts organizations from Wisconsin sales and use tax, to qualifying organizations, which generally includes 501(c)(3) federal income tax exempt organizations.

**Interview of Witness Jodi L. Bauer, (F/W, [redacted]):**

I spoke to Ms. Jodi L. Bauer on the telephone and made arrangements to interview her in person. Ms. Bauer voluntarily came to the Milwaukee County Sheriff's Office (MCSO), Criminal Investigation Division (CID) Offices, located in the Milwaukee County Safety Building, room # 209, at 821 W. State Street, Milwaukee, WI 53233.

On Tuesday, October 9, 2018 at about 1615 hours, I interviewed Ms. Bauer in person. Bauer was not in custody or restrained and voluntarily came in as a witness. She was interviewed in the conference room and was free to leave at any time. Bauer made the following statements.

Bauer stated she started working at Interfaith Older Adult Programs about 1 ½ years ago. She stated that Interfaith was merging with SET Ministries and the merge was almost complete. She stated that Laurene Lambach was the Chief Executive Officer (CEO) of SET Ministries before the merger and is now the Interim Executive Director of Interfaith during the merger. Bauer stated that Mrs. Laurene Lambach is also a Certified Public Accountant (CPA).

Bauer stated in December of 2017 she became aware of fraud that occurred at the fiscal end of contracts with Milwaukee County. She stated that it came to her attention that the Milwaukee County's contract allowable expenditures were underspent and that Laurene Lambach planned on spending the remaining funds on ordering computers.

Bauer stated she received an email from Lambach to record the computer order onto the Milwaukee County Contract/Grant. She stated she responded that she did not believe that the computer order would be allowed on the contract because the computers were not received yet before the end of the year.Bauer stated that Lambach responded that it was allowed and provided an invoice for the computers.

Bauer stated that the fraud only could have been committed by Lambach because she is the only one with access to the account. Bauer stated that Lambach cancelled the order for Dell computers from Dell and Interfaith kept the funds from the Milwaukee County in violation of the contract.

Bauer stated she kept asking for the computers from Dell or receipt for the computers and did not receive them. She stated that another employee checked the credit card for the computers and there was no money there. She stated that an employee called Dell to inquire about the computer order. Bauer stated that Lambach requested the money from Milwaukee County after the Dell computer order was already cancelled.

Bauer stated that Lambach also is violating the rules of another government contract/grant, therefore committing fraud. She stated Lambach is also defrauding a grant with the State of Wisconsin. Bauer stated she has work experience of doing audits and knows Lambach is committing rule violations and fraud with the government grants.

Bauer stated she informed her supervisor Ms. Catherine A. Wood. She stated that Wood was the Chief Financial Officer (CFO) for Interfaith. Bauer stated she met with Catherine Wood (CFO) and a grant accountant.Bauer stated she learned that Lambach told the grant accountant that the Dell computers were received and were ordered with in the deadline and allowed under the Milwaukee County contract/grant.

Bauer stated she provided a copy of a draft of the audit started by Wegner (CPA's) to Matthew Hart at Milwaukee County Audit Services Division. She stated

18-127890 821 W State St, Milwaukee, WI, 53233 10/09/2018

that the audit report was not completed because Lambach has not provided all of the required paperwork to the company conducting the audit.

Bauer stated that Lambach was questioning the audit and would not provide meeting minutes. Bauer stated that Lambach is blaming all of the problems on Catherine Woods and stated she can't talk about because of Catherine Wood's lawsuit and settlement.Bauer stated that she, Catherine Wood and other employees went to the Board of Directors (BOD) of Interfaith and reported the red flags of fraud before the merger is complete.

Bauer stated that Lambach denies knowing that the employees reported the red flags to the Interfaith BOD. Bauer stated that Lambach repeatedly blames things on Catherine Wood and states it was because of her work performance.

Bauer stated that Catherine Wood or Sharon Stone reported the fraud to Milwaukee County Audit Services Division and they contacted her for information and records. Bauer stated she provided information to Matthew Hart about the fraud.

Bauer stated that Lambach has been committing fraud by not following the rules of the grant contracts. She stated that the grants require a 25% funds match. She stated that Interfaith was not going to make the allowed 25% funds match. She stated that Lambach falsified the paperwork and inflated numbers of Interfaith's funds so they could fraudulently receive the full amount allowed by the grant.

Bauer stated that Lambach is committing other crimes and improprieties. She stated that Lambach is not properly depositing funds into the employees' pension or 401K accounts. She stated that the United States Department of Labor is investigating this allegation.

Bauer stated she was contacted by U.S. Department of Labor Investigator Donjeene Smith from the Chicago Office (Employee Benefits Security Administration).

Bauer stated that Lambach is aware of this investigation and again blamed Catherine Wood for this. Bauer stated that she believes that Lambach is solely responsible for this fraud because she is in charge of payroll. I asked Bauer if it was Catherine Wood's fault why did Lambach not fix the pension problem and she stated it was a lie and it was Lambach's problem.

Bauer stated that Lambach is also defrauding another government grant (Federal). Bauer stated it was a Corporation for National Community Service (CNCS) Federal Grant. She stated it is a "Direct" Federal grant. She stated that Lambach is falsifying data and placing funds or expenditures in the wrong categories so she could receive the full grant instead of returning the funds.

| Incident Number: | Incident Location: | Incident Date: |
| --- | --- | --- |
| 18-127890 | 821 W State St, Milwaukee, WI, 53233 | 10/09/2018 |

Bauer stated that the grant manager of this grant at Interfaith resigned because of the fraud and false reporting. Bauer stated that the Interfaith grant manager reported the fraud to CNCS.Bauer stated that the grant manager was Amy Crawford. She stated that Amy Crawford reported it to CNCS and they then conducted an audit.

I asked Bauer her opinion why Lambach is committing these crimes of fraud and she gave the following opinions that she spends too much money at Interfaith, has too many employees, overpays her inner circle of upper level managers for their loyalty and is unsure if she is spending the money personally but stated she just purchased a new home in Florida.

Bauer gave an example of the overpaid employees. She stated that the previous grant accountant was paid approximately $ 60,000 and the new one is paid $ 93,000.Bauer stated the following areas or persons are aware of Lambach fraud: Grant Auditor, Grant Accountants, Catherine Wood, Sharon Stone, Amy Crawford and she are witnesses.

Bauer stated that Lambach is currently in Florida on vacation and returns to Wisconsin sometime after October 24, 2018. She also stated she goes on another out of state vacation in November.Bauer stated that Lambach stores or could potential store files that would prove the fraud at the following locations. Interfaith's consolidated offices in Suite 400 at 600 W. Virginia Avenue, Milwaukee, WI, Lambach's second office at another location and at her personal residence.

Bauer stated that during the merger they consolidated their offices. The old office was in Suite 300 and Suite 400 and they merged from two floors onto just one floor in Suite 400.

Bauer stated she is fearful of Lambach. She stated she fears retaliation. She believes that Lambach will try and fire her and then slander her.Bauer also believes that Lambach monitors her email account and other employees email accounts. She stated that Lambach was checking Catherine Wood's email. Bauer stated that Lambach has it set up that she is the administrator and everyone needs her approval with the Information Technology (IT) to make changes.

Bauer stated that the other witnesses (Wood, Stone and Crawford) might have additional information and records to prove the fraud.Bauer stated that some of the records might be difficult to decipher because Lambach co-mingles the funds. She stated that Lambach has used her personal credit card or funds to pay Interfaith's bills when they did not have the funds available and reimburse herself later.

Bauer also stated that Lambach has two other alias names from previously being divorced She stated her current husbands name is Lambach. Bauer also stated that using open court records Lambach had a Tax Warrant filed against her and it was

dismissed possibly from being paid off with grant funds.

Bauer also stated Lambach co-mingled funds when her current husband loaned $ 100,000 to SET Ministries. She stated that the loan is recorded in SET Ministries records with a legal agreement.Bauer stated that recent Interfaith's finances are frequently "in the red" and they are receiving collection notices for unpaid bills.

Bauer stated that SET Ministries is merging with Interfaith and the new name will be "Unison". Bauer stated the financial problems started with SET Ministries and Lambach was the CEO of SET Ministries. Bauer stated that the Board of Directors were notified of the red flags and will believe Lambach.Bauer stated that Lambach is friends with some of the BOD. She stated that the BOD has so far believed Lambach's story that it is Catherine Woods fault.

Bauer stated that we need to search Lambach's offices and her residence. She stated that Lambach regularly takes records home and works from home. She stated that Lambach took a box of records with her on vacation to Florida.

Bauer stated she is nervous and concerned for Interfaith's reputation and services. She stated that Lambach is still spending funds improperly.Bauer later provided me with additional information. She confirmed that Lambach has an additional Unison office at 1818 W. Juneau Avenue

**Interview of Witness Catherine A. Wood, (F/W, [redacted]):**

I spoke to Ms. Catherine A. Wood on the telephone and made arrangements to interview her in person. Ms. Wood voluntarily came to the Milwaukee County Sheriff's Office (MCSO), Criminal Investigation Division (CID) Offices, located in the Milwaukee County Safety Building, room # 209, at 821 W. State Street, Milwaukee, WI 53233.

On Wednesday, October 10, 2018, I interviewed Ms. Wood in person. Wood was not in custody or restrained and voluntarily came in as a witness. She was interviewed in the conference room and was free to leave at any time. Wood made the following statements.

Catherine Wood stated she became aware of the fraud in December 2017. Wood stated that the Milwaukee County Grant funds had to be spent by the year-end deadline. She stated Interfaith knew they did not spend the whole grant amount. She stated they asked Milwaukee County for a grant extension.

Wood stated during this process they discovered that the interim director of Interfaith Laurene Lambach had filed the grant paperwork and reported that the Milwaukee County grant funds were spent when they were not spent.Wood stated when the interim director Lambach was questioned on this she provided receipts for a

Dell computer purchase. She stated that she questioned Lambach about the computer purchase.

Wood stated Jodi Bauer, Sharon Stone and she were not comfortable with the expenditure and false expenditure reporting. Wood stated they asked the grant accountant and grant auditor about the Dell computer purchase because of the date and if it was allowed on the last day of the grant in 2017. She stated that they were told that the purchase of computers was allowed on the Milwaukee County grant.

Wood stated that they later learned that the Dell computer purchase on the grant completed. She stated that the order was made and the order was cancelled and the computers were never delivered. She stated that Lambach cancelled the order in January or February 2018.Wood stated that Sharon Stone called Dell and confirmed that the computer order was placed and then cancelled.

Wood stated that Amy Crawford was the grant manager for the Federal grant and I should talk to her about the fraud on the Federal Grant.Wood stated she was the Chief Financial Officer (CFO) for Interfaith. She stated she was employed from September 2016 to May 2018.

Wood stated that Laurene Lambach managed SET Ministries. She stated that June 15, 2017 Lambach started as the Interim Executive Director for Interfaith during the merger of Interfaith and SET Ministries. Wood stated that the previous Director had retired.

Wood stated she believes that Interfaith uses BMO Harris bank for their accounts. She stated she believes that SET Ministries uses US Bank. She stated that the new combined company from the merger is called Unison and they started using SET Ministries' Employer Identification Number (EIN) last November. Wood stated she believes that the internet provider they used was AT&T or Spectrum.

Wood stated that Lambach had an office in SET Ministries main offices located at 2977 N. 50th Street, Milwaukee, WI. She stated that Lambach has another office on W. Highland.

Wood stated that Milwaukee County Audit Services Division had talked to her and she believed to Sharon Stone. She stated that Vevette Hill-Nwagbaraocha might also have pertinent information to this investigation.

Wood stated that Lambach has several previous names. She stated that Laurene's maiden name was Gramling and her current husband is Chris Lambach. Wood also stated that she heard that the money from the loan provided by Chris Lambach to SET Ministries came from his parents.

I asked Ms. Wood if she had an opinion on Lambach's motives for the fraud. She stated she believes that Lambach is inept. Wood stated she is concerned for the

Interfaith employees, senior citizens that receive services from Interfaith and the taxpayers who pay for the services.

Wood stated that Interfaith has large role in elderly and senior citizen care in Milwaukee County. She stated that Interfaith operates Senior Center programs, senior neighborhood outreach programs, manages volunteers, and coordinates senior citizen transportation and senior employment programs.

Wood stated that Interfaith had approximately one million dollars in reserve funds before Laurene Lambach took over as director and started mismanaging the agency.

Catherine Wood later provided me the name of Interfaith's audit firm. The audit firm is Wegner CPA's. The audit partner was Jenny Tarkowski at Wegner CPA.

**Telephone Interview of Witness Sharon M. Stone, (F/W, [redacted]):**

On Wednesday, October 10, 2018, at about 1600 hours, I interviewed Ms. Stone on the telephone. Ms. Stone made the following statements.

Sharon Stone stated she worked at Interfaith as a grant accountant. She stated she was employed from July 2017 to March 2018. She stated she resigned and left Interfaith because of the fraud, mismanagement and improprieties.Stone stated that the problems started in July 2017 after the merger was voted on by the Board of Directors (BOD). She stated that the articles for incorporation were amended to allow the merger.

Stone stated that Catherine Wood was her supervisor and worked with Laurene Lambach since the merger started in 2017.Stone stated as the grant accountant she was given limited access to SET Ministries records. She stated she had access to cost reports for grants. Stone stated she discovered that SET Ministries had not paid the payroll withholdings into the employee's 401K accounts.

Stone stated she brought this information to Laurene Lambach that SET Ministries was not making the 401K account payments. Stone also stated she went to David Pfeiffer, the Vice Chair of Interfaith BOD now Unison. She stated he was concerned but took no action.

Stone stated that she was aware that Laurene Lambach had changed the reporting on the Milwaukee County grant. She stated that there was approximately $ 30,000 left on the grant. She stated that Lambach changed the paperwork to spend the money. Stone stated that Lambach made changes to spend some of the money on Dell computers.

Stone explained that at the end of 2017, Catherine Wood was informed that they were not going to be able to spend the rest of the grant funds before the year-end

and the left over funds would be returned or an extension would be needed. Stone stated that grant finance was notified and an extension was requested.

Stone stated that Lambach later changed the paperwork with false information and also ordered Dell computers to use the rest of the grant money. She stated that Lambach falsified the information on the required grant's matching funds requirement. She stated that this was reported to Milwaukee County as possible fraud.Stone stated that the grant was underspent and Interfaith/Unison did not spend the proper amount of required matching funds.

