# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LAURENE GRAMLING LAMBACH
and CHRIS R. LAMBACH,

                          Plaintiffs,

v.

BRIAN CONTE and MILWAUKEE
COUNTY,

                          Defendants.

Case No. 21-CV-1032-JPS

**ORDER**

## 1.    BACKGROUND

On November 20, 2018, Plaintiff Laurene Gramling Lambach was arrested in connection with a theft-by-fraud investigation spearheaded by Brian Conte, a detective with the Milwaukee County Sheriff's Office. Laurene was booked into the Milwaukee County Jail and released on bail the next day. She was never charged with a crime. In this case, Plaintiffs—Laurene and her husband, Chris—primarily allege Laurene's arrest violated her constitutional right to be free from arrest and detention without probable cause, and that her constitutional right to counsel was violated while she was detained following her arrest.

Defendants Conte and Milwaukee County (collectively, "Defendants") moved for summary judgment on all of Plaintiffs' claims. ECF No. 25. The motion is now fully briefed. ECF Nos. 27, 34, 37. For the reasons stated in this Order, Defendants' motion will be granted, and this action will be dismissed with prejudice.

## 2. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). "At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005). Ultimately, "the non-movant need not match the movant witness for witness, nor persuade the court that her case is convincing, she need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoeschst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

## 3. RELEVANT FACTS

The parties have submitted a joint statement of material facts, and statements of their disputes thereto, as required by the Court's trial

scheduling order. ECF Nos. 26, 33, 36. The Court adopts the relevant[1] and undisputed facts as set forth in the parties' joint statement of facts, gives additional information for the sake of clarity where needed, and notes factual disputes where appropriate. For brevity, internal citations are omitted from the parties' joint statement of facts, but the Court notes where other record evidence is cited.

### 3.1 The Parties

Laurene Gramling Lambach ("Laurene") and Chris Lambach ("Chris"),[2] Plaintiffs, are husband and wife. Laurene has both a Bachelor's and a Master's degree in business. She is also a CPA. She is currently employed by the Sisters of St. Francis of Assisi.

Detective Brian Conte ("Detective Conte") has worked for the Milwaukee County Sheriff's Office for 25 years. Detective Conte was first assigned to the Detention and Services Bureau at the Milwaukee County Jail for approximately five years, and then he transferred to the patrol division, where he worked for 15 years as a patrol deputy. In 2016, Detective Conte was appointed as a detective and eventually transferred to

---

[1]Plaintiffs expressly concede that they have abandoned the unreasonable search claim in their complaint. ECF No. 34 at 9–10; *see also* ECF Nos. 1 at 5–6 (complaint) *and* ECF No. 27 at 10–13 (Defendants' opening brief, arguing that the warrants that authorized the searches of Laurene's residence and her offices were validly obtained and supported by probable cause, and that the searches pursuant thereto did not exceed the scope of authorization). Accordingly, the Court excludes some of the agreed-upon, but now irrelevant, facts related to the process of obtaining the search warrants, and how Detective Conte came to know of the locations to be searched pursuant to the search warrants.

[2]Because Plaintiffs share the same last name, for purposes of clarity, the Court adopts the parties' convention of referring to them by their first names.

Case 2:21-cv-01032-JPS   Filed 11/04/22   Page 3 of 48   Document 42

the Criminal Investigation Division, where he is still currently assigned as of April 2022. Throughout his law enforcement career, Detective Conte has received training in relation to general criminal offenses, including theft by fraud, and he has experience in arresting individuals for theft, fraud, and other related offenses.

### 3.2 Detective Conte's Pre-Arrest Investigation of Laurene for Theft by Fraud

On August 28, 2018, Detective Conte's lieutenant assigned him to a case that had been referred to the Milwaukee County Sheriff's Office by Matthew Hart ("Hart"), an employee in Milwaukee County's Audit Services Division ("ASD") in charge of the Milwaukee County Fraud Hotline. Detective Conte drafted an incident report,[3] which states that his assignment was to investigate "a report of Theft by Fraud of Milwaukee County, State of Wisconsin and United States (US) Grant Funds that occurred approximately between July 2017 and July 2018 by Laurene Lambach, the Chief Executive Officer (CEO) for S.E.T. Ministry, Interfaith

---

[3]The Court concurs in the parties' stipulation that the statements in Detective Conte's incident report are offered to establish what information was provided to Detective Conte by third parties and what effect this information had on him, not for the truth of the matters asserted in those third-party statements. ECF No. 26 at 3, n.2. However, all third parties whose statements are included in the incident report have also been deposed and, in the joint statement of facts, citations to Detective Conte's incident report include parallel citations to the third parties' deposition testimony. *See id. generally.* In other words, at no point is either party relying *solely* on the incident report in a manner that constitutes inadmissible hearsay. The Court therefore considers the third parties' deposition testimony, to the extent it is consistent with the incident report, for substantive purposes.

Adult Older Adult Programs and Unison MKE in the City of Milwaukee and County of Milwaukee."

### 3.2.1 Detective Conte's Discussions with Hart

Upon receiving the assignment from his lieutenant, Detective Conte proceeded to speak with Hart to get a general background of his investigation. Hart provided Detective Conte with a summary of his investigation, which started with an anonymous complaint that Laurene Lambach was defrauding the government, and falsifying her reimbursement reports for several government grants, including a grant with Milwaukee County (the "Milwaukee County Grant").

Hart informed Detective Conte about the general backgrounds of three non-profit organizations: Interfaith Older Adult Programs ("Interfaith") located at 600 W. Virginia Street, Suite 400, Milwaukee, Wisconsin; S.E.T. Ministry ("S.E.T.") located at 2977 N. 50th St., Milwaukee, Wisconsin; and Unison MKE ("Unison") located at 600 W. Virginia St., Suite 400, Milwaukee, Wisconsin.

In August 2018, Interfaith changed its name to Unison in preparation for a merger with S.E.T., whereby the merged entity would proceed as Unison. Leading up to the merger, Laurene was the chief executive officer of S.E.T., and she eventually became the executive director at Unison. Hart informed Detective Conte that Interfaith was a non-profit corporation that contracted with several government entities, including Milwaukee County's Department of Aging, which provided funds for Interfaith's

Family Caregiver Support Network Program ("FCSNP") for the year 2017 (presumably through the Milwaukee County Grant).[4]

Hart informed Detective Conte that the County received a complaint about Laurene on April 15, 2018, alleging that, on January 22, 2018, Laurene submitted a fraudulent reimbursement report for December 2017 on behalf of Interfaith.[5] Hart further informed Detective Conte that witnesses alleged

---

[4]The parties do not explicitly refer to the FCSNP program funding as the Milwaukee County Grant but appear to use these defined terms interchangeably; the Court will do so as well.

[5]It is obvious that, in December 2017, Laurene was involved in S.E.T. Ministry's finances; however, it is not entirely clear from the preceding paragraph in the parties' joint statement of facts that Laurene was, in fact, directly involved in *Interfaith's* financial operations at the time of the computer purchase and reimbursement report at issue in this case. This distinction matters because the computer purchase and reimbursement report *by Interfaith* served as the basis for Laurene's investigation and arrest. Laurene never states that she had a formal title or role with Interfaith, only that Interfaith merged, in August 2018, with S.E.T. Ministry (where Laurene was the chief executive officer) to form Unison (at which Laurene eventually served as executive director).

For purposes of clarity and thoroughness, the Court examines the material cited in the joint statement of facts to confirm Laurene's involvement in Interfaith. This material demonstrates Laurene had some level of responsibility for Interfaith's finances in the time leading up to the organizations' formal merger in August 2018, and this time included the period of December 2017, when the computer purchase and reimbursement report at issue took place. As Laurene describes it, during her tenure as chief executive officer of S.E.T. Ministry, she was "looking for a merger partner," identified Interfaith as that merger partner in November of either 2016 or 2017, and "then from there, it was an ordinary process" of merger. ECF No. 29-1 at 7–8 (Laurene Gramling Lambach deposition transcript).

Because the parties do not dispute that Laurene had some responsibility for Interfaith's finances in December 2017 and was directly involved in the computer purchase and reimbursement report on behalf of Interfaith—and because the record does not contradict these facts—the Court treats these facts as undisputed for summary judgment purposes.

that Laurene had placed an order online for computers from Dell, Inc. ("Dell"), printed out the order confirmation, and later let the order be cancelled or not filled.

Prior to referring ASD's ongoing fraud investigation to the Milwaukee County Sheriff's Office for criminal investigation, Hart spoke with several witnesses concerning the fraud allegations against Laurene, including Vevette Hill-Nwagbaraocha ("Nwagbaraocha"), Catherine Wood ("Wood"), Jodi Bauer ("Bauer"), and Sharon Stone ("Stone"). In general, according to the witnesses, the Milwaukee County Grant was being underspent and Laurene had falsified Interfaith's costs and spending to receive the full grant amount.