Stone stated that Laurene Lambach director of Interfaith ordered computers on the county grant and then cancelled the computer order in January/February. Stone stated that the Dell computers were never received. Stone stated that she believes that the computers were ordered under SET Ministries account.

Stone stated she spoke to "Jeff Chang" about the problems. She stated that there have been complaints since Laurene Lambach took over. She stated that the programs performance at the Senior Centers has been decreasing and is poor.Stone stated that too much of the agency funds are spent on over paid upper level management that Lambach has hired, especially for a Non-Profit agency.

Stone stated that Amy Crawford and Vvette could have additional information in regards to this investigation. Stone stated she believes that SET Ministries uses US Bank.

Stone stated she mostly dealt with the grants, but did see the loan from Lambach's husband in the SET Ministries records. Stone also stated she saw checks issued but not cashed on SET Ministries records.

Stone stated that she does not know what Laurene Lambach's motives are for the fraud. Stone stated that Lambach has a large Ego and is very vindictive.

Stone provided me with contact numbers for Amy Crawford and Vvette Nwagbarocha. She stated that Amy Crawford handled a federal grant and Vvette was a program supervisor for Interfaith. She also stated that Crawford resigned around June 29, 2018.

**Interview of Witness Amy Jo Crawford, (F/W, [redacted]):**

I spoke to Ms. Amy J. Crawford on the telephone and made arrangements to interview her in person. Ms. Crawford voluntarily came to the Milwaukee County Sheriff's Office (MCSO), Patrol Division, Substation, located at 10320 W. Watertown Plank Road, Wauwatosa, WI 53226.

On Thursday, October 11, 2018, at about 0900 hours, I interviewed Ms. Crawford in person. Crawford was not in custody or restrained and voluntarily came in as a

witness. She was interviewed in the substation conference room and was free to leave at any time. Crawford made the following statements.

Crawford stated she was hired by Interfaith/ Unison after the merger was started. She stated that Interfaith's reputation in the non-profit community was very good until after the merger and after Laurene Lambach took over as director.Crawford stated that she did not know much about SET Ministries. She stated she is very disappointed in Laurene Lambach's leadership.

Crawford stated she worked on the grant for retired and semi-retired senior's volunteer program. She stated that program grant was from CNCS. She stated that the program receives approximately 70% of their funds from the grant program. She stated she managed the grant budget program and Laurene Lambach was the CEO and her supervisor.Crawford stated she became aware of Laurene Lambach's unethical behavior near the end of 2017.

Crawford stated that she believed there were additional funds available from the state or unspent funds and Lambach became aware of this. She stated that they were moving some of the offices due to the merger and computers were asked to be purchased.

Crawford stated that Lambach wanted to get all of the available funds from the state that were leftover. Crawford stated she told Lambach that she was talk to the grant officer. Crawford stated that Lambach replied by stating:" Never ask a Grant Officer for permission".

Crawford stated that Lambach was falsifying numbers and asked Crawford: "How much do you think we can get, let's spend it all". Crawford stated she submitted a grant request for the additional funds and they received the expected $ 1000 to $ 2000.

Crawford stated that the state grant deadline for paperwork was March 31, 2018. Crawford stated she was working with Sharon Stone to submit the grant report, but Sharon Stone left Interfaith before the grant deadline. She stated that Stone handled the financial part of the grant and she handled the operations portion of the grant.

Crawford stated that Laurene Lambach wanted "Cathy Young" to take over the grant accounting. Crawford stated that Cathy Young was a yes person and loyal to Laurene Lambach.Crawford stated that she was told that CFO Catherine Wood was terminated. Crawford stated that the grant now has no CFO or Accountant and she was the Program Manager only.

Crawford stated a grant paperwork extension was granted. She stated after the merger a new accounting structure was being created. She stated she had concerns on how the accounting was being done. She stated that the new structure was not

implemented until after January 1, 2018. She also stated that Sharon Stone left Interfaith.

Crawford stated that there were a lot of problems to include: data problems, grant transaction problems, reporting problems (late reporting).Crawford stated that Lambach didn't explain her grant methodology and changed it so they would get more Federal and State grant funds. Crawford stated that the methodology showed a lot of fraud red flags.

Crawford stated that there were a lot of grant problem red flags that might trigger an audit: large employee turnover, late reporting, and high salary of employees for non-profit employees, etc.

Crawford stated she informed "David Arend" the contract accountant and possible CFO after she left of the red flags and "CNCS" grant rules. She believes that he took no action.

Crawford stated she also made Laurene Lambach aware of the problems, but Lambach was gone a lot. She stated that she was told that Lambach had family emergency where Lambach's nephew passed away from an overdose.

Crawford also Lambach refused to meet with her about the inaccurate or falsified numbers for the grant reporting. She stated she tried to make arrangements to help fix the grant report and was denied.

Crawford stated that Lambach created an unusual extra level management for a non-profit agency. Crawford stated that Lambach promoted three managers between her and Lambach. Crawford stated she reported to the following three executives Brianna Fox, Sandy Smith-Dill, Cathy Young then Lambach.

Crawford stated that Lambach was lying and falsifying the allowable calculated expenses allowed for the grant. Crawford stated she reported this to "Andrew Musgrave". She stated that Andrew is on the advisory board required as part of the grant. She stated he is also on Interfaith's BOD.Crawford stated she also reported this to her supervisor and they told her that she can't see Lambach. Crawford stated that it was obvious that Lambach was avoiding her and her loyal managers were protecting her or afraid of her.

Crawford stated she had to make a decision because of this illegal and unethical behavior. She stated she resigned from Interfaith on June 6, 2018. She stated she was provided with Lambach reporting formula and reviewed them. She stated she was granted a meeting with Lambach on June 14, 2018 after she resigned. She stated Lambach kept denying during the meeting. She stated that the meeting was non-productive.

Crawford stated that Lambach is a master manipulator and committing fraud and should know better because she is a CPA.Crawford stated that Lambach is a poor

manager and uses the following tactics to get her way: diversion, bullying, deflection and manipulation.

Crawford stated she informed state grant office of Lambach's fraud. She stated she provided all of the info she had to the state. Crawford stated that it might be helpful to contact the CNCS grant personnel for additional information.

Crawford provided the following contacts: Sarah Brady, State Director for CNCS Wisconsin and Ruhamah Bauman, Program Officer for CNCS Wisconsin.

Crawford continued to provide additional information and explanation of the grant fraud. She stated that Lambach billed expenses that were not allowed by the grant rules. Lambach did not match the 30% of matching funds required. She stated that Lambach requested $ 8,000-$ 14,000 in improper reimbursement from April 2017 to March 2018 on the CNCS grant.

Crawford stated Lambach improperly billed more than the 10% of allowed in-direct payroll reimbursement. She estimated she over billed $ 9,000. **Lambach billed for H& staff, accounting** staff and at times billed for the entire staff's expenses and is not allowed by the grant.Crawford stated that Lambach also improperly transferred or moved charges between allowable categories on the grant reporting without grant officer's permission.

Crawford stated that checking and searching the agencies records might be difficult because of agencies Information Technology (IT) systems being merged or consolidated. She stated that Interfaith was a Google brand product user and SET Ministries was a Microsoft Office product user.Crawford stated she believed Unison was converting to Microsoft Office. She stated that the majority of records are electronic records or Excel spreadsheets files.

Crawford stated that fraud might include double billing on the grants. She stated she might bill two different grants for the same expenses. She stated that CNCS fiscal came to Interfaith to start an audit. She stated that the required audit was due July 2018. She stated that Lambach and Interfaith have missed all of the deadlines for the audit.

Crawford stated she is also afraid of Lambach and is unsure of what she would do to her or the other witnesses. She inquired about a court ordered no-contact order if Lambach is arrested and charged with a crime.

Matthew Hart contacted me again and stated that Milwaukee County was receiving reports of poor quality services being provided by Interfaith and Unison MKE to the Department of Aging (DOA) contracts for senior citizen services at the Milwaukee County Senior Centers. He indicated I should contact the Director of DOA Holly Davis.

Matthew Hart also informed me that the Milwaukee County DOA was having issues with the vendor Unison MKE. He stated that Unison is late on their reporting for the Audit. The DOA is considering sanctioning Unison. He also stated there are continued complaints about the quality of services provided to DOA.

Hart also provided me with the name of the Certified Public Accountant (CPA) firm that was conducting the Audit of Interfaith. The firm is Wegner CPA's and the contact person is Jenny Tarkowski.

On Friday, October 12, 2018, I drafted a Subpoena with affidavit to request a subpoena for business records to Dell, Inc. for the Interfaith order for Dell Computers from December 2017. The Subpoena was reviewed and endorsed by ADA Alyssa Schaller. The Subpoena was then approved and signed by Judicial Court Commissioner J.C. Moore in Preliminary Court (PE). The subpoena was served to Dell, Inc. by email per their request.

On Thursday, October 25, 2018, I, contacted Investigator Michael Austin from the WI Department of Revenue (DOR) and requested information on Lambach's Tax Warrant case # 2018TW000337. I was informed by Austin that a subpoena from the District Attorney's office would be required for the records.

**<u>Interview of Witness Vevette C. Hill-Nwagbaraocha, (F/B, [redacted]):</u>**

I spoke to Ms. Vevette C. Hill-Nwagbaraocha on the telephone and made arrangements to interview her in person. Ms. Hill-Nwagbaraocha voluntarily came to the Milwaukee County Sheriff's Office (MCSO), Criminal Investigation Division (CID) Offices, located in the Milwaukee County Safety Building, room # 209, at 821 W. State Street, Milwaukee, WI 53233.

On Thursday, October 25, 2018, at about 1030 hours, I interviewed Ms. Hill-Nwagbaraocha in person. Hill-Nwagbaraocha was not in custody or restrained and voluntarily came in as a witness. She was interviewed in the CID offices conference room and was free to leave at any time. Hill-Nwagbaraocha made the following statements.

Hill-Nwagbaraocha stated she is the manager for the Family Caregivers Support Network Program (FCSNP) for Interfaith. Hill-Nwagbaraocha stated she had spoken to ASD Matthew Hart about the fraud being done by Laurene Lambach at Interfaith.

Hill-Nwagbaraocha stated that Interfaith is merging with S.E.T. Ministry into Unison MKE. She stated she doesn't not know if the merger is complete and that the merger was delayed because of Laurene Lambach.Hill-Nwagbaraocha stated she started noticing problems after Lauren Lambach took over as CEO at Interfaith. She stated she really noticed problems around November 2017.

Hill-Nwagbaraocha stated there was a meeting with her and Laurene Lambach, Sharon Stone, Laura Engel and others about a new training program. She stated they

discussed hiring a new position. She stated they also discussed raises for employees, purchasing new equipment, and hiring the new position employee.Hill-Nwagbaraocha stated that her supervisor is Laura Engel. Hill-Nwagbaraocha stated that Lambach gave the other managers and supervisor raises already.

Hill-Nwagbaraocha stated in December 2017 she was told that the suggestions discussed in the meeting were being approved. She stated she told that the following items were also approved: equipment order for laptop computers, video projector and desktop computers.

Hill-Nwagbaraocha stated she questioned the need for desktop computers because they already had desktop computers. She stated they may be needed just one (1) desktop computer for the new position.

Hill-Nwagbaraocha stated she took a scheduled vacation in December 2017. She stated they did receive the video projector. She stated she has seen it and used it.

Hill-Nwagbaraocha stated that Interfaith has not received the Dell computers that Laurene Lambach ordered. She stated the computers were ordered and were in a line item in the budget. She stated that Interfaith accounting or budgeting would have those records.

Hill-Nwagbaraocha stated she asked questions but there was confusion on the matter at Interfaith. She stated that "Corrie" a female employee in the Information Technology (IT) area, whose position was moved at Interfaith asked me about the locations of the computers in February/March of 2018.

Hill-Nwagbaraocha stated that she was told that maybe the computers were at Technology Resource Advisors (TRA), which is Interfaith paid computer consultants. She stated that this was researched and ruled out by other employees. She stated that no one has ever seen these new Dell laptop computers. Hill-Nwagbaraocha stated she told Matthew Hart that the Dell computers have never been seen by anyone at Interfaith.

Hill-Nwagbaraocha stated she asked Laurene Lambach via e-mail about her position and about a raise in salary. She stated that Lambach uses a strict chain of command. She stated she was then told she would not receive a raise even though other employees we getting raises. She stated that Lambach had asked for a raise range of $ 10,000 in a line item in her budget

Hill-Nwagbaraocha stated that Lauren Lambach deliberately confuses things and tries to make it difficult for others to understand so things can't be tracked back to Lambach. She stated that Lambach purposely uses the chain of command and her other tactics to insulate herself from her fraudulent actions.

Hill-Nwagbaraocha went onto say that Lambach's leadership style is authoritarian. She again stated that Lambach purposely confuses others to get her way and to make it hard to trace the fraud back to her.Hill-Nwagbaraocha stated she spoke to her supervisor Laure Engel to see if Lambach put the new position in her budget. She learned that the new position was in the budget and was signed by Lambach.

Hill-Nwagbaraocha stated that her new supervisor is Sandy Smith-Dill, a former S.E.T. Ministry employee. She stated that she believes that Sandy is in Lambach's inner circle of chain command she brought from S.E.T. Ministry with her to Interfaith.Hill-Nwagbaraocha stated that Lambach has been trying to intimidate her and wonders why Lambach hasn't tried to fire her, she speculates that Lambach might try to use her a "Fall Guy" like she did to Catherine Wood.

Hill-Nwagbaraocha stated that Interfaith has moved from the third floor at 600 W. Virginia Street to the fourth floor. She stated that the third floor is now vacant. She stated she was told that the rent was too high to rent two floors. She stated that she and others have wondered where the savings from consolidating from two to one floor went.

Hill-Nwagbaraocha stated she also wondered where the budgeted money from the new position that is unfilled went as well. Hill-Nwagbaraocha stated that Unison is receiving funds from two grants from Milwaukee County Department of Aging (DOA) for the new approved but unfilled position. She stated that the new position is split between the two grants. She stated that this new position will be funded/billed on the report in spring 2019.