More specifically, Hart informed Detective Conte that Milwaukee County—via its Department of Aging—received a December 2017 Reimbursement/Advance Request from Interfaith, signed by Laurene. Hart informed Detective Conte that the final Grant Expenditure Report for FCSNP (a program funded through the Milwaukee County Grant) was signed by Laurene on January 22, 2018. Hart informed Detective Conte that one of the witnesses provided him records showing a Dell computer order confirmation made by Laurene for December 31, 2017, for approximately $17,000 worth of laptops, computer monitors, docking stations, and laptop bags. Hart informed Detective Conte that the witness learned that the Dell computers were never delivered, and the order was canceled. In addition

Case 2:21-cv-01032-JPS   Filed 11/04/22   Page 7 of 48   Document 42

to the information Detective Conte received from Hart, he interviewed six[6] witnesses who provided information like that provided by Hart.

### 3.2.2 Detective Conte's Interview of Jodi Bauer on October 9, 2018

As part of his criminal investigation of Laurene, Detective Conte conducted an in-person interview of Jodi Bauer in Milwaukee, Wisconsin on October 9, 2018. In her deposition in this case, Bauer reviewed the portion of Detective Conte's Incident Report summarizing his interview with her, and she testified that the summary in Detective Conte's Incident Report was an accurate reflection of the information she told Detective Conte during their interview.

Bauer agreed to meet Detective Conte on a voluntary basis, and she was not in custody or otherwise restrained during the interview. Bauer informed Detective Conte she had been working at Interfaith for approximately one and a half years, and that she had previous work experience in performing financial audits.

During this interview, Bauer stated that she became aware of a fraud that occurred in December 2017 in relation to the Dell computer purchase order made by Laurene. Specifically, Bauer explained to Detective Conte

---

[6]The parties stipulated to include the testimony of six witnesses (in addition to Laurene's testimony). One witness, Stacey Vojvodich, testified that she had no firsthand information about Laurene's alleged fraud, but informed Detective Conte about where Laurene kept business and financial records. ECF No. 26 at 14. Vojvodich's secondhand knowledge of what other witnesses knew is duplicative and likely inadmissible hearsay; the rest of her testimony pertains mainly to the scope of the search warrants, and is irrelevant, *see supra* note 1. The testimony of only *five* of the witnesses with whom Detective Conte spoke is included here.

Case 2:21-cv-01032-JPS   Filed 11/04/22   Page 8 of 48   Document 42

that the Milwaukee County Grant's allowable expenditures for 2017 had been underspent by Interfaith/Unison,[7] and prior to the end-of-the-year deadline for such expenditures, Laurene intended to spend the remaining funds on the Dell computers.

Bauer told Detective Conte that Laurene instructed her to record the Dell computer purchase order on the Milwaukee County Grant. In response, Bauer informed Laurene that she did not believe that the order was allowed under the Milwaukee County Grant. Laurene expressed her disagreement and provided her with an invoice for the Dell computer purchase order. Bauer told Detective Conte that she believed Laurene was responsible for placing the Dell computer purchase order because she was the only person of whom Bauer was aware that had access to the account from which the order was placed.

Bauer proceeded to tell Detective Conte that computers that were ordered from Dell did not arrive, and she kept inquiring as to the computers' whereabouts or for a receipt, but her questions went unanswered. Bauer further stated that another employee had called Dell regarding the status of the computer purchase order, and it was discovered that the order had been cancelled. Bauer informed Detective Conte that she believed Laurene cancelled the Dell purchase order. She also informed him

---

[7] As noted *supra* note 5 and in the accompanying text, Interfaith had not yet changed its name to Unison at the time of the computer purchase and reimbursement report, but it was in the process of merging with S.E.T. Ministry to form Unison, and Laurene had some responsibility for Interfaith's finances at this time. The Court adopts the parties' references to the organizations as either "Interfaith/Unison" or "Interfaith" as written in the joint statement of facts.

Case 2:21-cv-01032-JPS   Filed 11/04/22   Page 9 of 48   Document 42

that although the Dell computer purchase order had been cancelled, Laurene requested the amount of the computer purchase order as an expense reimbursement on the Milwaukee County Grant. During this interview, Bauer stated that Interfaith/Unison kept the expense reimbursement amount for the Dell computer purchase order even though the order had been cancelled and no computers had been delivered to Interfaith/Unison.

Bauer informed Detective Conte that she reported her concerns about Laurene and the Dell computer purchase order to her immediate supervisor, Catherine Wood. Bauer explained to Detective Conte that, in response, Wood told her (Bauer) that Laurene stated that the Dell computers had been received and that they were ordered within the deadline to purchase allowable expenses under the Milwaukee County Grant. Bauer also informed Detective Conte that Wood, Stone, and Amy Jo Crawford ("Crawford") may have additional information relevant to his investigation.

### 3.2.3  Detective Conte's Interview of Catherine Wood on October 10, 2018

On October 10, 2018, Detective Conte interviewed Catherine Wood at the Milwaukee County Safety Building. In her deposition in this case, Wood reviewed the portion of Detective Conte's Incident Report summarizing his interview with her, and she testified that the summary in Detective Conte's Incident Report was an accurate reflection of the information she told Detective Conte during their interview with one

Case 2:21-cv-01032-JPS   Filed 11/04/22   Page 10 of 48   Document 42

exception in that she did not recall telling Detective Conte that she believed Laurene was "inept" as stated in his report.

Wood was not in custody or otherwise restrained during the interview. At the time of Wood's interview, Detective Conte understood that she had worked as Interfaith/Unison's Chief Financial Officer and as one of its grant accountants. Wood was employed by Interfaith from September 2016 to May 2018.

During the interview, Wood informed Detective Conte that she believed Laurene had defrauded Milwaukee County in or around December 2017. Wood explained that she became aware that Laurene had submitted expense reimbursement requests under the Milwaukee County Grant, indicating that grant funds had been spent on Dell computers in December 2017, even though such funds were not actually spent, the Dell computers were not received by Interfaith/Unison, and the Dell Computer purchase order had been cancelled.

Wood told Detective Conte that she questioned Laurene about the Dell computer purchase order, and Laurene provided her with receipts for the order. Wood explained that she felt uncomfortable about the expense reimbursement request submitted by Laurene, in part, because the Dell computer purchase order was made on the last day of the Milwaukee County Grant. However, she was told that the Dell computer purchase order was allowed on the Milwaukee County Grant.

Wood informed Detective Conte that she later learned that the Dell computer purchase order was cancelled, and the computers were never delivered to Interfaith/Unison. More specifically, Wood told Detective

Case 2:21-cv-01032-JPS   Filed 11/04/22   Page 11 of 48   Document 42

Conte that Laurene cancelled the Dell computer purchase order in January or February 2018. Wood also stated that Stone called Dell and confirmed that the Dell computer purchase order had been cancelled. Wood informed Detective Conte that Stone and Nwagbaraocha might also have information pertinent to his investigation.

### 3.2.4 Detective Conte's Interview of Sharon Stone on October 10, 2018

Detective Conte conducted a telephone interview of Sharon Stone on October 10, 2018 in connection with his investigation of Laurene. In her deposition in this case, Stone reviewed the portion of Detective Conte's Incident Report summarizing his interview with her, and she testified that the summary in Detective Conte's Incident Report was an accurate reflection of the information she told Detective Conte during their interview.

Stone informed Detective Conte that she worked at Interfaith as a grant accountant between July 2017 and March 2018. In her role as a grant accountant, she worked closely with Laurene and had access to Interfaith/Unison's cost reports for its government grants. During her interview, Stone informed Detective Conte that she resigned from her employment with Interfaith/Unison because of fraud and mismanagement on the part of Laurene.

Stone told Detective Conte that in December 2017, there was approximately $30,000 in allowable expenses on the Milwaukee County Grant that had not been spent by Interfaith. She stated that Laurene falsified information on the grant paperwork in relation to the Dell computer

purchase order so that some of the underspent grant money could be utilized. Consistent with the other witnesses Detective Conte had already interviewed, Stone reported that Laurene placed the Dell computer purchase order using S.E.T. Ministry's bank account and then cancelled the order in January or February 2018. Stone added that the computers were never received. Stone identified Crawford and Nwagbaraocha as individuals who may have additional information relevant to Detective Conte's fraud investigation, and she provided him with their contact information.