Hill-Nwagbaraocha stated that a S.E.T. Ministry employee wanted to teach. She stated that Lambach wanted this employee to fill the newly created position. Hill-Nwagbaraocha stated that this particular S.E.T. Ministry employee being considered for this new un-filled position was not appropriate or right for the job.

Hill-Nwagbaraocha stated that this new position was in Outreach. She stated that this employee was introverted and didn't like to be out in the public. She stated she voiced her opinion on this employee.Hill-Nwagbaraocha stated that this employee was eventually not hired for this new position. She stated that Lambach was unhappy with Hill-Nwagbaraocha over this situation with the employee that she wanted to hire or promote to this new position.

Hill-Nwagbaraocha stated that Laura Engel insulates and micromanages for Lambach. Hill-Nwagbaraocha stated that Lambach is very smart but not trustworthy and uses a deliberate forceful management style to commit these frauds.

Hill-Nwagbaraocha stated that the bulk of Lambach's frauds involve the two main grants. She stated that there is an unaccounted $ 10,000 in the budget for the difference in the salary for the new position. She stated that Lambach

committed fraud in ordering the Dell computers and fraud by placing expenditures in the wrong categories not allowed by the grant rules.

Hill-Nwagbaraocha stated there are other red flags to look at. She stated that Lambach got rid of Interfaith's marketing director and eliminated Interfaith's IT department. She stated she contracts with STIR Advertising and Integrated Messaging for marketing services and Technology Resource Advisors (TRA) for computer services.

Hill-Nwagbaraocha stated that Interfaith had a $ 30,000 marketing budget. She stated that Lambach told them that marketing budget was too high and outsourced marketing to STIR. Hill-Nwagbaraocha stated this was unusual because Lambach was friends with employees at STIR.

Hill-Nwagbaraocha stated they also went to Interfaith's Board of Directors (BOD) to question these red flags and incidents of fraud. She stated that Jeff Chang was made aware of these. She stated he was e-mailed and met with them and no action was taken. She stated that Stacey Vojvodich, Sharon Stone, Catherine Wood and Jodi Bauer met with Jeff Chang and were notified of the red flags.

Hill-Nwagbaraocha reinforced that she is worried that Lambach will try and place blame onto her. She stated that all of the informants are concerned for their jobs, scared of being blamed by Lambach and scared of Lambach trying to get revenge and slander their reputations.

Hill-Nwagbaraocha stated that Lambach lied or falsified the matching funds statement for the federal grants in November and December of 2017. She stated that Lambach did this by changing the formulas, numbers and estimates for the matching funds allowed by the grant rules. She stated she would submit the same matching funds to two separate grants at the same time.

Hill-Nwagbaraocha stated on the Personal Care Plus (PCP) program, Lambach lied about an Interfaith's employee Kate Hayden salary's matching funds. Hill-Nwagbaraocha stated the records are probably in the accounting department.

Hill-Nwagbaraocha stated she did not submit or authorize this employees matching funds salary be submitted to be reimbursed on the grant but it was not allowed. Hill-Nwagbaraocha stated that this employee's salary was put under Hill-Nwagbaraocha program budget as a match without her permission.

Hill-Nwagbaraocha stated that Lambach has a desk in a shared office at the 600 W. Virginia Street address on the fourth floor. She stated Lambach is older and uses paperwork a lot instead of electronic files and has boxes of paperwork at this address.

Hill-Nwagbaraocha stated that Lambach shares an office with David Arend. She stated that David Arend is one of Jodi Bauer's supervisors. She stated that David is a CPA and is retiring soon. David Arend's telephone number is [redacted]

Hill-Nwagbaraocha stated that there are files kept in the following places at Unison at 600 W. Virginia Street, Milwaukee, WI: the old IT room on the fourth floor, in records storage in the basement and in Laurene's office/desk.Hill-Nwagbaraocha stated that S.E.T. Ministry might have records at their offices at 2977 N. 50th Street, Milwaukee, WI.

Hill-Nwagbaraocha stated that Interfaith, Unison and S.E.T. Ministry files might also be stored at 1818 W. Juneau Avenue, Milwaukee, WI. She stated that FCSN was supposed to move to this address. She stated that Lambach has an office and desk at this address and stores files in her office.Hill-Nwagbaraocha stated that Stacey Vojvodich works at the 1818 W. Juneau Avenue office.

**Telephone Interview of Stacey M. Vojvodich, (F/W, [redacted]):**

On Friday, October 26, 2018, at about 1300 hours, I interviewed Ms. Vojvodich on the telephone. Ms. Vojvodich stated she was afraid to come in person and preferred to be interviewed over the telephone. Vojvodich made the following statements:

Vojvodich stated she is the Relationship Manager in the Development Office. She stated that Development Office is located at 1818 W. Juneau Avenue, Milwaukee, WI inside the Highland Gardens, a City of Milwaukee Housing Authority property. Vojvodich stated that Unison has the Development Office inside a suite on the lower level or first floor of Highland Gardens. She stated they occupy five (5) offices and one desk at this location.

Vojvodich state she worked for Interfaith for 16 years and was the Director of Senior Centers. She stated that Lauren occupies an office and has a desk at this location. She stated that the door plaque for Lambach's office is marked Consultation. She stated that Lambach has files and a computer in her office.

Vojvodich stated she heard second hand that Lambach ordered computers for the FCSNP grant that were not delivered.

Vojvodich stated that Lambach had her meet with Cathy Young and was told that her position as Director of Senior Centers was eliminated and they offered her a different job in the Development Office with same pay.

Vojvodich stated she did not have direct information on the fraud complaints but confirmed that Lambach stores files at the 1818 W. Juneau Avenue location. Vojvodich later provided me with four photographs of the Unison development office area including Lambach's office.

18-127890 821 W State St, Milwaukee, WI, 53233 10/09/2018

I received this additional information from Jodi Bauer. Bauer provided a floor plan layout for Unison on the fourth floor of 600 W. Virginia Street showing the area of Lambach's office, contracts office (Cost Reports) and the accounting office (Dell records) are kept.

Jodi Bauer provided the locations the following records are kept: Dell computer statements showing that Interfaith was never charged for the ordered Dell computers is in the accounting office, the Dell computers purchase order in the account storage room, December 2017 Cost reports supporting documents for when Milwaukee county was billed are in the Contracts room, CNCS quarterly reports and billings are in the Contract room, CNCS spreadsheets on the billings on Jessica's computer in Contract Admin and also on Lambach's computer.

Bauer stated that the files in the storage area in basement contain files older than two years old. Additionally files possibly invoices for Interfaith are stored in IT space / Fiscal Storage room # 4013.

I contacted the WI State Program Director for Corporation for National and Community Service (CNCS) Sarah Brady and CNCS Program Officer Ruhamah Bauman. I requested a copy of the audit referred to by CNCS as Compliance Monitoring Visit for Interfaith grant from CNCS. I was informed that the request had to be formally requested as a Freedom of Information Act (FOIA) form letter.

On Tuesday, October 30, 2018, I drafted and sent a FOIA letter to CNCS requesting the audit or Compliance Monitoring Visit for Interfaith and CNCS grants for 2017-2018.

On Monday, November 5, 2018, I received a response back from my FOIA request from CNCS. I was informed that CNCS was unable to fulfill my request at this time. I was informed that there report is in progress, but it not yet done and they have no firm date for a finalized report.

The following Interfaith Unison employees Sandy Smith is Sandra L. Smith Dill, (F/W, [redacted]), Laura Engel is Laura J. Engel, (F/W, [redacted]), David is David G. Arend , (M/W, [redacted])and Cathy is Catherine A. Young, (F/W, [redacted]).

On Tuesday, November 6, 2018, I, drafted a Subpoena with affidavit to request a subpoena for business records to AT&T Internet for the IP Address of 99.122.71.11. The subpoena was reviewed and endorsed by ADA Francesco Mineo. The subpoena was reviewed, approved and signed by Judge Michelle Havas, Branch 10 . The subpoena was served to AT&T via fax per their request.

Search Warrant's will be requested to search for business records for evidence of the fraud. (See supplemental report).

| Incident | Location | Incident Date: |
|---|---|---|
| 18-127890 | 821 W State St, Milwaukee, WI, 53233 | 10/09/2018 |

**NAMES**

**Business-1**
Milw County Dept on Aging of 1220 W Vliet St,Milwaukee,WI,53205

**Court Official-1**
Havas, Michelle Judge A W/F of 901 N 9th St, Milwaukee,WI,53233
Work Phone:(414) 278-7725

**Business-2**
Interfaith Older Adult Programs Inc of 600 W Virginia St,401, Milwaukee,WI,53204
Business Phone:(414) 257-6418

**Assistant District Attorney-1**
Schaller, Alyssa ADA W/F of 821 W State St, Milwaukee,WI,53233
Work Phone:(414) 278-4646

**Court Official-2**
Moore, JC W/M of 901 N 9th St, Milwaukee,WI,53233

**Invest Othr Agency**
Hart, Matthew W/M of 633 W Wisconsin Ave, Milwaukee,WI,53203
Work Phone:(414) 278-4866 Fax Phone:(414) 223-1895

**Offender**
Lambach, Laurene Gramling W/F-60 of 16901 W Homestead Dr, New Berlin,WI,53151
DOB: [redacted]
HT: 507 WT: 143 Hair: Brown
Eyes: Brown Complexion: Fair

**Witness-1**
Vojvodich, Stacey Marie W/F-63 of [redacted]

Payroll Number :

HT: 508 WT: 155 Hair: Brown
Eyes: Brown Complexion: Fair
Cell Phone: [redacted]

**Relative**

Lambach, Chris R W/M-52 of 16901 W Homestead Dr, New Berlin,WI,53151
DOB: [redacted]
HT: 508 WT: 190 Hair: Brown
Eyes: Blue Complexion: Fair

**Witness-2**

Wood, Catherine Anne W/F-55 of [redacted]
DOB: [redacted]
HT: 506 WT: 135 Hair: Blonde or Strawberry
Eyes: Brown Complexion: Fair
Cell Phone: [redacted]

**Witness-3**

Crawford, Amy Jo W/F-46 of [redacted]
DOB: [redacted]
HT: 600 WT: 180 Hair: Red Or Auburn
Eyes: Blue Complexion: Fair
Cell Phone: [redacted]

**Witness-4**

Bauer, Jodi L W/F-39 of [redacted]
DOB: [redacted]
HT: 506 WT: 225 Hair: Brown
Eyes: Blue Complexion: Fair
Cell Phone: [redacted]

**Business-3**

SET Ministry Inc of 600 W Virginia St,401,Milwaukee,WI,53204
Business Phone:(414) 847-4510

**Business-4**

Unison of 600 W Virginia St,401,Milwaukee,WI,53204
Business Phone:(414) 291-7500

**Business-5**
Corporation for National and Community Service of 517 E Wisconsin Ave, Milwaukee,WI,53202

**Witness-5**
Brady, Sarah W/F of 517 E Wisconsin Ave, Milwaukee,WI,53202
Work Phone:(414) 944-7747

**Witness-6**
Bauman, Ruhamah F of 517 E Wisconsin Ave, Milwaukee,WI,53202
Work Phone:(414) 944-7749

**Business-6**
Dell Inc of One Dell Way,Round Rock,TX,78681

**Business-7**
Milw County Comptroller of 901 N 9th St,Milwaukee,WI,53233

**Business-8**
Technology Resource Advisors of 320 E Buffalo St,703,Milwaukee,WI,53202
Business Phone:(866) 501-8671 Business Phone:(414) 276-3300

**Business-9**
Wegner CPA of W229 N1433 Westwood Dr,105,Waukesha,WI,53186
Business Phone:(262) 522-7555

**Business-10**
STIR Advertising & Integrated Messaging of 330 E Kilbourn Ave, Milwaukee,WI,53202
Business Phone:(414) 278-0040

**Employee-1**
Smith Dill, Sandra L W/F-61 of [redacted] [redacted]
DOB: [redacted]
HT: 507 WT: 155
Eyes: Hazel Complexion: Fair

18-127890 821 W State St, Milwaukee, WI, 53233 10/09/2018

Cell Phone: [redacted] [redacted]

**Employee-2**

Engel, Laura Jean W/F-58 of [redacted] [redacted]
DOB: [redacted]
HT: 507 WT: 145 Hair: Brown
Eyes: Brown Complexion: Fair

**Employee-3**

Arend, David Gerald W/M-61 of [redacted] [redacted]
DOB: [redacted]
HT: 508 WT: 157 Hair: Brown
Eyes: Brown Complexion: Fair

**Employee-4**

Young, Catherine A W/F-65 of [redacted] [redacted]
DOB: [redacted]
HT: 506 WT: 130 Hair: Brown
Eyes: Hazel Complexion: Fair

**Witness-7**

Stone, Sharon M W/F-55 of [redacted] [redacted]
DOB: [redacted]
HT: 502 WT: 140 Hair: Brown
Eyes: Green Complexion: Fair
Cell Phone: [redacted] [redacted]

**Witness-8**

Hill-Nwagbaraocha, Vevette Chevele B/F-54 of [redacted]
DOB: [redacted]
HT: 506 WT: 170 Hair: Black
Eyes: Brown Complexion: Dark Brown
Cell Phone: [redacted] [redacted]

**Assistant District Attorney-2**

Mineo, Francesco ADA W/M of 821 W State St, Milwaukee,WI,53233

---------------------------------------------------------------------------

Continuation

Incident Report Number: Milwaukee County Sheriff's Office Incident Location: | Incident Date:

18-127890 821 W State St, Milwaukee, WI, 53233 10/09/2018

**PROPERTY LIST**

| Seq# | Reason | Make/Model | Description/Serial# | Quan/Value |
|---|---|---|---|---|
| 18-002382 | | | | |
| 1 | EVI | | 1- CD with Records provided to Milwaukee County | 1.000 $0.00 [Recovered] |
| 18-002384 | | | | |
| 1 | STO | | $ 11,281.30 & $ 4,512.55 | 1.000 $15793.94 |

Payroll Number :

Reporting Officer(s): [redacted]

Pages: 26 Of 26

CONFIDENTIAL

Def. Prod. 000026

EXHIBIT 15
WIT: Conte
DATE: 4-29-22
Carla Van Roo, CRR

## Supplementary Report

**Milwaukee County Sheriff's Office**

| Incident Report Number: | Incident Location: | | Incident Date: |
|---|---|---|---|
| New Incident: 18-127890 | 821 W State St, Milwaukee, WI, 53233 | | 7/1/18 |
| Fraud | Original CFS Code - 1: 2699 | New CFS Code - 1: 2699 | New CFS Code - 2: |

**NARRATIVE**

On Tuesday, November 13, 2018, I, Detective Brian Conte # D-35, was assigned to Milwaukee County Sheriff's Office, Police Services Bureau, Criminal Investigations Division, as Squad # 134, in an un-marked Sheriff's squad, vehicle # 114-238, and in plain clothes when the following occurred in the City of Milwaukee, County of Milwaukee:

On Monday, November 12, 2018, AT&T returned the information requested in the Search Warrant via email. On Tuesday, November 13, 2018, I, returned the Search Warrant to the Milwaukee County Clerk of Courts. The Search Warrant Return was given Case # 18SW3691.