### 3.2.5 Detective Conte's Interview of Vevette Hill-Nwagbaraocha on October 25, 2018

Vevette Hill-Nwagbaraocha met with Detective Conte in Milwaukee, Wisconsin on October 25, 2018 to discuss her belief that Laurene had been committing fraud. In her deposition in this case, Nwagbaraocha reviewed the portion of Detective Conte's Incident Report summarizing his interview with her, and she testified that the summary in Detective Conte's Incident Report was an accurate reflection of the information she told Detective Conte during their interview with one exception in that she could not recall whether she told Detective Conte about one of Jodi Bauer's supervisors, David Arend. Nwagbaraocha told Detective Conte that she was the manager of the FCSNP for Interfaith, the program funded through the Milwaukee County Grant.

Nwagbaraocha informed Detective Conte that in December 2017, she learned that Laurene, on behalf of Interfaith, intended to purchase equipment for the program Nwagbaraocha managed, including laptop and

desktop computers. Nwagbaraocha questioned the need for such expenditures because her program already had computers, and at most, it only needed one additional desktop computer.

Nwagbaraocha explained to Detective Conte her belief that Laurene committed fraud by placing the Dell computer purchase order, including the Dell computer purchase order on a line item of Interfaith's budget, and placing expenditures in the wrong categories not allowed under the grants. With respect to the Dell computer purchase order, Nwagbaraocha said that in February or March 2018, she was asked by another Interfaith employee about the locations of the computers that were ordered by Laurene. However, Nwagbaraocha had not seen the computers that were ordered by Laurene for the program that she managed at that time or any time thereafter. She also stated that she was not aware of anyone at Interfaith who had seen the computers that were ordered by Laurene. Nwagbaraocha further informed Detective Conte that Laurene deliberately used a forceful management style to commit fraud. She expressed her belief that Laurene uses the chain of command to confuse things and insulate herself from accountability for her fraudulent actions.

### 3.2.6 Detective Conte's Interview of Amy Jo Crawford on October 11, 2018

Detective Conte interviewed Amy Jo Crawford in Wauwatosa, Wisconsin on October 11, 2018 as part of his ongoing investigation into the reports of fraud allegedly committed by Laurene. In her deposition in this case, Crawford reviewed the portion of Detective Conte's Incident Report summarizing his interview with her, and she testified that the summary in

Detective Conte's Incident Report was an accurate reflection of the information she could recall telling Detective Conte during their interview with the exception that she could not recall specifically telling Detective Conte that Laurene was lying.

Crawford stated that she was hired by Interfaith/Unison shortly after the process of Interfaith's merger with Unison had begun in 2017. Crawford explained to Detective Conte that she primarily worked on a grant for a retired and semi-retired seniors volunteer program, which was a different grant than the Milwaukee County Grant and was funded by the Federal government and the State of Wisconsin (the "CNCS Grant"). Crawford resigned her employment with Interfaith on June 6, 2018.

Crawford reported that she became aware of what she considered to be unethical behavior on the part of Laurene near the end of 2017. Because Crawford did not work on the Milwaukee County Grant, her knowledge about the Dell computer purchase order was limited. However, she informed Detective Conte that Laurene had become aware of unspent grant funds and computers were asked to be ordered with these funds. Crawford explained to Detective Conte that when she suggested that Laurene should talk to the grant officer about the unspent grant funds, Laurene replied by stating, "Never ask a Grant Officer for permission."

With respect to the CNCS Grant, Crawford noted problems regarding data input, grant transactions, late grant reporting, unusually high salaries of non-profit employees, unusual extra level management for a non-profit, billing expenses not allowed under the grant, and submitting improper grant reimbursements, to name a few. Additionally, Crawford

told Detective Conte that Laurene had been falsifying numbers for the allowable calculated expenses on the CNCS Grant, and that, at one point, Laurene asked Crawford, "How much do you think we can get, let's spend it all."

During her interview with Detective Conte, Crawford explained that while she was still employed by Interfaith/Unison, Laurene refused to meet with her to discuss the inaccurate or falsified numbers on the grant reporting. Crawford further explained that she eventually reported her concerns to her supervisor, numerous executive members of Interfaith/Unison, and at least one member of the company's Board of Directors, but she was told that she was not permitted to meet with Laurene. After Crawford resigned, Laurene agreed to meet with her on June 14, 2018, but Crawford informed Detective Conte that Laurene denied everything, and the meeting was unproductive.

### 3.2.7 Laurene Gramling Lambach's Deposition Testimony Regarding the Dell Computer Purchase Order

In her deposition in this case, Laurene testified that she personally placed the online order for computers to Dell on December 31, 2017 and printed out the evidence of placing that order. Laurene testified that the order was made on behalf of Interfaith, but because Interfaith did not have an account with Dell, she placed the order through S.E.T.'s account. Laurene further testified that, under the terms of the grant, Interfaith had 90 days to receive the computers, receive the invoice, process it, and pay for it. Sometime after the expiration of the 90 days, Laurene learned that the

computers had not been received and she immediately understood that the 90 days had lapsed. Laurene testified that the way to correct the issue would have been to file an amended reimbursement report with the County; however, when she learned that the 90 days had expired and the computers had not been received, she did not file an amended reimbursement report with the County.

Laurene testified that the omission of not submitting an amended Reimbursement/Advance Request relating to the Dell computer purchase was noncompliant with the Milwaukee County Grant. She also confirmed that she did not return the grant funds to Milwaukee County because, in her words, "I knew that I had plenty of allowable expenses to substitute in preparing an amended report." However, she also confirmed that she did not take any steps to communicate with Milwaukee County about the noncompliance because, in her judgment, "there were other things that were more important to be done."

In August of 2018, Hart made a request to Laurene for records backing up Interfaith's December 2017 submission to Milwaukee County for reimbursement for the Dell computers, and he did not receive a response.

### 3.2.8 The Search Warrants

On November 19, 2018, Detective Conte presented Affidavits to the Milwaukee County Circuit Court for the issuance of search warrants at the following premises: Laurene's personal address; Interfaith's office at 600 W. Virginia St., Milwaukee, Wisconsin 53204; additional office space at 1818

W. Juneau Avenue, Milwaukee, Wisconsin 53233; and S.E.T.'s office at 2977 N. 50th St., Milwaukee, Wisconsin 53210.

Detective Conte executed four sworn affidavits in support of his requests for the search warrants (the "Affidavits"), wherein he states that he believes the information obtained from an informant and from Milwaukee County ASD established probable cause to believe that Laurene had committed theft by fraud under Wis. Stat. § 943.20(1)(d) and that the listed premises contained evidence of that crime. Specifically, the Affidavits state that, based on information from an informant and Milwaukee County ASD, Detective Conte learned that Laurene had signed a reimbursement request based on a grant from Milwaukee County to Interfaith for approximately $17,000 in Dell computer equipment that was ordered by Laurene on behalf of Interfaith, but that was subsequently canceled and never received by Interfaith. The Affidavits further stated that the reimbursement request Laurene submitted was fraudulent.

At the time he signed his Affidavits, Detective Conte believed the information contained in the Affidavits was true, accurate, and supported by the information he had gathered in his investigation prior to November 19, 2018.

On November 19, 2018, Thomas Potter—who has been a Milwaukee County Assistant District Attorney for more than 35 years—reviewed and approved all four Affidavits. Based on what he reviewed in the Affidavits, Potter believed that probable cause existed to obtain the requested search warrants.

Case 2:21-cv-01032-JPS   Filed 11/04/22   Page 18 of 48   Document 42

On November 19, 2018, Milwaukee County Circuit Court Judge Dennis R. Cimpl issued search warrants for all four of the requested locations (the "Search Warrants"). Judge Cimpl found probable cause to search Laurene and the premises listed in the Affidavits for evidence of the commission of theft by fraud.

Like Detective Conte, ADA Potter, and Judge Cimpl, Plaintiffs' retained expert witness, Thomas Fischer, a former police officer, believes that probable cause existed to obtain and execute the search warrants because the information various witnesses provided to Detective Conte gave him the reasonable belief that theft by fraud had been committed.

### 3.2.8.1 Plaintiffs' Disputed Facts as to the Allegedly Fraudulent Reimbursement Report

The only factual dispute delineated in Plaintiffs' statement of disputed facts is that "Detective Conte relied in some respects on a fraudulent reimbursement report for his determination that Laurene Gramling Lambach had committed theft by fraud." ECF No. 33 at 1. However, "[w]hen Detective Conte was deposed, he stated he did not know what a fraudulent reimbursement report was, even though he had relied on that in his probable cause determination," which in Plaintiffs' estimation calls into question whether Detective Conte had probable cause to arrest Laurene. *Id.* As the basis for their dispute, they cite to three different points in Detective Conte's deposition transcript. *Id.* Defendants dispute this statement, saying the cited record evidence is not relevant to Plaintiffs' proposed fact that Detective Conte did not actually know what a fraudulent reimbursement report was (or, by extension did not know whether Laurene

had submitted a fraudulent reimbursement report), therefore does not evince a genuine dispute of fact. ECF No. 36 at 1–3.