The information that AT&T provided me revealed that the IP Address [redacted] belonged to Laurie Laehn at 16901 W. Homestead Dr., New Berlin, WI 53151, with account number # [redacted] and email address [redacted], [redacted].

On Tuesday, November 13, 2018, I spoke with Investigator Donjeene Smith from the U.S. Department of Labor, Employee Benefits Security Administration on the telephone. Investigator Smith informed me that her agency is conducting a civil investigation into the complaint that Lauren Lambach and S.E.T. Ministry is not depositing their employee's payments into their employee benefit accounts.

Investigator Smith stated that Lauren Lambach has been unresponsive to her requests for documentation. She stated that Lambach has given multiple excuses for the employee account problem. Smith stated that Lambach was very controlling and attempted to blame the problem on the previous CFO.

Investigator Smith stated that Interfaith's employee deposits were most likely good because they have a system that automatically deposits the funds. She stated that S.E.T. Ministry has a problem because the system is set up that only Lauren Lambach has approval authority to make the payments or deposits.

Investigator Smith stated they became aware that the previous CFO is gone and there is a new CFO named "Jessica". Smith also stated that Margaret Martin is an employee that would be useful; to interview. Smith stated that she attempted to talk to the Board of Directors and got the feeling that they didn't care and believed Lauren Lambach's stories and explanations.

| Reporting Officer(s): Conte, Det Brian L. | Payroll Number : [redacted] | Report Date: 10/09/2018 |
|---|---|---|
| Reviewed by: Carlson, Lt Tricia M. | Payroll Number : 124799 | Copy To: | Page: 1 Of 16 |

A short time later I was contacted by Smith's supervisor and informed that the U.S. Department of Labor would also be opening a criminal investigation into the employee funds.

I was later contacted by Investigator Paul Lee, from the U.S. Department of Labor. He informed me that he was assigned the criminal investigation into the allegations that Ms. Laurene Lambach wasn't making the deposits or payments for the SET Ministry employees.

On Monday, November 19, 2018, Idrafted four search warrants and affidavits to request search warrants for the business locations for Unison, Interfaith, SET Ministry and Laurene Lambach's personal residence for evidence of the crime of Theft by Fraud.

**The four (4) locations requested to be searched were:**

1. Unison offices at 600 W. Virginia Street, fourth floor, Milwaukee, WI, 53204, the current location of main offices for Unison MKE and Interfaith Older Adult Programs.

2. Unison and SET Ministry office at 1818 W. Juneau Avenue, Milwaukee, WI 53233, the current location for Unison Development office.

3. SET Ministry office at 2977 N. 50th Street, Milwaukee, WI 53210, former main office for SET Ministry before the merger.

4. Ms. Lambach's personal residence at 16901 W. Homestead Drive, New Berlin, WI 53151.

**I requested a search warrant to search for the following items:**

1. All invoices, receipts, order and confirmation or s for purchase from Dell Computers;

2. All bank statements, including cancelled checks and ACH transfers for the bank account(s) into which the Milwaukee County Department of Aging reimbursement checks were cashed and or deposited;

3. All receipts, invoices and other proof of purchase records for all goods and services concerning Family Caregiver Support Network (FCSN) grants and FCSN-Alzheimer's programs;

4. Payroll records for Interfaith Older Adult Programs; Invoices , bills and notices of other demands for payments from SET Ministry to Interfaith;

5. Corporation for National and Community Services (CNCS) quarterly reports and billing sheets, CNCS spreadsheets for billings;

6. Any computerized communication system such as a desktop computer, Laptop, cellular telephone and electronic tablets that provided the defendant access to the internet.

The Search Warrant was reviewed and endorsed by Assistant District Attorney Thomas Potter. The Search Warrant was approved and signed by Judge Dennis Cimpl, Branch 19.

I was informed by an informant that Ms. Laurene Lambach will be at the Unison offices at 600 W. Virginia Street for a large meeting. I was informed they will be a meeting in the conference room down the hall from the loading dock from 08:30 A.M. and 10:00 A.M. I was also informed Laurene will then be at a staff meeting in the same building somewhere downstairs.

On Tuesday, November 20, 2018, the following met at the MCSO, CID offices, located in the Safety Building for search warrant brief: Lieutenant Tricia Carlson, Detective Donald, Desotell, Detective Dickson Woo, Detective Frederick Gayle, Detective April Johnson, Detective JoAnn Donner, Detective Roberto Hernandez, C.O. Nathan Benz and Audit Forensic Manager Matthew Hart.

Detective Larrel Lirette and Detective Todd Rosenstein were unable to attend the search warrant brief in person, but were briefed and were given assignments and would join the search later.

**The following Search Warrant tasks were assigned to the following:**

Lieutenant Tricia Carlson, Squad # 103 - Officer in Charge (OIC)

Detective Brian Conte, Squad # 134 - Case Detective and Interviews

Detective Roberto Hernandez, Squad # 217 - Photographs

Detective JoAnn Donner, Squad # 139 - Search

Detective Dickson Woo, Squad # 133 - Search

Detective Frederick Gayle, Squad # 135 - Search and Interviews

Detective Donald Desotell, Squad # 137 - Interviews and Conveyance of suspect

Detective April Johnson, Squad # 131 - Conveyance and Search of female suspect

C.O. Nathan Benz & C.O. Timothy Schwan - Scribe.

Detective Larrel Lirette, Squad # 183 and Detective Todd Rosenstein, Squad # 185- Search of 16901 W. Homestead Drive, New Berlin, WI 53151.

**Search of 16901 W. Homestead Drive, New Berlin, WI 53151:**

I provided Detective Lirette with a copy of the search warrant for the suspect's residence. Detective Lirette and Deputy Daniel Humphreys, Squad # 713, went to the suspect's personal residence located at 16901 W. Homestead Drive, New Berlin, WI 53151. The New Berlin Police Department (NBPD) was also notified of the Search Warrant in their jurisdiction.

Detective Todd Rosenstein later met them at the address with the door key obtained from Mrs. Lambach during the search warrant at 600 W. Virginia Street. (See Detective Lirette's Supplemental Report). (Also See Search Warrant Log).

**Search of 600 W. Virgina Street, Milwaukee, WI 53204:**

At approximately 0959 hours, the rest of the assigned Search Warrant team went to Unison, located at 600 W. Virginia Street, Milwaukee, WI 53204. Matthew Hart also accompanied us. We proceeded to the meeting room and located Mrs. Laurene Lambach. The meeting had just ended and the attendees were exiting the meeting. I informed Lambach that we had a search warrant for her computer and her offices.

Lambach was asked if she had any property with her in the meeting and indicated she had her work laptop computer, purse and lunch bag with her in the meeting room. We then walked with Lambach to the Unison offices located on the fourth floor. Detective Johnson stayed with Lambach. A copy of the search warrant was given to Lambach.

Lambach was asked for her keys to her house so we didn't have to cause any damage to her door. The keys were given to Detective Rosenstein and he transported the keys to Detective Lirette at her residence. Lambach was also asked if her husband was at their residence. She stated he was at work at Cognex Corporation.

Lambach was informed of the four search warrants. Lambach stated that Wegner CPA's were here in the building for the audit.

Lambach stated she did not have a work computer at home. She stated she has a personal computer at home, but does use it for work. She stated that the only business records she had at home was some paperwork waiting to be shredded on top of her shredder.

Lambach indicated she drove to work in her Chevrolet Equinox. Detective Rosenstein observed her vehicle parked outside and did not see any business

records through the windows.

The rest of the team proceeded to search the Unison offices for the records and evidence sought in the search warrant. (See Search Warrant Log for items collected).

Detective Desotell and Detective Gayle assisted with interviews. (See Detective Desotell's and Detective Gayle's Supplemental Reports).

While at 600 W. Virginia Street, the Unison Board of Directors (BOD) Chairman Robert DeVita was notified and responded to the office. DeVita and Vice President Cathy Young requested and short meeting to be briefed on the search warrants. Chairman DeVita, V.P. Young, Lt. Carlson, Matthew Hart and I were present during the meeting.

I informed DeVita and Young that an allegation was made that Laurene Lambach was inappropriately using grant funds, especially on the CNCS and FCSNP grants.

DeVita stated they became Unison on July 17, 2018. He stated that his knowledge of the complaint was in regards to the original allegation of former CFO Cathy Wood. He stated he thought it was in regards to an inappropriate purchase of one computer on a contract. He stated that Interfaith's Board President Timothy Klare would know more.

DeVita stated that it might be in the Interfaith Board of Director's meeting minutes. DeVita also stated that Cathy Wood sued them or threatened a lawsuit and a settlement was reached.

Matthew Hart and I spoke to Jenny Tarkowski, CPA from Wegner CPA's. I asked Tarkowski if she could provide any information or documents from their audit. Tarkowski stated that their audit was not complete because of lack of some of the records not being provided by Interfaith. Tarkowksi also stated she would have to consult with the managing partner before releasing any records and would get back to me.

Mrs. Laurene Lambach was taken into custody. Lambach's purse and lunch bag went with her. Detective April Johnson and Detective Donald Desotell then conveyed Lambach to the Milwaukee County Sheriff's Office (MCSO), Criminal Investigations Division (CID) office, Room # 209, located in the Milwaukee County Safety Building, at 821 W. State Street, Milwaukee, WI 53233.

Lambach was placed into a CID interview room. Lambach was allowed to eat and drink from her lunch bag. Detective Johnson monitored Lambach.

After finishing at 600 W. Virginia Street we proceeded to the next business address. We went to Unison and SET Ministry offices at 1818 W. Juneau Avenue, Milwaukee, WI 53233, the current location for Unison Development office.

**Search of 1818 W. Juneau Avenue, Milwaukee, WI 53233:**

The search warrant team searched the office that was used by Laurene Lambach. While the team was searching I interviewed the employees in the Unison Develppmont Office.

I interviewed the following employees at 1818 W. Juneau Avenue: Widge Liccione, (F/W, [redacted], Becca A. Wanta, (F/W, [redacted]), Stacie M. Vojvodich, (F/W, [redacted] and Richard M. Kohl, (M/W, [redacted]).

**Interview of Widge Liccione, Becca Wanta and Stacie Vojvodich:**

Ms. Widge Liccione stated she is the Unison Development Director. Liccione stated that a former grant manager Amy Crawford was not comfortable with how the CNCS grant was being handled. She stated that Amy quit after she attempted to report the red flags and inappropriate spending to the Interfaith's Board of Directors (BOD). She stated it was a waste of time and the BOD did nothing.

Liccione stated she spoke to the auditors. She stated she was not comfortable with Laurene Lambach's truthfulness and validity of her statements. She stated that multiple employees expressed their no confidence of Laurene and her name could be added to the list.

Liccione stated that the former CFO Cathy Wood was not guilty of anything, even though Laurene Lambach used her as "scape goat". She stated that Cathy Wood had integrity. She stated that Cathy Wood resisted Laurene Lambach and Lambach got rid of Cathy because of it.

Liccione stated that Amy Crawford also made complaints against Laurene. She stated that Laurene's non-compliance with the CNCS audit is a red flag. Liccione stated that Laurene Lambach is a horrible human being.

Liccione stated that it is a red flag about where is the all the money that Laurene is in control of. She mentioned that Lambach recently went on a trip to Las Vegas, Vacations a lot in Florida and recently purchased an expensive home in Florida.

Vojvodich stated that there are a lot of red flags: FCSNP grant and computer purchase, Lambach's cut in budget to the senior centers, her husband's personal loan to the SET Ministry, Nepotism and too much staff on payroll. Vojvodich and Liccione stated that Lambach has hired her nephew, friends, daughter's friends and other friend's children.

Vojvodich and Liccione raised concerns over spending on a marketing video. They stated that Lambach approved a four (4) minute video from STIR and paid between $ 15,000 and $ 22,000. They stated that the owner of STIR is personal friends with Lambach.Vojvodich also raised concerns about Lambach's relatives spending at the Wisconsin Club.

Vojvodich and Liccione informed me that a former Board of Directors Paul Bina voted against the merger. They both stated that the other BOD should also be held accountable for allowing Laurene Lambach to continue with her illegal or inappropriate spending. They believe that Lambach was irresponsible with the money. They believe that the BOD failed to manage Lambach.

They both informed me that Interfaith had a million dollars in reserve funds and they believe that Lambach has spent the reserves. They believe that Lambach is not inept and knows exactly what she is doing. They both informed me that Interfaith failed to make the health plan payments and the employees could not purchase prescription medicine refills because of this under their United Health Care plan.

Ms. Becca Wanta stated she was a Development Associate and agreed with Liccione and Vojvodich statements. They all stated that Mr. Richard Kohl is friends with Lambach.

**Interview of Richard M. Kohl, (M/W, [redacted]:**

Mr. Richard Kohl stated he is the Development Coordinator. He stated he does not know any details about the computer purchase. He stated he now works part time for Unison. He stated he is friendly with Lambach and described her as a "Very Strong Leader" and a friend.

Kohl stated he has worked with Lambach for eight years and has no complaints about her. He also stated she has a strong personality and has her hands in everything and controls everything.

After finishing at 1818 W. Juneau Avenue we proceeded to the next business address. A copy of the Search Warrant was left at the business address. (See the Search Warrant Log for items collected).

**Search of 2977 N. 50th Street, Milwaukee, WI 53210:**

We then went to SET Ministry office at 2977 N. 50th Street, Milwaukee, WI 53210, former main office for SET Ministry before the merger. We were met by Carol L. Howard, the SET Ministry Director for Fostering Futures program. We also spoke to Andrea M. Spagnoli, Program Coordinator.