Defendants are correct that Plaintiffs' citations to the record do not support their factual dispute, *see* ECF No. 29-2 at 4–5, 31, 33, and correctly note that, later in his deposition, Detective Conte stated he "kn[e]w which report [he was] referring to" in his affidavit. *Id.* at 25. However, looking beyond Plaintiffs' citations, the Court recounts the following relevant exchange from Detective Conte's deposition:

> Q: [. . .] Then the next part of that, the next, it says, "Lambach submitted a fraudulent reimbursement report for December 2017"; okay? Do you have a copy of that fraudulent reimbursement report?
>
> A: It might be in the records from Mr. Hart.
>
> Q: Okay. And what does that say? What does that fraud reimbursement report say?
>
> A: I'm not a forensic investigator like Mr. Hart, so I do not know.
>
> Q: Okay. So despite the fact that it appears here in your report, you don't know what that means?
>
> A: I'm writing in my report here that that's what he informed me of as a forensic investigator for the County. That that's what he stated to me.
>
> Q: And did you then ask him for the fraudulent reimbursement report?
>
> A: He provided documents on a CD or a DVD that was placed into the case file to be reviewed by the DA.
>
> Q: And what does that fraudulent reimbursement report say?
>
> A: I do not know, I'm not a forensic investigator.

Case 2:21-cv-01032-JPS   Filed 11/04/22   Page 20 of 48   Document 42

Q: So you couldn't comment on that because you're not a forensic investigator, even though you may have read the report?

A: Like I said, I'm not a forensic investigator, I provided it to the DA's office, and I'm writing what he told me as a county investigator.

Q: So that fraudulent reimbursement report had no role in your arrest of Ms. Lambach; correct?

A: I think overall globally for probable cause, what statements that Mr. Hart made to me and what the six other witnesses made to me had something to do with building probable cause, yes.

Q: Okay. But you can't put your finger on what that says?

A: On that particular document, no.

Q: It says in the next line that Lambach falsified Interfaiths' costs and spending. Could you tell me how Lambach falsified Interfaith's cost and spending?

A: Yes, he stated, and the six witnesses stated that she would move things around in different columns for the grant reporting to receive the full amount of money, which is in violation of the grant, so therefore it would be fraud.

Q: And do you have a document that shows that?

A: There are documents in that disk provided by Mr. Hart.

*Id.* at 6–7.

Finally, by way of dispute, Plaintiffs state that Detective Conte did not know who canceled the Dell order, or why, at the time he arrested Laurene. ECF No. 34 at 7 ("Detective Conte had not received any information from Dell computers until on or after January 14, 2019, when

Page 21 of 48

he received an affidavit from Chris Compton of Dell computers in response to the issuance of a subpoena.").

### 3.2.9 Complaining Witnesses' Involvement in Another Organization

Bauer, Wood, Stone, Nwagbaraocha, and Crawford, and an employee named Stacey Vojvodich—all previous employees of the Interfaith Older Adults Program prior to the merger with S.E.T. Ministry—made initial reports to Hart and Detective Conte. As detailed above, during his investigation, Detective Conte took statements from each of these complaining witnesses. Unknown to Detective Conte throughout these proceedings, these complaining witnesses had started a competing company named Serving Older Adults of Southeastern Wisconsin, Inc. which was registered with the State of Wisconsin on May 14, 2018. Serving Adults of Southeastern Wisconsin, Inc. bid for jobs with Milwaukee County when the complaining witnesses were still working for Interfaith/Unison, which was unknown to Detective Conte.

### 3.3 Arrest and Detention of Laurene Gramling Lambach on November 20, 2018

On November 20, 2018, Detective Conte went to 600 W. Virginia St., Milwaukee, Wisconsin; Laurene was present at 600 W. Virginia St. when Detective Conte arrived. Laurene had not met or spoken to Detective Conte prior to her arrest, and she did not know that Detective Conte was investigating her. Detective Conte identified himself to Laurene and provided her with a copy of the Search Warrant for the 600 W. Virginia St. location. Simultaneous to the execution of the Search Warrants, and at

approximately 10:05 a.m., Laurene was placed under arrest. She was informed of her *Miranda* rights. Detective Conte's fellow officers transported her to the Safety Building in downtown Milwaukee.

Laurene believes that she requested counsel four times on November 20, 2018, after she was arrested—twice while in the presence of Detective Conte, and each time specifically requesting to speak to Unison's corporate attorney, Robert Duffy. At the time she requested to speak to Attorney Duffy, Laurene did not have an understanding as to whether Attorney Duffy was able or willing to represent her in her personal capacity. At approximately 6:45 p.m. on November 20, 2018, Laurene spoke to Chris, her husband, by phone, who told her that Chris had called Attorney Duffy and learned Attorney Duffy was not aware of the situation. Attorney Duffy never went to the Safety Building or Milwaukee County Jail on November 20 or 21, 2018.

Detective Conte never asked Laurene any questions about her conduct as an executive for any nonprofit organization; the purchase of Dell computers; the information any witnesses reported to him in relation to Laurene's alleged conduct as an executive of any nonprofit organization; any contracts between Milwaukee County and any nonprofit organization for which Laurene worked; or employee retirement funds for any organization for which she was the executive. Detective Conte never asked Laurene to confess to committing theft by fraud. Laurene testified in her deposition that she did not give Detective Conte any information that she would consider incriminating or that otherwise related to the allegations on which her November 2018 arrest was based.

Case 2:21-cv-01032-JPS   Filed 11/04/22   Page 23 of 48   Document 42

The entirety of Detective Conte's direct interactions with Laurene are as follows: Detective Conte introduced himself and produced the Search Warrants before Laurene was placed under arrest; Detective Conte twice inquired, and Laurene ultimately declined, whether Laurene would sign consent forms permitting the search of electronic equipment seized during the execution of the Search Warrants; and, when Detective Conte escorted Laurene to the Milwaukee County Jail at around 5:00 p.m. on November 20, 2018, she asked him if she would be safe in the Jail, and he said, "Yes."

Laurene was booked into the Milwaukee County Jail at approximately 10:30 p.m. on November 20, 2018.

Laurene's husband, Chris, retained counsel, Attorney Craig Mastantuono, at around 9:00 p.m. on November 20, 2018, and Laurene met with Attorney Mastantuono the next day. Laurene has no information that Detective Conte or anyone at the Milwaukee County Jail tried to stop or otherwise interfere with her from meeting with Attorney Mastantuono.

### 3.3.1   Probable Cause Determination

On November 21, 2018, at approximately 4:00 p.m., Milwaukee County Circuit Court Commissioner Maria Dorsey reviewed a Probable Cause Statement signed by Detective Conte, which read as follows:

> Report written by Detective B. Conte #D-35, assigned to MCSO, PSB, Criminal Investigation Division (CID), as Squad #134, on Dayshift. Based on Investigation: On April 15, 2018, the Milwaukee County, Office of Comptroller, Audit Services Division, received an anonymous complaint of fraud. The complaint stated on January 22, 2018, Laurene Lambach submitted a fraudulent December 2017 reimbursement report for Interfaith Family Caregiver Support Network Program

(FCSNP) grant. The grant is administered by Milwaukee County using federal grant funds from the Older Americans Act. Milwaukee County received a Reimbursement/Advance Request for FCSNP from Interfaith for $44,852.00 for contract #251-417-52. The final December 2017 Grant Expenditure Report for FCSNP was prepared on January 18, 2018, and signed by Lambach on January 22, 2018. On May 3, 2018, Milwaukee County Office of Comptroller Audit Services Division received additional information including records from an informant that Laurene Lambach had ordered approximately $17,000 in Dell computers on December 31, 2017. The order was signed by Laurene Lambach on December 31, 2017. The records indicate five computers were for FCSN grant totaling $11,281.39 and two for State of Wisconsin domestic Violence Education grant for $4,512.55. The estimated delivery date was January 5, 2018. The order was billed to Lambach at S.E.T. Ministry. In March 2018 the informant contacted Dell and learned that the order was cancelled, and the computers were never delivered. Lauren Lambach and Interfaith still received the grant funds for the computers even though they were never purchased or delivered. The informant provided Milwaukee County with an email detailing the the a [*sic*] message from Lauren Lambach describing three additional accruals for FCSN totaling $36,195.79 & $11,495.79 for equipment. . . . A search warrant for AT&T records confirmed that the IP address [*redacted*] account belongs to Laurie Laehn an alias of Laurene Lambach. . . . On 11/20/18 four search warrants were executed at three offices of Laurene Lambach, SET Ministry, Interfaith and Unison and her personal residence. The def was arrested for two counts of Thefy Fraud of the two grants. The def refused to make a statement. The def was TOT to the MCJ jail staff.[8]

---

[8]Plaintiffs' response brief relies in part on the contents of the probable cause statement. ECF No. 34 at 3–4. The contents of the probable cause statement were not included verbatim in the parties' joint statement of facts but were filed as an

Case 2:21-cv-01032-JPS   Filed 11/04/22   Page 25 of 48   Document 42

ECF No. 29-13. Based on this statement, Commissioner Dorsey determined that there was probable cause to believe that Laurene had committed theft by fraud under Wis. Stat. § 943.20(1)(d) and set bail at $500. Laurene's bail was paid on November 21, 2018, and she was released from the Milwaukee County Jail at approximately 8:45 p.m. that night. Ultimately, Laurene was never charged with a crime. In her deposition, Laurene testified that she was not aware of any other person who had gone through a similar experience as hers relating to her arrest.