We were allowed to search, but were informed by Ms. Howard that the records were moved when they merged with Interfaith. No files matching our request were

found. No records were collected. (No Log). A copy of the search warrant was left at the business address. We then proceeded back to the MCSO CID offices in the Safety Building.

**Attempted Interview of Laurene Lambach:**

While at the Safety Building I attempted to interview Ms. Laurene Lambach. Ms. Lambach indicated that she wanted to consult with Unison's attorney first. She stated their attorney Robert Duffy, from Quarles & Brady law firm.

I asked Ms. Lambach for consent for her computer and cellular telephone and she agreed. When I returned with the consent forms she stated she couldn't give consent for the work computer and phone because they belonged to Unison and refused consent for her personal computer.

Detective April Johnson and I, escorted Ms. Lambach to the Milwaukee County Jail (MCJ). Lambach was turned over to jail staff at the MCJ. Lambach was booked into the jail on two counts of Theft by Fraud.Lambach's cellular telephone and flash drive located in her purse was collected. (See Log).

On Wednesday, November 21, 2018, I was called by Laurene Lambach's attorney Craig Mastantuono. Attorney Mastantuono inquired about his clients in-custody status. I informed him that the Probable Cause Determination (CR-215) Form should be reviewed today in Intake Court and determine Probable Cause and bail conditions.

On Wednesday, November 21, 2018, at about 1600 hours, Probable Cause was found by Court Commissioner Maria Dorsey and bail was set at $ 500.00 Cash Bail (CBL). Lambach's bail was paid and she was released on 11/21/18 at approximately 2109 hours.

**Telephone Interview of Holly Davis, Director of Department of Aging:**

Davis stated that Interfaith was struggling with compliance issues for at least one year. She stated DOA reached out for help from Audit to sort out the issues. Davis stated Interfaith has been having issues with accountability. Davis stated that DOA only receives excuses from Lambach for the lack of compliance from SET Ministry, Interfaith and now Unison. She stated this started under Lauren Lambach's leadership.

Davis stated DOA received an anonymous letter asking that the SET Ministry and Interfaith merger into Unison be stopped. Davis stated that there have been underlying tones of problems and believe Lambach is vindictive and acts strange at times.

Davis described the problems the DOA has had with Lambach. She describes continuing Non-Compliance issues, suddenly changing budgets and budgets not matching. She stated the problems really came to the forefront when Lambach took over Interfaith about 12-18 months ago.

Davis stated that the Milwaukee County Executive's Office was informed of the problems with Interfaith and Unison. Davis stated that a possible motive to take money would be Lambach's daughter's wedding costs. She also mentioned another motive of money was Lambach's recent trip to Las Vegas. Davis described Laurene Lambach as very smart, but controlling. She stated she is friends with the Unison Chairman of the Board Robert DaVita.

Davis stated because of problems the DOA was having with Unison and Interfaith two of the senior citizen center contracts were taken from Unison and given to another non-profit organization. Davis stated that Unison had about two million dollars in contracts and grants with Milwaukee County for services.Davis stated that Unison still has three contracts for senior center, but they are being re-evaluated. Davis stated at the meeting DOA had with Unison Laurene Lambach blamed the alleged problems on a former employee Catherine Wood.

Davis stated the DOA has been receiving complaints of poor service from Unison/Interfaith. She stated that the Service Delivery Commission to the DOA was complaining about Interfaith. She stated that the Service Delivery Commission was giving warnings about Unison. Davis also stated that Unison has a contract with the City of Milwaukee for Outreach and Neighborhood Housing.

Davis provided a document summarizing the problems they have had with Unison, Interfaith and SET Ministry.

**Telephone Interview of Lisa A. Lijewski:**

Ms. Lijewski stated she worked as a Controller, Information Technology (IT)/ Human Resources (HR) and Grant Writer. Lijewski stated that Laurene Lambach was her boss. She stated that Lambach was very controlling.Ms. Lijewski stated Lambach was shorting the employees 401K and other pension benefits. She stated that Lambach was not depositing the funds and was using them for day to day operations. She stated she was not properly re-mitting the funds.

Ms. Lijewski stated that she brought her concerns to Lambach. She stated that Lambach blew her off and then retaliated by taking Grant Writing duties from her.

Ms. Lijewski stated as Controller she was in charge of the banking funds records and that is how she became aware that Lambach was not properly depositing the employee's benefits. She stated they used Lincoln Financial. Ms.

Lijewski stated that Lambach was reprimanded in 2013 by SET Ministry for the same behavior in 2013.

Lijewski stated she complained again to Lambach and then she was fired by Lambach. Lijewski stated Lambach walked her out the door. She stated Lambach told everyone she resigned but she was fired. She stated she received Unemployment Benefits for being fired.

Lijewski stated she complained to some of the members of the Board of Directors for SET Ministry and other fellow employees. She stated that the BOD were on Lambach's side and complaining to them was a waste of time.

Lijewski stated that Lambach is very smart and "Tweaked" and "Doctored" the financial records before presenting them to the BOD. Lijewski stated that Lambach used "Excel" spreadsheets and moved items around into different columns to make the math work.

Lijewski stated she showed the records to a friend of hers that is a CPA. She stated that the friend was Bethany Winkler. She stated her friend looked over the records for approximately one month and came to the conclusion that Lijewski should walk away from SET Ministry and Lambach so she would not be associated with Lambach's criminal behavior.

Lijewski stated that Lambach is not inept, but really smart and manipulative. She stated that she believes Lambach's behavior is a combination of controlling and ego to make herself look better.

On Monday, November 26, 2018, I was contacted by Assistant District Attorney Joshua Mathy. I met with ADA Mathy in person and briefed him on this investigation and arrest.

**Telephone interview of Mardi J. Charnitz:**

Ms. Charnitz stated she was and is very concerned about Interfaith's finances. She stated she is very concerned about the Neighborhood Outreach programs direct finances since Laurene Lambach took over.

Ms. Charnitz stated that the Neighborhood Outreach program is part of the "Faith" based part of Interfaith. She stated that approximately 190 congregations support the program. She stated that the sponsoring congregations provide volunteers, finances and office space to the program.

Ms. Charnitz also stated that Interfaith gets financial support from Milwaukee County and the United Way. She stated Interfaith received funds to provide services to help older adults stay in their homes longer.Ms. Charnitz stated that a lot of these older adults when they die leave bequests to Interfaith in their wills. She stated that the bequests or donations of money

from their estates are drafted into a letter from their attorneys. She stated that the bequest letters are mailed to Interfaith at the 600 W. Virginia Street address.

Ms. Charnitz stated that the deceased bequests are earmarked for the neighborhood they resided in. She stated since Lambach took over the bequests have not been earmarked for these neighborhoods and are used elsewhere.Ms. Charnitz stated she is personally aware of ten (10) neighborhoods she worked with did not get their earmarked bequests or funds. She stated she inquired about the bequests and was "brushed off" and was told don't worry by Lambach.

Ms. Charnitz stated that some of these bequests reached $50,000 to 100,000 after the deceased estates were settled. She stated that the elderly clients didn't have a lot of money, but after their homes and other assets were sold there were available assets for the bequests.

Ms. Charnitz was adamant that she was not a disgruntled employee but truly cares about the mission to care for the elderly. She stated that the funds from the bequests were supposed to be restricted to what the deceased requested. She stated that in her opinion Lambach's behavior was criminal.

Ms. Charnitz stated she believed her position was eliminated and she was walked out because "I knew too much".Ms. Charnitz stated she is still worried about the funds, even after the Board Chairman Robert DaVita just sent a letter to the church congregation after Lambach's arrest assuring them that the money is still there. Ms. Charnitz believes that Lambach's criminal behavior is broader than we think and Lambach has moved Interfaith's funds around and illegally or at least inappropriately spent Interfaith's reserve funds.

Ms. Charnitz stated at the least Lambach spent the wrong funds on other programs. She stated that the Accounting department should be checked. She believes that the funds are already spent by Lambach and the money is gone.

Ms. Charnitz stated that the investigation into the faith based funds is complicated because the funds come from 190 congregations and there are offices in multiple churches. She stated that the offices are provided as part of the congregation support for the Neighborhood Outreach.

Ms. Charnitz stated that the Board of Directors knew what the complaints and red flags were even though they deny it or will deny it.

Ms. Charnitz stated that Interfaith was a good organization and in good financial health with reserves until Laurene Lambach was appointed CEO and the merger with SET Ministry's. She stated a person that might provide more information into the Neighborhood Outreach is Diane May at South West Interfaith.

| Incident Number: | Incident Location: | Incident Date: |
| --- | --- | --- |
| 18-127890 | 821 W State St, Milwaukee, WI, 53233 | 10/09/2018 |

On Wednesday, November 28, 2018, at approximately 1000 hours, I reported to the Milwaukee County District Attorney's Offices, on the 4th floor of the Milwaukee County Safety Building (SB), located at 821 W. State Street, Milwaukee, WI 53233 for a charging conference. Matthew Hart was also present at the meeting.

I met Assistant District Attorney (ADA) Joshua Mathy (Public Integrity Unit). ADA Mathy reviewed the charges of Theft by Fraud against Laurene Lambach. ADA Joshua Mathy pended the charges for additional investigation.

On Monday, December 3, 2018, I was informed by U.S. Department of Labor Investigator Paul Lee that his agency will be issuing subpoenas to various service providers to the Plan sponsor to analyze the amount of contributions that were withheld and unremitted to the Plan.

Lee Informed while the civil investigation reviewed Plan years from 2012 to 2016, he has in his notes the Plan was established in 2010. The scope of his subpoena will go all the way to Plan's establishment to determine whether other amounts not identified by the civil investigation exist.

Lee Informed me that after discussion with Lee's criminal coordinator, he would like to meet in-person with MCSO personnel and representatives from the Milwaukee County DA's office.

| Reporting Officer(s): | Payroll Number: | Pages: |
| --- | --- | --- |
| ~~Conte, Det Brian L.~~ | [redacted] | 12 Of 16 |

18-127890 821 W State St, Milwaukee, WI, 53233 10/09/2018

**NAMES**

**Detective-1**
Rosenstein, Detective Todd W/M of 821 W State St, Milwaukee,WI,53233
Work Phone:(414) 278-4788

**Supervisor**
Carlson, Lieutenant Tricia W/F of 821 W State St;MW, Milwaukee,WI,53233
Work Phone:(414) 278-4788

**Detective-2**
Conte, Detective Brian W/M of 821 W State St, Milwaukee,WI,53233
Work Phone:(414) 278-4788

**Detective-3**
Desotell, Detective Donald W/M of 821 W State St, Milwaukee,WI,53233
Work Phone:(414) 278-4788

**Detective-4**
Donner, Detective JoAnn A/F of 821 W State St, Milwaukee,WI,53233
Work Phone:(414) 278-4788

**Detective-5**
Gayle, Detective Frederick B/M of 821 W State St;MW, Milwaukee,WI,53233
Work Phone:(414) 278-4788

**Detective-6**
Hernandez, Detective Roberto W/M of 821 W State St;MW, Milwaukee,WI,53233
Work Phone:(414) 278-4788

**Detective-7**
Lirette, Detective Larrel W/M of 821 W State St, Milwaukee,WI,53233
Work Phone:(414) 278-4788

**Detective-8**

18-127890 821 W State St, Milwaukee, WI, 53233 10/09/2018

Woo, Detective Dickson A/M of 821 W State St, Milwaukee,WI,53233
Work Phone:(414) 278-4788

**Assistant District Attorney-1**

Potter, Thomas ADA W/M of 821 W State St, Milwaukee,WI,53233
Work Phone:(414) 278-5088

**Detective-9**

Johnson, Detective April B/F of 821 W State St, Milwaukee,WI,53233
Work Phone:(414) 278-4788

**Assisting Correctional Officer-1**

Benz, CO Nathan W/M of 821 W State St, Milwaukee,WI,53233

**Court Official-1**

Dorsey, Maria S W/F of 901 N 9th St, Milwaukee,WI,53233
Work Phone:(414) 278-5115

**Court Official-2**

Cimpl, Dennis Judge W/M of 901 N 9th St, Milwaukee,WI,53233
Work Phone:(414) 278-5153

**Assistant District Attorney-2**

Mathey, Joshua ADA W/M of 821 W State St, Milwaukee,WI,53233
Work Phone:(414) 278-3044

**Invest Othr Agency-1**

Hart, Matthew W/M of [redacted]
Work Phone:(414) 278-4866 Fax Phone:(414) 223-1895

**Assisting Correctional Officer-2**

Schwan, CO Timothy W/M of 821 W State St;MW, Milwaukee,WI,53233
Work Phone:(414) 278-4788

**Offender**

Lambach, Laurene Gramling W/F-60 of 16901 W Homestead Dr,

18-127890 821 W State St, Milwaukee, WI, 53233 10/09/2018

New Berlin,WI,53151
DOB: [redacted]
HT: 507 WT: 143 Hair: Brown
Eyes: Brown Complexion: Fair

**Booking#: 18-004235**

| Case# | Charge | Description | Ct |
|---|---|---|---|
| 18-127890 | 943.20(1)(d) | Theft-False Representation>$5000-$10,000 | 2 |

**Witness-1**
Vojvodich, Stacey Marie W/F-63 of [redacted]
DOB: [redacted]
HT: 508 WT: 155 Hair: Brown
Eyes: Brown Complexion: Fair
Cell Phone: [redacted]

**Employee-1**
Young, Catherine A W/F-65 of [redacted]
DOB: [redacted]
HT: 506 WT: 130 Hair: Brown
Eyes: Hazel Complexion: Fair

**Invest Othr Agency-2**
Smith, Donjeene Invest of 200 W Adams St, Chicago,IL,60606
Work Phone:(312) 886-0584

**Invest Othr Agency-3**
Lee, Paul Investigator of 200 W Adams St, Chicago,IL,60606
Work Phone:(312) 886-0578 Cell Phone: [redacted]

**Witness-2**
Liccione, Widge W/F-64 of [redacted]
DOB: [redacted]
HT: 503 WT: 150 Hair: Brown
Eyes: Brown Complexion: Fair
Cell Phone: [redacted]

18-127890 821 W State St, Milwaukee, WI, 53233 10/09/2018

**Witness-3**

Wanta, Rebecca Ann W/F-27 of [redacted]