### 3.3.2   Authority for Search and Arrest

Detective Conte reported to his supervisor, Lieutenant Trisha Carlson, who approved of his plan to serve the search warrants and to arrest Laurene. Lieutenant Carlson endorsed Detective Conte's plan to arrest Laurene though no one from the District Attorney's Office was involved in the decision to arrest. One of the reasons Detective Conte

---

exhibit to the movant's declaration; this text is taken from that exhibit. ECF No. 29-13 at 1. Typographical errors in the probable cause statement appear in the original; duplicative portions are excluded and marked by an ellipsis.

Plaintiffs' inclusion of the probable cause statement in their brief goes against the letter and spirit of the Court's Trial Scheduling Order. *See* ECF No. 13 at 2 ("The parties should omit a facts section from their briefing; the Court will only consider the single, agreed-upon statement of facts."). However, because summary judgment counsels an appraisal of "*all* the evidence in the record," *Abdullahi*, 423 F.3d at 769 (emphasis added), and for the sake of completeness, the Court will include and consider the contents of the statement. Plaintiffs' counsel is admonished that future attempts to go beyond the summary judgment record will be viewed unfavorably. *See McCurry v. Kenco Logs. Servs., LLC*, 942 F.3d 783, 787 n.2 (7th Cir. 2019) (courts may "strictly enforce local summary-judgment rules"); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1020 (N.D. Ill. 2018) (disregarding portions of plaintiff's proffered facts on summary judgment for failure to comply with local rule).

arrested Laurene was part of a "global plan" that would prevent Laurene from destroying evidence.

Plaintiffs, in their response brief, contend that the lack of involvement of the District Attorney's office in the decision to arrest apparently contravened a provision of the Milwaukee County Sheriff's Office Policy Manual "requir[ing] consultation with an Assistant District Attorney before securing a search warrant." ECF No. 34 at 6; *see also* ECF No. 35-1.[9] The Policy Manual that Plaintiffs cite is copyrighted 2022, ECF No. 35-1 at 1, so it is not clear that it was the operative Policy Manual at the time of Detective Conte's investigation and Laurene's arrest in 2018. The cited "Policy 600" lays out "the policy of the Milwaukee County Sheriff's Office to investigate crimes thoroughly and with due diligence, and to evaluate and prepare criminal cases for appropriate clearance or submission to a prosecutor." *Id.* at 1. Policy 600 lists the steps a deputy must take to determine "whether a crime has been committed," and lists what a deputy must do "[i]f information indicates a crime has occurred." *Id.* It does not explicitly or implicitly require detectives or their supervisors to consult with an Assistant District Attorney before securing either a search warrant or an arrest warrant. *See id.* at 1–2.

---

[9]As in note 7 *supra*, Plaintiffs should have put this information in their statement of disputed facts and the Court is entitled to disregard it, *see Rivera*, 319 F. Supp. 319 at 1020, but for the sake of completeness, the Court will consider it anyway.

### 3.3.3   Milwaukee County Jail Phone Call Policy

In their response brief on the issue of Laurene's right-to-counsel claim, Plaintiffs allege that the Milwaukee County Jail permits detainees to make unlimited phone calls. ECF No. 34 at 11. Related to that argument, Plaintiffs cite (again, in the inappropriate place, *see supra* notes 7 and 8) to the Milwaukee County Sheriff's Office Policy Manual, Policy 900. ECF No. 35-2. Policy 900 states that "[e]very individual in temporary custody should be allowed to make a reasonable number of completed telephone calls as soon as possible after arrival," and "should be given sufficient time to contact whomever he/she desires and to make any necessary arrangements[.]" *Id.* at 6.

### 3.4   Post-Arrest Investigation and Activities

After Laurene's arrest and after waiting for an extended period, Detective Conte subpoenaed the personal bank records of Laurene and Chris, dating back several years. In addition, Detective Conte subpoenaed all of their credit card information and other similar records dating back several years. Nothing was found in any of those records to indicate Laurene personally accepted funds from the company.

Plaintiffs (once again, inappropriately, in their response brief) state that "at the time of the arrest, Unison/Interfaith was being audited by Wegner CPAs" who "found nothing of an unlawful nature and essentially exonerated Ms. Gramling Lambach from any criminal conduct." ECF No. 34 at 7. To support this fact, they cite Detective Conte's deposition transcript, however, the cited portions make no mention of an internal audit of Interfaith by Wegner CPAs. *See* ECF No. 29-2 at 7–8. Expanding its

Case 2:21-cv-01032-JPS   Filed 11/04/22   Page 28 of 48   Document 42

search, the Court finds two mentions of an audit by *Wagner* CPAs, but neither support Plaintiffs' claim. *See id.* at 15 (Conte stating that Hart referred him to Wagner CPAs, which was conducting an audit of Interfaith, but that Jenny Tarkowski of Wagner refused to release any information to Conte); *id.* at 19 (Conte stating he knew of Tarkowski's audit report but was not sure if ever he personally received it and did not rely on it in making his probable cause statement).

### 3.5 Plaintiffs' Discovery Responses

The parties stipulated to include a number of Plaintiffs' responses to written discovery in their joint statement of facts. Defendants served Requests for Admissions, Interrogatories, and Requests for Production of Documents to Plaintiffs on December 23, 2021. Plaintiffs responded on January 12, 2022. On June 15, 2022, Defendants' counsel emailed Plaintiffs' counsel and advised that Defendants believed some of Plaintiffs' written discovery responses were insufficient and advised that, if Plaintiffs did not supplement their written discovery responses by June 24, 2022, Defendants would rely on Plaintiffs' discovery responses as written. Defendants' counsel represented that they have not received supplemental discovery responses addressing the topics raised in the June 15 email.

The Court summarizes, rather than reproduces, the exchanges that are relevant to whether Plaintiffs have abandoned certain claims in their complaint. Plaintiffs denied Defendants' request that they admit the Eighth Amendment was not implicated in Laurene's claims. *See* note 11 *infra.* Plaintiffs denied—on the basis that they anticipated discovery would reveal such information—a request that they admit no policy, custom, or practice

Case 2:21-cv-01032-JPS   Filed 11/04/22   Page 29 of 48   Document 42

of Milwaukee County caused a deprivation of Plaintiffs' rights and refused to respond to an interrogatory requesting the facts supporting the existence or operation of such a policy. *See* Section 4.3.2 *infra.* Plaintiffs denied, on a similar basis, a request that they admit that they named Milwaukee County as a defendant for indemnification purposes only. *See* Section 4.6 *infra.* Plaintiffs' discovery responses on Laurene's unreasonable search claim are irrelevant because, as discussed *supra* note 1, the claim is abandoned.

4.     **ANALYSIS**

Defendants move for summary judgment on all of Plaintiffs' claims and invoke the defense of qualified immunity. ECF No. 27 at 1–3, 19. Plaintiffs maintain that summary judgment is inappropriate and argue that "if anything, the plaintiffs should be entitled to summary judgment." ECF No. 34 at 15. Far from adopting Plaintiffs' brash assertion that they are entitled to judgment as a matter of law when they have not even moved for it, the Court finds that Plaintiffs' opposition is unpersuasive, sloppy, and at times barely coherent. (As discussed above in notes 8 and 9 and Sections 3.2.8.1, 3.3.1–3.3.3, and 3.4, Plaintiffs' filings are replete with errors and failures to conform their submissions to the Court's dispositive motion protocols.) Because they have demonstrated that no genuine dispute of material fact exists in this case and that they are entitled to judgment as a matter of law, Defendants' motion for summary judgment will be granted.