DOB: [redacted]

HT: 501 WT: 225 Hair: Brown

Eyes: Green Complexion: Fair

Cell Phone: [redacted]

**Employee-2**

Kohl, Richard M W/M-74 of [redacted]

DOB: [redacted]

HT: 508 WT: 165 Hair: Brown

Eyes: Blue Complexion: Fair

**Employee-3**

Howard, Carol L B/F of [redacted]

Hair: Black

Eyes: Brown Complexion: Medium Brown

Work Phone:(414) 449-2688 Fax Phone:(414) 442-1770

**Witness-4**

Lijewski, Lisa Anne W/F-39 of [redacted]

DOB: [redacted]

HT: 508 WT: 175 Hair: Brown

Eyes: Brown Complexion: Fair

Cell Phone: [redacted]

**Witness-5**

Charnitz, Mardi J W/F-69 of [redacted]

DOB: [redacted]

HT: 502 WT: 200 Hair: Blonde or Strawberry

Eyes: Blue Complexion: Fair

Cell Phone: [redacted]

**Court Official-3**

Mastantuono, Craig Attorney A W/M-52 of [redacted]

DOB: 10/04/1966

Work Phone:(414) 276-8662

---------------------------------------------------------------------------

CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF WISCONSIN
COUNTY OF MILWAUKEE

# SEARCH WARRANT

The State of Wisconsin, to any Law Enforcement Officer of the State of Wisconsin:

*WHEREAS*, *Detective Brian Conte* has this day complained (by attached affidavit) to this Court upon oath showing probable cause that on *Monday, November 19, 2018*, in the County of Waukesha, there is now located and concealed in and upon certain premises, located within the City of New Berlin, in said County of Waukesha, occupied by *(Laurene G. Lambach, (F/W,* [redacted]), and more particularly described as follows:

***DESCRIBE PREMISES***: *16901 W. Homestead Drive, New Berlin, WI 53151,* is a single family dwelling, with tan brick, grey shingles roof, front with address affixed left of the door, the front entrance faces W. Homestead Drive located in the City Of New Berlin, County of Waukesha, State of Wisconsin; All rooms, persons, storage areas, and property within the area occupied or accessible to Laurene Lambach; to include all storage areas and associated with and accessible to her at *16901 W. Homestead Drive, New Berlin, WI* and all persons present on premises, certain goods, chattels and property, to-wit:

***DESCRIBE OBJECTS OF SEARCH:***

(1) All invoices, receipts, order and confirmation or s for purchase from Dell Computers;
(2) All bank statements, including cancelled checks and ACH transfers for the bank account(s) into which the Milwaukee County Department of Aging reimbursement checks were cashed and or deposited;
(3) All receipts, invoices and other proof of purchase records for all goods and services concerning Family Caregiver Support Network (FCSN) grants and FCSN-Alzheimer's programs;
(4) Payroll records for Interfaith Older Adult Programs; Invoices , bills and notices of other demands for payments from SET Ministry to Interfaith;
(5) Corporation for National and Community Services (CNCS) quarterly reports and billing sheets, CNCS spreadsheets for billings;
(6) Any computerized communication system such as a desktop computer, Laptop, cellular telephone and electronic tablets that provided the defendant access to the internet.

Which thing(s) (were used in the commission) or (may constitute evidence) of a crime, to-wit:

***DESCRIBE CRIME OR CRIMES***:

(1) Theft by Fraud; Committed in violation of Section(s) 943.20 (1) (d) of the Wisconsin Statutes.

*THEREFORE*, in the name of the State of Wisconsin, you are commanded forthwith to search the said premises and/or the said person(s) for said things, and take possession thereof, if found. You are further commanded to return this warrant within forty-eight hours before the Assistant Chief Deputy Clerk of the Circuit Court, Crime, Misdemeanor, Traffic Division, or his designee, to be dealt with according to law.

*WITNESS*, the Honorable DENNIS R. CIMPL CIRCUIT COURT JUDGE BRANCH 19, ~~Judicial Court Commissioner~~ of the First Judicial District of Wisconsin, at Milwaukee, Wisconsin, at 2:50 PM (Hour, AM/PM) on 11/19 (Month, Day, Year), 2018.

~~Judicial Court Commissioner of Circuit Court Br.~~

EXHIBIT 24
WIT: Conte
DATE: 4-29-22
Carla Van Roo, CRR

CONFIDENTIAL

Def. Prod. 000085

## SEARCH WARRANT RETURN

CIRCUIT COURT )
COUNTY OF MILWAUKEE ) ss.

Dated at Milwaukee, Wisconsin, this ______ day of ____________________, 2018.

I hereby certify that by virtue of the within writ I searched the within named premises and found the following: ____________________________________________________________

____________________________________________________________

____________________________________________________________

and have same now in my possession subject to the disposition of the Circuit Court.

______________________________
Detective Brian Conte # D-35
Milwaukee County Sheriff's Office

# AFFIDAVIT FOR SEARCH WARRANT

STATE OF WISCONSIN )
) ss.
MILWAUKEE COUNTY )

Affiant, ***Detective Brian Conte***, being first duly sworn on oath, states as follows:

## AFFIANT'S TRAINING AND EXPERIENCE

1. That affiant is a state certified law enforcement officer currently assigned to the Milwaukee County Sheriff's Office (MCSO), Police Services Bureau, Criminal Investigation Division, General Investigations and involved in the investigations of Theft and Fraud.

2. That affiant has worked full-time as a law enforcement officer for the past twenty two (22) years;

3. This affiant has received training in the general criminal offenses to include Theft and Fraud; that affiant has, in the course of affiant's experience as a law enforcement officer, been trained and have arrested individuals for Theft, Fraud and related offenses;

## PROBABLE CAUSE & INVESTIGATION

4. On April 15, 2018, the Milwaukee County, Office of Comptroller, Audit Services Division received an anonymous complaint of fraud. The complaint stated on January 22, 2018, Laurene Lambach submitted a fraudulent December 2017 reimbursement report for Interfaith Family Caregiver Support Network Program (FCSNP) grant. The grant is administered by Milwaukee County using federal grant funds from the Older Americans Act.

5. Milwaukee County received a Reimbursement/Advance Request for FCSNP from Interfaith for$44,852.00 for contract # 251-417-52. The final December 2017 Grant Expenditure Report for FCSNP was prepared on January 18, 2018 and signed by Lambach on January 22, 2018.

6. On May 3, 2018, Milwaukee County Office of Comptroller Audit Services Division received additional information including records from an informant that Laurene Lambach had ordered approximately $ 17,000 in Dell computers on December 31, 2017. The order was signed by Laurene Lambach on December 31, 2017. The records indicate five computers were for FCSN grant totaling $ 11,281.39 and two for State of Wisconsin domestic Violence Education grant for $ 4,512.55. The estimated delivery date was January 5, 2018. The order was billed to Lambach at S.E.T. Ministry.

7. In March 2018 the informant contacted Dell and learned that the order was cancelled and the computers were never delivered. Lauren Lambach and Interfaith still received the grant funds for the computers even though they were never purchased or delivered.

8. The informant provided Milwaukee County with an email detailing the a message from Lauren Lambach describing three additional accruals for FCSN totaling $ 36,495.79 & $ 11,495.79 for equipment.

9. I was notified by Milwaukee County ASD that Laurene Lambach has electronically signed 14 documents using the electronic DocuSign website. The most recent contract signed by Laurene Lambach was on Sunday, January 21, 2018 at 7:47 P.M. using an IP Address of [redacted]. Conducting an open search reveals that this IP address is affiliated with AT&T and the gps coordinated are aligned with Lauren Lambach's personal residence in New Berlin, WI.

10. A search warrant for AT&T records confirmed that the IP address [redacted] account belongs to Laurie Laehn an alias of Laurene Lambach.

11. The affiant knows from an informant that the suspect Lauren Lambach stores the above mentioned files at multiple locations to include 600 W. Virginia Avenue, 1818 W. Juneau Avenue and her personal residence at 16901 W. Homestead Drive, New Berlin, WI;

12. That affiant knows; ***16901 W. Homestead Drive, New Berlin, WI 53151,*** is a single family dwelling, with tan brick, grey shingles roof, front with address affixed left of the door, the front entrance faces W. Homestead Drive located in the City Of New Berlin, County of Waukesha, State of Wisconsin;

**NEXUS**

13. That based upon affiant's training and experience, affiant, I, believe, that persons who know they are a target of a criminal investigation sometimes attempt to flee to avoid apprehension, tamper with, conceal or destroy evidence that remains within their control, threaten or harm witnesses or otherwise inappropriately influence witnesses. I am aware that the current investigation involves the use of computers or other digital devices and that the data stored on such devices may be relevant and probative evidence in any subsequent investigation or prosecution. I know from my training and experience that digital data can be recovered from storage devices/media even after long periods of time. However, I also know that digital devices or storage media (hard drives, USB drives, CD's, DVD's, etc.) can be easily concealed, moved, destroyed or damaged and thereby prevent a forensic analysis of the contents of those devices, even if they can be located;

14. Furthermore, that based upon affiant's knowledge, training and experience, as well as affiant's consultations with other police officers and detectives, persons engaged in criminal activity frequently store and maintain records in their homes and/or automobiles and leave them on the premises for extended periods of time failing to recognize their forensic value and incriminating nature;

**CONCLUSION**

15. **LASTLY,** that affiant is aware that a search warrant may be issued when the application establishes probable cause to believe that evidence connected with a crime will be found at the place to be searched; that probable cause supporting a search warrant is determined by the "totality of the circumstances" wherein the task of the Court is to simply make a practical, commonsense decision whether, given all of the circumstances as set forth in the

affidavit, that there is a fair probability that contraband or evidence of a crime will be found in a particular place; furthermore, affiant is also aware that the Courts have determined that probable cause is not a technical or legalistic concept but a flexible common-sense measure of the plausibility of specific conclusions; that elaborate specificity is not required and that probable cause may be supported by inferences as well as facts;

16. **WHEREFORE**, affiant believes that based on the above-stated information contained within this affidavit that affiant has established the requisite probable cause establishing that evidence of the crime of Theft by Fraud, in violation of Section 943.20(1) (d) the Wisconsin Statutes, does now exist at the location as described in Paragraph No. **11**; furthermore, that affiant, based upon affiant's training and experience, seeks permission to search all persons on the premises because the premises in question is a private residence and firearms and firearms-related contraband may easily be secreted on one's person;

17. This affidavit was reviewed and approved by Assistant District Attorney Thomas Potter on *Monday, November 19, 2018* at 2:45 a.m./p.m.

Detective B. Conte #D-35
AFFIANT

Subscribed and sworn to before me this
19 day of Nov., 2018.

Thomas Potter
Notary Public, State of Wisconsin, Milwaukee County;
My Commission is permanent/~~expires~~ ________.

CONFIDENTIAL Def. Prod. 000089

CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF WISCONSIN
COUNTY OF MILWAUKEE

# SEARCH WARRANT

The State of Wisconsin, to any Law Enforcement Officer of the State of Wisconsin:

***WHEREAS***, ***Detective Brian Conte*** has this day complained (by attached affidavit) to this Court upon oath showing probable cause that on ***Monday, November 19, 2018***, in the County of Milwaukee, there is now located and concealed in and upon certain premises, located within the City of Milwaukee, in said County, occupied by ***(Laurene G. Lambach, (F/W,*** [redacted]**)**, and more particularly described as follows:

***DESCRIBE PREMISES***: ***600 West Virginia Street, Milwaukee, WI 53204, 4th floor, Suites,*** is a multi-floor, multi-suite business building with concrete and brick sides ; that the numbers ***"600"*** are prominently displayed on the south side of the building, fourth floor (L) room marked as CEO (P/T) (Governance) CFO (Acct) 407, room marked as Y CUI (Acct) 406 M Martin (acct), room marked J Horning S Joy (Contracts) 4010, in addition Accounting office, Accounting storage room Contracts room; that this premises is located in the City and County of Milwaukee, State of Wisconsin; All rooms, persons, storage areas, and property within the area occupied or accessible to Laurene Lambach; search to include all storage areas and associated with and accessible to Unison at ***600 W. Virginia Street*** and all persons present on premises, certain goods, chattels and property, to-wit:

***DESCRIBE OBJECTS OF SEARCH:***

(1) All invoices, receipts, order and confirmation or s for purchase from Dell Computers;
(2) All bank statements, including cancelled checks and ACH transfers for the bank account(s) into which the Milwaukee County Department of Aging reimbursement checks were cashed and or deposited;
(3) All receipts, invoices and other proof of purchase records for all goods and services concerning Family Caregiver Support Network (FCSN) grants and FCSN-Alzheimer's programs;
(4) Payroll records for Interfaith Older Adult Programs; Invoices , bills and notices of other demands for payments from SET Ministry to Interfaith;
(5) Corporation for National and Community Services (CNCS) quarterly reports and billing sheets, CNCS spreadsheets for billings;
(6) Any computerized communication system such as a desktop computer, Laptop, cellular telephone and electronic tablets that provided the defendant access to the internet.

Which thing(s) (were used in the commission) or (may constitute evidence) of a crime, to-wit:

***DESCRIBE CRIME OR CRIMES***:

(1) Theft by Fraud; Committed in violation of Section(s) 943.20 (1) (d) of the Wisconsin Statutes.

***THEREFORE***, in the name of the State of Wisconsin, you are commanded forthwith to search the said premises and/or the said person(s) for said things, and take possession thereof, if found. You are further commanded to return this warrant within forty-eight hours before the Assistant Chief Deputy Clerk of the Circuit Court, Crime, Misdemeanor, Traffic Division, or his designee, to be dealt with according to law.

***WITNESS***, the Honorable DENNIS R. CIMPL CIRCUIT COURT JUDGE BRANCH 19 ~~Judicial Court Commissioner of the~~ First Judicial District of Wisconsin, at Milwaukee, Wisconsin, at 2:50 Pm (Hour, AM/PM) on 11/19 (Month, Day, Year), 2018.

CONFIDENTIAL

Def. Prod. 000090

~~Judicial Court Commissioner~~ of ~~Circuit Court Br.~~ ____

# SEARCH WARRANT RETURN

CIRCUIT COURT )
COUNTY OF MILWAUKEE ) ss.

Dated at Milwaukee, Wisconsin, this ______ day of ________________, 2018.