**4.1     Unreasonable Search Claims**

As noted *supra* note 1, Plaintiffs have expressly abandoned their claim pursuant to 42 U.S.C. § 1983 that the searches of Laurene and Chris's residence and Laurene's offices were unreasonable in violation of the

Fourth Amendment. The parties are essentially in agreement that the search warrants were valid, supported by probable cause, and executed according to the scope for which they were authorized. ECF Nos. 34 at 9–10 and 37 at 1. The Court will therefore dismiss these claims along with the rest of the case.[10]

---

[10]Defendants argue, and the Court agrees, that Plaintiffs' failure to disclose their abandonment of this claim "steps concerningly close to the line of litigating a frivolous claim." ECF No. 37 at 2, n.2. Plaintiffs' reasoning for abandoning their unreasonable search claim is that their own retained expert opined that the search warrants were supported by probable cause. ECF No. 34 at 9. Even if Plaintiffs were not aware of this deficiency in their claim early on in discovery, *see* ECF No. 26 at 22–27 (joint statement of facts, detailing Plaintiffs' responses to written discovery), they knew of it well before the August 2022 summary judgment deadline—Plaintiffs' expert was deposed on May 20, 2022. *See id.* at 17 (stipulating that Plaintiffs' expert stated the search warrants were supported by probable cause). Yet Plaintiffs litigated as if they were still pressing the unreasonable search claim, assenting to (if not insisting on) the inclusion of many details related to the search warrants in the parties' joint statement of facts.

Plaintiffs make only a weak showing that their failure to disclose the abandonment of the unreasonable search claim had anything to do with continuing to press their other claims. Plaintiffs maintain that, despite the validity of the search warrants, Detective Conte should have evaluated the fruits of the search to determine whether they supported probable cause for Laurene Gramling Lambach's arrest (and his failure to do so compels the conclusion that her arrest was improper). ECF No. 34 at 9. While the Court will consider this argument in the context of Plaintiffs' unlawful arrest, false imprisonment, and unlawful detention claims, it has no bearing on the unreasonable-search claim.

Defendants do not request sanctions against Plaintiffs for this conduct, and the Court will not impose them. However, the Court does not look kindly on Plaintiffs' counsel's apparent decision to allow opposing counsel to continue litigating a claim that Plaintiffs' counsel likely believed was frivolous. This behavior is not acceptable from attorneys practicing before this or any branch of the court. "[W]hile every litigant is entitled to their day in court, they are not entitled to intrude upon someone else's day in court." ECF No. 13 at 9. But that is

### 4.2 Unlawful Arrest, Unlawful Detention, and False Imprisonment Claims

Plaintiffs bring claims pursuant to 42 U.S.C. § 1983 for the "unlawful arrest and detention" and "false imprisonment" (at both arrest and pretrial detention) of Laurene. ECF No. 1 at 4–5, 6–8.[11] Defendants move for summary judgment on the basis that Detective Conte's arrest and detention of Laurene did not violate the Fourth Amendment because it was supported by probable cause to believe the crime of theft by fraud had been committed. ECF No. 27 at 4–10. Alternatively, Defendants argue, even if Detective Conte committed a Fourth Amendment violation, he is entitled to qualified immunity because he had arguable probable cause to arrest and detain Laurene. *Id.* at 19–24. The Court agrees that the undisputed material facts in this case demonstrate that Detective Conte had probable cause to arrest Laurene, or in the alternative, that Detective Conte is shielded by qualified immunity.

---

just what Plaintiffs have done here—forced the expenditure of resources on a dead-end claim, at the expense of other cases and litigants on the Court's docket.

[11]As Defendants point out, "Plaintiffs reference the Eighth Amendment throughout their Complaint and, in discovery, denied a request to admit that Laurene's Eight Amendment rights were not implicated in this case." ECF No. 27 at 2, n.2; *see also* Section 3.5 *supra.* Laurene was arrested and detained but released shortly after Commissioner Dorsey made her probable cause determination and set bail, which Laurene paid. The Court finds that—despite Plaintiffs' apparent refusal to concede the point—Laurene's unlawful arrest and detention and false imprisonment claims are cognizable only under the Fourth Amendment; accordingly, no Eighth Amendment analysis will be undertaken. *See Collins v. Al-Shami*, 851 F.3d 727, 731 (7th Cir. 2017) ("The Fourth Amendment applies to the period of confinement between a warrantless arrest and the probable-cause determination [; . . .] the Eight Amendment applies after a conviction[.]")

Case 2:21-cv-01032-JPS   Filed 11/04/22   Page 32 of 48   Document 42

"It is not disputed that the Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). "An essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause." *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). Likewise, "[p]robable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest [or] false imprisonment," *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006), or to "wrongful pretrial detention," *Norris v. Serrato*, 761 F. App'x 612, 615 (7th Cir. 2019).

A police officer has probable cause to arrest an individual when "the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense." *Mustafa*, 442 F.3d at 547 (quoting *Kelley*, 149 F.3d at 646). The analysis is objective: "[t]he court evaluates probable cause not on the facts as an omniscient observer would perceive them, but rather as they would have appeared to a reasonable person in the position of the arresting officer." *Id.* (internal quotations and citations omitted). Finally, "if an officer has established cause on every element of a crime, he need not continue investigating in order to test the suspect's claim of innocence." *Kelley*, 149 F.3d at 646 (citing *Gramenos v. Jewel Cos.*, 797 F.2d 432, 437–42 (7th Cir. 1986)).

As Commissioner Dorsey later determined, Detective Conte arrested Laurene for theft by fraud in violation of Wis. Stat. § 943.20(1)(d). ECF No. 26 at 20; ECF No. 29-13 at 1. This crime is defined as "[o]btain[ing] title to

property of another person by intentionally deceiving the person with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made." Wis. Stat. § 943.20(1)(d); *see also* Wis. JI—Criminal 1453A. "Property" is defined to mean "all forms of tangible property, whether real or personal[.]" Wis. Stat. § 943.20(2)(c). A person who violates § (1)(d) where the value of the property is between $10,000 and $100,000 is guilty of a Class G felony. *Id.* at (3)(c).

This crime does not require a showing that the suspect retained the property for herself. *State v. O'Neil*, 416 N.W. 2d 77, 78 (Wis. Ct. App. 1987) (finding § 943.20(1)(d) encompassed charge against defendant nonprofit director for allegedly altering an organization's records to misrepresent the amount of time organization staff spent with clients and retaining funds from overbilled hours in organizational account). Making a statement that results in an overpayment to the suspect may constitute a "false representation" for purposes of § 943.20(1)(d). *See State v. Ploeckelman*, 729 N.W. 2d 784, 791 (Wis. Ct. App. 2007). Additionally, when a defendant knows that her representation is false and fails to correct it, "there is also probable cause that the false representation was made with the intent to deceive and defraud." *Id*.

The facts in this case—even assuming Plaintiffs' disputes are genuine and viewing all facts and drawing reasonable inferences in a light favorable to Plaintiffs—demonstrate that Detective Conte had probable cause to arrest Laurene. After the Milwaukee County auditor Michael Hart passed along the tip he had received to Detective Conte, and the results of

his initial investigation in which he interviewed four witnesses about the alleged fraud, Detective Conte independently investigated what Hart said. He spoke with Bauer, Wood, Stone, and Nwagbaraocha, all of whom (1) knew firsthand that Laurene placed an order for a number of Dell computers on behalf of Interfaith/Unison, (2) either knew firsthand or believed Laurene included the amount of the computer purchase on a reimbursement request submitted pursuant to the Milwaukee County Grant, and (3) knew the computers were never received at Interfaith/Unison. These witnesses' stories were all consistent with one another and with what Hart had reported to Detective Conte.

Moreover, Laurene's own deposition testimony corroborates this sequence of events. She stated that: she placed the order; she recorded it as an expense on a reimbursement request that she submitted pursuant to the Milwaukee County Grant; and she later realized the computer purchase had been cancelled or lapsed, but did not file an updated reimbursement request or otherwise report the cancelled order to Milwaukee County. In other words, whether Laurene affirmatively cancelled the order or passively let it lapse, ultimately, she failed to notify the funder, Milwaukee County, that the funds were not used in the way she had represented. The reasons she gave for her failure to correct her representation to Milwaukee County were either that other expenses could be claimed under the grant in lieu of the computers, or that correcting the representation was simply not a priority. Setting aside any debate about the wisdom of Laurene's thought process as a seasoned businessperson and administrator, the fact remains that she represented to Milwaukee County that its money was used

Case 2:21-cv-01032-JPS   Filed 11/04/22   Page 35 of 48   Document 42

one way when, in fact, it was used in a different way, and Laurene chose to do nothing to correct her representation.