I hereby certify that by virtue of the within writ I searched the within named premises and found the following: ____________________________________________

____________________________________________

____________________________________________

and have same now in my possession subject to the disposition of the Circuit Court.

______________________________
Detective Brian Conte # D-35
Milwaukee County Sheriff's Office

CONFIDENTIAL

Def. Prod. 000091

# AFFIDAVIT FOR SEARCH WARRANT

STATE OF WISCONSIN )
) ss.
MILWAUKEE COUNTY )

Affiant, ***Detective Brian Conte***, being first duly sworn on oath, states as follows:

## AFFIANT'S TRAINING AND EXPERIENCE

1. That affiant is a state certified law enforcement officer currently assigned to the Milwaukee County Sheriff's Office (MCSO), Police Services Bureau, Criminal Investigation Division, General Investigations and involved in the investigations of Theft and Fraud.

2. That affiant has worked full-time as a law enforcement officer for the past twenty two (22) years;

3. This affiant has received training in the general criminal offenses to include Theft and Fraud; that affiant has, in the course of affiant's experience as a law enforcement officer, been trained and have arrested individuals for Theft, Fraud and related offenses;

## PROBABLE CAUSE & INVESTIGATION

4. On April 15, 2018, the Milwaukee County, Office of Comptroller, Audit Services Division received an anonymous complaint of fraud. The complaint stated on January 22, 2018, Laurene Lambach submitted a fraudulent December 2017 reimbursement report for Interfaith Family Caregiver Support Network Program (FCSNP) grant. The grant is administered by Milwaukee County using federal grant funds from the Older Americans Act.

5. Milwaukee County received a Reimbursement/Advance Request for FCSNP from Interfaith for$44,852.00 for contract # 251-417-52. The final December 2017 Grant Expenditure Report for FCSNP was prepared on January 18, 2018 and signed by Lambach on January 22, 2018.

6. On May 3, 2018, Milwaukee County Office of Comptroller Audit Services Division received additional information including records from an informant that Laurene Lambach had ordered approximately $ 17,000 in Dell computers on December 31, 2017. The order was signed by Laurene Lambach on December 31, 2017. The records indicate five computers were for FCSN grant totaling $ 11,281.39 and two for State of Wisconsin domestic Violence Education grant for $ 4,512.55. The estimated delivery date was January 5, 2018. The order was billed to Lambach at S.E.T. Ministry.

7. In March 2018 the informant contacted Dell and learned that the order was cancelled and the computers were never delivered. Lauren Lambach and Interfaith still received the grant funds for the computers even though they were never purchased or delivered.

8. The informant provided Milwaukee County with an email detailing the a message from Lauren Lambach describing three additional accruals for FCSN totaling $ 36,495.79 & $ 11,495.79 for equipment.

9. I was notified by Milwaukee County ASD that Laurene Lambach has electronically signed 14 documents using the electronic DocuSign website. The most recent contract signed by Laurene Lambach was on Sunday, January 21, 2018 at 7:47 P.M. using an IP Address of [redacted]. Conducting an open search reveals that this IP address is affiliated with AT&T and the gps coordinated are aligned with Lauren Lambach's personal residence in New Berlin, WI.

10. A search warrant for AT&T records confirmed that the IP address [redacted] account belongs to Laurie Laehn an alias of Laurene Lambach.

11. The affiant knows from an informant that the suspect Lauren Lambach stores the above mentioned files at multiple locations to include 600 W. Virginia Avenue, 1818 W. Juneau Avenue and her personal residence at 16901 W. Homestead Drive, New Berlin, WI;

12. That affiant knows ***600 West Virginia Street, Milwaukee, WI 53204, 4th floor, Suites***, is a multi-floor, multi-suite business building with concrete and brick sides ; that the numbers ***"600"*** are prominently displayed on the south side of the building, fourth floor (L) room marked as CEO (P/T) (Governance) CFO (Acct) 407, room marked as Y CUI (Acct) 406 M Martin (acct), room marked J Horning S Joy (Contracts) 4010, in addition Accounting office, Accounting storage room Contracts room; that this premises is located in the City and County of Milwaukee, State of Wisconsin;

## NEXUS

1. That based upon affiant's training and experience, affiant, I, believe, that persons who know they are a target of a criminal investigation sometimes attempt to flee to avoid apprehension, tamper with, conceal or destroy evidence that remains within their control, threaten or harm witnesses or otherwise inappropriately influence witnesses. I am aware that the current investigation involves the use of computers or other digital devices and that the data stored on such devices may be relevant and probative evidence in any subsequent investigation or prosecution. I know from my training and experience that digital data can be recovered from storage devices/media even after long periods of time. However, I also know that digital devices or storage media (hard drives, USB drives, CD's, DVD's, etc.) can be easily concealed, moved, destroyed or damaged and thereby prevent a forensic analysis of the contents of those devices, even if they can be located;

2. Furthermore, that based upon affiant's knowledge, training and experience, as well as affiant's consultations with other police officers and detectives, persons engaged in criminal activity frequently store and maintain records in their homes and/or automobiles and leave them on the premises for extended periods of time failing to recognize their forensic value and incriminating nature;

## CONCLUSION

3. **LASTLY**, that affiant is aware that a search warrant may be issued when the application establishes probable cause to believe that evidence connected with a crime will be found at

the place to be searched; that probable cause supporting a search warrant is determined by the "totality of the circumstances" wherein the task of the Court is to simply make a practical, commonsense decision whether, given all of the circumstances as set forth in the affidavit, that there is a fair probability that contraband or evidence of a crime will be found in a particular place; furthermore, affiant is also aware that the Courts have determined that probable cause is not a technical or legalistic concept but a flexible common-sense measure of the plausibility of specific conclusions; that elaborate specificity is not required and that probable cause may be supported by inferences as well as facts;

4. **WHEREFORE**, affiant believes that based on the above-stated information contained within this affidavit that affiant has established the requisite probable cause establishing that evidence of the crime of Theft by Fraud, in violation of Section 943.20(1) (d) the Wisconsin Statutes, does now exist at the location as described in Paragraph No. **11**; furthermore, that affiant, based upon affiant's training and experience, seeks permission to search all persons on the premises because the premises in question is a private residence and firearms and firearms-related contraband may easily be secreted on one's person;

5. This affidavit was reviewed and approved by Assistant District Attorney Thomas Potter on *Monday, November 19, 2018* at 2:45 a.m./p.m.

Detective B. Cole #D-35
AFFIANT

Subscribed and sworn to before me this
19 day of Nov, 2018.

Thomas J. Potter
Notary Public, State of Wisconsin, Milwaukee County;
My Commission is permanent/~~expires~~.

CONFIDENTIAL Def. Prod. 000094

CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF WISCONSIN
COUNTY OF MILWAUKEE

# SEARCH WARRANT

The State of Wisconsin, to any Law Enforcement Officer of the State of Wisconsin:

***WHEREAS***, ***Detective Brian Conte*** has this day complained (by attached affidavit) to this Court upon oath showing probable cause that on ***Monday, November 19, 2018***, in the County of Milwaukee, there is now located and concealed in and upon certain premises, located within the City of Milwaukee, in said County, occupied by ***(Laurene G. Lambach, (F/W,*** [redacted]***)***, and more particularly described as follows:

***DESCRIBE PREMISES***: ***1818 W. Juneau Avenue, Milwaukee, WI 53233***, is a multi-unit City of Milwaukee Housing Authority complex, to include limited office space building with concrete and brick sides; that the numbers ***"1818"*** are prominently displayed on the building, Consultation room with green doors and trim. Unison has office space in this building, the office space is marked Unison Development Office and this premises is located in the City and County of Milwaukee, State of Wisconsin; All rooms, persons, storage areas, and property within the area occupied or accessible to Laurene Lambach; to include all storage areas and associated with and accessible to Unison at ***1818 W. Juneau Avenue*** and all persons present on premises, certain goods, chattels and property, to-wit:

***DESCRIBE OBJECTS OF SEARCH:***

(1) All invoices, receipts, order and confirmation or s for purchase from Dell Computers;
(2) All bank statements, including cancelled checks and ACH transfers for the bank account(s) into which the Milwaukee County Department of Aging reimbursement checks were cashed and or deposited;
(3) All receipts, invoices and other proof of purchase records for all goods and services concerning Family Caregiver Support Network (FCSN) grants and FCSN-Alzheimer's programs;
(4) Payroll records for Interfaith Older Adult Programs; Invoices , bills and notices of other demands for payments from SET Ministry to Interfaith;
(5) Corporation for National and Community Services (CNCS) quarterly reports and billing sheets, CNCS spreadsheets for billings;
(6) Any computerized communication system such as a desktop computer, Laptop, cellular telephone and electronic tablets that provided the defendant access to the internet.

Which thing(s) (were used in the commission) or (may constitute evidence) of a crime, to-wit:

***DESCRIBE CRIME OR CRIMES***:

(1) Theft by Fraud; Committed in violation of Section(s) 943.20 (1) (d) of the Wisconsin Statutes.

***THEREFORE***, in the name of the State of Wisconsin, you are commanded forthwith to search the said premises and/or the said person(s) for said things, and take possession thereof, if found. You are further commanded to return this warrant within forty-eight hours before the Assistant Chief Deputy Clerk of the Circuit Court, Crime, Misdemeanor, Traffic Division, or his designee, to be dealt with according to law.

DENNIS R. CIMPL
CIRCUIT COURT JUDGE
BRANCH 19

***WITNESS***, the Honorable ______, ~~Judicial Court Commissioner~~ of the First Judicial District of Wisconsin, at Milwaukee, Wisconsin, at 2:50 PM on 11/19, 2018.
(Hour, AM/PM) (Month, Day, Year)

Judicial ~~Court Commissioner of~~ Circuit Court Br.

# SEARCH WARRANT RETURN

CIRCUIT COURT } ss.
COUNTY OF MILWAUKEE }

Dated at Milwaukee, Wisconsin, this _______day of_____________________, 2018.

I hereby certify that by virtue of the within writ I searched the within named premises and found the following:_______________________________________________

_______________________________________________

_______________________________________________

and have same now in my possession subject to the disposition of the Circuit Court.

_______________________________
Detective Brian Conte # D-35
Milwaukee County Sheriff's Office

# AFFIDAVIT FOR SEARCH WARRANT

STATE OF WISCONSIN )
) ss.
MILWAUKEE COUNTY )

Affiant, ***Detective Brian Conte***, being first duly sworn on oath, states as follows:

## AFFIANT'S TRAINING AND EXPERIENCE

1. That affiant is a state certified law enforcement officer currently assigned to the Milwaukee County Sheriff's Office (MCSO), Police Services Bureau, Criminal Investigation Division, General Investigations and involved in the investigations of Theft and Fraud.

2. That affiant has worked full-time as a law enforcement officer for the past twenty two (22) years;

3. This affiant has received training in the general criminal offenses to include Theft and Fraud; that affiant has, in the course of affiant's experience as a law enforcement officer, been trained and have arrested individuals for Theft, Fraud and related offenses;

## PROBABLE CAUSE & INVESTIGATION

4. On April 15, 2018, the Milwaukee County, Office of Comptroller, Audit Services Division received an anonymous complaint of fraud. The complaint stated on January 22, 2018, Laurene Lambach submitted a fraudulent December 2017 reimbursement report for Interfaith Family Caregiver Support Network Program (FCSNP) grant. The grant is administered by Milwaukee County using federal grant funds from the Older Americans Act.

5. Milwaukee County received a Reimbursement/Advance Request for FCSNP from Interfaith for$44,852.00 for contract # 251-417-52. The final December 2017 Grant Expenditure Report for FCSNP was prepared on January 18, 2018 and signed by Lambach on January 22, 2018.

6. On May 3, 2018, Milwaukee County Office of Comptroller Audit Services Division received additional information including records from an informant that Laurene Lambach had ordered approximately $ 17,000 in Dell computers on December 31, 2017. The order was signed by Laurene Lambach on December 31, 2017. The records indicate five computers were for FCSN grant totaling $ 11,281.39 and two for State of Wisconsin domestic Violence Education grant for $ 4,512.55. The estimated delivery date was January 5, 2018. The order was billed to Lambach at S.E.T. Ministry.

7. In March 2018 the informant contacted Dell and learned that the order was cancelled and the computers were never delivered. Lauren Lambach and Interfaith still received the grant funds for the computers even though they were never purchased or delivered.

8. The informant provided Milwaukee County with an email detailing the a message from Lauren Lambach describing three additional accruals for FCSN totaling $ 36,495.79 & $ 11,495.79 for equipment.

9. I was notified by Milwaukee County ASD that Laurene Lambach has electronically signed 14 documents using the electronic DocuSign website. The most recent contract signed by Laurene Lambach was on Sunday, January 21, 2018 at 7:47 P.M. using an IP Address of [redacted]. Conducting an open search reveals that this IP address is affiliated with AT&T and the gps coordinated are aligned with Lauren Lambach's personal residence in New Berlin, WI.

10. A search warrant for AT&T records confirmed that the IP address [redacted] account belongs to Laurie Laehn an alias of Laurene Lambach.