These facts are enough to establish probable cause as to each element of Wis. Stat. § 943.20(1)(d). Laurene obtained money for Interfaith/Unison intentionally—no party is arguing that she made a mistake or accident in spending the grant funds as she did. She retained the money by initiating a purchase with grant funds, and, despite knowing the purchase was not completed, failing to correct the representation about how or whether those grant funds had been spent—this is a false representation to Milwaukee County, and Laurene knew then and admits now that it was false. That she did not keep this money for herself, and rather obtained the money on behalf of Interfaith/Unison, is not dispositive. *O'Neil*, 416 N.W. at 78.

Laurene's knowing false statement and failure to correct that statement also support probable cause as to the element of making a false statement with the intent to deceive and defraud. *See Ploeckelman*, 729 N.W. 2d at 791 ("Given [defendant's] knowledge and inaction" to correct misapprehensions about the quality of the product he was selling, "there is also probable cause that the false representation was made with intent to deceive and defraud."). To the extent that Laurene argues that her actions did not evince that she made her false statement with the intent to deceive, *see* ECF No. 34 at 4–5, the Court finds that the testimony of Crawford and Bauer support an inference to the contrary.

Crawford testified that, in the context of a different grant, Laurene advised her "never" to consult with grant officers about how to utilize unspent grant funds. ECF No. 26 at 13. When Bauer—an employee with

Case 2:21-cv-01032-JPS   Filed 11/04/22   Page 36 of 48   Document 42

experience performing financial audits—informed Laurene that she believed that spending the Milwaukee County Grant on the Dell computers was not allowable under the terms of that grant, Laurene disagreed and bought the computers anyway. Though neither the grant on which Crawford worked, nor the terms of the Milwaukee County Grant or Laurene and Bauer's disagreement about them, is at issue here, together these statements and actions permit an inference that Laurene could and would misrepresent the spending of grant funds. Detective Conte therefore had probable cause as to this, and each other, element of the crime. The fact that Judge Cimpl found there was probable cause that a crime had been committed such that search warrants could be executed to look for evidence of the crime, plus Commissioner Dorsey's *post hoc* probable cause determination, bolster this conclusion.

Plaintiffs' disputes of fact—aside from being presented to the Court in a procedurally-deficient and frankly confusing manner—either are not genuine or are immaterial. Plaintiffs first contend that Commissioner Dorsey's probable cause determination was incorrect because Detective Conte's probable cause statement did not track the elements of Wis. Stat. § 943.20(1)(d) and failed to lay out the specific false statements made by Laurene. ECF No. 34 at 5. As discussed above, the facts of this case meet the elements for theft-by-fraud; Commissioner Dorsey made the right call, as far as the Court can surmise. In any case, Detective Conte's probable cause statement *does* provide sufficient information for Commissioner Dorsey's determination—it states that the computer order was placed, the computers were not delivered, but due to Laurene's action, the funds for the computers

were still in Interfaith's account. *See* ECF No. 29-13 at 1. Commissioner Dorsey could have reasonably inferred from the facts as presented by Detective Conte that a false statement was made with the intent to deceive. *Ploeckelman*, 729 N.W. 2d at 791.

Plaintiffs next highlight that Conte testified he did not know what a fraudulent reimbursement report was, despite relying on the existence of a fraudulent reimbursement report in his probable cause statement (and search warrant affidavits). ECF No. 33 at 1. It appears that Conte did not know the exact contents of the reimbursement report Laurene made to Milwaukee County. *See supra-Section* 3.2.8.1 (reproducing deposition testimony from Detective Conte). However, he testified that he knew this report existed, and that he did not have forensic expertise to conclusively determine whether the report was fraudulent. *See id.* Detective Conte had consistent and credible information from five witnesses and Hart that Laurene had told Milwaukee County she spent grant money, when she had in fact (and knowingly, by her own account) *not* spent the grant money. He did not need to be intimately familiar with the contents of the reimbursement report itself to have probable cause that submission of the report constituted a false representation for the purposes of arresting Laurene for a theft-by-fraud claim. *See Gramenos*, 797 F.2d at 440 ("[A] single tipster could supply probable cause to issue a search or arrest warrant, if the police had reason to think that the informant had firsthand knowledge and was reliable.") Therefore, Plaintiffs' dispute is immaterial.

Plaintiffs next point to the fact that several of the witnesses who blew the whistle on Laurene's conduct had formed a competing organization,

Case 2:21-cv-01032-JPS  Filed 11/04/22  Page 38 of 48  Document 42

which Plaintiffs argue, demonstrate that they had a motive to lie about her and her conduct to Hart and Detective Conte. ECF No. 34 at 2. This fact, while undisputed, is irrelevant, because the parties also agree that Detective Conte did not know of these witnesses' parallel venture at the time he investigated and arrested Laurene. ECF No. 26 at 21; *Mustafa*, 442 F.3d at 547 (noting that the probable cause analysis inquiries into "the facts as they would have appeared to a reasonable person in the position of the arresting officer"). Even if he did know about the witnesses' competing venture, their stories were otherwise consistent and credible, so he was entitled to rely on it at the probable cause stage of the case; Laurene's opportunity to challenge their credibility would have come at trial. *Spiegel v. Cortese*, 196 F.3d 717, 725 (7th Cir. 1999) ("The credibility of a putative victim or witness is a question, not for police officers in the discharge of their considerable duties, but for the jury in a criminal trial.")

Plaintiffs, in their last attempt to throw spaghetti at the wall and see what sticks, argue that exculpatory information existed that should have informed Detective Conte's decision to arrest to a greater degree. ECF No. 34 at 6–7. They point to the fact that Dell didn't get back to Detective Conte until January 2019 about Laurene's order; a supposed audit of Interfaith by Wagner CPAs which revealed no evidence of mismanagement; and Detective Conte's later review of Laurene and Chris's personal financial records which also showed no evidence of impropriety. Passing over questions of admissibility, these facts are immaterial: having determined that probable cause as to each element of the crime of theft by fraud was

present, Detective Conte was not obligated to continue investigating "in order to test the suspect's claim of innocence." *Kelley*, 149 F.3d at 646.

Also immaterial is Plaintiffs' argument that Milwaukee County Sheriff's Office policy dictated that Detective Conte was required to consult with a prosecutor before arresting Laurene. ECF No. 34 at 6. Where he had probable cause to arrest Laurene, his failure to consult with a prosecutor before doing so—if he was even required to do so, which is seriously in doubt, *see supra* Section 3.3.2—is not actionable. *See Est. of Biegert by Biegert v. Molitor*, 968 F.3d 693, 698–99 (7th Cir. 2020) (noting that § 1983 makes constitutional violations, but not violations of departmental regulations or policies, actionable, and further that "[p]olicies and procedures do not shed light on the reasonableness of an officer's behavior"). In sum, the wisdom of the decision to focus law enforcement resources on this particular type of conduct was an exercise of executive discretion and is not for the Court to question—the Court only contemplates the legal question of whether probable cause existed and concludes that it did.

Plaintiffs have failed to cite, let alone analogize or distinguish, *any* case law as to whether Detective Conte had probable cause to arrest Laurene based on what he knew on the day of the arrest. *See* ECF No. 34 at 13–14. Defendants have carried their burden to demonstrate that the undisputed facts in this case show Detective Conte relied on "reasonably trustworthy information," *Mustafa*, 442 F.3d at 547: consistent information from at least five witnesses associated with Interfaith/Unison, whose stories were consistent with what they told another investigator, Hart. This

Case 2:21-cv-01032-JPS   Filed 11/04/22   Page 40 of 48   Document 42

information was objectively "sufficient to warrant a prudent person in believing that the suspect had committed an offense." *Id.*

Having determined that probable cause supported Detective Conte's arrest of Laurene and no Fourth Amendment violation occurred, the Court briefly turns to Defendants' argument that Detective Conte is cloaked with qualified immunity. "Governmental actors performing discretionary functions are entitled to qualified immunity from suits for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome a defendant's claim of qualified immunity, "the plaintiff [] must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Id.* (citations omitted).

"[A] defendant is entitled to qualified immunity in a false-arrest case when, if there is no probable cause, a reasonable officer could have mistakenly believed that probable cause existed," or in other words, that arguable probable cause existed. *Fleming v. Livingston Cnty.*, Ill., 674 F.3d 874, 880 (7th Cir. 2012) (internal quotation and citation omitted). While the constitutional right to be free from arrest without probable cause was clearly established at the time of Laurene's arrest, *Spiegel*, 196 F.3d at 723, even if Plaintiffs had stated a constitutional violation, Detective Conte had at the very least, arguable probable cause to arrest her. The facts as articulated and examined above supported a conclusion that there was

probable cause that Laurene's conduct violated the law. But even if Detective Conte had mistakenly interpreted Wis. Stat. § 943.20(1)(d) as applied to Laurene's conduct to find she made a false statement, did so with intent to deceive, or any of the other elements of the offense, he would have had *arguable* probable cause to arrest her. Detective Conte is therefore entitled to qualified immunity on these claims.