11. The affiant knows from an informant that the suspect Lauren Lambach stores the above mentioned files at multiple locations to include 600 W. Virginia Avenue, 1818 W. Juneau Avenue and her personal residence at 16901 W. Homestead Drive, New Berlin, WI;

12. That affiant knows; ***1818 W. Juneau Avenue, Milwaukee, WI 53233,*** is a multi-unit City of Milwaukee Housing Authority complex, to include limited office space building with concrete and brick sides; that the numbers ***"1818"*** are prominently displayed on the building, Consultation room with green doors and trim. Unison has office space in this building, the office space is marked Unison Development Office and this premises is located in the City and County of Milwaukee, State of Wisconsin;

**NEXUS**

13. That based upon affiant's training and experience, affiant, I believe, that persons who know they are a target of a criminal investigation sometimes attempt to flee to avoid apprehension, tamper with, conceal or destroy evidence that remains within their control, threaten or harm witnesses or otherwise inappropriately influence witnesses. I am aware that the current investigation involves the use of computers or other digital devices and that the data stored on such devices may be relevant and probative evidence in any subsequent investigation or prosecution. I know from my training and experience that digital data can be recovered from storage devices/media even after long periods of time. However, I also know that digital devices or storage media (hard drives, USB drives, CD's, DVD's, etc.) can be easily concealed, moved, destroyed or damaged and thereby prevent a forensic analysis of the contents of those devices, even if they can be located;

14. Furthermore, that based upon affiant's knowledge, training and experience, as well as affiant's consultations with other police officers and detectives, persons engaged in criminal activity frequently store and maintain records in their homes and/or automobiles and leave them on the premises for extended periods of time failing to recognize their forensic value and incriminating nature;

**CONCLUSION**

15. **LASTLY**, that affiant is aware that a search warrant may be issued when the application establishes probable cause to believe that evidence connected with a crime will be found at the place to be searched; that probable cause supporting a search warrant is determined by

the "totality of the circumstances" wherein the task of the Court is to simply make a practical, commonsense decision whether, given all of the circumstances as set forth in the affidavit, that there is a fair probability that contraband or evidence of a crime will be found in a particular place; furthermore, affiant is also aware that the Courts have determined that probable cause is not a technical or legalistic concept but a flexible common-sense measure of the plausibility of specific conclusions; that elaborate specificity is not required and that probable cause may be supported by inferences as well as facts;

16. **WHEREFORE**, affiant believes that based on the above-stated information contained within this affidavit that affiant has established the requisite probable cause establishing that evidence of the crime of Theft by Fraud, in violation of Section 943.20(1) (d) the Wisconsin Statutes, does now exist at the location as described in Paragraph No. **11**; furthermore, that affiant, based upon affiant's training and experience, seeks permission to search all persons on the premises because the premises in question is a private residence and firearms and firearms-related contraband may easily be secreted on one's person;

17. This affidavit was reviewed and approved by Assistant District Attorney Thomas Potter on *Monday, November 19, 2018* at 2:45 a.m./p.m.

#0-35

AFFIANT

Subscribed and sworn to before me this
19 day of Nov., 2018.

Notary Public, State of Wisconsin, Milwaukee County;
My Commission is permanent/~~expires~~.

CONFIDENTIAL Def. Prod. 000099

CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF WISCONSIN
COUNTY OF MILWAUKEE

# SEARCH WARRANT

The State of Wisconsin, to any Law Enforcement Officer of the State of Wisconsin:

***WHEREAS***, ***Detective Brian Conte*** has this day complained (by attached affidavit) to this Court upon oath showing probable cause that on ***Monday, November 19, 2018***, in the County of Milwaukee, there is now located and concealed in and upon certain premises, located within the City of Milwaukee, in said County of Milwaukee, occupied by ***(Laurene G. Lambach, (F/W,*** [redacted]), and more particularly described as follows:

***<u>DESCRIBE PREMISES</u>***: ***2977 N. 50th Street, Milwaukee, WI 53210,*** is a two level family dwelling converted into business office space utilized by Ascension SE WI Hospital St. Joseph's Campus and SET Ministry, with tan siding , red trim and brown roof, front with address affixed above of the door, the front entrance faces N. 50th Street located in the City Of Milwaukee, County of Milwaukee, State of Wisconsin; All rooms, persons, storage areas, and property within the area occupied or accessible to Laurene Lambach; to include all storage areas and associated with and accessible to her and SET Ministry at **2977 N. 50th Street, Milwaukee, *WI*** and all persons present on premises, certain goods, chattels and property, to-wit:

***<u>DESCRIBE OBJECTS OF SEARCH:</u>***

(1) All invoices, receipts, order and confirmation or s for purchase from Dell Computers;
(2) All bank statements, including cancelled checks and ACH transfers for the bank account(s) into which the Milwaukee County Department of Aging reimbursement checks were cashed and or deposited;
(3) All receipts, invoices and other proof of purchase records for all goods and services concerning Family Caregiver Support Network (FCSN) grants and FCSN-Alzheimer's programs;
(4) Payroll records for Interfaith Older Adult Programs; Invoices , bills and notices of other demands for payments from SET Ministry to Interfaith;
(5) Corporation for National and Community Services (CNCS) quarterly reports and billing sheets, CNCS spreadsheets for billings;
(6) Any computerized communication system such as a desktop computer, Laptop, cellular telephone and electronic tablets that provided the defendant access to the internet.

Which thing(s) (were used in the commission) or (may constitute evidence) of a crime, to-wit:

***<u>DESCRIBE CRIME OR CRIMES</u>***:

(1) Theft by Fraud; Committed in violation of Section(s) 943.20 (1) (d) of the Wisconsin Statutes.

***THEREFORE***, in the name of the State of Wisconsin, you are commanded forthwith to search the said premises and/or the said person(s) for said things, and take possession thereof, if found. You are further commanded to return this warrant within forty-eight hours before the Assistant Chief Deputy Clerk of the Circuit Court, Crime, Misdemeanor, Traffic Division, or his designee, to be dealt with according to law.

***WITNESS***, the Honorable DENNIS R. CIMPL CIRCUIT COURT JUDGE, ~~Judicial Court Commissioner~~ of the First Judicial District of Wisconsin, at Milwaukee, Wisconsin, at 2:50 PM (Hour, AM/PM) on 11/14 (Month, Day, Year), 2018.

[signature]

~~Judicial Court Commissioner~~ of Circuit Court Br.

CONFIDENTIAL

Def. Prod. 000100

# SEARCH WARRANT RETURN

CIRCUIT COURT )
COUNTY OF MILWAUKEE ) ss.

Dated at Milwaukee, Wisconsin, this _______ day of ______________________, 2018.

I hereby certify that by virtue of the within writ I searched the within named premises and found the following: ______________________________________________________________

______________________________________________________________

______________________________________________________________

and have same now in my possession subject to the disposition of the Circuit Court.

______________________________
Detective Brian Conte # D-35
Milwaukee County Sheriff's Office

# AFFIDAVIT FOR SEARCH WARRANT

STATE OF WISCONSIN )
) ss.
MILWAUKEE COUNTY )

Affiant, ***Detective Brian Conte***, being first duly sworn on oath, states as follows:

## AFFIANT'S TRAINING AND EXPERIENCE

1. That affiant is a state certified law enforcement officer currently assigned to the Milwaukee County Sheriff's Office (MCSO), Police Services Bureau, Criminal Investigation Division, General Investigations and involved in the investigations of Theft and Fraud.

2. That affiant has worked full-time as a law enforcement officer for the past twenty two (22) years;

3. This affiant has received training in the general criminal offenses to include Theft and Fraud; that affiant has, in the course of affiant's experience as a law enforcement officer, been trained and have arrested individuals for Theft, Fraud and related offenses;

## PROBABLE CAUSE & INVESTIGATION

4. On April 15, 2018, the Milwaukee County, Office of Comptroller, Audit Services Division received an anonymous complaint of fraud. The complaint stated on January 22, 2018, Laurene Lambach submitted a fraudulent December 2017 reimbursement report for Interfaith Family Caregiver Support Network Program (FCSNP) grant. The grant is administered by Milwaukee County using federal grant funds from the Older Americans Act.

5. Milwaukee County received a Reimbursement/Advance Request for FCSNP from Interfaith for$44,852.00 for contract # 251-417-52. The final December 2017 Grant Expenditure Report for FCSNP was prepared on January 18, 2018 and signed by Lambach on January 22, 2018.

6. On May 3, 2018, Milwaukee County Office of Comptroller Audit Services Division received additional information including records from an informant that Laurene Lambach had ordered approximately $ 17,000 in Dell computers on December 31, 2017. The order was signed by Laurene Lambach on December 31, 2017. The records indicate five computers were for FCSN grant totaling $ 11,281.39 and two for State of Wisconsin domestic Violence Education grant for $ 4,512.55. The estimated delivery date was January 5, 2018. The order was billed to Lambach at S.E.T. Ministry.

7. In March 2018 the informant contacted Dell and learned that the order was cancelled and the computers were never delivered. Lauren Lambach and Interfaith still received the grant funds for the computers even though they were never purchased or delivered.

8. The informant provided Milwaukee County with an email detailing the a message from Lauren Lambach describing three additional accruals for FCSN totaling $ 36,495.79 & $ 11,495.79 for equipment.

9. I was notified by Milwaukee County ASD that Laurene Lambach has electronically signed 14 documents using the electronic DocuSign website. The most recent contract signed by Laurene Lambach was on Sunday, January 21, 2018 at 7:47 P.M. using an IP Address of [redacted]. Conducting an open search reveals that this IP address is affiliated with AT&T and the gps coordinated are aligned with Lauren Lambach's personal residence in New Berlin, WI.

10. A search warrant for AT&T records confirmed that the IP address [redacted] account belongs to Laurie Laehn an alias of Laurene Lambach.

11. The affiant knows from an informant that the suspect Lauren Lambach stores the above mentioned files at multiple locations to include 600 W. Virginia Avenue, 1818 W. Juneau Avenue, 2977 N. 50th Street and her personal residence at 16901 W. Homestead Drive, New Berlin, WI;

12. That affiant knows; ***2977 N. 50th Street, Milwaukee, WI 53210,*** is a two level family dwelling converted into business office space utilized by Ascension SE WI Hospital St. Joseph's Campus and SET Ministry, with tan siding , red trim and brown roof, front with address affixed above of the door, the front entrance faces N. 50th Street located in the City Of Milwaukee, County of Milwaukee, State of Wisconsin;

**NEXUS**

13. That based upon affiant's training and experience, affiant, I, believe, that persons who know they are a target of a criminal investigation sometimes attempt to flee to avoid apprehension, tamper with, conceal or destroy evidence that remains within their control, threaten or harm witnesses or otherwise inappropriately influence witnesses. I am aware that the current investigation involves the use of computers or other digital devices and that the data stored on such devices may be relevant and probative evidence in any subsequent investigation or prosecution. I know from my training and experience that digital data can be recovered from storage devices/media even after long periods of time. However, I also know that digital devices or storage media (hard drives, USB drives, CD's, DVD's, etc.) can be easily concealed, moved, destroyed or damaged and thereby prevent a forensic analysis of the contents of those devices, even if they can be located;

14. Furthermore, that based upon affiant's knowledge, training and experience, as well as affiant's consultations with other police officers and detectives, persons engaged in criminal activity frequently store and maintain records in their homes and/or automobiles and leave them on the premises for extended periods of time failing to recognize their forensic value and incriminating nature;

**CONCLUSION**

15. **LASTLY**, that affiant is aware that a search warrant may be issued when the application establishes probable cause to believe that evidence connected with a crime will be found at the place to be searched; that probable cause supporting a search warrant is determined by

the "totality of the circumstances" wherein the task of the Court is to simply make a practical, commonsense decision whether, given all of the circumstances as set forth in the affidavit, that there is a fair probability that contraband or evidence of a crime will be found in a particular place; furthermore, affiant is also aware that the Courts have determined that probable cause is not a technical or legalistic concept but a flexible common-sense measure of the plausibility of specific conclusions; that elaborate specificity is not required and that probable cause may be supported by inferences as well as facts;

16. **WHEREFORE**, affiant believes that based on the above-stated information contained within this affidavit that affiant has established the requisite probable cause establishing that evidence of the crime of Theft by Fraud, in violation of Section 943.20(1) (d) the Wisconsin Statutes, does now exist at the location as described in Paragraph No. **11**; furthermore, that affiant, based upon affiant's training and experience, seeks permission to search all persons on the premises because the premises in question is a private residence and firearms and firearms-related contraband may easily be secreted on one's person;

17. This affidavit was reviewed and approved by Assistant District Attorney Thomas Potter on *Monday, November 19, 2018* at 2:45 a.m./p.m.

Detective B. [signature] #0-35
AFFIANT

Subscribed and sworn to before me this
19th day of Nov., 2018.

[signature]
Notary Public, State of Wisconsin, Milwaukee County;
My Commission is permanent/~~expires~~ .

## SEARCH WARRANT RETURN

CIRCUIT COURT } ss.
COUNTY OF MILWAUKEE }

Dated at Milwaukee, Wisconsin, this 21 day of November, 2018.

I hereby certify that by virtue of the within writ I searched the within named premises and found the following: business records and documents. computer accessories

and have same now in my possession subject to the disposition of the Circuit Court.

Detective Brian Conte #D-35

Detective Brian Conte # D-35
Milwaukee County Sheriff's Office

18 SW 3782

FILED
CRIMINAL DIVISION
2018 NOV 21 AM 10:55
CLERK OF CIRCUIT COURT

CONFIDENTIAL Def. Prod. 000105

# SEARCH WARRANT RETURN

CIRCUIT COURT )
 ) ss.
COUNTY OF MILWAUKEE )

Dated at Milwaukee, Wisconsin, this 21 day of November, 2018.

I hereby certify that by virtue of the within writ I searched the within named premises and found the following: computer, external hard drive and documents

and have same now in my possession subject to the disposition of the Circuit Court.

Detective B. Conte #D-35
Detective Brian Conte # D-35
Milwaukee County Sheriff's Office

18SW 3781

FILED
CRIMINAL DIVISION
2018 NOV 21 AM 10:55
CLERK OF CIRCUIT COURT

CONFIDENTIAL Def. Prod. 000106

Ju~~dicial Court Commissioner of Circuit Court Br.~~ ____

## SEARCH WARRANT RETURN

CIRCUIT COURT )
COUNTY OF MILWAUKEE ) ss.

Dated at Milwaukee, Wisconsin, this 21 day of November, 2018.

I hereby certify that by virtue of the within writ I searched the within named premises and found the following: computers and business records.

and have same now in my possession subject to the disposition of the Circuit Court.

Detective B Conte #D-35
Detective Brian Conte # D-35
Milwaukee County Sheriff's Office

18SW3780

FILED
CRIMINAL DIVISION
2018 NOV 21 AM 10:55
CLERK OF CIRCUIT COURT

# SEARCH WARRANT RETURN

CIRCUIT COURT )
COUNTY OF MILWAUKEE ) ss.

Dated at Milwaukee, Wisconsin, this 21 day of November, 2018.

I hereby certify that by virtue of the within writ I searched the within named premises and found the following: No records or property seized

and have same now in my possession subject to the disposition of the Circuit Court.

Detective B. Conte #D-35
Detective Brian Conte # D-35
Milwaukee County Sheriff's Office

18SW 3703

FILED
CRIMINAL DIVISION
2018 NOV 21 AM 10:56
CLERK OF CIRCUIT COURT

CONFIDENTIAL Def. Prod. 000108