### 4.3     Right to Counsel Claim and Municipal Liability Claim

Plaintiffs claim Laurene's constitutional right to counsel was violated, either by Detective Conte during her pretrial detention, and/or pursuant to a Milwaukee County policy. ECF No. 1 at 8–9. The Court is obliged to grant Defendants' motion for summary judgment on this issue.

#### 4.3.1   Right to Counsel Claim Against Detective Conte

As a threshold matter, Laurene's claim is governed by the Fifth Amendment since she was never charged with or convicted or a crime. *Watson v. Hulick*, 481 F.3d 537, 542 (7th Cir. 2007) ("The Sixth Amendment right to counsel attaches at the initiation of adversary judicial proceedings, whether by way of formal charge, indictment, information, or arraignment."). When an individual in custody "states that [s]he wants an attorney, the interrogation must cease until an attorney is present." *Subdiaz-Osorio v. Humphreys*, 947 F.3d 434, 444 (7th Cir. 2020). However, "failure to provide counsel does not create a cause of action under Section 1983 unless the plaintiff demonstrates that the statements he made to defendants without an attorney present were used against him in a criminal case." *Henderson v. Brower*, No. 18-CV-893-JPS, 2018 WL 6267907, at *4 (E.D. Wis. Nov. 30, 2018).

The undisputed facts amply demonstrate that Laurene has no Fifth Amendment claim. She was given a *Miranda* warning when arrested. After she was arrested and taken to the Milwaukee County Safety Building, Laurene asked (either Detective Conte or a jail official) to speak with Unison's corporate attorney Robert Duffy; Duffy did not respond to her requests. However, she ended up retaining her own criminal defense attorney, Craig Mastantuono, with whom she was able to meet on November 21, the day after her arrest. After Laurene requested to speak with Duffy, Detective Conte did not ask her any further questions related to the subject matter of the investigation and arrest. She gave Detective Conte no information she considers incriminating. Simply put, her right-to-counsel claim as it pertains to Detective Conte has no substance; she made no incriminating statements but, even if she had, she was not prosecuted so such statements were never used against her. The fact that she was not able to immediately speak with an attorney is not grounds for constitutional liability. Even if it were, Detective Conte would be entitled to qualified immunity because it would not have been clear to a reasonable official that his conduct—ceasing to question her about the arrest after she asked for an attorney—violated her right to counsel; in fact, most if not all reasonable officials would likely agree Detective Conte's actions preserved Laurene's Fifth Amendment right to counsel. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

### 4.3.2   Municipal Liability

Where a plaintiff has not sufficiently alleged an underlying constitutional violation by a municipal employee, municipal liability is also generally precluded. *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504. (7th Cir. 2010). Such is the case here: Laurene has no right-to-counsel claim. However, even if she did, she has not demonstrated that an official municipal policy caused her injury, as required by *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Despite their discovery responses indicating they anticipated finding such a policy, Plaintiffs do not allege, at least not in the joint statement of facts, any Milwaukee County policy that led to Laurene being unable to speak with her attorney. Plaintiffs' response brief points to Milwaukee County Sheriff's Office Policy Manual, Policy 900, which allows pretrial detainees to make a reasonable number of calls.

Plaintiffs disjointedly argue that "Detective Conte ignored the County's own policies in forbidding Ms. Gramling Lambach from making a call to her chosen lawyer," an apparent reference to Duffy, Unison's corporate attorney, who was the first lawyer with whom she requested to speak. ECF No. 34 at 11. First, there is simply no evidence to support the claim that Detective Conte *forbade* Laurene from calling either attorney; the fact that Laurene was not immediately able to speak with Duffy does not demonstrate this, and the fact that Laurene was able to meet with Mastantuono undermines this claim. Detective Conte appears to have been complying with Policy 900 allowing for a reasonable number of calls; even if he had gone against the policy, § 1983 is not the vehicle to vindicate

alleged violations of departmental policy. *See Estate of Biegert*, 968 F.3d at 698–99. In any event, she has not demonstrated that her inability to communicate immediately with counsel is sufficient to make out a constitutional violation, because by her own admission, she made no incriminating statements, and she was never prosecuted.

### 4.4    Chris's Derivative Claim

Chris makes what is presumably a substantive due process claim for loss of the "love, society, and companionship of his wife" as a result of Defendants' actions. ECF No. 1 at 11. This Court previously dismissed a similar claim by the wife of a person who was killed by an on-duty police office. *Estate of Stinson v. Milwaukee Cnty.*, No. 21-CV-1046-JPS, 2022 WL 1303279 (E.D. Wis. May 2, 2022). The dismissal operated without prejudice and the Court noted that "the possibility of a spouse bringing a § 1983 claim for the loss of the 'greater deprivations' of consortium" remained. *Id.* at *4 (quoting *Nieuhus v. Liberio*, 973 F.2d 526, 533 (7th Cir. 1992)).

Here, the joint statement of facts does not address how the above-described events deprived Chris of Laurene's companionship. The Court does not doubt that the events were extremely troubling for both spouses. However, with no facts to go on, and furthermore no briefing whatsoever from Plaintiffs in opposition to Defendants' motion for summary judgment on this claim, the Court declines to examine whether the possibility of recovery left open in *Stinson* matches the facts of this case. *See U.S. v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]"); *Est. of Moreland v.*

Case 2:21-cv-01032-JPS   Filed 11/04/22   Page 45 of 48   Document 42

*Dieter*, 395 F.3d 747, 759 (7th Cir. 2005). Defendants are therefore entitled to summary judgment on this claim.

### 4.5    Punitive Damages

Both Chris and Laurene demand punitive damages if they prevail on their constitutional claims. ECF No. 1 at 2, 7–9, 11. As discussed in Sections 4.1—4.4 *supra*, Plaintiffs have not so prevailed. But even if they had, punitive damages would not be warranted here. Punitive damages are only recoverable on claims under § 1983 when the plaintiff proves the defendant acted with reckless or callous indifference to the plaintiff's constitutional rights or was motivated by evil intent. *Smith v. Wade*, 461 U.S. 30, 39–51 (1983).

In support of their claim, Plaintiffs argue that, because Detective Conte lacked probable cause to arrest Laurene and "[t]here was absolutely nothing else in th[e] record to suggest [she] had any criminal liability at any time," this demonstrates he acted with the requisite state of mind for the punitive damages claim. First, since it has already been determined that Chris cannot recover at all in this action, his punitive damages claim must be dismissed. As to Laurene, the Court is not persuaded that—even if Detective Conte was mistaken in arresting her—she was the victim of reckless indifference or evil intent. Again, the Court has no doubt that Laurene experienced great hardship as a result of the events at issue in this case. But as Defendants convincingly argue, Detective Conte appears to have taken significant care in conducting his investigation. ECF No. 27 at 26. Summary judgment is therefore appropriate for Defendants on their claims for punitive damages.

Page 46 of 48

### 4.6 Indemnification

Plaintiffs' complaint lists a standalone indemnification "cause of action" against Milwaukee County, specifically, that Milwaukee County is "therefore liable pursuant to Wis. Stat. § 895.46 for any judgment entered against the defendant, Brian Conte[.]" ECF No. 1 at 9. As Defendants correctly point out, this statute does not provide a standalone cause of action. *Jackson v. Graves*, No. 14-CV-1206-PP, 2015 WL 5577527, at *4 (E.D. Wis. Sept. 22, 2015) (noting that this statute "does *not* allow a plaintiff . . . to sue the state for damages"). Aside from the fact that Plaintiffs have not responded to Defendants' arguments on this issue, *see* ECF No. 34, the problem here may simply be an error in how Plaintiffs' counsel drafted and styled the complaint. In any event, Defendants are correct; the Court will grant summary judgment for Defendants on this matter.

### 5. CONCLUSION

For the above-stated reasons, Defendants' motion for summary judgment will be granted. The case will be dismissed with prejudice. Accordingly, all pretrial- and trial-related dates and deadlines are obviated, and Defendants' expedited motion to postpone or adjourn these dates and deadlines, ECF No. 39, will be denied as moot.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment, ECF No. 25, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants' expedited motion to postpone or adjourn the remaining pretrial deadlines, ECF No. 39, be and the same hereby is **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice.**

Dated at Milwaukee, Wisconsin, this 4th day of November, 2022.

BY THE COURT:

_____

J.P. Stadtmueller
U.S. District Judge

Page 48 of 48